UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

OCT 2 2 2001   JS

MICHAEL N. MILBY, CLERK OF COURT

```
------------------------------------------------------x
                                      §
MARK NEWBY,                           §
                                      §
              Plaintiff,              §
                                      §
                                      §
                                      §
ENRON CORPORATION, ANDREW S.          §
FASTOW, KENNETH L. LAY, and           §
JEFFREY J. SKILLING,                  §
                                      §
              Defendants,             §
------------------------------------------------------x
```

# H-01 3624

Civil Action No. _____

**JURY DEMANDED**

## COMPLAINT

Plaintiff, by his attorneys, alleges as follows on information and belief, except as to paragraph 4, which plaintiff alleges upon personal knowledge.

## NATURE OF THE ACTION

1.     This is a securities fraud class action brought against defendant Enron Corporation ("Enron" or the "Company"), and certain of its officers and directors at relevant times, on behalf of a class (the "Class") consisting of purchasers of Enron common stock during the period July 13, 2001 to October 16, 2001 (the "Class Period").

## JURISDICTION AND VENUE

2.     This Court has jurisdiction of this action pursuant to Section 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78aa], and 28 U.S.C. §§ 1331 and 1337.

3.     This action arises under and pursuant to Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5] and

1

Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b) and (c).  Enron has its headquarters in this District, and the acts complained of herein, including the preparation, issuance and dissemination of materially false and misleading information to the investing public, occurred in substantial part in this District.

5.      In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephonic communications and the facilities of the New York Stock Exchange, a national securities exchange.

## PARTIES

6.      Plaintiff Mark Newby purchased 500 shares of Enron common stock on August 24, 2001, as set forth in the certification attached hereto.

7.      Defendant Enron is an Oregon corporation with its principal executive offices located at 1400 Smith Street, Houston, Texas.  According to its public filings, Enron is the largest buyer and seller of natural gas, and the top wholesale power marketer in the United States.  Enron operates a 25,000-mile gas pipeline system in the United States.  The Company also markets and trades in commodities such as electricity, weather futures, metals, paper, coal, chemicals, and fiber-optic bandwidth.

8.      Defendant Andrew S. Fastow has been the Executive Vice President and Chief Financial Officer of Enron since July 1999.  Previously, from March 1998 to July 1999, he was the Senior Vice President and Chief Financial Officer of Enron.  He also served as the Senior Vice President of Finance of Enron from January 1997 to March 1998.  Fastow was also the founder and

managing member of LJM Cayman LP ("LJM") and LJM2 Co-Investment LP ("LJM2") from their formation in 1999 until July 2001.

9. Defendant Kenneth L. Lay has at all relevant times been Chairman of the Board of Directors of Enron. He was Chief Executive Officer of Enron from 1985 until defendant Skilling was elected to the position in early 2001. Lay also assumed the duties of President and Chief Executive Officer upon the resignation of defendant Skilling on August 14, 2001.

10. Defendant Jeffrey K. Skilling has been a director of Enron since 1997. From January 1997 until August 14, 2001, Skilling served as President of Enron. He was Chief Executive Officer of Enron from early 2001 until August 14, 2001. Skilling remains a consultant to Enron and a member of its Board of Directors.

11. Collectively, the defendants identified in paragraphs 8-10 are referred to as the "Individual Defendants." The Individual Defendants, through their positions as directors and/or senior officers of Enron, had responsibility for the management of Enron's business and operations.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons or entities who purchased shares of Enron common stock during the Class Period and who were damaged thereby. Excluded from the Class are: defendants; members of the Individual Defendants' immediate families; any director, officer, subsidiary, or affiliate of Enron; any entity in which any excluded person has a controlling interest; and their legal representatives, heirs, successors and assigns.

13. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiffs at this time and

can only be ascertained through appropriate discovery, plaintiffs believe that there are thousands of members of the Class located throughout the United States. Throughout the Class Period, Enron common stock was actively traded in an efficient market on the New York Stock Exchange. Record owners and other members of the Class may be identified from records maintained by Enron and/or its transfer agent and may be notified of the pendency of this action by mail and publication, using forms of notice similar to those customarily used in securities class actions.

