IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE ENRON CORPORATION SECURITIES LITIGATION, | § § § | **United States Courts Southern District of Texas ENTERED** **FEB 1 5 2002** **Michael N. Milby, Clerk of Court** |
| THIS DOCUMENT RELATES TO: | § § | |
|     All Cases | § § | |
| MARK NEWBY, | § § | |
|         Plaintiff | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3624 LEAD CASE CONSOLIDATED WITH |
| ENRON CORPORATION, ANDREW S. FASTOW, KENNETH L. LAY, AND JEFFREY J. SKILLING, | § § § § | |
|        Defendants | § | |
| SETH ABRAMS AND STEVEN FRANK, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
|        Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3630 |
| ENRON CORPORATION, KENNETH L. LAY, JEFFREY K. SKILLING, AND ANDREW S. FASTOW, RICHARD A. CAUSEY, JAMES V. DERRICK, JR., J. CLIFFORD BAXTER, MARK A. FREVERT, STANLEY C. HORTON, KENNETH D. RICE, RICHARD B. BUY, AND ARTHUR ANDERSEN LLP, | § § § § § § § § § § § | |
|        Defendants | § | |

294

| | | |
|---|---|---|
| ROBERT J. CASEY, II AND RUTH<br>I. HORTON, Individually and On<br>Behalf of All Others Similarly<br>Situated,<br><br>       Plaintiffs,<br><br>VS.<br><br>ENRON CORPORATION, KENNETH L.<br>LAY, JEFFREY K. SKILLING, AND<br>ANDREw FASTOW,<br><br>       Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-01-3647 |
| FRANK WILSON, On Behalf of<br>Himself and All Others<br>Similarly Situated,<br><br>       Plaintiff,<br><br>VS.<br><br>ENRON CORPORATION, KENNETH L.<br>LAY, JEFFREY K. SKILLING, AND<br>ANDREW FASTOW,<br><br>       Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-01-3652 |
| J. MICHAEL GOTTESMAN,<br>Individually and on Behalf Of<br>All Others Similarly Situated,<br><br>       Plaintiff,<br><br>VS.<br><br>ENRON CORPORATION, KENNETH L.<br>LAY, JEFFREY K. SKILLING, AND<br>ANDREW FASTOW,<br><br>       Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-01-3660 |

| | | |
|---|---|---|
| AVIGAYIL GREENBERG, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3670 |
| ENRON CORPORATION, KENNETH L. LAY, JEFFREY K. SKILLING, AND ANDREW FASTOW, | § § § § | |
| Defendants | § | |

| | | |
|---|---|---|
| ROBERT CHRISTIANSON, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3671 |
| ENRON CORPORATION, KENNETH L. LAY, JEFFREY K. SKILLING, AND ANDREW FASTOW, | § § § § | |
| Defendants | § | |

| | | |
|---|---|---|
| ERNEST GOTTDIENER, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3681 |
| ENRON CORPORATION, KENNETH L. LAY, JEFFREY K. SKILLING, AND ANDREW FASTOW, | § § § § | |
| Defendants | § | |

- 3 -

MURIEL P. KAUFMAN, IRA,            §
Individually and On Behalf of      §
All Others Similarly Situated,     §
                                   §
            Plaintiff,             §
                                   §
VS.                                §    CIVIL ACTION NO. H-01-3682
                                   §
ENRON CORPORATION, KENNETH LAY,    §
ANDREW FASTOW, RICHARD CAUSEY,     §
JEFFREY SKILLING, MARK FREVERT,    §
CLIFF BAXTER, AND LOU PAI,         §
                                   §
            Defendants             §

JOHN P. MCCARTHY MONEY PURCHASE    §
PLAN, Individually and On          §
Behalf of All Others Similarly     §
Situated,                          §
                                   §
            Plaintiff,             §
                                   §
VS.                                §    CIVIL ACTION NO. H-01-3686
                                   §
ENRON CORPORATION, KENNETH L.      §
LAY, JEFFREY SKILLING, AND         §
ANDREW S. FASTOW,                  §
                                   §
            Defendants             §

HENRY H. STEINER, Individually     §
and on Behalf of All Others        §
Similarly Situated,                §
                                   §
            Plaintiff,             §
                                   §
VS.                                §    CIVIL ACTION NO. H-01-3717
                                   §
ENRON CORPORATION, KENNETH L.      §
LAY, JEFFREY K. SKILLING, AND      §
ANDREW S. FASTOW,                  §
                                   §
            Defendants             §

| | | |
|---|---|---|
| MICHAEL KOROLUK, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>VS.<br><br>ENRON CORPORATION, KENNETH L. LAY, JEFFREY K. SKILLING, AND ANDREW S. FASTOW,<br><br>          Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-01-3733 |

| | | |
|---|---|---|
| JAMES BRILL, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>VS.<br><br>ENRON CORPORATION, KENNETH L. LAY, JEFFREY K. SKILLING, AND ANDREW S. FASTOW,<br><br>          Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-01-3734 |

| | | |
|---|---|---|
| ELMAR A. BUSCH, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>VS.<br><br>ENRON CORPORATION, KENNETH L. LAY, JEFFREY K. SKILLING, AND ANDREW S. FASTOW,<br><br>          Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-01-3735 |

WARREN PINCHUCK, Individually   §
and On Behalf of All Others   §
Similarly Situated,   §
  §
     Plaintiff,   §
  §
VS.   §   CIVIL ACTION NO. H-01-3736
  §
ENRON CORPORATION, KENNETH L.   §
LAY, JEFFREY K. SKILLING, AND   §
ANDREW S. FASTOW,   §
  §
     Defendants   §

---

MAHIN S. MASHAYEKH,   §
Individually and On Behalf Of   §
All Others Similarly Situated,   §
  §
     Plaintiff,   §
  §
VS.   §   CIVIL ACTION NO. H-01-3737
  §
ENRON CORPORATION, KENNETH L.   §
LAY, JEFFREY K. SKILLING, AND   §
ANDREW S. FASTOW,   §
  §
     Defendants   §

---

BARBARA D. LEE, Individually   §
and On Behalf of All Others   §
Similarly Situated,   §
  §
     Plaintiff,   §
  §
VS.   §   CIVIL ACTION NO. H-01-3789
  §
ENRON CORPORATION, KENNETH L.   §
LAY, JEFFREY K. SKILLING, AND   §
ANDREW S. FASTOW, RICHARD A.   §
CAUSEY, JAMES V. DERRICK, JR.,   §
J. CLIFFORD BAXTER, MARK A.   §
FREVERT, STANLEY C. HORTON,   §
KENNETH D. RICE, RICHARD B.   §
BUY, AND ARTHUR ANDERSEN   §
L.L.P.,   §
  §
     Defendants   §

- 6 -

| | | |
|---|---|---|
| DANIELLE M. KARCICH, AND UGMA WITH ANDREW J. KARCICH, Parent and Natural Guardian on Behalf of Itself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>VS.<br><br>ENRON CORPORATION, KENNETH L. LAY, JEFFREY K. SKILLING, AND ANDREW S. FASTOW,<br><br>        Defendants | § § § § § § § § § § § § § § | CIVIL ACTION NO. H-01-3838 |
| NAOMI RAPHAEL, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>VS.<br><br>ENRON CORPORATION, KENNETH L. LAY, JEFFREY K. SKILLING, AND ANDREW S. FASTOW,<br><br>        Defendants | § § § § § § § § § § § § | CIVIL ACTION NO. H-01-3839 |
| VICTOR RONALD FRANGIONE, On Behalf of Himself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>VS.<br><br>ENRON CORPORATION, KENNETH L. LAY, JEFFREY K. SKILLING, AND ANDREW S. FASTOW,<br><br>        Defendants | § § § § § § § § § § § § | CIVIL ACTION NO. H-01-3889 |

JOHN ODAM, PEGGY ODAM, FRED A.    §
ROSEN, MARIAN ROSEN, HAL          §
MOORMAN, AND MILTON TATE,         §
Trustees for Moorman Tate         §
Moorman & Urquhart Money          §
Purchase Plan & Trust,            §
                                  §
          Plaintiff,              §
                                  §
VS.                               §   CIVIL ACTION NO. H-01-3914
                                  §
ENRON CORPORATION, ANDREW S.      §
FASTOW, KENNETH L. LAY,           §
JEFFREY J. SKILLING, RONNIE C.    §
CHAN, JOHN H. DUNCAN, WENDY L.    §
GRAMM, ROBERT K. JAEDICKE,        §
CHARLES A. LEMAISTRE, JOHN        §
MENDELSOHN, PAUL V. FERRAZ        §
PEREIRA, FRANK SAVAGE, JOHN       §
WAKEHAM, HERBERT S. WINOKUR,      §
JR., BEN GLISAN, KRISTINA         §
MORDAUNT, AND ARTHUR ANDERSEN     §
L.L.P.,                           §
                                  §
          Defendants              §

---

FRANK ANTHONY CAMMARATA, III,     §
Individually and on Behalf of     §
All Others Similarly Situated,    §
                                  §
          Plaintiff,              §
                                  §
VS.                               §   CIVIL ACTION NO. H-01-3993
                                  §
ENRON CORPORATION, KENNETH L.     §
LAY, JEFFREY K. SKILLING, AND     §
ANDREW S. FASTOW,                 §
                                  §
          Defendants              §

| | | |
|---|---|---|
| GEORGE NICOUD, On Behalf of Himself and All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-4009 |
| ENRON CORPORATION, KENNETH L. LAY, JEFFREY K. SKILLING, ANDREW S. FASTOW, AND ARTHUR ANDERSEN L.L.P., | § § § § § | |
| Defendants | § § | |

| | | |
|---|---|---|
| ARCHDIOCESE OF MILWAUKEE SUPPORTING FUND, INC., Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-4071 |
| ENRON CORPORATION, KENNETH L. LAY, JEFFREY K. SKILLING, ANDREW S. FASTOW, RICHARD A. CAUSEY, ARTHUR ANDERSEN L.L.P., JAMES V. DERRICK, JR., J. CLIFFORD BAXTER, MARK A. FREVERT, STANLEY C. HORTON, KENNETH D. RICE, RICHARD B. BUY, LOU L. PAI, ROBERT A. BELFER, NORMAN P. BLAKE, JR., RONNIE C. CHAN, JOHN H. DUNCAN, WENDY L. GRAMM, ROBERT K. JAEDICKE, CHARLES A. LEMAISTRE, JOE H. FOY, JOSEPH M. KIRKO, KEN L. HARRISON, MARK E. KOENIG, STEVEN J. KEAN, REBECCA MARK-JUSBASCHE, MICHAEL S. MCCONNELL, JEFFREY MCMAHON, CINDY K. OLSON, J. MARK METTS, AND JOSEPH W. SUTTON, | § § § § § § § § § § § § § § § § § § § § § § § | |
| Defendants | § | |

KENNETH FRANKLIN, Individually  §
and On Behalf of All Others  §
Similarly Situated,  §
 §
     Plaintiff,  §
 §
VS.  §   CIVIL ACTION NO. H-01-4106
 §
ENRON CORPORATION, KENNETH L.  §
LAY, JEFFREY K. SKILLING, AND  §
ANDREW S. FASTOW,  §
 §
     Defendants  §

---

SUSAN COPLEY, On Behalf of  §
Herself and All Others  §
Similarly Situated,  §
 §
     Plaintiff,  §
 §
VS.  §   CIVIL ACTION NO. H-01-4168
 §
ENRON CORPORATION, KENNETH L.  §
LAY, JEFFREY K. SKILLING, AND  §
ANDREW S. FASTOW,  §
 §
     Defendants  §

---

JAMES J. DALY, As Trustee of  §
the James J. Daly IRA Rollover  §
and on Behalf of All Others  §
Similarly Situated,  §
 §
     Plaintiff,  §
 §
VS.  §   CIVIL ACTION NO. H-01-4189
 §
ENRON CORPORATION, KENNETH L.  §
LAY, JEFFREY K. SKILLING, AND  §
ANDREW S. FASTOW,  §
 §
     Defendants  §

AMALGAMATED BANK, As Trustee §
for the Longview Collective §
Investment Fund, Longview Core §
Bond Index Fund, and Certain §
Other Trust Accounts, §
Individually and On Behalf Of §
All Others Similarly Situated, §
§
       Plaintiff, §
§
VS. §    CIVIL ACTION NO. H-01-4198
§
KENNETH L. LAY, JEFFREY K. §
SKILLING, ANDREW S. FASTOW, §
RICHARD A. CAUSEY, JAMES V. §
DERRICK, JR., J. CLIFFORD §
BAXTER, MARK A. FREVERT, §
STANLEY C. HORTON, KENNETH D. §
RICE, RICHARD B. BUY, LOU L. §
PAI, ROBERT A. BELFER, NORMAN §
P. BLAKE, JR., RONNIE C. CHAN, §
JOHN H. DUNCAN, WENDY L. GRAMM,§
ROBERT K. JAEDICKE, CHARLES A. §
LEMAISTRE, JOE H. FOY, JOSEPH §
M. HIRKO, KEN L. HARRISON, §
MARK E. KOENIG, STEVEN J. KEAN,§
REBECCA P. MARK-JUSBASCHE, §
MICHAEL S. MCCONNELL, JEFFREY §
MCMAHON, CINDY K. OLSON, J. §
MARK METTS, JOSEPH W. SUTTON, §
AND ARTHUR ANDERSEN L.L.P., §
§
       Defendants §

SIDNEY KESSOUS, On Behalf of §
Himself and All Others §
Similarly Situated, §
§
       Plaintiff §
VS. §    CIVIL ACTION NO. 01-4229
§
KENNETH L. LAY, JEFFREY K. §
SKILLING, ANDREW S. FASTOW, J. §
CLIFFORD BAXTER, RICHARD B. §
BUY, RICHARD A. CAUSEY, JAMES §
V. DERRICK, JR., MARK A. §
FREVERT, STANLEY C. HORTON, §
KENNETH D. RICE, AND ARTHUR §
ANDERSEN L.L.P., §
§
       Defendants §

| | | |
|---|---|---|
| WILLIAM COY AND CANDY MOUNTER, Individually and on Behalf of All Similarly Situated Stockholders of Enron Corporation, | § § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 01-4248 |
| ARTHUR ANDERSEN LLP, DAVID DUNCAN, D. STEPHEN GODDARD, JR., JOHN NIEMANN, WILLIAM SWANSON, DEAN SWICK, AND TOM ELSENBROOK, | § § § § § § | |
| Defendants. | § § | |

| | | |
|---|---|---|
| MARK T. SPATHES, On Behalf of Himself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-4308 |
| ENRON CORPORATION, KENNETH L. LAY, JEFFREY K. SKILLING, ANDREW S. FASTOW, AND ARTHUR ANDERSEN L.L.P., | § § § § | |
| Defendants | § § | |

| | | |
|---|---|---|
| PULSIFER & ASSOCIATES, | § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-4356 |
| KENNETH L. LAY, ANDREW S. FASTOW, JEFFREY K. SKILLING, RICHARD A. CAUSEY, ARTHUR ANDERSEN L.L.P., GOLDMAN SACHS & COMPANY, BANC OF AMERICA SECURITIES LLC, AND SALOMON SMITH BARNEY, INC., | § § § § § § § | |
| Defendants | § § | |

