IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re ENRON CORPORATION LITIGATION | § § § | Civil Action No. H-01-3624 **(Consolidated)** |
| This Document Relates To: | § § | CLASS ACTION |
| MARK NEWBY, et al., Individually and On Behalf of All Other Similarly Situated | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| ENRON CORP., et al., | § § | |
| Defendants. | § § | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| KENNETH L. LAY, JEFFREY K. SKILLING, ANDREW S. FASTOW, RICHARD A. CAUSEY, JAMES V. DERRICK, JR., et al. | § § § § | |

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED
OCT 2 3 2003
Michael N. Milby, Clerk of Court

**THE OUTSIDE DIRECTORS' AMENDED MEMORANDUM CONCERNING
CERTIFICATION OF CLASS CLAIMS UNDER SECTION 11**
[This memorandum relates to docket entry Nos. 1048 & 1445]

133195 4



## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    Plaintiffs' Motion for Class Certification Should Be Denied . . . . . . . . . . . . . . . . . . . . . 2

      A.    <u>Plaintiffs' Lack Standing to Represent the Class They Propose</u> . . . . . . . . . . . . . 2

      B.    <u>Plaintiffs' "Mass Class" of "All Purchasers of Enron Securities" Also Cannot Be Certified Under Rule 23 and Existing Fifth Circuit Law</u> . . . . . . . . . . . . . . . . 5

II.   Use of Subclasses Directed to the Section 11 Claims Ensures That the Representatives <u>Will</u> Have Standing to Pursue Their Claims and That the Requirements of Rule 23 Will Be Met . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    <u>Subclasses Are Required to Ensure the Class Representatives Have Standing</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.    <u>Proper Subclassing Would Insure That Common Issues Predominate</u> . . . . . . . . 14

III.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

133195.4

i

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Bailey v. Patterson*, 369  U.S. 31 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Basch v. Talley Indus.*, 53 F.R.D. 14 (S.D.N.Y. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

*Bell Atlantic Corp. v. A T & T Corp.*, 339 F.3d 294
    (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) . . . . . . . . . . . . . . . 5, 7, 11, 14, 16, 17

*East Texas Motor Freight Sys., Inc. v. Rodriguez*,
    431 U.S. 395 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

*Gabrielson v. BancTexas Group, Inc.*,
    675 F. Supp. 367 (N.D. Tex. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Greater Iowa Corp. v. McLendon*, 378 F.2d 783 (8th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . 3, 11

*In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*,
    49 F.3d 541 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Taxable Mun. Bonds Litig.*, 51 F.3d 518 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 11

*In re U.S. Liquids Secs. Litig.*, No. H-99-2785, 2002 Dist.  LEXIS at *18
    (S.D. Tex. Apr. 29, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 9, 17

*James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

*Krim v. PCOrder.com, et al.*, 210 F.R.D. 581 (W.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 3

*O'Sullivan v. Countrywide Home Loans, Inc.*,
    319 F.3d 732 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 14-17

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Prado-Steinman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    482 F.2d 880 (5th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Steele Co. v. Citizens for a Better Env't.*, 523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## **Statutes and Rules**

15 U.S.C. §77k . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 9-11, 15-17

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 16

## THE OUTSIDE DIRECTORS' AMENDED[1] MEMORANDUM CONCERNING CERTIFICATION OF CLASS CLAIMS UNDER SECTION 11

TO THE HONORABLE MELINDA M. HARMON:

The purpose of this memorandum is to respond to Plaintiffs' motion for class certification as it relates to claims arising under Section 11 of the Securities Act of 1933. *See* 15 U.S.C. §77k. The Outside Director Defendants[23] believe that a separate Section 11 class, with subclasses relating to particular note offerings, can be certified in compliance with Fed. R. Civ. P. 23. The behemoth class proposed by Plaintiffs, however, cannot be certified because:

(a) the class representatives lack standing to pursue the claims they seek to represent;

(b) the class includes claims that have already been dismissed by the Court;

(c) the class is not limited to the time periods dictated by Section 11 and the prior Order of this Court, i.e. the periods <u>after</u> the registration statement for the offering was filed and <u>before</u> a Form 10K was filed by Enron. *See* Memorandum and Order Regarding Enron Outside Director Defendants' (#1269) ("March Order") at 130-32; and

---

[1]The original Memorandum filed October 16, 2003 is amended only to include Outside Director Defendant Frank Savage, inadvertently omitted from the original memorandum.

[2]The Outside Director Defendants are Robert A. Belfer, Norman P. Blake, Jr., Ronnie C. Chan, John H. Duncan, Paulo V. Ferraz Pereira, Joe H. Foy, Wendy L. Gramm, Robert K. Jaedicke, Charles A. LeMaistre, John Mendelsohn, Jerome Meyer, Frank Savage, John A. Urquhart, Charls E. Walker, John Wakeham, and Herbert Winokur, Jr.

