IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Enron Corporation Securities, Derivative & "ERISA" Litigation | § § § § | MDL-1446 |
| MARK NEWBY, ET AL., | § § | |
| Plaintiffs | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3624 CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § § | |
| Defendants | § | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., Individually and On Behalf of All Others Similarly Situated, | § § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | |
| KENNETH L. LAY, et al., | § § | |
| Defendants. | § § | |

**OPINION AND ORDER**

Pending before the Court in the above referenced cause is the Texas State Board of Public Accountancy's ("the Board's") motion to intervene (instrument #3173) under Federal Rule of Civil Procedure 24(b)(2)(permissive intervention)[1] to gain access to the

---

[1] Rule 24(b)(2) provides in relevant part,

Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the

parties' ESL website and to depositions and related exhibits.  The Board, which is charged with licensing and disciplining Texas Certified Public Accounts and with promulgating accounting rules,[2] is investigating alleged audit failures that may have led to Enron's collapse to determine whether any Texas accountant licensees violated the Public Accountancy Act or the Board's rules and thus has questions of fact and law in common with some discovery in this litigation.  The Board maintains that it does not seek to participate in the discovery process and therefore its intervention will not cause prejudice or delay to the parties. Moreover, intervention would serve judicial economy since the Board is statutorily authorized to subpoena depositions from each accountant or request copies of their depositions.[3]  Moreover some accountants have refused to provide such copies, based on the Court's confidentiality orders, so intervention would avoid the filing of additional motions to obtain such materials. Alternatively, if the Court denies the motion to intervene, the Board asks the Court to modify its orders to allow the Board access to the ESL website, depositions and related exhibits.

Two parties have filed responses.

---

statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action.  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

[2] Tex. Occ. Code § 901.151 (Vernon 2004).

[3] Tex. Occ. Code § 901.166; 22 Tex. Admin. Code § 501.93 (West 2004).

Vinson & Elkins L.L.P. has stated that it takes no position on the motion to intervene but asks the Court to order the Board to comply with the Court's July 2, 2004 Confidentiality Order for Deposition Testimony and Exhibits (#2247) and all subsequent orders granting confidential treatment to specified exhibits and testimony.   #3246.

Arthur Andersen LLP objects for several reasons.  First it argues that the Board does not meet the Fifth Circuit's test for permissive intervention under *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525-26 (5th Cir. 1994)(holding that where "[t]he only purpose of the attempted intervention was to gain access to documents and testimony that are subject to [a] protective order," there was no "justiciable controversy or claim, absent some underlying right creating standing for movants. . . . Intervention generally is not appropriate where the applicant can protect its interests and/or recover on its claims through some other means."), *cert. denied*, 513 U.S. 1014 (1994),[4] because its purpose, i.e., solely to obtain discovery, is not a proper ground for intervention.  Second, argues Arthur Andersen, the Board is circumventing discovery procedures established for it under the Public Accountancy Act, while permitting intervention would provide the Board access to information beyond the scope

---

[4] In *Deus* the Fifth Circuit observed that the purpose of Rule 24(b) is "to prevent multiple lawsuits where common questions of law or fact are involved but is not intended to allow the creation of whole new suits by the intervernors."  15 F.3d at 525.  Here the Board does not seek to create a whole new suit by its intervention, but for pragmatic reasons to preserve judicial economy by sharing discovery materials that overlap with its own investigation of Enron's auditing.

established by the Texas Legislature.  Moreover Arthur Andersen
points out that under section 901 of the Act, the Board is
authorized to seek enforcement of its discovery requests in Texas
state court, not in federal court, and that permitting
intervention would improperly "deprive Texas state courts of
matters that are properly subject to their supervision."  Third,
the Board seeks discovery far beyond that in which it has a
legitimate interest, i.e., all information posted to the ESL
website by all parties to the litigation and all depositions of
all parties, witnesses and third-parties, most of whom are not
accountants, while its "overbroad" request would prejudice
nonparty deponents, who have no notice because they do not have
access to the ESL website, by depriving them of the opportunity to
challenge it.  Andersen notes that the presumption of public
access does not apply to pretrial discovery materials.  *Sec. &
Exchange Comm'n*, 273 F.3d 222, 232 (2d Cir. 2001).[5]  Last, the