14.     Plaintiff's claims are typical of the claims of other members of the Class as all members of the Class were similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

15.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

16.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

1.     Whether the federal securities laws were violated by defendants' acts and omissions as alleged herein;

2.     Whether defendants participated in and pursued the illegal course of conduct complained of herein;

3.     Whether statements disseminated to the investing public and the Company's shareholders during the Class Period made misrepresentations or omissions of material information as alleged herein;

4

4.  Whether the market price of Enron common stock during the Class Period was artificially inflated due to the material misrepresentations and omissions complained of herein;

5.  To what extent the members of the Class have sustained damages and the proper measure of damages.

17.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  As the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigations make it impossible for members of the Class individually to seek redress for the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

## SUBSTANTIVE ALLEGATIONS

18.  In 1999, defendant Fastow formed two investment partnerships, LJM Cayman LP ("LJM") and LJM2 Co-Investment LP ("LJM2").  LJM and LJM2 are private investment companies that, according to Enron's public filings, engage in acquiring or investing in primarily energy-related investments.  Fastow was the managing member of the general partner of each of the two partnerships.

19.  According to published reports, the general partner of the two investment partnerships was paid management fees as much as 2% annually of the total amounts invested in the partnerships.  Additionally, the general partner was eligible for profit participation that could produce tens of millions of dollars more if the partnership met its performance goals over its projected 10-year life.  Inasmuch as the partnerships were formed with the intention of managing over $200 million in

assets, defendant Fastow's potential profits from managing the partnership exceeded $4 million a year.

20.     Since their formation, LJM and LJM2 have engaged in billions of dollars of complex hedging transactions with Enron - in which Enron had adverse interests. By their very nature, Enron's transactions with these two investment partnerships, if successful, would result in losses to Enron.

21.     Because defendant Fastow was on both sides of the transactions between Enron and the investment partnerships, the terms of those transactions were not at arm's-length and there was no reasonable method to ensure that the terms of those transactions were equivalent to transactions that could have been engaged in with third parties.

22.     For example, Enron entered into a series of complex transactions in 1999 involving LJM and a third-party, pursuant to which (i) Enron and the third-party amended certain forward contracts to purchase shares of Enron common stock, resulting in Enron having forward contracts to purchase Enron common shares at the market price on the day of the agreement, (ii) LJM received about 6.8 million shares of Enron common stock, and (iii) Enron received a note receivable and certain financial instruments from LJM hedging an investment held by Enron.

23.     During the fourth quarter of 1999, LJM2 acquired approximately $360 million of merchant assets and investments from Enron. Further, in December, 1999, LJM2 entered into agreements to acquire certain of Enron's interests and assets for about $45 million.

24.     In 2000, Enron again entered into transactions with LJM, LJM2, and entities related to LJM and LJM2, to hedge certain merchant investments and other assets. Enron contributed about $1.2 billion of assets, including notes payable and restricted shares of outstanding Enron common

6

stock and warrants, to LJM-related entities. Additionally, Enron entered into derivative transactions with a combined amount of about $2.1 billion with LJM-related entities to hedge certain assets. These transactions put Enron at risk in amounts exceeding $1 billion.

25.     In fact, the LJM2 offering document, which was prepared under the direction of defendant Fastow, admitted that the responsibilities of Mr. Fastow and other partnership officials to Enron could "from time to time conflict with fiduciary responsibilities owed to the Partnership and its partners."

26.     As reported in TheStreet.com on July 12, 2001, Enron was questioned in a conference call that day about the Company's transactions with LJM and LJM2. Defendant Skilling falsely represented the true state of affairs by representing that LJM and LJM2 had done "a couple of real minor things."

27.     In July 2001, Fastow terminated his interests in the partnerships, and Enron unwound its financial relationships with the partnerships.

28.     The harm to Enron from the partnership arrangements had, however, already materialized. On October 16, 2001, Enron shocked investors by taking a $1.01 billion charge primarily connected with write-downs of impaired assets and soured investments. The $1.01 billion charge caused an unprecedented third quarter loss of $618 million.

29.     In a carefully worded press release, issued on October 16, 2001, Enron acknowledged that it was required to recognize "non-recurring charges," including "$544 million related to losses associated with [among other things] early termination during the third quarter of certain structured finance arrangements with a previously disclosed entity."

30.     According to The Wall Street Journal, in a news report on October 17, 2001, the cryptic reference in the press release was to the "pair of limited partnerships that until recently were run by Enron's chief financial officer."  According to The Wall Street Journal, Enron privately acknowledged (initially) that its transactions with those partnerships resulted in write-downs of $35 million.