JAMES MORTON ELLIOTT, IRA, On §
Behalf Of Itself and All Others §
Similarly Situated, §
§
        Plaintiff, §
§
VS. §    CIVIL ACTION NO. 01-4370
§
KENNETH L. LAY, JEFFREY K. §
SKILLING, ANDREW S. FASTOW, §
RICHARD A. CAUSEY, JAMES V. §
DERRICK, JR., J. CLIFFORD §
BAXTER, MARK A. FREVERT, §
STANLEY C. HORTON, KENNETH D. §
RICE, RICHARD B. BUY, AND §
ARTHUR ANDERSEN L.L.P., §
§
        Defendants §

---

BEATRICE BARKIN MARTIAL TRUST §
AND ALLEN BARKIN, Trustee, §
§
        Plaintiffs, §
§
VS. §    CIVIL ACTION NO. 01-4394
§
ENRON CORPORATION, KENNETH LAY, §
JEFFREY K. SKILLING, RICHARD A. §
CAUSEY, KENNETH D. RICE, AND §
ANDREW FASTOW, §
§
        Defendants §

---

DR. ROBERT PEARLSTEIN, On §
Behalf of Himself and All §
Others Similarly Situated, §
§
        Plaintiff, §
§
VS. §    CIVIL ACTION NO. H-01-4396
§
KENNETH L. LAY, JEFFREY K. §
SKILLING, ANDREW S. FASTOW, §
AND ARTHUR ANDERSEN L.L.P., §
§
        Defendants §

---

FATHOLLAH HAMEDANI,                          §
Individually and on Behalf of                §
All Others Similarly Situated,               §
                                             §
          Plaintiff,                         §
                                             §
VS.                                          §        CIVIL ACTION NO. H-01-4431
                                             §
KENNETH L. LAY, JEFFREY K.                   §
SKILLING, AND ANDREW S. FASTOW,              §
                                             §
          Defendants                         §

---

JEROME F. FAQUIN, On Behalf of               §
Himself and All Others                       §
Similarly Situated,                          §
                                             §
          Plaintiff,                         §
                                             §
VS.                                          §        CIVIL ACTION NO. H-01-4475
                                             §
ENRON CORPORATION, KENNETH L.                §
LAY, JEFFREY K. SKILLING, AND                §
ANDREW S. FASTOW,                            §
                                             §
          Defendants                         §

---

STARO ASSET MANAGEMENT L.L.C.,               §
                                             §
          Plaintiff                          §
                                             §
VS.                                          §        CIVIL ACTION NO. H-01-4480
                                             §
ARTHUR ANDERSEN L.L.P.,                      §
KENNETH L. LAY, JEFFREY K.                   §
SKILLING, AND ANDREW S. FASTOW,              §
                                             §
          Defendants                         §

- 14 -

KEVIN KUESER, General Partner §
for Kevmar Holdings Limited §
Partnership, Individually and §
All Others Similarly Situated, §
                              §
        Plaintiff,            §
                              §
VS.                           §      CIVIL ACTION NO. 01-4488
                              §
KENNETH L. LAY, ANDREW S.     §
FASTOW, JEFFREY K. SKILLING,  §
RICHARD A. CAUSEY, AND ARTHUR §
ANDERSEN L.L.P.,              §
                              §
        Defendants            §

---

ARIEL HOLDINGS L.L.C.,        §
Individually and on Behalf of §
Itself and All Others Similarly§
Situated,                     §
                              §
        Plaintiff,            §
                              §
VS.                           §      CIVIL ACTION NO. H-01-4493
                              §
KENNETH L. LAY, JEFFREY K.    §
SKILLING, ANDREW S. FASTOW,   §
RICHARD A. CAUSEY, JAMES V.   §
DERRICK, JR., J. CLIFFORD     §
BAXTER, MARK A. FREVERT,      §
STANLEY C. HORTON, KENNETH D. §
RICE, RICHARD B. BUY, AND     §
ARTHUR ANDERSEN L.L.P.,       §
                              §
        Defendants            §

---

IZIDOR KLEIN,                 §
                              §
        Plaintiff             §
                              §
VS.                           §      CIVIL ACTION NO. H-01-4537
                              §
KENNETH L. LAY, ANDREW S.     §
FASTOW, AND ARTHUR ANDERSEN   §
L.L.P.,                       §
                              §
        Defendants            §

---

```
HOWARD BRUCE KLEIN,                 §
                                    §
          Plaintiff,                §
                                    §
VS.                                 §      CIVIL ACTION NO. H-02-0117
                                    §
ANDREW S. FASTOW, KENNETH L.        §
LAY, JEFFREY K, SKILLING, AND       §
ARTHUR ANDERSEN L.L.P.,             §
                                    §
          Defendants                §
```

---

```
FRED A. ROSEN AND MARION ROSEN; §
HOUSTON FEDERATION OF TEACHERS, §
on behalf of its members;       §
ANNIE M. BANKS; LARRY D.        §
BARNETT; ROBERT CHAZEN;         §
CLIFFORD D. GOOKIN, Trustee for §
the Clifford D. Gookin          §
Revocable Living Trust; CARL    §
HERRIN, TODD L. JOHNSON,        §
Administrator for RJS &         §
Affiliated Companies Pension    §
Plan; DAVID H. LOWE; ROBIN      §
SAEX; JOHN SIEMER AND ELIZABETH §
SIEMER, Trustees FBO The        §
Siemer Family Trust; ANTHONY    §
G. TOBIN; AND JOHN E. WILLIAMS, §
                                §
          Plaintiffs            §
                                §
VS.                             §       CIVIL ACTION NO. H-02-0199
                                §
ANDREW S. FASTOW; KENNETH L.    §
LAY; JEFFREY J. SKILLING;       §
ROBERT A. BELFER; NORMAN P.     §
BLAKE, JR.; RICHARD B. BUY;     §
RICHARD CAUSEY; RONNIE C. CHAN; §
JOHN H. DUNCAN; JOE H. FOY;     §
WENDY L. GRAMM; KEN L.          §
HARRISON; ROBERT K. JAEDICKE;   §
MICHAEL J. KOPPER; CHARLES A.   §
LEMAISTRE; REBECCA MARK-        §
JUSBASCHE; JOHN MENDELSOHN;     §
JEROME J. MEYER; LOU PAI; PAUL  §
V. FERRAZ PEREIRA; FRANK        §
SAVAGE; JOHN A. URQUHART; JOHN  §
WAKEHAM; CHARLES E. WALKER;     §
BRUCE WILLISON; HERBERT S.      §
WINOKUR, JR.; BEN GLISAN;       §
KRISTINA MORDAUNT; D. STEPHEN   §
GODDARD, JR., DAVID B. DUNCAN;  §
```

DEBRA A. CASH; ROGER WILLARD; §
THOMAS H. BAUER; AND ARTHUR §
ANDERSEN, L.L.P., §
§
    Defendants §

---

HAROLD AND FRANCE AHLICH; §
IRVING BABSON; JOHN AND IDA §
BANKS; HOWARD AND NANCY BELL; §
BILL AND RHONDA BRAGDON; SIDNEY§
BROWN; BRUCE AND JANET §
CAMPBELL; PATRICK CARNEY; GREGG§
CAR; VINCENT AND MARIANNE §
CARRELLA; LOUIS CARUCCI; §
PATRICK CUNNINGHAM; JAMES AND §
KAREN DAVIDSON; JOHN DAVIS; §
PETER DORFLINGER; JANE GAUCHER,§
DONALD GAUCHER; RONALD GISH; §
JOHANNE GRAHAM; JOHN GUTMAN; §
RICHARD HAYHOE; DAVID HUCKIN; §
EDWARD JAPHE; MICHAEL KREHEL; §
PAUL LUTZ; JOHN AND JEAN §
NEIGHBORS; WILLIAM POWELL; §
SAMUEL AND LILLIAN REINER; §
CHRISTOPHER AND HENRIETTA ROWE;§
RALPH AND JEAN SHAPIRO; §
CONSTANCE THEODORE; GEORGE AND §
NICKYE VENTERS; PETER VERUKI; §
JANE BULLOCK; JOHN BARNHILL; §
DON REILAND; SCOTT BORCHART; §
MICHAEL MIES; VIRGINIA ACOSTA; §
JIM HEVELY; MIKE BAUBY; ROBERT §
MORAN; JACK & MARILYN TURNER; §
AND HAL MOORMAN & MILTON TATE, §
CO-TRUSTEES FOR MOORMAN, TATE §
MOORMAN & URQUHART MONEY §
PURCHASE PLAN AND TRUST, §
§
    Plaintiffs §
§
VS. § CIVIL ACTION NO. H-02-0347
§
ARTHUR ANDERSEN, L.L.P.; D. §
STEPHEN GODDARD, JR.; DAVID §
DUNCAN; DEBRA CASH; ROGER §
WILLARD, THOMAS BAUER; ANDREW §
FALSTOW; KENNETH L. LAY; §
JEFFREY K. SKILLING; ROBERT §
BELFER; NORMAN P. BLAKE, JR.; §
RICHARD B. BUY; RICHARD CAUSEY;§
RONNIE CHAN; JOHN DUNCAN; JOE §
FOY; WENDY GRAMM; KEN HARRISON;§

ROBERT K. JAEDICKE; MICHAEL J. §
KOPPER; CHARLES A. LEMAISTRE; §
REBECCA MARK-JUSBASCHE; JOHN §
MENDELSOHN; JEROME J. MEYER; §
LOU PAI; PAUL V. FERRAR §
PEREIRA; FRANK SAVAGE; JOHN §
A. URQUHART; JOHN WAKEHAM; §
CHARLES E. WALKER; BRUCE §
WILLISON; HERBERT S. WINOKUR, §
JR.; BEN GLISAN; KRISTINA §
MORDAUNT; MICHAEL C. ODOM; GARY§
B. GOOLSBY; AND MICHAEL M. §
LOWTHER, §
§
§
            Defendants       §

## MEMORANDUM AND ORDER

Pending before the Court in the above referenced action _inter alia_ are objections to Judge Rosenthal's December 12, 2001 order of consolidation filed (1) by Plaintiffs John and Peggy Odam _et al._ ("the Odam Plaintiffs") (instrument #53, supplemented by #99) and (2) by Plaintiff Henry H. Steiner ("Steiner")(#75).

Also pending and related to Steiner's objection in raising issues of representation and subdivision of the class are the following motions:

(1) Motion of Local 710 Pension Fund ("Local 710") for Appointment of Lead Plaintiff and Counsel (instrument #54);

(2) Motion of the Florida State Board of Administration ("FSBA") for Appointment as Lead Plaintiff and Approval of Its Selection of Co-Lead and Liaison Counsel (#56), Plaintiff the New York City Pension Funds'

("NYC Funds'") Motion for Appointment of Lead Plaintiff and Approval of Lead Counsel (#60), and FSBA and NYC Funds' Amended Motion for Appointment of Co-Lead Plaintiffs and Co-Lead Counsel (#127);

(3) Motion of the Archdiocese of Milwaukee Supporting Fund, Inc. ("the AMS Fund") for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Counsel (#58) and Opposed Motion (#77);

(4) Plaintiffs JMG Capital Partners, L.P., JMG Triton Offshore Fund, Ltd., TQA Master Fund, Ltd., and TQA Master Plus Fund, Ltd.'s (collectively, "JMG/TQA's") Motion to Appoint JMG/TQA as Lead Plaintiffs for the Debt Securities Class and to Approve its Selection of Counsel as Lead Counsel for the Debt Securities Class (#63) and Notice of Withdrawal of #63 (#177);

(5) Plaintiff Pulsifer & Associates' motion to be appointed Lead Plaintiff to represent a class of purchasers of Enron Corporation 7% Exchangeable Notes due July 31, 2002 and for Approval of Its Selection of Lead Counsel (#65);

(6) Plaintiff Amalgamated Bank, the Regents of the University of California, Deutsche Asset Management, HBK Investments, and Central States Pension Funds' (collectively, "the Enron Institutional Investor Group's") Motion to Appoint Lead Plaintiff, Co-Lead Plaintiff and for Approval of Lead Counsel (#70)[1] and Amended Opposed Motion (#95), and Notice of Withdrawal of [All] Lead Plaintiff Applicants Except the Regents of the University of California (#176);

(8) Plaintiff Victor Ronald Frangione and proposed Lead Plaintiffs Anthony P. Davidson and Seymour Nebel ("The Davidson Group's") Motion for Appointment of The Davidson Group as Lead Plaintiff and To Approve Selection of Lead Counsel and Co-Counsel (#70);

(9) Harry H. Steiner, Daniel Kaminer, Christine Benoit, and Michael and Jennifer Cerone's ("the Proposed Preferred Purchaser Lead Plaintiffs'") Motion for Appointment as Lead Plaintiffs and Approval of Their Selection of Lead Counsel and Local Counsel

---

[1] Supported by the California Public Employees Retirement Systems (#74).

(#72) and Harold Karnes' Motion to Join #70 (#76);

(10) Motion of Staro Asset Management, L.L.C. ("Staro") for Appointment as Lead Plaintiff for the Bondholder Class and for Approval of their Selection of Lead Counsel (#78);

(11) State Retirement Systems Group's Motion for Appointment of Lead Plaintiff and for Approval of Its Selection of Counsel (#80) and Supplement (#89);

(12) Motion of Private Asset Management LLP to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel (#82) and Notice of Withdrawal (#219);

(13) William and Roxann Davis and E. Bruce Chaney's ("Davis and Chaney's")[2] Motion for Appointment as Lead Plaintiff and to Approve their Selection of Lead Counsel (#273); and

(14) NYC Funds and FSBA's motion to strike #278 (#281).