[3]Counsel for defendants Richard A. Causey, Kenneth L. Lay, Rebecca Mark-Jusbasche, and Jeffrey K. Skilling have indicated they adopt the arguments set forth in this memorandum.

133195.4

(d) the need to prove reliance under Section 10 is a predominant issue that precludes the certification of those reliance-based claims in a single class with Section 11 claims that do not require proof of reliance.

Accordingly, for the reasons stated in greater detail below, the Outside Director Defendants oppose Plaintiffs Motion for Class Certification as filed and believe that it should be denied. Instead, the Court should order Plaintiffs to re-submit their Class Certification Motion to request certification of tailored classes that conform to Fifth Circuit law and the Court's prior orders. That approach will yield the certification of a pure Section 11 class, with subclasses for each note offering, that can withstand the rigorous scrutiny the Fifth Circuit traditionally applies to motions for class certification.

## I.    Plaintiffs' Motion for Class Certification Should Be Denied

### A.    <u>Plaintiffs' Lack Standing to Represent the Class They Propose</u>

Plaintiffs' Motion for Class Certification seeks the certification of a <u>single</u> class, described as follows:

> [A]ll <u>persons</u> who purchased the publicly traded <u>equity</u> and <u>debt</u> securities of Enron Corporation ("Enron" or the "Company") <u>between October 19, 1998 and November 27, 2001</u> (the "Class Period"), including the publicly traded securities issued by Enron-related entities during the Class Period, the value or repayment of which was dependent on the credit, financial condition, or ability to pay of Enron, <u>and</u> (ii) all states or political subdivisions thereof or state pension plans that purchased from defendants Enron's 6.40% Notes due 7/15/06 or 6.95% Notes due 7/15/28, and that authorize the prosecution of their claim pursuant to the Texas Securities Act (collectively, the "Class.").

*See Newby* Lead Plaintiff's Amended Motion for Class Certification ("Lead Plaintiff's Am. Mot.") at 1.[4] Lead Plaintiff expands this proposed class definition even further, in a footnote, to include:

---

[4]Unless otherwise noted, all emphasis in this memorandum is added.

> all persons who purchased during the Class Period [securities] issued by Enron-related entities as identified in ¶ 641.2 of the First Amended Consolidated Complaint filed in this action on May 14, 2003, including, without limitation, the specific securities listed in n.20 in ¶ 986.

*Id.* at n.1.

This crazy-quilt class is at odds with Plaintiffs' Complaint, which recognizes that the Section 11 claims pertaining to Enron note offerings must be separated into subclasses. *See Newby* First Amended Consolidated Complaint filed May 14, 2003 ("Amended Complaint") at ¶ 1006 (designating a proposed "Class Representative" for each separate note offering). It is also at odds with settled Fifth Circuit and Supreme Court law, which states that "to have standing to sue as a class representative it is essential that a plaintiff must be a part of that class." *In re Taxable Mun. Bonds Litig.*, 51 F.3d 518, 522 (5th Cir. 1995) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)); *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962) (same).

This Court has observed that "standing and class certification must each be addressed on a claim by claim basis." *In re U.S. Liquids Secs. Litig.*, No. H-99-2785, 2002 Dist. LEXIS at *18 (S.D. Tex. Apr. 29, 2002) (citing *Steele Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 105 (1998)). Standing under Section 11 is limited to the purchasers of "such security." 15 U.S.C. §77k. By definition, therefore, the Section 11 representative must have purchased the same security as the class it seeks to represent in order to have "individual standing to raise the legal claims of the class." *Id.* at * 5. The Regents, which bought no debt at all, have no Section 11 claim to pursue and thus cannot be class representatives for Section 11 claims. *See* 15 U.S.C. §77k (affording a claim under Section 11 only to the purchaser of "such security").[5] Purchasers of 7.875% Notes likewise do not

---

[5] *See also Krim v. PCOrder.com, et al.*, 210 F.R.D. 581, 584-87 (W.D. Tex. 2002) (leave to appeal denied by Fifth Circuit on March 18, 2003); *Greater Iowa Corp. v. McLendon*, 378 F.2d 783, 789 (8th Cir. 1967)(plaintiffs who did not purchase securities at issue in 12(2) claim lacked standing