---

[5] This Court agrees.  There is a common law right of public
access to judicial documents that predates the Constitution,
although various Circuit Courts of Appeals define "judicial
document" differently.  *Nixon v. Warner Communications, Inc.*, 435
U.S. 589, 597-98 (1978); *Belo Broadcasting Corp. v. United* States,
654 F.2d 423, 429 (5th Cir. 1981); *United States v. Amodeo*, 44 F.3d
141, 145  (2d Cir. 1995)(and cases cited therein).   The Third
Circuit requires that the document have been filed with the court.
*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 782 (3d Cir. 1994).
The First Circuit uses the term for documents that have a role in
the adjudication process, that have been utilized in the approval
process and submitted to the court in the course of that process,
such as summary judgment evidence;  it would not include pretrial
discovery.  *FTC v. Standard Financial Management Corp.*, 830 F.2d
404 (1st Cir. 1987); *in accord Amodeo*, 44 F.3d at 145 ("We think
that the item must be relevant to the performance in the judicial
process in order for it to be designated a judicial document.").
In many Circuits there is a strong presumption in favor of public
access to judicial documents.  *Id. But see Belo*, 654 F.2d at 434
("[T]he presumption--however gauged--in favor of public access to

motion contradicts the Court's standing orders about access to the ESL website and confidentiality of deposition transcripts, as well as the deponents' and the parties' reasonable expectations of confidentiality.[6]   Arthur Andersen cites the standard established in *Martindell v. International Telephone and Telegraph Corp.,* 594 F.2d 291, 296 (2d Cir. 1979), in which the appellate court rejected the government's request, for a grand jury criminal investigation, for access to pretrial depositions transcripts taken in a civil action in which the government was not a party and concluded that access to confidential discovery information should only be allowed where the party seeking to intervene shows "extraordinary circumstance or compelling need"; "a witness should be entitled to rely upon the enforceability of a protective order against any third part[y], including the Government."[7]   *See also*

_____

judicial records-[is] *one* of the interests to be weighed."); *SEC v. Van Waeyenberghe*, 900 F.2d 845, 848 n.4 (5th Cir. 1991)("we have refused to assign a particular weight" to the presumption in favor of the public's common law right of access to judicial records). The documents sought by the Board have not been filed with the Court and not been submitted  relating to motions for review and ruling by the Court.

   [6] Arthur Andersen also complains that the Board  obtained unauthorized and unlawful access to the website in early 2004 until the website administrators discovered that fact and terminated it. The Board responds, with a supporting document, that Plaintiffs' liaison, after being informed by the Attorney General's office that the Board was seeking access to the website, providing the Board with a username and password.  After Arthur Andersen objected to the Board's use of the website and provided the Court's order of July 2, 2004, the Board ceased its use and filed the motion to intervene to obtain court authorization.

   [7] This Court observes that in *Martindell*, the panel considered "public interest in obtaining all relevant evidence required for law enforcement purposes" as favoring allowing the government access to the documents, but concluded that it was outweighed because "'the Government as investigator has awesome powers' which

*Daniels v. City of New York*, 200 F.R.D. 205, 207 (S.D.N.Y. 2001)(*Martindell* places burden on government "to show some extraordinary circumstances or compelling need justifying modifications of a protective order."); *SEC v. TheStreet.com,* 273 F.3d 222, 230, 231 (2d Cir. 2001)("[Protective orders issued under Rule 26(c) serve 'the vital function . . . of 'secur[ing] the just, speedy, and inexpensive determination' of civil disputes . . . by encouraging full disclosure of all evidence that might conceivably be relevant'"; "If protective orders were easily modified . . . parties would be less forthcoming in giving testimony and less willing to settle their disputes"; "It is . . . presumptively unfair for courts to modify protective orders which assure confidentiality upon which the parties have reasonably relied.").