31.     Defendant Lay also acknowledged in a conference call after issuance of the October 16, 2001 press release, that Enron would take a $1.2 billion writedown to shareholder's equity relating to a "removal of an obligation to issue a number of shares."

32.     Defendants did not acknowledge, however, until October 17, 2001, that the $1.2 billion writedown was attributable to Enron's transactions with Fastow's investment partnerships. On October 18, 2001, The Wall Street Journal reported that in a conference call on October 17, 2001, defendant Lay stated that 55 million shares had been repurchased by Enron, as the company "unwound" its participation in the transactions with the limited partnerships.

33.     According to Rick Causey, Enron's chief accounting officer, these shares had been contributed to a "structured finance vehicle" set up in 1999 in which Enron and LJM2 were the only investors. In exchange for the stock, LJM2 provided Enron with a note.  When Enron reacquired the 55 million shares, it also cancelled the note from the partnership.

34.     Defendants failed to disclose this huge reduction in assets and shareholder's equity attributable to Enron's transactions with the investment partnerships, either in the October 16, 2001 press release or on the October 16, 2001 conference call, in an apparent consciousness of guilt of their wrongful conduct.

35.     The price of Enron common stock fell sharply on these disclosures.  On October 17,

2001, the price declined approximately 5% to a closing price of $32.20 per share on volume of more

than 5 million shares.  On October 18th, the price dropped approximately 10% to close at $29 per

share with over 9 million shares trading.  According to Reuters news service, "Enron Corp. stock fell

sharply on [October 18] as investors digested news of a $1.2 billion reduction in the energy giant's

shareholder equity that attracted little attention when it was first disclosed earlier this week."

36.     According to an article in The Street.com on July 20, 2001, defendant Lay exercised

options and sold almost 400,000 shares of Enron stock between January and August 2001, at prices

between $52.95 and $83 per share, including the sale of 43,500 shares between July 13 and July 31,

2001.  Defendant Skilling similarly sold large amounts of stock this year.

### COUNT I
### Against All Defendants For Violation of
### Sections 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

37.     Plaintiff incorporates by reference and realleges each of the foregoing allegations.

38.     During the Class Period, the defendants, individually and in concert, engaged in a

plan, scheme, and course of conduct, pursuant to which they knowingly and/or recklessly engaged in

acts, transactions, practices, and courses of business which operated as a fraud upon plaintiffs and

other members of the Class, and made various untrue and deceptive statements of material fact and

omitted to state material facts necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading to plaintiff and other Class members as

set forth above.  The purpose and effect of this scheme was to induce plaintiff and the Class to

purchase Enron common stock at artificially inflated prices.

39.     During the Class Period, defendants, pursuant to their plan, scheme and unlawful course of conduct, knowingly and/or recklessly issued, or caused to be issued statements to the investing public as described above.

40.     Defendants knew and/or recklessly disregarded the falsity of the foregoing statements. As senior officers and/or directors of the Company, the Individual Defendants had access to the non-public information detailed above.

41.     Throughout the Class Period, Enron acted through the Individual Defendants, whom it portrayed and represented to the press and public as its valid representatives. The willfulness, motive, knowledge, and recklessness of the Individual Defendants are therefore imputed to Enron, which is primarily responsible for the securities law violations of the Individual Defendants while acting in their official capacities as Company representatives, or, in the alternative, which is liable for the acts of the Individual Defendants under the doctrine of *respondeat superior.*

42.     Each of the defendants knew or recklessly disregarded the fact that the above acts and practices, misleading statements, and omissions would adversely affect the integrity of the market in Enron common stock. Had the adverse facts defendants concealed been properly disclosed, Enron's shares would not have sold at the artificially inflated prices they did during the Class Period.

43.     As a result of the foregoing, the market price of Enron common stock was artificially inflated during the Class Period. In ignorance of the false and misleading nature of the representations, plaintiff and other members of the Class relied, to their detriment, on the integrity of the market as to the price of Enron common stock.