---

[2] Davis and Chaney are Plaintiffs in a consolidated related class action pending in the Eastern District of Texas, Texarkana Division, John Anson et al. v. Kenneth L. Lay, et al., Civil Action No. 501 CV 318. Although the motion filed in this case was untimely because it was not filed within sixty days of national notice, i.e., by December 21, 2001, they point out that they filed a timely motion, copy attached, in the Eastern District case on December 21, 2001.

## I.   HOUSEKEEPING

As a "housekeeping" matter for the Clerk's records, because the motion of preferred stockholder Howard Karnes (#76), who is represented by the same firms as the Proposed Lead Preferred Purchasers, to join the motion of the Proposed Lead Preferred Purchasers is not opposed, it is granted.

JMG/TQA's motion for appointment (#63) is MOOT in light of its notice of withdrawal (#177).  So, too, is Private Asset Management's motion (#82) in view of its notice of withdrawal (#219).

Amalgamated Bank, California, Deutsche Asset Management, HBK Investments, and Central States Pension Funds' motion (#75) and amended opposed motion (#95) are MOOT as to these Plaintiffs in light of their notice of withdrawal (#176), but REMAIN PENDING with respect to the Regents of the University of California.  FSBA and NYC Funds' separate motions for appointment as Lead Plaintiff and approval of lead counsel (#56 and 60) are superseded and thus MOOT in light of their joint motion for appointment as co-Lead Plaintiffs and approval of co-Lead Counsel (#127).  Nevertheless the Court has reviewed and taken into account the briefing and arguments made in these moot motions.


## II. OBJECTIONS TO CONSOLIDATION

### A.   Odam Plaintiffs' Objections

Because the Odam Plaintiffs filed a voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(i) (instrument #7 in Member Case No. H-01-3914) as to Defendants Andrew S. Fastow, Kenneth L. Lay, Jeffrey [K.] Skilling, Ronnie C. Chan, John H. Duncan, Wendy L. Gramm, Robert K. Jaedicke, Charles A. Lemaistre, John Mendelsohn, Paul V. Ferraz Pereira, Frank Savage, John Wakeham, Herbert S. Winokur, Jr., Ben Glisan, and Kristina Mordaunt, the Odam Plaintiffs object to consolidation on the grounds that (1) their suit is against only Arthur Andersen L.L.P.; (2) they have brought their claims individually and do not seek to assert them as a class action, and thus the consolidation would be burdensome; and (3) the reasons urged by the Enron directors for the consolidation do not apply to them because the Odam Plaintiffs are not suing the directors.  The Odam Plaintiffs argue that their suit involves different issues and parties.  They further complain that participation in discovery and proceedings not relevant to their action will be costly.  The Odam Plaintiffs insist that their interests will be prejudiced by the delay caused by the time involved in selecting Lead Plaintiff(s) and Lead Counsel and by an extended schedule set to benefit members of purported classes, and that this prejudice outweighs any conservation of judicial resources that might be gained by consolidation.

Defendant Arthur Andersen L.L.P. has filed a response in opposition to the objections (#106).  Emphasizing that these cases, including the Odam suit, were consolidated under Federal Rule of Civil Procedure 41(a) because they arise from a common

core of operative facts, are filed against common defendants, and share many identical claims so that much of the discovery will be the same, Arthur Andersen L.L.P. agrees with Judge Rosenthal that the consolidation will "avoid unwarranted duplication of discovery and motion practice" and protect "the orderly progress of these lawsuits."

Citing authority for the proposition that securities fraud actions based on the same alleged misrepresentations by a company and its directors, officers, and auditors are standardly consolidated, Arthur Andersen L.L.P. observes that the Odam complaint focuses on the transactions and entities relating to Enron's restatement of its financial statements in the fall of 2001. The Odam Plaintiffs allege that Arthur Andersen violated generally accepted accounting principles ("GAAP") with respect to its audit of financial statements that overstated Enron's net income and inadequately disclosed its debt. They also assert that various partnerships' financial statements should have been consolidated with Enron's while others were not properly reported or were hidden. In sum, the Odam Plaintiffs contend that Arthur Andersen's actions violated the federal and state securities laws. While noting that the Odams' allegations may be more simplified than those in the other consolidated member actions, Arthur Andersen demonstrates that all the suits focus on its accounting for the same transactions and allegedly inaccurate representations of Enron's financial condition and share common legal issues (fraud, misrepresentation, negligence, compliance with GAAP,

scienter, reliance, injury, and proximate cause), Moreover, it insists that because the Odams' remaining allegations are so intertwined with their dismissed claims against Enron, its officers, and its directors, a thorough factual inquiry will require discovery from all. Therefore Arthur Andersen urges the Court that the commonality of factual and legal matters here dictates the consolidation of all the suits to prevent waste of both the Court's and the parties' resources.

After carefully reviewing the Odam Plaintiffs' complaint, the Court agrees with Arthur Andersen L.L.P. that the common core of facts and legal issues here and the interests of proceeding in such a complex litigation in an orderly manner support the consolidation of the Odam Plaintiffs' case with the others. The Court therefore OVERRULES their objections.

### B. Steiner's Objections

The Steiner complaint alleges violations of section 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 against Enron, certain of its officers and directors, and Arthur Andersen L.L.P. The suit further alleges violations of section 20(a) of the 1934 Act, 15 U.S.C. § 78t against individual Defendants Kenneth Lay, Jeffrey Skilling, and Andrew Fastow. Finally the complaint charges negligent misrepresentation by all Defendants.

Steiner's suit is a proposed class action on behalf of purchasers of preferred stock, unlike the other securities fraud

actions brought by most Plaintiffs who invested in common stock. Moreover, Steiner's suit seeks certification of two sub-classes: (1) a federal claim class including all investors who purchased preferred stock between November 28, 1998 and November 28, 2001; and (2) a negligent misrepresentation claim class including purchasers of preferred stock between January 21, 1997 and November 27, 1998.

Although Steiner favors coordination of discovery and pretrial matters for purposes of economy of time and money, as well as judicial economy, Steiner argues that consolidation of the preferred shareholders' suit with the other securities fraud actions would prejudice the preferred shareholders' rights, as is reflected in his pending motion to appoint separate Lead Plaintiffs and lead counsel for the two distinct groups of shareholders. Steiner maintains that there is a conflict between the two with respect to the impact of the alleged fraud,[3] proof,[4]

---

[3] With a supporting declaration, Steiner explains that the value of preferred stock is derived from stockholder equity and is based on the credit rating of the company, so that when it is sold preferred stock acts more like a corporate bond, trading on interest rate fluctuations, than does common stock. In contrast, the value of common stock is based on a combination of present and expected future earnings growth. Preferred stock investors in effect pay a premium for a guaranteed return and greater certainty that there will be sufficient assets to pay off their shares on liquidation of the company, relying on the seniority of the claim of preferred stock owners to assure the value of their investment. Common stock investors knowingly take a much greater risk but have potentially a greater gain, than preferred stock purchasers.

In much more detail than the Court can summarize here, Steiner argues that alleged undisclosed material information relating to investment in and hedging deals with Andrew Fastow's limited partnerships and forward commitments to deliver Enron stock to unwind a hedging transaction with Fastow's limited partnership, clandestinely reducing shareholder equity and the liquidation value

- 26 -

calculation of damages,[5] and potential settlement. Moreover, the preferred shareholders are able to assert a Texas state law claim for negligent misrepresentation relating to prospectus liability, with a different class period beginning January 21, 1997 or earlier, but the common shareholders may not. Moreover, in light of Enron's voluntary Chapter 11 bankruptcy proceeding, the Bankruptcy Code allows priority of payment for claims of preferred shareholders, including securities fraud claims. 11 U.S.C. § 510(b) and § 1129(b)(2)(B). Juror confusion is another concern raised by the consolidation because while the facts of the alleged fraud are the same, the impact upon the two kinds of stockholders differs greatly. Steiner contends that this differing treatment creates a conflict between the common stock shareholders and the preferred stock shareholders and would preclude the common shareholders from representing the preferred shareholders' interests in a consolidated action. Another difference between common stock and preferred stock relates to choice of a Lead Plaintiff: because the Tax Code discourages the purchase of preferred securities by tax-free institutional investors but not

---

liquidation value of the company, did not greatly affect income and anticipated earnings, the key concern of common stock shareholders, but did severely diminish the value of preferred stock.

[4] As an example, Steiner notes that the preferred stock investors will focus on the erosion of Enron's asset base, not the central factor for the common stock shareholders. Moreover, the two groups will have relied on different information in making their investments.

[5] The value of the common stock initially dropped substantially more than that of the preferred stock.

by individuals, it is less likely that institutional advisors would buy them and thus an individual should represent the preferred purchaser class. Steiner additionally emphasizes that the two groups have substantially different factual claims against non-bankrupt Defendants. For example, their claims against Arthur Andersen diverge, because investors in Enron common stock, wholly an equity instrument, and investors in the preferred stock, which partakes of debt characteristics, relied on different financial disclosures in evaluating their investments. In sum, because the difference in the impact of Defendants' alleged fraud upon the distinct groups of investors in the calculation of damages and the recovery potential under the federal bankruptcy laws, Steiner insists that a Federal Rule of Civil Procedure 42(a) consolidation is not appropriate. Moreover, urges Steiner, Section 21D(a)(3)(B)(ii) of the Private Securities Litigation Reform Act requires that claims be "substantially the same" before consolidation "for all purposes" is appropriate. He advocates coordination rather than consolidation of the preferred and common stock actions.

The Court finds that consolidation, at least pretrial, serves to promote an orderly progression of this very complex litigation, especially since discovery necessarily involves overlapping Defendants and a common core of facts and legal issues that all relate to a purported scheme and course of conduct of deception to artificially inflate the price of Enron securities through a number of materially false and misleading statements and

omissions about the financial condition of Enron, operating to the detriment of purchasers of all publicly traded Enron securities and to the unjust enrichment of insider traders.   Steiner's objections can be effectively handled by dividing the class when class certification becomes an issue.   Moreover, consolidation for pretrial matters does not necessarily mean that the claims will all be tried together, especially where the nature of the evidence and damages issues differ substantially.   Therefore the Court OVERRULES Steiner's objections to the consolidation.

Steiner's objection does raise a threshold question, reiterated in the Preferred Purchasers' motion for appointment of Lead Plaintiff and approval of Lead Counsel:   should the consolidated class be subdivided at this stage of the litigation or, alternatively, should unrelated Lead Plaintiff(s) represent different interests while the class remains whole?   The Court first addresses this issue and subsequently selection of Lead Plaintiff and approval of Lead Counsel.

## III. APPOINTMENT OF LEAD PLAINTIFF(S) AND LEAD COUNSEL

### A. Applicable Law

Under 15 U.S.C. § 78u-4(a)(3)(B)(i) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which amended the Securities Exchange Act of 1934 by adding Section 21D, 15 U.S.C. § 78u-4, in class actions brought under federal securities laws, "the court shall consider any motion made by a purported class member" in determining the adequacy of a proposed lead

plaintiff to oversee the class action. Furthermore, "the presumption [of the adequacy of the plaintiff with the largest financial interest in the outcome of the litigation] described in [15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)] may be rebutted only upon proof by a member of the purported plaintiff class that the proposed individual or entity will not fairly and adequately protect the interests of the class or that he/she/or it is subject to unique defenses that render [him/her/or it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Based on the express language of the statute, a number of courts have concluded that defendants lack standing to challenge the adequacy or typicality of the proposed lead plaintiffs at this early stage of the litigation, although they will have the right to object to proposed class representatives at the class certification hearing. See, e.g., Takeda v. Turbodyne Technologies, Inc., 67 F. Supp.2d 1129, 1138 (C.D. Cal. 1999); Gluck v. CellStar Corp., 976 F. Supp. 542, 547, 550 (N.D. Tex. 1997); Greebel v. FTP Software, Inc., 939 F. Supp. 57, 60-61 (D. Mass. 1996); Fischler v. AmSouth Bancorporation, 1997 WL 118429, *2 (M.D. Fla. 1997); Zuckerman v. Foxmeyer Health Corp., 1997 WL 314422, *2 (N.D. Tex. 1997); In re Nice Systems Securities Litig., 188 F.R.D. 206, 218 n.11 (D.N.J. 1999). No Defendant has voiced any objections to Lead Plaintiff applicants here. Nevertheless this Court may sua sponte evaluate the adequacy of any proposed person or group of persons as Lead Plaintiff(s). Takeda, 67 F.

Supp. at 1138; <u>Sakhrani</u>, 78 F. Supp.2d at 854 (court has independent responsibility to consider appointment of lead counsel). It is clear that "[t]he PSLRA calls for greater supervision by the Court in the selection of which plaintiffs will control the litigation." <u>In re Oxford Health Plans, Inc. Securities Litigation</u>, 182 F.R.D. 42, 45 (S.D.N.Y. 1998).

After filing a complaint, under § 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(A)(i), a plaintiff seeking to represent the class

> Shall cause to be published in a widely-circulated national business-oriented publication or wire service, a notice advising members of the purported class--
> (I) of the pendency of the action, the claims asserted therein, and the purported class period;
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the Court to serve as lead plaintiff of the purported class.

Thus being first to file a complaint is no longer a guarantee of the lead plaintiff position.

Section 21(D)(a)(3)(B)(i), 15 U.S.C. § 78u-4(a)(3)(B)(i) provides,

> Not later than 90 days after the date on which a notice is published . . . the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the class determines to be most capable of adequately representing the interests of the class member . . . .

If more than one suit is filed with substantially the same claims, only the plaintiff in the first-filed action need publish the notice. 15 U.S.C. § 78u-4(a)(3)(A)(ii).

The statute is unequivocal and imposes precise time requirements; therefore all motions for appointment of Lead Plaintiff must be filed within sixty days of the published notice. In re Texlon Corp. Sec. Litig., 67 F. Supp.2d 803, 818 (N.D. Ohio 1999). In providing that the court should examine motions for appointment of Lead Plaintiff and Lead Counsel within ninety days of publication of the notice and in not requiring filing of new complaints to allege a different class period and new notice by other plaintiffs, the statute evidences Congress' intent to expedite the process. Id. That intent would also be thwarted "if persons seeking appointment as lead plaintiff were allowed to manipulate the size of their financial loss by enlarging the class period or adding additional persons to a 'group' in supplemental filings." Id. Indeed "supplementation is not contemplated by the PSLRA"; "supplementation after the expiration of the sixty (60) day period would not only be inconsistent with the language and purposes of the PSLRA, but would effectively nullify the time limits expressly provided therein." Id.