133195.4

have the "same interest" or "suffer the same injury" as purchasers of the 7% Exchangeable Notes, because they bought different securities sold pursuant to different registration statements and offering documents. *See also Basch v. Talley Indus.*, 53 F.R.D. 14, 19 (S.D.N.Y. 1971)("Since none of the named plaintiffs could recover as a member of the Stock Fraud Class alone none can be the representative of such Class"). Nor can purchasers of one class of debt security serve as a Section 11 class representative for those who purchased other forms of debt--because each Section 11 claim is limited to purchasers of "<u>such</u>" security. Similarly, persons who bought 7.375% Notes cannot represent a class of those who purchased Zero Coupon Convertible Notes – an entirely different security – two years later because they lack standing to represent that claim. Plaintiffs' broad request for class certification must, therefore, be rejected as to Section 11.[6]

Plaintiffs' demand for a mass class is particularly perplexing because it is at odds with both their complaint[7] and their prior statements in pleadings to this Court. Plaintiffs' complaint clearly

_____

and "were not entitled to maintain a class action on behalf of" persons who did). "[A] class representative must be part of the class and 'possess the <u>same interest</u> and suffer the <u>same injury</u>' as the class members." *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 404-05 (1977) (citations omitted). *See also James v. City of Dallas*, 254 F.3d 551, 562 (5th Cir. 2001) ("A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court."); *In re Taxable Mun. Bonds Litig.*, 51 F.3d at 522 ("to have standing to sue as a class representative it is essential that a plaintiff must be a part of that class").

[6]Plaintiffs' reliance on *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 49 F.3d 541 (9th Cir. 1995) is misplaced. That the Courts of the Ninth Circuit do not impose a rigorous standing requirement is no basis upon which this Court can depart from the clear Fifth Circuit law requiring that standing be established at the class certification stage. *In re Taxable Mun. Bonds Litig.*, 51 F.3d 518, 521-22 (5th Cir. 1995); *see also In re U.S. Liquids*, 2002 Dist. LEXIS 26714 at *16-18 (requiring the plaintiff to establish standing <u>at class certification</u> on a claim by claim basis).

[7]Plaintiffs originally labeled a section in their Complaint "Sub-Class Representatives," *see* Consolidated Complaint at ¶ 1006, but altered the wording in the Amended Complaint. Regardless, the meaning is clearly the same, especially in light of Plaintiffs' continuing references to "Offering Subclasses." *See* Amended Complaint at ¶¶ 986, 1014-15.

133195.4                                              4

recognizes that subclasses are required under Section 11. *See* Amended Complaint at ¶¶ 986, 1006, 1014-15. Plaintiffs also recognize the Court must address their standing deficiencies and that the appropriate time to do so is at the class certification stage:

> [T]he court has already determined the proper time to address <u>issues of standing is at the class certification stage</u>. *See* August 7, 2002 Order at 6. As the Court stated, "around the time of class certification," the Court "will deal with ...issues [of standing] <u>through the creation of classes or subclasses and with appropriate class representatives having standing to pursue those claims.</u>"

*See* Lead Plaintiff's Memorandum In Opposition to the Bank Defendants' Motions to Dismiss the First Amended Consolidated Complaint at 46 (ellipses and internal quotations in original). Plaintiffs then argued that "the better course may be to entertain an amended complaint setting up separate subsets of the proposed class, rather than simply to dismiss the claim, as the Bank Defendants would have the Court do." *Id.* at 47. Class Certification has arrived. The time to address standing and subclasses is now, rather than later--after the lengthy appellate process that is sure to result from a certification of the over-broad, unmanageable class proposed by Plaintiffs.

## B.   Plaintiffs' "Mass Class" of "All Purchasers of Enron Securities" Also Cannot Be Certified Under Rule 23 and Existing Fifth Circuit Law

Standing is a threshold requirement, but it is not the only requirement that must be met before a class can be certified. The Fifth Circuit also requires a "rigorous analysis of the Rule 23 prerequisites" before a class can be certified.[8] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). Central to that rigorous analysis is a consideration of "how the case will be tried." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003).

---

[8] The general requirements that must be met in order to certify a class under Rule 23 are addressed elsewhere, including, Certain Defendants' Brief in Opposition to Class Certification of Plaintiffs 10(b) and 10b-5 Claims. Rather than repeat those arguments here, we incorporate them by reference as if set forth in full.

133195.4                                     5

Plaintiffs' "mass class" motion falls far short of this mark. It makes no effort to assist the Court in formulating a trial plan--likely because no manageable trial plan can be formed for such a broad, amorphously described "class." Included within Plaintiffs' proposed <u>single</u> class are purchasers of different classes of securities (debt, equity, preferred stock of Enron and "Enron-related" securities), at different times (over a three year period) with different claims for relief (arising under Sections 10, 11 and 12 of the Securities and Securities Exchange Acts, as well as state statutory claims) that encompass different types of proof (some require proof of reliance or scienter, and some do not) and against different parties (Section 12 claims are asserted only against the Bank Defendants; 20A claims are asserted against only certain officer defendants; Section 10 claims against the Outside Directors have been dismissed; and each Section 11 claim pertains to a different note offering, for which there were  different registration statements, different signatories and different defendant underwriters). Also included within this class definition are claims the Court has already dismissed in its prior orders, such as claims under Section 11 by parties who have not plead reliance but are required to do so. *See* March Order at 130.