In reply, the Board points out that this Court has previously ruled that the Fifth Circuit, subsequent to its opinion

---

render unnecessary its exploitation of the fruits of private litigation." 594 F.2d at 296.
        Three other appellate courts, the Fourth, Eleventh, and Ninth Circuits, have rejected the *Martindell* standard and adopted a *per se* rule that protective orders cannot shield discovery from grand jury subpoenas. *In re Grand Jury Subpoena*, 836 F.2d 1468 (4th Cir. 1988), *cert. denied*, 487 U.S. 1240 (1988); *In re Grand Jury Proceedings,* 995 F.2d 1013 (11th Cir. 1993); *In re Grand Jury Subpoena*, 62 F.3d 1222, 1224 (9th Cir. 1995). The First Circuit has "chart[ed] a different course" and held, "A grand jury's subpoena trumps a Rule 26(c) protective order unless the person seeking to avoid the subpoena can demonstrate the existence of exceptional circumstances that clearly favor subordinating the subpoena to the protective order." *In re Grand Jury Subpoena*, 138 F.3d 442, 445 (1st Cir. 1998), *cert. denied sub nom. Doakes v. United States*, 524 U.S. 939 (1998),
        Here the situation is distinguishable because the entity, a regulatory agency of state government, is involved in civil, not criminal, enforcement of its rules and regulatory power. Therefore the need for access is less compelling.

in *Deus*, concluded that "standing is not required for permissive intervention." *Newby v. Enron Corp. (In re Enron Corp. Securities, Derivative & "ERISA" Litigation*," No. MDL-1446, CIV. A. H-01-3624, 2004 WL 405886, *23 (S.D. Tex. Feb. 25, 2004)(recognizing a split among the Circuit Courts of Appeals by concluding the court "is bound by the Fifth Circuit's determination that standing is not required for permissive intervention"), *citing Ruiz v. Estelle*, 161 F.3d 814, 832, 830 (5th Cir. 1998)("We find the better reasoning in those cases which hold that Article III does not require intervenors to possess standing"; "Article III does not require intervenors to independently possess standing where the intervention is into a subsisting and continuing Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so."). Furthermore the Fifth Circuit has stated that "intervention is proper 'where no one would be hurt and greater justice could be attained.'" *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 560 (5th Cir. 2003). The Board distinguishes the circumstances here from those in *Deus*, an action brought by an insurance agent against an insurer for breach of an employment contract and for workers' compensation benefits, in which nonparties with no connection to the suit sought to intervene to obtain discovery subject to a protective order. Here, it urges, a regulatory agency is seeking permissive intervention in a massive class action litigation directly involving the individuals it regulates. Moreover the only objector, Arthur Andersen, no

longer holds an accounting license by a licensed certified public
accountant.  No one has demonstrated an overriding property or
privacy interest that should prevail over the Board's need for
access to the discovery process because such concern can be
protected by this Court's confidentiality orders, with which the
Board is willing to comply, and by the Board's confidentiality
statute, Tex. Occ. Code § 901.160.  It contends that those deposed
expect that their depositions will be available to any party in
the case and adding the Board as a party by permitting the
intervention should not be an unfair surprise to anyone.  The
Board points out that Arthur Andersen has not responded to its
argument for judicial economy.  In the same vein it also maintains
that it needs access to the website to learn which individuals
have been deposed and topics on which they were to testify before
it can issue individual subpoenas for transcripts and exhibits.