44.     Had plaintiff and the other members of the Class and the marketplace known of the true operating and financial results of Enron, which, due to the actions of defendants were not

10

disclosed, plaintiff and the Class would not have purchased or otherwise acquired their Enron common stock during the Class Period or, if they had acquired Enron common stock during the Class Period, they would not have done so at the artificially inflated prices at which they purchased their stock during the Class Period. Hence, plaintiff and the Class were damaged by said defendants' violations of Section 10(b) and Rule 10b-5.

45.     Plaintiff and the Class were injured because the risks that materialized were risks of which they were unaware as a result of defendants' misrepresentations, omissions and other fraudulent conduct alleged herein. The decline in the price of Enron's common stock was caused by the public dissemination on or about October 16, 2001 of the true facts, which were previously concealed or hidden. Absent said defendants' wrongful conduct, plaintiff and the Class would not have been injured.

46.     The price of Enron common stock declined materially upon public disclosure of the true facts which had been misrepresented or concealed, as alleged in this complaint. Plaintiff and other members of the Class have suffered substantial damages as a result of the wrongs alleged herein.

47.     By reason of the foregoing, defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**COUNT II**
**Against The Individual Defendants**
**For Violations of Section 20(a) of the Exchange Act**

48.     Plaintiff incorporates by reference and realleges each of the foregoing allegations.

49.     By reason of their status as officers, members of senior management and/or directors of Enron, the Individual Defendants were "controlling persons" of Enron within the meaning of Section 20 of the Exchange Act and had the power and influence to cause Enron to engage in the

unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Enron's business, the information contained in its filings with the SEC and public statements about its business. The Individual Defendants were provided with or had unlimited access to copies of the Companies' internal reports, and press releases and public filings alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. Enron controlled the Individual Defendants and all of its employees.

50.     In particular, the Individual Defendants had direct involvement in the day-to-day operations of the Company and therefore, are presumed to have had the power to control or influence the particular statements giving rise to the securities violations as alleged herein, and exercised the same.

51.     As set forth above in Count I, Enron violated Section 10(b) and Rule 10b-5 promulgated thereunder by its acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons of Enron, the Individual Defendants are liable for the Company's violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as alleged in Count I, pursuant to Section 20(a) of the Exchange Act.

52.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE,** plaintiff on his own behalf and on behalf of the Class prays for judgment as follows:

53. Declaring this action to be a proper class action maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure and plaintiff to be a proper class representative;

54. Awarding plaintiff and the Class compensatory damages, together with appropriate prejudgment interest at the maximum rate allowable by law;

55. Awarding plaintiff and the Class their costs and expenses for this litigation including reasonable attorneys' fees and other disbursements; and

56. Granting such other and further relief as this Court deems to be just and proper.

Dated: October 22, 2001.

Respectfully submitted,

CUNNINGHAM, DARLOW, ZOOK
& CHAPOTON, L.L.P.

By: _____
        *Richard J. Zook
        State Bar No. 22285400
        John E. Chapoton, Jr.
        State Bar No. 04137010
        1700 Chase Tower, 600 Travis
        Houston, Texas 77002
        Telephone: (713) 255-5500
        Telecopier: (713) 255-5555


        SHAPIRO, HABER & URMY, LLP
        Thomas Shapiro
        75 State St.
        Boston, MA 02109
        Telephone: 617-439-3939
        Telecopier: 617-439-0134

        *ATTORNEY IN CHARGE FOR
         PLAINTIFF RICHARD NEWBY

13

## PLAINTIFF'S CERTIFICATION

I, Mark Newby, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1.  I have reviewed the Complaint to be filed on my behalf against Enron Corporation and certain of its officers and directors.

2.  I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

3.  My transactions in Enron Corp. securities during the Class Period were:

| Date | Transaction | # of Shares | Price Per Share |
|------|-------------|-------------|-----------------|
| 8/24/01 | Purchase | 500 | $36.87 |

4.  I did not purchase these securities at the direction of counsel, or in order to participate in any private action arising under the Securities Act of 1933 or the Securities Exchange Act of 1934.

5.  I have neither served, nor sought to serve, as a representative party on behalf of a class in a securities fraud lawsuit during the three-year period preceding the date of signing this certification, except as follows: NONE

6.  I will not accept any payment for serving as a representative on behalf of the Class beyond my pro rata share of any possible recovery, except for an award, as ordered or approved by the Court, for reasonable costs and expenses (including lost wages) directly relating to the representation of the Class.

Signed under the penalties of perjury this ___ day of October, 2001.

Mark Newby