The Court notes that no one in the instant consolidated action has disputed that after the initial complaint was filed in the Newby case on October 22, 2001 and national notice was given by the law firm of Shapiro Haber & Urmy in a press release published over PR Newswire, a national business-oriented wire

service, also on or about October 22, 2001, the deadline for
applications for appointment of Lead Plaintiff and approval of
Lead Counsel became December 21, 2001.

All initial motions for appointment of Lead Plaintiff
and approval of Lead Counsel were timely filed. Nevertheless,
FSBA and the NYC Funds filed their amended motion, joining
together in a group application to be appointed as co-Lead
Plaintiffs, on January 14, 2002, after the deadline. Although the
Enron Institutional Investor Group filed its notice of withdrawal
of Lead Plaintiff applications for all members of its group other
than the Regents of the University of California on January 23,
2002, because the requisite information about the Regents was
included in the earlier filing and because the notice did not
"supplement" the group, but instead served to effectuate the
intent of the PSLRA to advance one institution with the largest
financial interest in the relief sought and to eliminate any group
created by lawyers for amalgamation of funds to qualify as the
most financially interested applicants, the Court finds that the
Enron Institutional Investor Group's notice of withdraw did not
violate the spirit or purpose of the PSLRA and its express time
deadlines.

After consolidation of parallel actions, under the PSLRA
a district court

> shall appoint as lead plaintiff the member or
> members of the purported plaintiff class that
> the court determines to be most capable of
> adequately representing the interests of class
> members (hereafter in this paragraph referred

> to as the "most adequate plaintiff") in accordance with this subparagraph.

Furthermore, Section 21D(a)(3)(B) of the amended Securities Exchange Act of 1934 requires the Court to adopt a rebuttable presumption that

> the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The PSLRA does not delineate a procedure for determining the "largest financial interest" among the proposed class members. A four-factor inquiry has been developed by the district court in Lax v. First Merchants Acceptance Corp., 1997 WL 461036, *5 (N.D. Ill. Aug. 11, 1997), and recognized in In re Olsten Corp. Securities Litigation, 3 F. Supp.2d 286, 295 (E.D.N.Y. 1998). and in In re Nice Securities Litigation, 188 F.R.D. 206, 217 (D.N.J. 1999). The four factors relevant to the calculation are (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. Id.

As noted earlier, the statutory presumption of appointment as Lead Plaintiff, as noted, may only be rebutted by

another plaintiff through evidence that the Lead Plaintiff (1) "will not fairly and adequately protect the interests of the class" or (2) is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Under Section 21D(a)(3)(B) of the Exchange Act, therefore, the Lead Plaintiff(s) must possess not only the largest financial interest in the outcome of the litigation, but must also meet the requirements of Federal Rule of Civil Procedure 23. Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Typicality and adequacy are directly relevant to the choice of the Lead Plaintiff as well as of the class representative in securities fraud class actions. See, e.g., In re Oxford Health Plans, Inc. Securities Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998); Gluck, 976 F. Supp. at 546; Fischler, 1997 WL 118429 *2. Although the inquiry at this stage of the litigation in selecting the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class and has the capacity to provide adequate representation for those class members.

Switzenbaum v. Orbital Sciences Corp. ("Orbital I"), No. 99-197,
slip op. at *10 (E.D. Va. May 21, 1999), citing Chill v. Green
Tree, 181 F.R.D. 398, 407 n.8 (D. Minn. 1998), and Lax v. First
Merchants Acceptance Corp., 1997 WL 461036, *6 (N.D. Ill. Aug. 11,
1997). Thus the court must examine "[1] the zeal and competence of
the representative[s'] counsel and . . . [2] the willingness and
ability of the representative[s] to take an active role in and
control the litigation and to protect the interests of the
absentees[.]" Berger v. Compaq Computer Corporation, 257 F.3d 475,
479, 482 (5th Cir. 2001).

Typicality is achieved where the named plaintiffs' claims
arise "from the same event or course of conduct that gives rise to
claims of other class members and the claims are based on the same
legal theory." Longden v. Suderman, 123 F.R.D. 547, 556 (N.D. Tex.
1988). The adequacy review "'serves to uncover conflicts of
interest between the named plaintiffs and the class they seek to
represent.'" Id. at 479-80, quoting Amchem Prods. v. Windsor, 521
U.S. 591, 625 (1997). Due process mandates that the named
plaintiff represent the interests of absent class members at all
times. Id. at 480 n.8, citing Phillips Petroleum Co. v. Shutts,
472 U.S. 797, 812 (1985). "Differences between named plaintiffs
and class members render the named plaintiffs inadequate
representatives only where those differences create  conflicts
between the named plaintiffs' and the class members' interests."
Id. at 480. The plaintiff seeking appointment as lead counsel or
certification as class representative bears the burden of

affirmatively proving it satisfies the requirements of Rule 23. Id. at 481.  The question whether a named plaintiff will fairly and adequately represent the interests of the class is a fact issue for the district court to determine.  Johnson v. Georgia Highway Express, 417 F.2d 67, 72 (5th Cir. 1973).

Under the PSLRA, the Lead Plaintiff, subject to court approval, is to select and retain Lead Counsel.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the [plaintiff] class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The adequacy of the putative class representative(s) and of plaintiffs' counsel should not be presumed, however, even in the absence of proof to the contrary; plaintiff bears the burden of demonstrating his and his counsel's adequacy.  Berger, 257 F.3d at 480-81.

In passing the PSLRA in December 1995, Congress was reacting to significant evidence of abusive practices and manipulation by class action lawyers of their clients in private securities lawsuits.  H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. at 31 (1995), reprinted in 1995 U.S.C.A.A.N. 679, 730-31 ("Conf. Report")(Ex. A to #38).  One response by Congress was the requirement that the Court appoint as "lead plaintiff" in each securities class action the shareholder, preferably an institutional investor,[6] with the largest financial interest in the

_____

[6] Conference Report No. 104-67 at 34-35; Sen. Rep. No. 104-98 at 10-11, reprinted in 1995 U.S.C.A.A.N. 679, 689-90.  Sakhrani v. Brightpoint, 78 F. Supp.2d 845, 850 (S.D. Ind. 1999); Gluck v.

litigation in order to encourage institutional investors to come forward to manage the litigation and supervise the class action lawyers.  15 U.S.C. § 78u-4(a)(3)(B); Conf. Report No. 104-369 at 733-34.  The Conference Report, at 34, explained, "Throughout the process, it is clear that the plaintiff class has difficulty exercising any meaningful direction over the case brought on its behalf . . . . Because class counsel's fees and expenses sometimes amount to one-third or more of the recovery, class counsel frequently has a significantly greater interest in the litigation than any individual member of the class."  Thus one goal of the PSLRA is to have the plaintiff class, represented by a member with a substantial financial interest in the recovery as incentive, monitor the litigation to prevent its being "lawyer-driven."  Therefore the statute operates to "ensure that institutional plaintiffs with expertise in the securities market and real financial interest in the integrity of the market would control the litigation, not the lawyers."  In re Donnkenny, Inc. Sec. Litig., 171 F.R.D. 156, 157 (S.D.N.Y. 1997)(citing Conference Report at 730-34).

Moreover, counsel here are aware that this Court has held that to satisfy the terms and effectuate the underlying policy of the PSLRA to guarantee effective control of the litigation and supervision of lawyers by the plaintiffs, unrestricted aggregation of unrelated plaintiffs by manipulating lawyers should not be

---

CellStar Corp., 976 F. Supp. 542, 548 (N.D. Tex. 1997); In re Baan Co. Securities Litig., 186 F.R.D. 214, 218 (D.D.C. 1999)(appendix).

permitted. Instead, where a movant seeks appointment of a group of Lead Plaintiffs, that group must be restricted to a few cohesive parties and the movant must bear the burden of demonstrating that the group not only has the largest financial interest in the outcome of the litigation, but also a pre-litigation relationship based on more than the losing investments at issue in the securities fraud class action. In re Waste Management, Inc. Sec. Litig., 128 F. Supp.2d 401, 412-13 (S.D.Tex. 2000)("the strictest approach, requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment satisfies the terms of the [PSLRA] and serves the purpose behind its enactment"), cited for this proposition in Berger v. Compaq Computer Corp., 257 F.3d 475, 478 n.2 (5th Cir. 2001). For a thorough discussion of the group issue see In re Texlon Corp. Sec. Litig., 67 F. Supp.2d 803 (N.D. Ohio 1999). The SEC has indicated that generally a group of investors appointed as Lead Plaintiffs should be no larger than three to five persons. In re Baan Co. Sec. Litig., 186 F.R.D. 214, 224 (D.D.C. 1999).

Recently a few courts have addressed the issue of a fee bidding auction for selection of Lead Counsel in securities fraud cases. See, e.g., In re Oracle Securities Litigation, 131 F.R.D. 688 (N.D. Cal. 1990); Sherleigh Assoc., LLC v. Wenderhold v. Cylink Corp., 184 F.R.D. 688 (S.D. Fla. 1999); In re Lucent Tech., Inc. Sec. Litig., 194 F.R.D. 137 (D.N.J. 2000); In re Bank One Shareholders Class Actions, 96 F. Supp.2d 780 (N.D. Ill. 2000); In

re Quintus Sec. Litig., 201 F.R.D. 475 (N.D. Cal. 2001); In re
Cendant Corp. Litigation, 264 F.3d 201, 258-79 (3d Cir.
2001)(district court's order to use auction to select lead counsel
improperly supplanted lead plaintiff's statutory right initially to
select and retain lead counsel subject to court approval after
plaintiff had negotiated a presumptively reasonable retainer
agreement with counsel), petition for cert filed, 70 USLW 3445
(Jan. 2, 2002)(No. 01-997). Because some parties have submitted in
camera information regarding fees here, the Court presumes they
expect the Court to out Lead Counsel out for bid. Unless and until
such a procedure is more widely recognized and employed, this Court
prefers to follow the PSLRA's literal directive that after it
selects an appropriate Lead Plaintiff, "[t]he most adequate
plaintiff shall, subject to the approval of the court, select and
retain counsel to represent the class." 15 U.S.C. § 78u-
4(a)(3)(B)(v). Thus the Court limits its role to a determination
whether to approve the Lead Plaintiff's selection, and only if it
decides it cannot will it pursue other options.

Even when a Lead Plaintiff applicant is otherwise
qualified, that party may be statutorily disqualified as a
"Professional Plaintiff" under 15 U.S.C. § 78u-4(a)(3)(B)(vi):

> Restrictions on Professional Plaintiffs.
> Except as the court may otherwise permit,
> consistent with the purposes of this section,
> a plaintiff may be a lead plaintiff, or an
> officer, director, or fiduciary of a lead
> plaintiff, in no more than 5 securities class
> actions pursuant to the Federal Rules of Civil
> Procedure during any 3-year period.

- 40 -

This challenge has been raised as to FSBA, which has participated in nine class actions as Lead Plaintiff or co-Lead Plaintiff in the last three years.  FSBA has argued it is the precise type of investor that the PSLRA intends to be a Lead Plaintiff and that the provision should not apply to such institutional investors. It relies on the Conference Report for the PSLRA, which states:

> The Conference Report seeks to restrict professional plaintiffs from serving as lead plaintiff by limiting a person from serving in that capacity more than five times in three years.  Institutional investors seeking to serve as lead plaintiffs may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict.  As a result, the Conference Committee grants courts discretion to avoid the unintended consequences of disqualifying institutional investors from serving more than five times in three years. The conference committee does not intend for this provision to operate at cross-purposes with the "most adequate plaintiff" provision.

H.R. Conf. Rep. No. 104-369, at 35.  A number of courts have concluded from the report that the statute allows a court to permit an institutional plaintiff to exceed this restriction and appoint it Lead Plaintiff, especially where there are no other appropriate applicants.  See, e.g., Pivens v. Sykes Enterprises, Inc., 137 F. Supp.2d 1295 (M.D. Fla. 2000); Blaitch v. Employee Solutions, Inc., 1997 WL 842417 (D. Ariz. 1997); Naiditch v. Applied Micro Circuits Corp., No. 01-CV-0649-K-AJB. 2001 WL 1659115 (S.D. Cal. 2001); In re Critical Path, Inc. Securities Litigation, No. C-01-0551 WHO, 156 F. Supp.2d 1102 (N.D. Cal. 2001).

Nevertheless, it must be emphasized that the statute expressly provides that the decision whether to apply the professional plaintiff bar is a matter of the court's discretion ("Except as the court may otherwise permit . . . ."). In a thoughtful and persuasive opinion that makes several significant points, In re Texlon Corp. Sec. Litig., 67 F. Supp.2d 803, also dealing with the professional plaintiff bar with respect to FSBA,[7] Judge O'Malley emphasized that the statute itself contains no express blanket exception for institutional investors, the Conference Report is not the law, to create a blanket exception for institutional investors would turn the statute's grant of discretion into a requirement mandating that courts excuse institutional investors from the bar and would "transform the preference for institutional investors into a monopolization of the PSLRA actions by institutional investors." Texlon, 67 F. Supp.2d at 820-21. The court thought that a party's status as an

---

[7] In fact, FSBA has been the source of the professional plaintiff issue in several published cases, a fact reflecting its omnipresence in the field. Two have applied the bar: Texlon, 67 F. Supp.2d 803 (barring FSBA from serving as lead plaintiff because it had served in at least five other class actions) and Aronson v. McKesson HBPC, Inc., 79 F.Supp.2d 1146 (refusing to permit FSBA to serve as lead Plaintiff). In Ezra Charitable Trust v. Rent-Way, Inc., 136 F. Supp.2d 435, 441 & n.2 (W.D. Pa. 2001), in appointing another party to serve as lead plaintiff, the court pointedly observed that within the previous three years FSBA had been appointed lead plaintiff in seven different class actions, was denied that status in two others, and is "a frequent non-lead plaintiff in securities actions." Others have determined that FSBA was the type of Lead Plaintiff envisioned under the PSLRA and lifted the professional plaintiff bar to allow it to serve: Naiditch v. Applied Micro Circuits Corp., 2001 WL 1659115; In re Critical Path Inc. Sec. Litig., 156 F. Supp.2d 1102; Piven v. Sykes Enterprises, Inc., 137 F. Supp.2d 1295.

institutional investor should be considered, but should not be a dispositive factor in the decisions to lift the bar. Id. at 822. The court further observed that simultaneous participation in securities class actions or applications for appointment as lead plaintiff could result in the institutional investor having fewer resources available and being less able to police counsel's conduct, and thus undermine the purposes of the PSLRA. Id. This Court agrees with that approach.

With this law in mind, the Court has reviewed the competing motions for appointment of Lead Plaintiff and the extensive briefing in support and in opposition.[8]

### B. Subclasses or Multiple Unrelated Lead Plaintiffs?

Several groups of investors, dubbed "Niche Applicants" by the State Retirement Systems Group,[9] seek to separate themselves from the common stock purchasers, while others support a unified class, some at least up to the class certification process and others through resolution of the litigation, with

---

[8] The Court notes that William and Roxann Davis and E. Bruce Chaney, Plaintiffs in an Enron-related case in the Eastern District of Texas, Beaumont Division, who have filed a motion for appointment as Lead Plaintiff in that action, have filed a bare-bones notice of opposition (#132) in this action to all motions for appointment of lead counsel in any district and complain that they have not been served with copies of the motions and briefs in this consolidated action.

[9] The term appears to derive from Aaronson v. McKesson HBOC, Inc., 79 F. Supp.2d 1146, 150-51 (N.D. Cal. 1999), in which the court used the term "niche plaintiffs" for proposed Lead Plaintiffs "claiming that their claims are so distinct as to justify appointment of multiple lead plaintiffs."

appointment of unrelated Lead Plaintiffs to represent different groups' interests.

### 1. Purchasers of Preferred Stock

Steiner, Christine L. Benoit, Daniel Kaminer and Michael and Jennifer Cerone ("Proposed Preferred Purchaser Lead Plaintiffs"), joined by Harold Karnes, in order to avoid any prejudice to their rights, discussed <u>supra</u> with respect to Steiner's objection to consolidation, move for appointment as separate Lead Plaintiffs for a separate class of purchasers of preferred stock and for appointment of Wolf Haldenstein Adler Freemant & Herz LLP to serves as Lead Counsel and McGehee & Pianelli to serve as Local Liaison Counsel.

The motion asserts that the Court has the authority to appoint separate Lead Plaintiff and Lead Counsel for a distinct group of preferred shareholder claimants. <u>In re Cendant Corp. Litig.</u>, 182 F.R.D. 144, 149 (D.N.J. 1998)(conflict of interest required appointment of separate lead plaintiff to represent investors in derivative securities, known as "Feline Prides," to protect their interests); <u>Chill v. Greentree Fin. Corp.</u>, 181 F.R.D. 398, 402 (D. Minn. 1998)(appointing separate lead plaintiffs and counsel for options purchasers and securities purchasers); <u>Mark v. Fleming Cos., Inc., et al.</u>, Case No. CIV 96 506 M, Order (W.D. Okla. Mar. 26, 1997)(rejecting consolidation of a noteholders case with a stockholder case and appointing separate lead plaintiff and lead counsel for note class); <u>Harbour Court LPI</u>

v. Nanophase Tech. Corp., et al., 98 C 7447, Memorandum Opinion and Order (N.D. Ill. Sept. 27, 1999)(because of scienter requirement for § 10(b) claims under the 1934 Act, appointing separate lead plaintiffs and counsel for § 10(b) claims and for §§ 11, 12(2) and 15 of the Securities Act of 1933); Miller v. Ventro Corp., et al., No. C 01-01287, slip op. at 18 (N.D. Cal. Nov. 28, 2001)(appointing separate lead plaintiffs for bondholders and stockholders to serve as co-lead plaintiffs and to make decisions by consensus except where interests of bondholders and shareholders diverged); In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998). Furthermore, the Court is required to insure that independent classes with conflicts are protected by subdivision and separate representation. Ortiz v. Fibreboard Corp., 527 U.S. 815, 855 (1999); Amchem Prods. v. Windsor, 521 U.S. 591, 626-27 (1997).


## Opposition

The opposition filed by the Archdiocese of Milwaukee Supporting Fund, Inc. ("AMS Fund"), by FSBA and the NYC Funds, and by the State Retirement Systems Group applies to all motions seeking separate classes for different securities.

The AMS Fund, which identifies itself as a "pure" bondholder seeking appointment as a co-Lead Plaintiff over a single class of investors to work in concert with other co-Lead Plaintiffs who have suffered losses in holding other Enron securities, opposes a separate preferred purchaser action or

class.  The AMS Fund argues that thus far there is only a
possibility, and not the present existence, of a conflict of
interest between the preferred stockholders and the common
stockholders to justify carving out independent cases or separate
classes or subclasses of purchasers.  <u>In re Waste Management, Inc.</u>
<u>Sec. Litig.</u>, 128 F. Supp.2d 401, 432 (S.D. Tex. 1998).

FSBA and the NYC Funds oppose the appointment of a
separate Lead Plaintiff for preferred stock, bond, and note
purchasers because all Plaintiffs allegedly paid artificially
inflated prices for their securities at the time of purchase due
to misrepresentations and omissions by Defendants during the
relevant time period and were similarly damaged by Defendants'
conduct.  At this stage of litigation, all purchasers have the
common goal of establishing those misrepresentations and omissions
to the market.  Any divergent interests can be accommodated later,
if necessary, they urge.

Furthermore, there is no requirement that the claims of
all plaintiffs and class members must be identical.  <u>In re Lucent</u>
<u>Techs., Inc. Sec. Litig.</u>, 194 F.R.D. 137, 150 (D.N.J. 2000)("Rule
23(a)(3) does not require the claims of the Proposed Lead
Plaintiffs to be identical to those of the class.  Rather the
typicality requirement is satisfied when the plaintiff's claim
arises from the same event or course of conduct that gives rise to
the claims of other members and is based on the same legal

theory.")[10]; <u>Sanders v. Robinson/Humphrey/American Express, Inc.</u>,
634 F. Supp. 1048, 1057 (N.D. Ga. 1986)("When plaintiffs have
alleged such a common course of conduct, courts consistently have
found no bar to class certification even though members of a class
may have purchased different types of securities or interests, or
purchased similar securities at different times."). Furthermore
courts have repeatedly concluded that stock purchasers can
represent purchasers of debt instruments and vice versa in the
same action. <u>Endo v. Albertine</u>, 147 F.R.D. 164, 167 (N.D. Ill.
1993)("a class of plaintiffs who purchased different types of
securities may properly be certified with a representative party
who only purchased one type of security"); <u>In re Saxon Sec.
Litig.</u>, [1983-84 Tr. Binder] Fed. Sec. L. Rep. (CCH) par. 99,691,
at 99,779 (S.D.N.Y. Feb. 23, 1984)("debenture holders have an
interest identical to that of the holders of common stock in

---

[10] The Court observes that the Fifth Circuit agrees:

> [T]he test for typicality is not demanding.
> It focuses on the similarity between the named
> plaintiffs' legal and remedial theories and
> the theories of those whom they purport to
> represent. Typicality does not require a
> complete identity of claims. Rather, the
> critical inquiry is whether the class
> representative's claims have the same
> essential characteristics of the putative
> class. If the claims arise from a similar
> course of conduct and share the same legal
> theory, factual differences will not defeat
> typicality.

<u>Stirman v. Exxon Corp.</u>, No. 01-50632, 2002 WL 63398, *5 (5th Cir.
Feb. 1, 2002), <u>citing and quoting</u> <u>James v. City of Dallas</u>, 254
F.3d 551, 571 (5th Cir. 2001), [<u>cert. denied</u>, No. 01-475, 2002 WL
75686 (Jan. 22, 2002].

1997). For this reason courts ruling on motions for appointment of Lead Plaintiff have usually refused to subdivide classes or appoint separate leadership based on alleged intraclass differences or conflicts. In re MicroStrategy, Inc. Sec. Litig., 110 F. Supp. 2d 427, 431-32 (E.D. Va. 2000); In re Cendant Corp. Litig., 182 F.R.D. 144, 478 (D.N.J. 1998); In re Olsten Corp. Sec. Litig., 3 F. Supp.2d 286, 293 (E.D.N.Y. 1998). The State Retirement Systems Group also maintains that formation of subclasses at this stage is premature.

Some Plaintiffs here plead urgency in appointing different Lead Plaintiffs for subclasses of competing securities holders because of the limited funds available to satisfy all the claims, especially in light of Enron's bankruptcy. FSBA and NYC Funds respond that the bankruptcy, which removes Enron as a party to this litigation, has no bearing on the claims for federal securities laws violations against individual Defendants and Arthur Andersen L.L.P. here. Ultimately the bankruptcy court will determine the priority or preference status of the various securities holders here for claims against Enron.

## 2. Purchasers of Enron 7% Notes

Pulsifer & Associates, an institutional investor which lost $882,142.00 on notes purchased on behalf of its clients (#163), seeks appointment as Lead Plaintiff for a class of purchasers of Enron Corporation 7% Exchangeable Notes, due on July

31, 2002.[11] The notes were sold on or about August 19, 1999 to the public in an initial public offering pursuant to a Registration Statement and Prospectus dated August 17, 1999 ("the offering"), which allegedly included materially false fiscal 1997 and 1998 financial statements.[12] The noteholders are suing those who signed the Registration Statement, Arthur Andersen LLP, which audited financial statements included in that document, and the underwriters for the offering of the notes (Goldman, Sachs & Company, Bank of America Securities LLC, and Salomon Smith Barney, Inc.) under Section 11 and 12(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77o, and 77l(a)(2).

Pulsifer & Associates argues for a separate class and a separate Lead Plaintiff/Lead Counsel appointment. First, it observes that only the noteholders have statutory claims against the three underwriters. According to Pulsifer & Associates, only purchasers of the notes have standing to sue the underwriters of the notes. "[T]o have standing to sue as a class representative

---

[11] In a reply memorandum (#197), filed after substantial briefing by all the parties, Pulsifer and Associates recognizes that there are timely filed claims by FSBA, the NYC Funds, and the AMS Fund as note holders of some 7.875% notes due on 6/15/03 that were issued pursuant to a Registration Statement dated June 1, 2000. Pulsifer and Associates concluded that the Court therefore has to appoint three Lead Plaintiffs; one for the common stock case, one for the 7% notes, and one for the 7.875% notes. It further points out that if FSBA and the NYC Funds are appointed as Lead Plaintiff for the common stockholder claims, there would be no need for a separate Lead Plaintiff for the 7.875% notes.

[12] According to Pulsifer & Associates' Further Memorandum (#163), Enron has since restated these financial reports to reduce net income for fiscal 1997 from $105 million to $9 million, and for fiscal 1998 from $703 million to $590 million.

demonstrating a common course of fraudulent conduct and in implicating defendants in that conduct"); <u>Epstein v. Moore</u> [1988-89 Tr. Binder] Fed. Sec. L. Rep.(CCH) par. 93,957, at 90,443 (D.N.J. June 3, 1998)(same); <u>Handwerger v. Ginsberg</u>, [1974-75 Tr. Binder] Fed. Sec. L. Rep. (CCH) par. 94,240 (S.D.N.Y. Jan. 2, 1975)(in a securities class action lawsuit, court held that since there was no substantial difference between debenture holders and stock holders because both were seeking to recover damages as a result of misrepresentations, the plaintiff, a debenture holder, can represent a class of both debenture holders and stock holders); <u>Deutschman v. Beneficial Corp.</u>, 132 F.R.D. 359, 368-75 (D. Del. 199)(purchasers of call options may also represent stock purchasers); <u>Clark v. Cameron-Brown Co.</u>, 72 F.R.D. 48, 53 (M.D.N.C. 1976)(common stock holder may also represent warrant holders). Purchasers of common stock may adequately represent purchasers of preferred stock where, as in this action, claims arise from a common course of conduct. <u>In re Atlantic Fin. Fed. Sec. Litig.</u>, No. 89-0645, 1990 U.S. Dist. LEXIS 15965 (E.D. Pa. Nov. 26, 1990)(because difference between the two does not "overshadow the common issues," common stock and preferred stock were certified in the same class).

Furthermore, they maintain, it is premature to determine before a full class certification hearing whether a Lead Plaintiff fairly and adequately represents the interests of class members. <u>In re Nice Sys. Sec. Litig.</u>, 188 F.R.D. 206, 217 (D.N.J. 1999); <u>Gluck v. Cellstar Corp.</u>, 976 F. Supp. 542, 546 (N.D. Texas .

these parties will not share in any recovery that might be obtained by the noteholders from the underwriters because they have no claim against the underwriters based on the notes. Nevertheless, any damages paid by the underwriters to the noteholders will adversely affect their investments in the stock of the underwriters. Thus it is in their interest to prevent or obstruct, and certainly not to pursue, recovery of damages sought by the noteholders from the underwriters. In re Cedent Corp. Sec. Litig., 182 F.R.D. 144, 149-50 (D.N.J. 1998)(order separate counsel for investors in a particular security because designated lead plaintiff owned substantial interest in the underwriter of that security and was therefore not an adequate representative for investors suing that underwriter); Aronson v. McKesson HBOC, Inc., 79 F. Supp.2d 1146, 1150-51 (N.D. Cal. 1999).

Emphasizing that none of the other parties seeks to be named Lead Plaintiff for those that purchased the 7% notes, Pulsifer & Associates maintains that the note purchasers have singular claims that result in the noteholders' having substantial issues of materiality, causation and damages that are unique to the noteholders and unlike those of purchasers any other Enron equity or debt security. The principal amount of the notes was payable in shares of Enron Oil & Gas Co., Inc., a former subsidiary of Enron, on July 31, 2002 at a conversion rate, subject to adjustment based on the market price of the subsidiary's stock, of .8475 shares of Enron Oil & Gas common

_____

of interest with respect to claims against that defendant.

stock.  Current noteholders have no security interest in those shares and are unsecured creditors in Enron's bankruptcy.  The notes, traded publicly on the New York Stock Exchange, were the only Enron debt security traded on a listed securities exchange.

They also note that this Court in In re Landry's Seafood Restaurant, Inc. Sec. Litig., sl. op. (S.D. Tex. May 25, 2000), appointed for two separate groups separate lead plaintiffs with the greatest loss: (1) a group suing under sections 11 and 15 of the Securities Act of 1933, which requires that purchase of shares be pursuant to or reasonably traceable to an offering but does not require a showing of reliance; and (2) another group suing under Section 10b of the Securities Exchange Act of 1934, which requires a showing of scienter.

### 3. Debt Securities Investors, Including Noteholders

Staro, an investment manager for a group of affiliated investment funds, represents that it purchased $80 million face amount of bonds during the Class Period from December 21, 1998 through November 30, 2001,[15] and lost in excess of $40 million,[16] making its loss the greatest of the debt securities class it seeks to represent.  Thus it claims that it is presumed to be the "most adequate" plaintiff to represent such a class.   15 U.S.C. §

_____

[15]  The Court notes that different actions have stated different class periods, though all overlap.   Once Lead Plaintiff(s) and Lead Counsel are appointed and file a consolidated complaint, the class period will be clearly defined.

[16]  Responsive Brief (#161) at p. 1 and Ex. 2.

it is essential that a plaintiff must be part of that class. . . ." <u>Schlesinger v. Reservist Comm. to Stop the War</u>, 418 U.S. 208, 216 (1974); <u>DiJulio v. Digicaon, Inc.</u>, 339 F. Supp. 1284, 1292-93 (D. Md. 1972)(" . . . a party who lacks standing to sue on his own behalf may not assert claims on behalf of an alleged class of which he is not a member."); <u>In re Paracelsus Corp. Sec. Litig.</u>, 6 F. Supp.2d 626, 631 (S.D. Tex. 1998) (holding that plaintiffs who did not acquire any of the securities in a public notes offering lacked standing to assert claims under the Securities Act of 1933 on behalf of a class who did purchases those securities in that offering).[13]

Furthermore, urges Pulsifer & Associates, other parties to this suit have a conflict of interest with the proposed 7% note holder class because they own shares in one or more of the three underwriters,[14] but purchased none of the 7% notes.  Specifically

_____

[13] AMS Fund contends that <u>In re Paracelsus</u> does not support Pulsifer and Associates' argument for a separate class to protect the purchasers of 7% notes; since none of the plaintiffs had suffered losses from note purchases in that suit, the court only held no one had standing to prosecute such an action.

[14] Known at this time to Pulsifer & Associates as parties holding stock in the underwriters are the FSBA, Amalgamated Bank, Deutsche Asset Management (US), and Private Asset Management. FSBA and the NYC Funds argue that their indirect interests in Citigroup and Bank of America, the parent companies of the underwriters, do not create a conflict of interest.  Because the underwriters are wholly owned subsidiaries of these parent companies, Pulsifer and Associates calls FSBA and NYC Funds' argument "a distinction without a difference" because any recovery from the subsidiaries will affect the parent companies.  Yet FSBA and NYC Funds point out that Pulsifer admits it own shares in both Bank of America and Citigroup, so it also would be conflicted if its argument had any validity.  They emphasize that Pulsifer provides no authority for its argument that owning an equity interest in a corporate parent of a defendant creates a conflict

78u(4)(3)(B)(iii)(I).   Staro describes its losses as forty times greater than those of Pulsifer & Associates, while the AMS Fund lost less that $100,000, approximately .25% of Staro's losses.   It further states in response to Pulsifer's application to serve as exclusive Lead Plaintiff for the 7% Noteholders that the appointment of separate Lead Plaintiffs for each of approximately 65 different bond issues of Enron would be "unwieldy."

Staro distinguishes the bond purchasers from the common stock purchasers on the grounds that the former are concerned with Enron's debt ratio liquidity and ability to service the debt and repay it upon maturity, reflected in ratings by bond rating agencies Fitch Ratings, Moody's Investors Service, and Standard & Poor's.   In re Ames Department Stores, Inc. Note Litigation, 991 F.2d 968, 980 (2d Cir. 1993).   The interests of purchasers of stock (equity securities), on the other hand, rest on the company's earnings and growth rates.   Maintaining that there are conflicts of interest between the two groups of purchasers, Staro notes that in Enron's collapse, nearly all, if not all, of the price decline in the bonds occurred from October 24, 2001 through November 30, 2001, with most in the last few days.   The decline in the price of the common stock, in contrast, commenced in February 2001, eight months before Enron began disclosing information about financial irregularities, and about 70% of its value was lost before the first revelation that became the basis for this lawsuit.   See generally Model Associates, Inc. v. U.S. Steel, 88 F.R.D. 338, 339-41 (S.D. Ohio 1980)(holding in part that plaintiff

- 54 -

who purchased only common stock could not represent class that included both debt and equity purchasers); Simon v. Westinghouse, 73 F.R.D. 380 (E.D. Pa. 1977)(refusing to allow stock purchasers to represent debt purchasers in class action).[17] Thus the information material to bond purchasers was different from that significant to common stock purchasers and what caused each decline was different. Several cuts in the rating of Enron's bonds followed by Enron's petition for bankruptcy also materially affected the bondholders' loss. In addition to causation, damages differ between the two groups. Staro insists that a representative for the common stock shareholders would have "no incentive to present an explanation of damages suffered by the bond purchasers" and "will have every incentive to omit altogether, or minimize, the damages suffered by Bond Purchasers."[18] Staro also claims the bond purchasers need separate representation to insure that any settlement entered into

---

[17] In its reply brief (#198) at 7-9, in a footnote Staro points to a number of cases where equity investors were not allowed to represent debt investors that were cited by this Court in In re: Waste Management, Inc. Sec. Litig., 128 F.R.D. 401, 427 (S.D. Tex. 2001). The few cases cited by other parties in which debt and equity investors were allowed single representation were decided before the enactment of the PSLRA, did not involve a bankrupt company with a limited fund, and separate representatives for debt and equity did not apply for appointment.

[18] The Court finds such generic allegations, unsupported by specific facts or law, unpersuasive. A lead plaintiff owes a fiduciary duty to the class. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 549-50 (1949). In reviewing both the selection of adequate lead plaintiff and lead counsel, as well as proposed class certification, this Court has an obligation to insure that both are adequate representatives. Different interests need not necessarily constitute fatal conflicts.

is fair and reasonable as to them. It suggests that if the bondholders "do not have independent unconflicted counsel who represent debt purchasers alone, other large debt purchasers will be more likely to file independent actions and create obstacles to a broad class resolution."

Staro also emphasizes differences in burden of proof and defendants between debt and equity securities holders. The former assert claims under Sections 11 and 15 of the Securities Act of 1933, unlike the equity purchasers who sue under Section 10(b) of the 1934 Act. Thus the bond purchasers are not required to plead or prove scienter, and they may also sue signers of prospectuses. As for overlapping claims under Rule 10b-5, the two groups need to present different evidence on loss causation and damages, and their interests in division of any settlement would be antagonistic.

Staro highlights the fact that its loss is exclusively in debt securities investments and is equal to or greater than losses in debt security investments of the other proposed Lead Plaintiffs, including FSBA and NYC Funds and State Retirement Systems Group.[19] Furthermore the other proposed Lead Plaintiffs have a much larger investment in their equity claims than in their debt securities claims. It points out that the Regents of the University of California has no debt securities claim.

---

[19] Staro concedes that one member of the State Retirement Systems Group, the State of Washington, lost $42 million in bonds, but argues that it cannot fairly represent the class because it seeks appointment of the same "conflicted" lead counsel (since 83% of its clients are in equities) as other members of its group.

Finally, Staro insists that it is not aware of a single instance where a court permitted a single lead plaintiff and lead counsel to represent equity and debt investors over the objections of qualified members of either group. Nor has any party cited a case in which equity and debt investors of a single bankrupt entity were represented by a lead plaintiff or group with primarily or exclusively equity loss.

The Court notes that although JMG/TQA, which purchased notes pursuant to different Prospectuses, withdrew its motion to be appointed Lead Plaintiff, it supports formation of a debt securities class.

4. One Class with Multiple Representative Lead Plaintiffs

The AMS Fund urges the Court to permit representation of different types of investors by different Lead Plaintiffs without dividing the class into separate classes or subclasses to insure all class members' interests were adequately represented. Oxford Health Plans Sec. Litig., 182 F.R.D. 42 (S.D.N.Y. 1998). The AMS Fund asserts that it is the only institutional investor that has acted solely to protect interests of purchasers of publicly traded debt securities of Enron who sue under the Securities Act of 1933 with respect solely to offerings issued by Enron and made pursuant to Registration Statements and Prospectuses from October 19, 1998 and November 19, 2001. It is also the only "pure" debt security investor seeking to act on behalf of all Enron investors. As a nonprofit institution supporting charitable organizations,

especially those under the wings of the Catholic Archdiocese of
Milwaukee, the AMS Fund represents that it serves admirable,
socially important goals for many in need.[20]    The AMS Fund
observes that it easily satisfies the typicality requirement
because it and all the investors in this action have claims
arising out of the same course of events, i.e., a common scheme
and course of conduct of deception perpetrated by Defendants to
the detriment of purchasers of publicly traded Enron securities.
It reports that it purchased $55,000 in notes (7.7875% due 6/15/01
at $99.806) on June 6, 2000 and has sustained losses of more than
$70,000.  It also admonishes that dividing investors into separate
classes or subclasses before pretrial proceedings and discovery
have been completed would replicate attorney work and create
disharmony among the members.   The AMS Fund additionally notes
that cases cited by Staro support postponing creation of classes
until the time of class certification.

     The Davidson Group urges the same kind of arrangement as
the AMS Fund and requests the Court to appoint two of its members
(Anthony Davidson with 3,000 shares of common stock, for a loss of
$63,250, and Seymour Nebel, with 1000 shares of common stock, for
a  loss  of  $66,793.50)[21]  to  represent  individual  common

_____

     [20] While it is clear that the AMS Fund is involved in
praiseworthy activities, the Court emphasizes that these do not
relate to the statutory requirements for Lead Plaintiff.

     [21] Emphasizing the competence of its proposed Lead Plaintiffs,
the Davidson Group points out that Anthony Davidson is a
commercial real estate broker and former securities broker with
many years of experience in the business of finance and
securities.  He was Director for a management company that ran

stockholders, as opposed to institutional investors, in that single class. The Davidson Group urges the Court to recognize the extreme plight of its individual shareholders, who, although they have not lost as much money as the institutional investors, have each lost a much greater percentage (at least 25%) of their portfolios and who would zealously prosecute this suit. Moreover, in view of information from expanding investigations, the appointment of individual-investor Lead Plaintiffs, completely independent of large institutions, will avoid any real or potential conflicts of interests that some institutional investors may have because of long standing financial ties to Enron's investment banks, leaders and consultants who function as underwriters, agents and/or advisors to Enron[22] during the relevant period for substantial fees.[23]

---

several value oriented open-end equity mutual funds. Seymour Nebel, now retired, worked as an investigative accountant for the New York State Attorney General.

[22] The Davidson Group suggests that this group might include Citibank/Salomon Smith Barney, J.P. Morgan Chase, Credit Suisse First Boston, BNP-Paribas, Deutsche Bank, Merrill Lynch & Co., Goldman Sachs Group, Bank of America Securities, and Lehman Brothers.

[23] In its final memorandum (#185), the Davidson Group identifies the following as potential conflicts or appearances of impropriety involving Plaintiffs in this action:

> (2) FSBA used and relied on an investment adviser, Alliance Capital Management, that had a managing partner, Frank Savage, on Enron's Board of Directors;
> (2) FSBA purchased millions of shares of Enron stock through this advisor after the initial securities fraud actions here were filed;
> (3) After filing its motion for appointment as lead plaintiff, FSBA joined with NYC Funds,

Davidson and Chaney do the same, but state that combined they lost $1,235,755.56,[24] far more than the Davidson Group's

---

perhaps because such conflicts would prevent it from controlling the consolidated action;

(4) Florida Governor Jeb Bush is one of the three trustees of FSBA, received $6,500 from Enron for his 1998 campaign, and in November 1999 (during the class period) met with Enron officials to discuss a possible joint venture between Florida and an Enron entity, Azurix;

(5) Ohio officials, including the Attorney General who filed a lead plaintiff motion with the State Retirement Systems Group, received political donations from Enron's political action committee, and that influence sought by Enron on these individuals does not change even though the Attorney General returned the political contributions after public disclosure of Enron's conduct;

(6) The Public Employees Retirement System of Ohio, also a member of the State Retirement Systems Group, uses J.P. Morgan Chase, Enron's investment bank and a potential defendant here, as a fund advisor, in an ongoing fiduciary relationship;

(7) The Teachers Retirement System of Georgia, a member of the same Plaintiff group, uses Banc of America Capital Management as an investment advisor, also an affiliate of a potential defendant is this action; although both the Ohio and Georgia groups have supplied affidavits stating that neither Banc of America nor J.P. Morgan Chase recommended their Enron investments, neither identifies the investment advisor that did, another potential conflict;

(8) After filing its initial motion for appointment, the Regents of the University of California dropped its proposed co-Lead Plaintiffs, including Deutsche Asset Management, an affiliate of one of Enron's banks and a potential defendant here.

[24] In the motion that Davis and Chaney filed in the Eastern District of Texas, they state that William and Roxann Davis purchased 15,000 shares of Enron stock for $177,000.00 and lost $167,266.67. Chaney purchased 12,200 shares of stock for $1,076,600 and lost $1,068,489.89.

losses of $60,000, and therefore they are the most adequate Lead Plaintiff for an individual investors group. They adopt the arguments and authorities set forth by the Davidson Group.

## Opposition

FSBA and the NYC Funds and Private Asset Management LLP object to the suggestion of the AMS Fund and the Davidson Fund that the Court appoint several co-Lead Plaintiffs to direct a single class on the grounds that a principal goal of the PSLRA was to vest control of securities litigation in large, preferably institutional investors, to minimize lawyer-driven litigation. Gluck v. CellStar, 976 F. Supp. at 549-50; In re Waste Management, 128 F. Supp. at 414-15; In re Advanced Tissue Sciences Sec. Litig., 184 F.R.D. 346, 351 (S.D. Cal. 1998); In re Network Associates, Inc. Sec. Litig., 76 F. Supp.2d 1017, 1024-25 (N.D. Cal. 1999).

## 5. Court's Decision

The Court observes that the parties supporting division of the class into groups according to the nature of the investment or appointment of multiple Lead Plaintiffs with no prior relationship to represent different interests would not satisfy the stated criteria of the PSLRA for a Lead Plaintiff. Taken to its logical extreme, Pulsifer & Associates' argument that each group of notes issued pursuant to a different Registration Statement and Prospectus requires a different class or subclass

and separate Lead Plaintiff would fracture this litigation into hundreds of classes or subclasses and obstruct any efficient and controlled progress.  Thus some reasonable solution that promotes both efficient litigation and protects investors from conflicts of interest with antagonistic representatives must be found.

As the primary basis for its decision, the Court's reading of the Lead Plaintiff provisions of the PSLRA, especially § 78u-4(a)(3)(B)(ii)("the court shall appoint the most adequate plaintiff for the consolidated actions"), leads it to conclude that at this stage the statute authorizes the appointment of one Lead Plaintiff or small cohesive group for a single class. Aaronson v. McKesson HBOC, Inc., 79 F. Supp.2d 1146, 1151 (N.D. Cal. 1999)(given the PSLRA's procedure for swift consolidation of all pending claims, there is a "statutory presumption that one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories").  While the parties have set out some well-founded and persuasive arguments for separate representation and classes or subclasses at class certification, as well as for trial, the Court does not find that such divisions are essential now.  Indeed the central reasons for the consolidation of these suits are that they arise out of a common core of facts, legal issues, deal with overlapping or intertwined Defendants, named or implied, and they attack a various aspects of an alleged scheme and course of conduct to defraud Enron investors and the public by artificially inflating the price of Enron securities through a number of

materially false and misleading statements and omissions about the
financial condition of Enron. Some complaints share claims of
insider trading. Moreover, it is centrally important to the
litigants on both sides and to this Court, especially because
there are so many parties involved and all are entitled to equal
access to the evidence, that the discovery process not
disintegrate into chaos and harassment. At the same time diligent
and efficient prosecution of the causes of action must be
encouraged. To accomplish such and to provide all parties with
more information through discovery to flesh out, or perhaps even
eliminate, concerns regarding conflicts of interest, the Court
believes that the litigation should proceed as a unified class
with a strong Lead Plaintiff, at least until the time for class
certification. At that point, if still appropriate or if newly
appropriate, the parties may reurge or file new requests for
subclasses and separate representatives.

While some proposed Lead Plaintiffs have raised
important concerns and elicited sympathy for their clients in
their motions, in the final analysis this Court is obligated to
apply the express, objective criteria of the law and the
underlying purpose of the PSLRA to the facts before it in
determining appointment of Lead Plaintiff and approval of Lead
Counsel. Under these guidelines, the proposed Lead Plaintiffs
discussed thus far do not qualify because they do have the largest
financial interest in the relief sought. Thus their requests for
splintering the action or appointing multiple Lead Plaintiffs to

represent specialized interests, especially in light of the common
facts and legal issues here, would undermine the purpose of the
PSLRA.   Therefore the Court denies the motions of the "Niche
Plaintiffs" and addresses the remaining applications.

### C.   Remaining Applicants

#### 1. State Retirement Systems Group

The State Retirement Systems Group consists of proposed
Lead Plaintiffs the Teachers Retirement System of Georgia, the
Employees' Retirement System of Georgia, the Teachers Retirement
System of Ohio, the Employees' Retirement System of Ohio, and the
Washington State Investment Board, all advised, pursuant to
statute, by their state attorneys general,[25] who are also members
of the National Association of Attorneys General ("NAAG"), which
has a keen interest in this litigation and its national
implications.   The Retirement Systems of Alabama seek appointment
as an Advisory Plaintiff to the Group.[26]   Georgia, Ohio, and

_____

[25] Ohio is represented by the Honorable Betty D. Montgomery.
Washington by the Honorable Christine O. Gregoire, and Georgia by
Thurbert E. Baker.   The State Retirement Systems Group points out
that the large majority of state pension funds, including Florida,
are advised by in-house counsel, and not by their state attorneys
general.

[26] The Group states that Alabama retirement systems will not
serve as a lead plaintiff nor be part of the decision-making
process, but merely, at Alabama's own request, be available as an
advisor if the Group deems consultation necessary.
     FSBA and the NYC Funds object that there is no provision
in the PSLRA for an advisory plaintiff and therefore Alabama's
losses should not be included in the group's total amount.   In re
Ribozyme Pharm., Inc. Sec. Litig., 192 F.R.D. 656, 659 (D. Colo.
2000)("[W]hen determining which group has the largest financial
interest courts may only look to the losses sustained by the class

Washington represent that they have a strong, pre-existing relationship, independent of this litigation, having jointly prosecuted dozens of complex cases, including litigation against the tobacco companies.[27]  That relationship was formed by the attorneys general with strong interests in protecting their citizenry, not by the lawyers ultimately chosen to represent it. The Group highlights the fact that it is the only proposed Lead Plaintiff with the endorsement and active involvement of three attorneys general working closely with the NAAG, public servants dedicated to protecting public interest.  As Exhibit A to #237 the Group presents a declaration from the Attorneys General of Illinois, Kentucky, Nevada, New Mexico, North Carolina, Oklahoma, Oregon and Tennessee in support of their application for appointment as Lead Plaintiff and approval as Lead Counsel.

The Group represents that it is composed of sophisticated institutions with experienced legal staff and is presumptively the most adequate Lead Plaintiffs because, including Alabama, it has purchased the largest dollar amount of Enron

---

members actually being put forward by any particular group to act as lead plaintiffs.").  This Court agrees.

[27] The Group notes that this Court previously recognized that a pre-existing relationship among proposed lead plaintiffs independent of this litigation, rather than a lawyer-created group with no prior relationship, is an important factor in determining whether a group can adequately control the litigation.  In re Waste Management, 128 F. Supp.2d at 412; In re NCI Buildings Systems Sec. Litig., H-01-1280, slip op. at 14 (S.D. Tex. Dec. 27, 2001).  The SEC supports appointment of small groups of related plaintiffs.  Memorandum of the Securities and Exchange Commission, Amicus Curiae, dated May 18, 1998, filed in Switzenbaum v. Orbital Sciences Corp., 187 F.R.D. 246, 248-50 (E.D. Va. 1999); In re Baan Co. Sec. Litig., 186 F.R.D. 214, 216-17, 224-25 (D.D.C. 1996).

common stock ($5.1 million) and bonds ($134 million) and suffered
the largest financial loss of any plaintiff, approximately $330.7
million.    Specifically, Georgia purchased 2,546,200 shares of
Enron common stock for $166,058,164.76 and has suffered net losses
of $127,077,353.49; Ohio purchased 2,565,119 shares of Enron
common stock and suffered net losses of $114,451,314.62;
Washington purchased $52 million in Enron bonds (par value) and
suffered net losses of approximately $42,312,320; and Alabama
purchased 131,800 shares of Enron common stock and $82 million in
Enron bonds (par value), and suffered net losses of approximately
$47.7 million.  Without adding in the losses of proposed advisory
Plaintiff Alabama, the State Retirement Group's losses are $283
million, still exceeding those of other qualified Lead Plaintiff
applicants, it insists.    Moreover, every type of security
purchaser is represented by the Group, which consists of investors
in equity and debt securities.[28]

Regarding the Davidson Group's challenge that the Ohio
Attorney General received campaign contributions from Enron, the
State Retirement Systems Group responds that he received $1,250
over a two-year period, that the money has since been donated to
charity, and that the amount is negligible in comparison with the
$3.5 million contributed by Enron to federal candidates and
national parties during 1998 and 2000 and the $1.88 million to

---

[28] The Court has read two letters in support of appointment
of the State Retirements Systems Groups as Lead Plaintiff and Lead
Council from the Pacific Investment Management Company of Newport
Beach, California and the TWC Group of Companies of Los Angeles,
California.

state candidates across the country since 1998; moreover Enron's contribution was a minute part of the millions that Attorney General Montgomery has received. Furthermore, the Group argues, the Davidson Group has not and cannot allege that Enron received any benefit from its contribution to the Ohio Attorney General. As for the allegation that the Public Employees Retirement fund uses J.P. Morgan Chase as one of its many investment advisors, that bank had nothing to do with the Funds' investments in Enron, nor did Bank of America have any part in Georgia's Enron transactions. The mere fact that these entities might have associated with Enron does not automatically make a party a defendant nor does it necessarily create a conflict.

While Milberg Weiss asserts that the State Retirement Systems Group consists of eleven different funds, including six Alabama funds, the State Retirement Systems Group explains that the latter are not applicants for appointment as Lead Plaintiff. Since the attorneys general are statutorily responsible for the funds in their states, the State Retirement Systems Group urges that there are in reality only a group of three proposed Lead Plaintiffs. Moreover, they seek appointment of only two lead counsel, Martin D. Chitwood of Chitwood & Harley and Jay W. Eisenhofer of Grant & Eisenhofer, P.A., and of one liaison counsel, Tom A. Cunningham of Cunningham, Darlow, Zook & Chapoton, L.L.P. They insist that the participation of the three attorneys general, public servants, does not make the Group an improper "lawyer-driven" amalgamation, but instead would serve to insure

that the litigation is not controlled by private class action lawyers. To ensure orderly and efficient prosecution of this action, the Group has also entered into a comprehensive management agreement, which it offers to submit for in camera review, that covers the decisions required in this litigation, including retention of private counsel and limits on fees, establishment of a decision-making protocol, adoption of an appropriate media policy for counsel, and instituting procedures for monitoring and managing the litigation.

### 2.   FSBA and the NYC Funds

FSBA is one of the largest employee pension funds in the world and oversees retirement benefits for Florida government employees and retirees. Between October 18, 1998 and November 27, 2001, FSBA states that it purchased 9,107,558 shares of Enron common stock for $681,142,482, and lost $325,243,851 during the class period, the largest loss of all applicants individually for Lead Plaintiff status. It also purchased 10.5 million par amount of Enron bonds and lost over $9 million relating to them.

NYC Funds, which is composed of five actuarial pension systems[29] and four variable supplemental funds[30] of New York

---

[29] The five are the New York City Employees' Retirement System, the New York City Teachers' Retirement System, the Police Department Pension Fund, the Fire Department Pension Fund, and the Board of Education Retirement Fund.

[30] The four supplemental funds are the New York City Police Officers' Variable Supplements Fund, the New York City Police Officers' Variable Supplements Fund, the New York City Fire Officers' Variable Supplements Fund, and the New York City

City, purchased more than 2.4 million shares of Enron common stock and more than $30 million of Enron bonds, resulting in a loss of approximately $109 million.  It acted as Lead Plaintiff in the Cedant litigation, 264 F.3d 201.  It claims it has a history of outstanding results in class actions, it has selected highly qualified attorneys and negotiated low fee structures with them, and it is not currently engaged in other securities class actions.

Together FSBA and the NYC Funds represent two of the largest public pension funds in the country, have lost approximately $443.9 million, and claim to be the only applicants with substantial experience in leading complex securities fraud litigations of the size and scope of the instant one.  They both seek to maximize the net recovery of all class members, have selected experienced and respected counsel, and have negotiated a retainer agreement through hard arms's length bargaining that provides for constant client oversight and prevents any duplication of services.  They charge that no other group of proposed Lead Plaintiffs explains how or why their groups were formed, the roles each member intends to play, and how they selected and retained counsel.  They also invite the other public fund applicants to serve as members of a committee to monitor the progress of the litigation.

---

Firefighters' Variable Supplements Fund.

3. The Regents of the University of California

The University of California, a premier public research university, is comprised of ten campuses and 183,000 graduate and under graduate students, three law schools, five medical schools and the nation's largest continuing education program. The twenty-six-member Board of Regents, the majority of whom are appointed by the Governor of California and confirmed by the California Senate, seeks appointment as Lead Plaintiff in this litigation. The University's Treasurer currently manages a portfolio amounting to more that $54 billion, for the University's retirement, defined contribution and endowment investment funds. During the class period, the Regents purchased more than two million shares of Enron common stock and lost more than $144 million.

The Regents emphasize that it is the largest, single, institutional proposed Lead Plaintiff, that it functions as a single investor and has the largest financial interest in the relief sought and is thus presumptively Lead Plaintiff,[31] that it

---

[31] The Regents break down the losses of the other institutional group contenders to show that it, individually, has the greatest loss. In #148 at p. 4, it reports the following losses:

| | |
|---|---|
| Regents . . . . . . . . . . . . | $144,719,678 |
| State Retirement Systems Group | |
|     Georgia . . . . . . . . . . | $127,077,353 |
|     Ohio . . . . . . . . . . . . | $114,451,314 |
|     Washington . . . . . . . . . | $ 42,312,320 |
|     Alabama . . . . . . . . . . . | $ 47,700,000 |
| New York City Pension Funds Group | $109,000,000 |

The Regents does not report FSBA's losses for the given reason that it considers FSBA to be barred by the professional plaintiff

possesses the sophistication, expertise and resources to prosecute this litigation, and that it seeks to employ only one law firm, unlike the FSBA and NYC Funds group and the State Retirement Systems Group, both of which the Regents charge are "comprised of unrelated aggregated investors who each propose the appointment of multiple lead plaintiffs and numerous law firms as class counsel." #148 at 1.

In contrast, the Regents claim, it brings a single law firm with exceptional resources and capability to prosecute this action: a team of two dozen attorneys, investigators, forensic accountants, and corporate governance experts that are already working on this litigation. Moreover, its and its attorneys' zealous prosecution of this action is already evident. With its earlier co-applicant, the Regents moved to freeze insider trading proceeds. In Amalgamated Bank's name, Mr. Lerach moved ex parte for an injunction freezing and imposing a constructive trust over insider trading proceeds. Counsel also requested particularized and expedited discovery and an accounting of insider trading proceeds. Furthermore Amalgamated Bank and Regents sought limited expedited discovery from Arthur Andersen LLP. Finally, its attorney brought evidence into court of document destruction at Enron's headquarters in Houston.

---

losses as $325,243,851, more than twice those asserted by the Regents.

### 4. Court's Decision

Facially, the largest of the proposed Lead Plaintiffs' losses is that of FSBA and the NYC Funds, which, for the two entities combined, is over $434,000,000. FSBA, taken separately, has the largest loss of any single entity, i.e., $325,243,851, and by its late-hour conjunction with NYC Funds, topped the combined loss of the State Retirement Systems Group, which without Alabama amounts to $330.7 million.[32]

Nevertheless, this Court finds that they have not shown that their grouping is not a manipulated effort to aggregate larger losses than other proposed Lead Plaintiffs or to cure certain deficiencies of FSBA discussed below. Furthermore the Court finds that the presumption that FSBA and NYC Funds together, or even FSBA, alone constitutes the most adequate Lead Plaintiff has been rebutted.

First, FSBA and the NYC funds have not persuaded this Court that they are the kind of cohesive group envisioned by the statute for Lead Plaintiff. There is also no clear or persuasive reason why FSBA and NYC Funds have joined together to apply for Lead Plaintiff in this litigation other than an effort to amalgamate their losses to be greater than their competitors' or to detract from obstacles that FSBA would face as a single applicant. Not only was their supplemental joint motion untimely

---

[32] The Court agrees with counsel for the Regents of the University of California that Alabama's losses should not be counted as part of the State Retirement Systems Group's because it is not applying as a co-Lead Plaintiff.

because it was filed after December 21,2001 after the other applicants' calculated losses were in the record available for comparison, In re Texlon Corp. Sec. Litig., 67 F. Supp.2d at 818, but the particular conjoining of just the two is questionable, especially when viewed in the context of their invitation to other public pension funds to serve as an oversight committee, but not to participate as Lead Plaintiffs.   While FSBA and the NYC Funds state in very general terms that they are both active members of the Council of Institutional Investors, that their attorneys general are active members of the National Association of Public Pension Attorneys, and that in these organizations they have worked together on corporate governance, they fail to provide any details about the size of these groups, the specific work they did together, and the nature of their involvement and its relevance to their relationship in this securities fraud action.   They do not demonstrate that they have any prior mutual litigation experience.

Second, the presumption of the adequacy of the plaintiff with the largest financial interest in the relief sought, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), may be rebutted upon proof by a member of the purported plaintiff class that the proposed individual or entity will not fairly and adequately protect the interests of the class or that it is subject to unique defenses that render it incapable of adequately representing the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).   The Court finds that even at this stage, before full discovery, FSBA, which suffered most of the group's financial securities loss, does not satisfy the

adequacy requirements under Fed. Civ. P. 23(a). Without aggregation with FSBA's loss, the NYC Funds' loss is insufficient to support its appointment as Lead Plaintiff.

First, the Court finds that FSBA has issues and interests atypical of and antagonistic to those of the rest of the class arising out of its purchases of Enron stock pursuant to its investment advisor Alliance Capital Management Holding LLP's ("Alliance Capital's") advice. FSBA's purchase of Enron stock between October 19-November 16, 2001 after the initial public disclosure regarding Enron's overstatement of its assets and partnership liabilities, after the first suits in this consolidated action were filed, and after the SEC announced that it was investigating Enron, creates a conflict of interest with those who purchased stock before the disclosure. See by analogy In re Party City Securities Litigation, 189 F.R.D. 91 (D.N.J. 1999)(refusing approval of a group of Lead Plaintiffs consisting of some members who were stock retention plaintiffs and other members who were in/out plaintiffs because of conflict of interest). Because FSBA did not buy this stock based in reliance either on the market or on statements by Enron or its agents, or on Registration Statements and Prospectuses, it has unique defenses rendering it atypical of the putative class. See, e.g., Koenig v. Benson, 117 F.R.D. 330,335-36 (E.D.N.Y. 1987)("There is a concern if a named plaintiff is subject to 'unique defenses' concerning his individual reliance, then attention will be diverted away from issues common to the class. This would impair

his ability to act as a representative for the class. Also, questions of individual reliance may place the materiality of the alleged misrepresentations into doubt [citations omitted]."); Epstein v. American Reserve Corp, No. 79 C 4767, 1988 WL 40500, *3-4 (N.D. Ill. Apr. 21,1988) Kovaleff v. Piano, 142 F.R.D. 406, 407-08 (S.D.N.Y. 1992). In this case, in light of the factual scenario described below, these unique defenses are likely to more than distract FSBA from duties of Lead Plaintiff. While FSBA argues that those Plaintiffs asserting conflicts of interest are merely speculating and have no proof, which is required by the statute, to support their allegations, what evidence has been submitted, though largely media articles, leads the Court to find that the information raises more than the mere specter of antagonistic interest and unique defenses to rebut the presumption that FSBA is the most adequate Lead Plaintiff. In good conscience this Court cannot endanger this litigation by ignoring the issues created by FSBA's unique involvement with Enron.

Several parties have focused upon the role of Alliance Capital Management Holding LP as Enron's largest institutional shareholder and FSBA's investment advisor, and which recommended that FSBA purchase of 2.9 million shares of Enron common stock after public disclosure that Enron overstated its assets, They highlight the fact that an Alliance Capital partner, Frank Savage, served on Enron's Board of Directors during the class period.

FSBA and NYC Funds have responded that (1) FSBA's direct investment advisor at Alliance Capital was Alfred Harrison, who

has stated that he did not know of any involvement of Savage in the investment relationship between FSBA and Alliance Capital during the class period; (2) that Savage was chairman of a separate division of Alliance Capital called Alliance Capital Management International, and (3) that Savage left Capital Alliance on August 1, 2001, months before the October and November stock purchases. Thus FSBA and NYC Funds insist that there is no "proof" to rebut the presumption that FSBA and NYC Funds are the most adequate Lead Plaintiffs.

Nevertheless the State Retirement Systems Group has submitted evidence reflecting that the Florida Attorney General and the Florida State Legislature are formally investigating whether Alliance used FSBA's funds improperly while in possession of nonpublic information and have subpoenaed documents from Alliance and Enron that inter alia concern Frank Savage's involvement. #237 and 272. Furthermore FSBA discharged Alliance Capital in December 2001. This Court cannot ignore that there is a clear possibility, indeed even a probability, that Florida will sue Alliance Capital. Moreover, other filed submissions indicate that the House Banking Committee, which is conducting hearings on the Enron pension plans, is conducting an investigation of investment manager Alfred Harrison, who purchased the Enron common stock for FSBA after disclosure of Enron's precarious financial state and who had business ties to the Enron Board Member, Frank Savage. Exhibits to #272.

- 76 -

Furthermore, as argued by the State Retirement Systems Fund, the Court cannot ignore that the relationship between Alliance Capital and Enron could make FSBA subject to unique defenses because knowledge, actual or constructive, of Savage and the Board of Directors about off-balance sheet partnerships used to hide Enron's debts and artificially inflate its earnings, i.e., insider information, might be imputed to FSBA. If so, FSBA may not have a securities fraud claim for much of its investment because its investment decision-maker was not deceived.

In <u>Landry v. Price Waterhouse Chartered Accountants</u>, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) the Court indicated that where unique defenses are asserted by a class representative, "whether these defenses will be successful is of no matter. The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members." The Court does not wish to delay this litigation even more than the procedural requirements of the PSLRA require while additional information is derived from the numerous intertwined investigations to uncover all the facts about the relationships.

Furthermore, even if these other issues did not demonstrate that FSBA is atypical of the class and has antagonistic interests from it or that it were not subject to unique defenses that rebut the presumption that FSBA and NYC Funds are the most adequate Lead Plaintiffs, in its discretion, in light of the nature of this action, the Court finds that FSBA should be statutorily disqualified as a "Professional Plaintiff" under 15

U.S.C. § 78u-4(a)(3)(B)(vi).[33]  This litigation is probably the largest and most complex of its kind in the history of this country and it will demand the full focus of Lead Plaintiff(s) and Lead Counsel.   While FSBA's involvement in numerous other securities fraud, both as Lead Plaintiff and class participant, may demonstrate valuable experience and quality leadership, it also means fractured attention and resources with respect to this suit.[34] The number of class actions in which FSBA has served and/or is serving as Lead Plaintiff so far exceeds the statutory cap that at least some of the purposes of the provision would be lost if the Court granted its application, especially in view of the demands of this litigation and the fact that there are other

---

[33]   As noted earlier, having moved for appointment as Lead Plaintiff in thirteen securities fraud class action in five years, FSBA has served as lead plaintiff in nine.  Miami Daily Business Review, Vol. 75, No. 142, Jan. 2, 2002 at A8, Ex. & to #153. According to the affidavit of Linda Lettera, FSBA's general counsel, dated December 19, 2001 (Ex. C to instrument #57), out of nine classes in which FSBA served as Lead or co-Lead Plaintiff, four remain active and five have settled or nearly been resolved; see also Ex. E to #57.

[34] The Court has reviewed the amicus curiae brief (#203) filed by the State of Wisconsin Investment Board ("SWIB") requesting the Court to exercise its discretion to waive the professional plaintiff limitation in a manner consistent with the objectives of the PSLRA (which SWIB identifies as encouraging participation of institutional investors as lead plaintiffs, control of securities fraud class action by plaintiffs willing and able to oversee the litigation, and selection by lead plaintiffs of competent lead counsel at competitive rates) especially because FSBA and NYC are committed not only to recovery for the investors, but to establishing corporate governance changes to reduce future corporate misconduct.   Were the professional plaintiff provision the only reason for denying FSBA & NYC Funds' application and were there not other qualified applicants, the Court might be more prone to consider such a waiver, but as indicated, it has other concerns about this group.

competent and qualified institutional applicants.  In response to charges that FSBA is too busy with other litigation to handle such an enormous suit as this, FSBA points out that NYC Funds is not involved in any litigation and can focus on this case.  The Court would again point out that the purpose of grouping Lead Plaintiffs is not to balance out each other's deficiencies.

Thus the Court has narrowed the choice to the Regents of the University of California and the State Retirement Systems Group.  The former asserts that it lost $144 million dollars.  The latter, without Alabama, claims an aggregated loss of $283 million, with Georgia suffering a loss of $127,077,353.49, Ohio of $114,451,314.62, and Washington of $42,312,320.  Thus the issue is whether the State Retirement Systems Group is a sufficiently cohesive body, not artificially created by lawyers, to monitor the lawyers and zealously prosecute the litigation.

Although counsel for the Regents argues that the State Retirement Group is diffusely composed, questioning the ability of the different entities to coordinate the litigation and make decisions efficiently,[35] the Group has responded with a "comprehensive litigation management agreement," submitted in camera, that addresses all collective decisions that will be required in this case, establishes a "decision-making protocol," limits fees to private counsel, establishes a media policy for counsel that restricts statements to the press, and creates

---

[35] Much of the argument continues to draw on the funds of Alabama, which the Court has indicated will not be considered here.

procedures for monitoring and managing the litigation.  The Court is satisfied that they would competently prosecute this litigation.

Nevertheless, in support of its charge that the State Retirement Systems Group is not cohesive, but artificially created by counsel, and that there is no explanation why these three states' funds were aggregated, the Regents points out that the claimed background of shared litigation among the three actually consists of suits in which from fourteen to fifty-three states participated, none of the retirement funds applying for Lead Plaintiff were involved, and the three states attorneys general did not participate in any of the securities class actions. Moreover, the Regents maintains that multiple class counsel, including the attorneys general, could result in duplication of services, increased fees, and delay of litigation.

The State Retirement Systems Group has not addressed this challenge to their past mutual litigation experience.  Nor has it demonstrated why these three states' retirement funds, out of all, have joined to form a group seeking Lead Plaintiff status. For these reason the Court finds that the group was artificially created.  In contrast, the Regents presents itself as a single, organized coordinated organization represented by a competent and resourceful law firm.

The Court is aware of the highly publicized criticism of Bill Lerach, which includes thus far unproven allegations of solicitation of clients by payment and higher fees.  The former is

clearly not applicable here.  Higher fees can be warranted by superior services, but the fees in this class action must be reasonable in light of the circumstance and in compliance with the PSLRA's policy to preserve the substantial portion of any recovery for the Plaintiffs.  Given the magnitude and complexity of this litigation, the geographical and temporal expanse it covers, the number of governmental and private investigations occurring, and the necessary involvement with the bankruptcy proceeding in New York, the selection of competent, experienced and committed Lead Counsel has even greater import than in normal securities class actions.  In reviewing the extensive briefing submitted regarding the Lead Plaintiff/Lead Counsel selection, the Court has found that the submissions of Milbank Weiss Bershad Hynes and Lerach LLP stand out in the breadth and depth of its research and insight. Furthermore, Mr. Lerach has justifiably "beat his own drum" in demonstrating the role his firm has played thus far in zealously prosecuting this litigation on Plaintiffs' behalf.  Moreover, the Court feels confident that the Regents of a large public university, experienced in investment and litigation, is capable of monitoring the lawyers here and industriously pursuing Plaintiffs' claims.

Furthermore the Court has reviewed in careful detail the submissions of Milbank Weiss Bershad Hynes and Lerach LLP regarding its competency to serve as Lead Counsel and finds it fully capable of representing Lead Plaintiff and the class. Indeed, the Court must say that all the firms that have

participated in this selection have demonstrated extremely fine credentials and should provide excellent representation for their clients.

Accordingly, for the reasons indicated above, the Court ORDERS the following:

(1) Karnes' motion to join #70 (#76) is GRANTED;

(2) JMG/TQA's motion for appointment (#63) is MOOT in light of its notice of withdrawal (#177), as is the motion of Private Asset Management (#82) in view of its notice of withdrawal (#219);

(3) Amalgamated Bank, California, Deutsche Asset Management, HBK Investments, and Central States Pension Funds' motion (#75) and amended opposed motion (#95) are MOOT as to these Plaintiffs in light of their notice of withdrawal (#176), but REMAIN PENDING with respect to the Regents of the University of California;

(4) FSBA and NYC Funds' separate motions for appointment as Lead Plaintiff and approval of lead counsel (#56 and 60) are superseded and thus MOOT.

(5) Pursuant to the notice of voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(i)

(instrument #7 in Member Case No. H-01-3914) filed by the Odam Plaintiffs as to Andrew S. Fastow, Kenneth L. Lay, Jeffrey [K.] Skilling, Ronnie C. Chan, John H. Duncan, Wendy L. Gramm, Robert K. Jaedicke, Charles A. Lemaistre, John Mendelsohn, Paul V. Ferraz Pereira, Frank Savage, John Wakeham, Herbert S. Winokur, Jr., Ben Glisan, and Kristina Mordaunt, these Defendants are DISMISSED without prejudice from H-01-3914, so that claims remain pending only against Arthur Andersen L.L.P.;

(6) the Odam Plaintiffs' objection to the consolidation order (#53, 99) is OVERRULED;

(7) Steiner's objection (#75) is OVERRULED;

(8) The motions for appointment of Lead Plaintiff and approval of Lead Counsel filed by FSBA and NYC Funds (#127), AMS Fund (#58 and 77), Pulsifer & Associates (#65), the Davidson Group (#70), the Proposed Preferred Purchaser Lead Plaintiffs (#72), Staro (#78), Davis and Chaney (#273), and the State Retirement Systems Fund (#80, 89) are DENIED; and

(9) application of the Regents of the University of California (#70, 95) is GRANTED.

The Regents of the University of California is appointed Lead Plaintiff and the law firm of Milberg Weiss Bershad & Lerach LLP is approved as Lead Counsel. Lead Counsel shall henceforth direct and coordinate the prosecution of this action on behalf of all Plaintiffs' counsel, including discovery, pretrial conferences, and settlement negotiations with counsel for Defendants.

Moreover, because the Court has not relied on the representations in the State Retirement System Group's Response to the Sur-Reply of the New York City Pension Funds and the Florida State Board of Administration regarding what percentage of its stock was purchased pursuant to the advice of Alliance Capital or what percentage of its holdings were comprised of the stock purchased from October 19-November 16, 2001, the Court

ORDERS that the NYC Funds and FSBA's motion to strike (#281) is MOOT.

SIGNED at Houston, Texas, this _15th_ day of February, 2002.

_Melinda Harmon_
MELINDA HARMON
UNITED STATES DISTRICT JUDGE