Plaintiffs' Amended Complaint seemed to recognize the critical nature of the need to form an adequate trial plan, because it identified proposed <u>subclasses</u> for each note offering. *See* Amended Complaint at ¶¶ 986, 1006, 1014-15. Plaintiffs' Motion for Class Certification inexplicably (and erroneously) abandons that approach and argues instead for a "kitchen sink," mass class. However, Plaintiffs' Motion gives the Court no basis upon which to conclude that Plaintiffs' <u>proposed class</u> can be certified. This is apparent if the Court contemplates the following questions relevant to the formulation of an adequate trial plan:

•     If there is a <u>single class</u>, what will the jury interrogatories look like?

133195.4              6

- How will the damages questions be formulated for a class of this breadth? More important, who recovers those damages if the parties who "represent" the claims do not have standing to pursue them?

- How can "the class" recover on Section 11 – when many (if not most) of its members did not purchase registered securities at all?

- How can the Defendants' "due diligence" affirmative defense be submitted properly when, by definition, the facts that were known to them for an offering in 1997 are dramatically different than those known to them for an offering that occurred four years later?

- How can the Outside Directors' proportionate fault defense under Section 11 be submitted properly, on a mass basis, when the officers, directors and underwriters involved in particular offerings differed from offering to offering?

- How can a "mass class" be certified, including claims under Section 10 and Section 11, when plaintiffs asserting the former must prove reliance and scienter and this Court has already dismissed all Section 11 claims requiring proof of reliance and scienter, leaving only Section 11 claims that do not?[9]

In considering "how the case will be tried," *Countrywide*, 319 F.3d at 738, this Court must identify:

> the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class. Although this inquiry does not resolve the case on its merits, it requires that the court look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law."

*Id.*; *see also Castano*, 84 F.3d at 744. Plaintiffs' motion fails when measured against these requirements, because there is no way the massive class they propose could be tried manageably.[10]

---

[9]The Fifth Circuit's decisions in *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996), and, *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir. 1973), make clear that reliance-based claims cannot be consolidated on a class-wide basis with claims, such as the Section 11 claims here, that do not require proof of the predominant, reliance element.

[10]The Court dismissed the Texas Securities Act claims against the Outside Director Defendants in the *Newby* action, *see* March Order at 150, and lead Plaintiff has not repled the TSA Claims against the Outside Directors, *see* Amended Complaint. Although Plaintiffs' Motion for Class Certification proposes that Washington State Investment Board be designated as a class

7

This is not because no class <u>can</u> be certified, but rather because Plaintiffs have failed to apply techniques – including more careful class definition and the use of subclasses – necessary in order to form a class that conforms to Rule 23.

## II.     Use of Subclasses Directed to the Section 11 Claims Ensures That the Representatives <u>Will</u> Have Standing to Pursue Their Claims and That the Requirements of Rule 23 Will Be Met

Although the Outside Director Defendants object to the class Plaintiffs have proposed, these defendants would have no objection to the formation of a separate Section 11 class, with distinct subclasses for each note offering made the basis of Section 11 claims in compliance with Rule 23 and the requirements of Section 11.[11]  Specifically, these Defendants believe that a class can be certified along the following lines:

- •    **Each Note Offering Should Have A Distinct Subclass.**  The Court should create separate classes or subclasses for each note offering, because the proposed class representatives have standing <u>only</u> to represent a class of holders of securities that the

---

representative for the Texas Securities Act claims,  Lead  Plaintiff's Am. Mot. at 1, n.1, the Washington State Board's complaint suffers from the same, fatal deficiencies that plagued the *Newby* Complaint. Motions to Dismiss the WSIB claims, on the same grounds that resulted in the dismissal of the Texas Securities Act claims in *Newby*, are scheduled to be filed shortly.  In the event the Court concludes that those claims can survive, the Outside Directors will file a supplement detailing how-- if at all--those unique, state law causes of action can be dealt with under Rule 23.

[11]So long as the Section 11 claims are separated from those that arise under Section 10 and 12, it is largely a matter of semantics whether the Court certifies a single Section 11 class--with separate subclass representatives for each note offering--or separate classes for each note offering. *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate an action may be brought or maintained as a class action with respect to particular issues, or a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.") The point is, each class must be separated--and separately represented--by note offering in order to ensure that the class (or subclass) conforms to the requirements of Rule 23--including, specifically, the requirement that it be represented by a plaintiff with standing to pursue the claims.

representative actually purchased.[12] *See* 15 U.S.C. §77k (affording a right of action under Section 11 only to "any person acquiring <u>such</u> security"); *see also Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315, 319 (5th Cir. 2002) ("Standing is an inherent prerequisite to the class certification inquiry."). In addition, the alleged misrepresentations in the relevant registration statements differ from offering to offering. Many of the offerings pre-date the misrepresentations at issue in the complaint itself.[13] As a result, while claims by purchasers of the same notes share common questions that predominate, claims by purchasers of different notes raise different misrepresentations and common questions do not predominate across the note offerings.

- **The Zero Coupon Convertible Note Class Or Subclass Definition Should Be Limited To Include Only Purchasers *After* The Registered Offering.** For the Zero Coupon Convertible Notes, which originated as a Rule 144A private placement that was subsequently registered, the Court has ruled that the Section 11 claims are limited <u>only</u> to those persons who purchased in the registered offering. *See* March Order at 132. Claimants who purchased in the 144A private placement therefore lack standing to pursue a Section 11 claim and cannot be included among a class of

---

[12]As this Court has found: "It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class." *In re U.S. Liquids Secs. Litig.*, 2002 U.S. Dist. LEXIS 26714, at *16 (quoting *Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)).

[13] *See, e.g.,* Washington State Board Allegations concerning offerings in 1997. Washington State Investment Board Complaint, C.A. H-02-3401, at ¶ 1. These offerings occurred before transactions that were ultimately the subject of the Restatement at issue in the Section 11 claims.

Section 11 claimants.[14]  Accordingly, the subclass for the zero coupon convertible notes should be limited in accordance with the Court's prior order to only those persons who purchased those notes issued pursuant to the Registration Statement that was filed on July 18, 2001.  *See* Amended Complaint at ¶ 1006.

- **Each Note Class Definition Should Be Limited To Include Only Purchases Prior To The Filing Of A Form 10K.**  The Court has also dismissed Section 11 claims on behalf of persons who purchased after the filing of a cumulative Form 10K, "because Lead Plaintiff has failed to plead reliance by any of these parties." *See* March Order at 130.  *See also* 15 U.S.C. §77k(a) (requiring proof of reliance by persons who purchased after the issuer has made available an earnings statement covering a period of at least twelve months beginning after the effective date of the registration statement).  Accordingly, the Section 11 claims for each note offering class should be limited to persons who purchased notes after the registration statement and before the filing of a cumulative Form 10-K.  *Id.*

Designation of Section 11 subclasses in this fashion will ensure that the Court is able to form a judgment that awards damages, if any, only to those parties who have standing to proceed on the Section 11 claims.

### A.    Subclasses Are Required to Ensure the Class Representatives Have Standing

There is no question that class certification in *Newby* requires subclasses that correspond to the securities at issue.  "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight Sys., Inc. v.*

---

[14]  The sole claim available to purchasers in the 144A private placement is under Section 10.

*Rodriguez*, 431 U.S. 395, 404-05 (1977) (citations omitted). *See also James v. City of Dallas*, 254 F.3d 551, 562 (5th Cir. 2001) ("'A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court.'"); *In re Taxable Mun. Bonds Litig.*, 51 F.3d at 522 ("to have standing to sue as a class representative it is essential that a plaintiff must be a part of that class"). Section 11 makes clear that a claim exists only for purchasers of "such security." 15 U.S.C. §77k(a). Purchasers of 7.875% Notes do not have the "same interest" or "suffer the same injury" as purchasers of the 7% Exchangeable Notes, because they bought different securities. *See also Basch v. Talley Indus.*, 53 F.R.D. 14, 19 (S.D.N.Y. 1971)("Since none of the named plaintiffs could recover as a member of the Stock Fraud Class alone none can be the representative of such Class").[15] This is a substantive issue that controls the outcome. *See Castano*, 84 F.3d at 744. Without having purchased the individual security at issue in the Section 11 claims, the class representative's claim will necessarily fail. Accordingly, subclasses must be formed in order to ensure that the representatives have standing and that common facts predominate.

The Court should also enforce, in its class certification order, its prior rulings limiting the Section 11 claims to only those parties that can validly pursue them. Thus, the Section 11 subclasses should be limited to those parties who purchased <u>after</u> the registration statement was filed, *see* March Order at 132 (holding that purchasers in a 144A offering have no standing to pursue Section 11 claims) and <u>before</u> a cumulative Form 10K was filed. *See id.* at 130 (dismissing Section 11 claims

---

[15]*See also Greater Iowa Corp. v. McLendon*, 378 F.2d 783, 789 (8th Cir. 1967) (holding that plaintiffs that did not purchase securities at issue in 12(2) claim lacked standing to bring the claim and were "not entitled to maintain a class action on behalf of" persons who did); *Gabrielson v. BancTexas Group, Inc.*, 675 F. Supp. 367, 371 n.3 (N.D. Tex. 1987) (class complaint must be dismissed for lack of standing when proposed representative lacked standing, even if the persons described in the complaint would themselves have standing to sue).

11

by parties who purchased after a cumulative Form 10K was filed because they failed to plead reliance).  Accordingly, phrased properly, the Section 11 subclasses should be formed as follows:

- All purchasers of 7.375% Notes due May 15, 2019 who purchased their notes during the period from May 19, 1999 through and including March 30, 2000.[16]

- All purchasers of 7% Exchangeable Notes due July 31, 2002 who purchased their notes during the period from August 10, 1999 through and including March 30, 2000.

- All purchasers of 8.375% Notes due May 23, 2005 who purchased their notes during the period from May 18, 2000 through and including April 2, 2001.

- All purchasers of 7.875% Notes due June 15, 2003 who purchased their notes during the period from May 18, 2000 through and including April 2, 2001.

- All purchasers of debt securities issued pursuant to a registration statement filed by Enron Corporation on September 12, 1997, *see* Complaint of Washington State Investment Board at ¶ 58, during the period from September 12, 1997 through and including March 31, 1998.

- All purchasers of debt securities issued pursuant to a registration statement filed by Enron Corporation on December 19, 1997, *see* Complaint of Washington State Investment Board at ¶70, during the period from December 19, 1997 through and including March 31, 1998.

---

[16] Each proposed class begins with the filing of the registration statement and ends with the filing of a Form 10K by Enron.

•        All purchasers of Zero Coupon Convertible Notes after July 18, 2001 who

          purchased pursuant to the registration statement.[17]

Finally, in its class certification order, the Court should require the Plaintiffs to substitute

class representatives who actually have standing to pursue the claims they seek to represent.  In

particular, proposed class representative Staro Asset Management has testified that it did <u>not</u>

purchase any of the Zero Coupon Convertible Notes.  Rather, those notes were purchased by three

funds managed by Staro,[18] each of which is actually the record holder of the securities in question.[19]

---

[17] Plaintiffs' concede that the Registration Statement was filed for these notes on July 18, 2001.  The Court has held that 144A purchases prior to that date are not actionable under Section 11.  *See* March Order at 132.

[18]Staro's Investment Analyst testified:

Q.     Is Staro Asset Management the purchaser of the securities here, or is it the funds that you manage?
A.     I believe it's the funds that we manage –
Q.     All right.
A.     – purchase the securities.
Q.     So the record holder of the Enron zero convertible notes and the people whose capital was invested in it are Stark, Shepherd, Reliant?
A.     I believe that's true, yes.
Q.     Not Staro Asset Management?
A.     That is correct.
**Q.     Okay.  As far as you know, Staro Asset Management, LLC, did not purchase for its own account a single zero coupon convertible bond?**
**A.     To the best of my knowledge, I believe that's correct.**

Deposition of Donald Trent Bobbs, September 10, 2003, 85:7-23 (attached as Ex. A) (emphasis added).

[19] Staro's representative also admitted that many of their funds' purchases were derivative purchases where they purchased the "economic risk" represented by the Zero Coupon Notes, but not the notes themselves.  Bobbs Testimony at 135:6-136:17 (Ex. A).  These derivative purchases must be excluded from the Section 11 class--although they are included in the definition proposed above--because the purchase of a derivative is not the purchase of <u>the security</u> issued pursuant to the registration statement as required by Section 11.

This standing issue is not limited to Staro Asset Management.[20]  In fact, the same need to substitute real parties in interest plagues the claims by Amalgamated Bank which is suing in a representative capacity on behalf of other entities that are actually the holders of record of the notes at issue. Although we have no objection to substitution of the real parties in interest for each of these proposed class representatives, it is clear that substitution must occur in order to cure this standing deficiency.[21]

### B.    Proper Subclassing Would Insure That Common Issues Predominate

Entry of an order requiring an appropriate Section 11 class, with subclass representatives who have standing, will avoid the difficulties that led to a reversal of class certification in *Castano* and *Countrywide*.  The District Court that certified the class in *Castano* was criticized because "it was impossible for the court to know whether the common issues would be a 'significant' portion of the individual trials.  The court just assumed that because the common issues would play a part in every trial, they must be significant." *Castano*, 84 F.3d at 745.  Here, the Court need not make such an assumption; it is demonstrably true that the unique defense afforded under Section 11 – the defendants' due diligence – will predominate in <u>every</u> trial of <u>every</u> Section 11 claim.

---

[20]Alliance Capital Management has objected that Staro Asset Management, because it did not purchase the securities at issue, cannot serve as a class representative at all.  We agree with Alliance as to that point, but believe that the Staro-advised funds (Stark, Shepherd and Reliant) -- if they demonstrate purchases <u>pursuant to</u> the registration statement -- are adequate representatives for the Zero Coupon purchaser class because their trading records established that they actually purchased Zero Coupon Convertible Notes after the registration statement was issued. *See* Ex. "141" to Bobbs Deposition, attached as Exhibit "B" to this memorandum.

[21]We recognize that these entities may ultimately offer evidence through the testimony of their advisers (such as Staro Asset Management).  The issue is not how they establish their claim; rather, it is to ensure that the parties representing the class actually have the claim they purport to represent and are properly subject to any defense that is unique to them.

When one considers the trial plan for these claims, *see Countrywide*, it becomes apparent that the existence of alleged misrepresentations in each registration statement and the defendants' due diligence regarding those alleged misstatements are predominant issues in the trial of each individual offering.  Proof that the financial statements included in particular registration statements were allegedly misleading will, in itself, consume a massive amount of trial time in every Section 11 trial were each note claim to be tried individually.  Why?  Because that is the first burden the Section 11 plaintiff must meet; namely, she must prove that there was a material misstatement or omission in a registration statement.  *See* 15 U.S.C. §77k.

The second element of the Section 11 claim, the Defendants' due diligence defense, is also a common and predominant element of every Section 11 trial.  Section 11 provides that a defendant shall not be liable if he sustains his burden to prove that

> he had, after reasonable investigation, reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

15 U.S.C. §77k(b)(3).

For every Section 11 claim on the 7.375% Notes, therefore, the evidence of the directors' diligence will be the same and it will predominate.  Why?  Because the diligence of the directors did not vary as to that particular offering.  More important, the proof of the directors' diligence will, in itself, consume a massive amount of trial time on every Section 11 claim.  It will include evidence establishing that the Board acted with diligence and that Board members were reasonable in relying upon the expert opinions of Arthur Andersen – who (Plaintiffs admit) assured them every year that Enron's financials were "presented fairly in all material respects in accordance with Generally

Accepted Auditing Principles." Amended Complaint at ¶ 899.  The same is true of the due diligence defenses proffered for other defendants who have the same statutory, affirmative defense.  *See* 15 U.S.C. §77k(b)(3) (affording due diligence defense to officers and underwriters).  Accordingly, there is no question that the proof of this unique and class-wide affirmative defense predominates over any individual issues.  *See* Fed. R. Civ. P. 23 (b)(3).

An additional reason to certify a Section 11 class is that it will promote judicial efficiency to try this defense only once.  Trying this affirmative defense on a single occasion will be dispositive of all claims in a class context.  If the defendants prevail on this defense, <u>no</u> Section 11 claim can survive.  In contrast, absent proof of privity or the other elements required to enforce offensive collateral estoppel,[22] a victory on this defense in an individual case simply means that case number 2 – or case number 32 – must now be tried.  For parties with limited insurance coverage, and for whom the issues will in all senses be identical for every single Section 11 claim, this is hardly efficient.

This case also differs in important respects from *Castano* and *Countrywide*, in which the District Court decisions granting class certification were reversed by the Fifth Circuit.  Unlike in *Castano*, individual reliance is <u>not</u> an issue under these Section 11 claims.  All reliance-based Section 11 claims have been dismissed.  *See* March Order at 130-32.  There is therefore no risk here that reliance – an otherwise individual issue – will swamp the predominant common issues raised by the Section 11 claims.  In contrast to *Countrywide*, Section 11 is not a claim on which individual calculations of damages will swamp the efficiencies to be gained from class certification.  While the calculation of damages under Section 11 is individual, in the sense that it requires proof of purchase

---

[22] *See generally, Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979).

price and sales price by each plaintiff, 15 U.S.C. §77k, it is in every sense formulaic. *See Bell Atlantic Corp. v. A T & T Corp.*, 339 F.3d 294, 306-07 (5th Cir. 2003)(recognizing that courts have certified classes where damages vary, so long as they are "susceptible to a mathematical or formulaic calculation.")  The jury considering the Section 11 claims need not determine what the "true value" of Enron stock was at any particular point in time; rather, the calculation of damages is a purely arithmetic function. *See* 15 U.S.C. §77k(e).[23]  In sum, unlike in *Countrywide* and *Castano*, common questions here are predominant and massive efficiencies will be gained from trying these Section 11 claims only once--because only one trial is needed to resolve all predominant questions. Accordingly, with the use of appropriate subclasses, this Court can and should certify Plaintiffs' Section 11 claims and the related control person claims under Section 15.

## III.   Conclusion

For the reasons stated, Plaintiffs' Motion for Class Certification should be denied.  As in *In re U.S. Liquids*, however, this Court should direct Plaintiff to re-file its motion for class certification

---

[23]Under Section 11, the arithmetic calculation of damages is statutorily defined as:

the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought: *Provided,* That if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable.

15 U.S.C. §77k(e).

to seek the certification of a separate, Section 11 class with appropriate subclasses that conform to this Court's March Order and to governing Fifth Circuit law.  Specifically, no class should be certified unless a separate Section 11 class is formed, with the following subclasses represented by a plaintiff with standing:

(1)     All purchasers of 7.375% Notes due May 15, 2019 who purchased their notes during the period from May 19, 1999 though and including March 30, 2000;

(2)     All purchasers of 7% Exchangeable Notes due July 31, 2002 who purchased their notes during the period from August 10, 1999 through and including March 30, 2000;

(3)     All purchasers of 8.375% Notes due May 23, 2005 who purchased their notes during the period from May 18, 2000 through and including April 2, 2001;

(4)     All purchasers of 7.875% Notes due June 15, 2003 who purchased their notes during the period from May 18, 2000 through and including April 2, 2001;

(5)     All purchasers of debt securities issued pursuant to a registration statement filed by Enron Corporation on September 12, 1997, *see* Complaint of Washington State Investment Board at ¶ 58, during the period from September 12, 1997 through and including March 31, 1998;

(6)     All purchasers of debt securities issued pursuant to a registration statement filed by Enron Corporation on December 19, 1997, *see* Complaint of Washington State Investment Board at ¶70, during the period from December 19, 1997 through and including March 31, 1998; and

(7)     All purchasers of Zero Coupon Convertible Notes after July 18, 2001 who purchased pursuant to the registration statement.

Dated: October 23, 2003

Respectfully submitted,

GIBBS & BRUNS, L.L.P.

By:  Robin C. Gibbs w/permission AKF

**Robin C. Gibbs**
Federal I.D. No. 4790
T.B.A. No. 07853000
ATTORNEY IN CHARGE
Kathy D. Patrick
T.B.A. No. 15581400
Jean C. Frizzell
T.B.A. No. 07484650
Aundrea K. Frieden
T.B.A. No. 24034468
1100 Louisiana, Suite 5300
Houston, Texas  77002
Telephone: (713)650-8805
Facsimile: (713)750-0903

ATTORNEYS FOR DEFENDANTS ROBERT A. BELFER, NORMAN P. BLAKE, JR., RONNIE C. CHAN, JOHN H. DUNCAN, JOE H. FOY, WENDY L. GRAMM, ROBERT K. JAEDICKE, CHARLES A. LEMAISTRE, JOHN MENDELSOHN, JEROME MEYER, FRANK SAVAGE, CHARLES E. WALKER, JOHN WAKEHAM, AND HERBERT WINOKUR, JR.

Respectfully submitted,

**GOLDEN & OWENS, L.L.P.**

By: *H. Bruce Golden w/permission AVF*

    **H. Bruce Golden**
    Federal I.D. No. 8314
    T.B.A. No. 08081500
    ATTORNEY IN CHARGE
    Randall C. Owens
    Federal I.D. No. 10406
    State Bar No. 15380700
    Joe B. Gulley III
    Federal I.D. No. 34697
    State Bar No. 24032382
    1221 McKinney Street, Suite 3150
    Houston, Texas 77010
    Telephone: (713) 223-2600
    Facsimile: (713) 223-5002
    **ATTORNEYS FOR DEFENDANT JOHN A. URQUHART**

133195.4

20

Respectfully submitted,

MILLER & CHEVALIER, CHARTERED

By: _Mark J. Rochan with permission AKF_

**Mark J. Rochon**
ATTORNEY IN CHARGE
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005-5701
Telephone (202)626-6090
Telecopier: (202)628-0858
         and
**HOWREY SIMON ARNOLD & WHITE**
W. Neil Eggleston
Dimitri J. Nionakis
OF COUNSEL
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone: (202)383-7133
Telecopier: (202)383-6610
**ATTORNEYS FOR DEFENDANT PAULO V.
FERRAZ PEREIRA**

133195 4

21

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served by sending a copy via electronic posting to www.ESL3624.com on this 23rd day of October, 2003.


Aundrea K. Frieden

The Exhibit(s) May

Be Viewed in the

Office of the Clerk