It is well established that nonparties to a case seeking
access to documents and records under a protective order[8] or under
seal in a civil case may do so by a motion for permissive
intervention under Rule 24(b)(2).  *See, e.g., San Jose Mercury
News, Inc.*, 187 F.3d 1096, 1100 (9th Cir. 1999); *EEOC v. National
Children's Center,* 146 F.3d 1042, 1045 (D.C. Cir. 1998)(and cases

---

[8] "It is well-established that the fruits of pretrial
discovery are, **in the absence of a court order to the contrary**,
presumptively public" [emphasis added by this Court], but Rule
26(c) permits a federal judge to override this presumption upon a
showing of "good cause." *San Jose Mercury News*, 187 F.3d at 1103,
citing *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d
943, 944-45 (7th Cir. 1999); *Public Citizen v. Liggett Group, Inc.*,
858 F.2d 775, 789 (1st Cir. 1988); and *In re Agent Orange Product
Liability Litig.*, 821 F.2d 139, 145-46 (2d Cir. 1987).

cited therein).  "[P]ermissive intervention is an inherently discretionary enterprise," with the district court's decision subject to abuse of discretion review.  *EEOC*, 146 F.3d at 1046.

Normally the would-be intervenor must demonstrate that it has (1) an independent ground for subject matter jurisdiction, (2) a timely motion, and (3) a claim or defense that has a question of law or fact in common with the main action.  *EEOC*, 146 F.3d at 1046.  Some courts have carved out a narrow exception to the first prong where the party seeks intervention for the limited purpose of obtaining access to documents protected by a confidentiality order because the would-be intervenor is merely asking the court to exercise a power it already has, i.e., to modify the confidentiality order, and not to rule on the merits of a claim or defense.  *Id.* at 1047 (and cases cited therein).  The Board clearly shares common questions of law and fact with the original parties in this class action.  No one has objected that the Board's motion is untimely.  Thus the Court finds that the three requirements for permissive intervention have been met.

Rule 24(b) also requires the district court to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b).  The Court sees no reason why the intervention for the limited purpose of access to deposition transcripts and exhibits would unduly delay the litigation.  The key issue instead is possible prejudice.

Arthur Andersen relies on the Second Circuit's somewhat strict and rigid rule.  *TheStreet.com*, 273 F.3d at 229 ("Where

there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need."), *quoting Martindell*, 594 F.2d at 296.  Other Circuits take a more flexible approach.  *EEOC v. Nat'l Children's Center*, 146 F.3d at 1045-46 ("Because of the need for 'an effective mechanism for third-party claims of access to information generated through judicial proceedings' . . . we have expressed a willingness to adopt flexible interpretations of Rule 24 in special circumstances. . . .  Accordingly we hold that third parties may be allowed to permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order."); *San Jose Mercury News*, 187 F.3d at 1103 ("the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public" and where the district court "entered a blanket stipulated protective order pursuant to Rule 26(c)[,] [s]uch blanket orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document").

        The Court recognizes that *Deus v. Allstate Insurance Company* is still good law in the Fifth Circuit, but finds that it can be distinguished from the instant case on its facts.  The intervening party is a governmental agency with broad investigatory powers and resources to obtain the protected

material on its own.  Nevertheless, conservation of judicial and governmental resources point to allowing the Board's intervention to obtain access to the ESL website and to depositions and related exhibits so long as the Board adheres to the Court's July 2, 2004 Confidentiality Order for Deposition Testimony and Exhibits (Instrument #2247) and all subsequent orders granting confidential treatment to specified exhibits and testimony.  Accordingly, the Court

ORDERS that the Texas State Board of Public Accountancy's motion to intervene to gain access to the ESL website and to depositions and related exhibits (#3173) is GRANTED.  It is further

ORDERED that the Texas State Board of Public Accountancy must comply with the Court's July 2, 2004 Confidentiality Order for Deposition Testimony and Exhibits (#2247) and all subsequent orders granting confidential treatment to specified exhibits and testimony.

**SIGNED** at Houston, Texas, this 3rd day of June, 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE