IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Enron Corporation Securities, Derivative & "ERISA" Litigation | § § § § | MDL-1446 |
| MARK NEWBY, ET AL., | § § | |
| Plaintiffs | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3624 CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § § | |
| Defendants | § § | |

## OPINION AND ORDER

Pending before the Court in the above referenced cause is Defendant JPMorgan Chase Bank's motion to reconsider, on statute of limitations grounds, a portion of the Court's April 5, 2004 order[1] denying three Chase Defendants' motion to dismiss,[2] specifically Lead Plaintiff's § 10(b) claim  under the Securities Exchange Act of 1934 (#2095) against JPMorgan Chase Bank.

JPMorgan Chase Bank maintains that it has submitted "definitive evidence" that Plaintiffs were on inquiry notice of facts (i.e., "circumstances that create a duty of inquiry are referred to as 'storm warnings'"[3]) regarding its Mahonia prepay transactions no later than December 22, 2001, over one year before the Amended Complaint was deemed filed by the Court, i.e., on January 14, 2003.  Specifically Defendant points to Andrew Hill's article, *Insurer Claims Enron Contracts Were a Front,* in the December 22, 2001 U.S. edition of the widely disseminated

---

[1]  Instrument #2052.  The motion to dismiss was filed by three entities, J.P. Morgan Chase & Co., J.P. Morgan Securities, Inc., and Movant here, JPMorgan Chase Bank.

[2]  Instrument #1498.

[3]  *Tello v. Dean Witter Reynolds, Inc.*, __ F.3d __, __, No. 03-12545, 2005 WL 1279130 (11th Cir. June 1, 2005), *citing Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir. 2003).

*Financial Times* at 10, Ex. 3 to Appendix (#2096), which identified Mahonia as a special purpose entity registered on the island of Jersey, allegedly functioning as "the energy arm" of JPMorgan Chase Bank's predecessor, The Chase Manhattan Bank, and asserting that the Mahonia prepay transactions were allegedly "a front to obtain security for loans" to Enron.  It also reported that the Mahonia prepays were included in a publicly filed pleading[4] in an action styled *JPMorgan Chase Bank v. Liberty Mutual Ins.*, No. 01 CV 11523 (S.D.N.Y.)("JPMorgan Action"), filed by JPMorgan Chase to force nine insurers to satisfy the surety bonds they wrote to cover any risk of default by Enron on six Mahonia oil and gas forward sales contracts.  At minimum, contends JPMorgan Chase Bank, the article gave notice of facts which, with the exercise of reasonable diligence, would have led to information about the alleged facts of Plaintiffs' claim against JPMorgan Chase.  JPMorgan Chase further emphasizes that its defense is unique because it was involved in publicly disclosed Enron-related litigation, specifically the JPMorgan Action, in December 2001.

In opposition, Lead Plaintiff points to national news sources like *USA Today* and the *Wall Street Journal* that demonstrate the lack of information about the Bank Defendants' conduct in the vast and complex Enron scheme, which made it highly unlikely that an investor of ordinary intelligence would suspect any JP Morgan Defendant, no less Movant, was involved. Lead Plaintiff charges that JPMorgan Chase Bank argues notice by hindsight, based on "discreet disclosures in a few random articles and court filings not directly concerning Enron."  It points out that research analysts who participated in JP Morgan's analyst call on December 20, 2001 expressed no suspicions of any involvement of the bank in Enron fraud and with examples, argues that no press reports or analysts statements suggested such a possibility before January 14, 2002. Even Andrew Hill's article after that call on the December 21, 2001 *Financial Times* commented that the Mahonia oil and gas "deals were not unusual."  Ex. 8 to Appendix (#2096).

---

[4]  Specifically the Answer, Affirmative Defenses and Counterclaim filed by St. Paul Fire & Marine Ins. Co. on December 20, 2001.

Moreover, argues Lead Plaintiff, the counterclaim in the action filed by JPMorgan against its insurers in New York alleged that JPMorgan Chase defrauded its own insurance companies, not that it was involved in a Ponzi scheme to defraud investors in Enron's publicly traded securities or that Mahonia prepays by acting to falsify Enron financial disclosures.  Instead the counterclaim asserted that the purpose of Mahonia's false representations was to "obtain surety bonds to secure loans."  Lead Plaintiff insists that "ordinary investors are not charged with having to review the universe of court pleadings to prevent a statute of limitations from running."  St. Paul merely alleges that Mahonia misrepresented its intent to actually purchase gas and oil in the prepays and that its representations in the Forward Sales Contracts were materially false; the insurance companies' pleadings "merely indicate[] that Mahonia lied to the Sureties to obtain insurance.  Thus the Answer concerns insurance fraud, not securities fraud."  Furthermore JPMorgan Chase's persistent public denials of these counterclaims "minimized any purported effect other disclosures may have had in causing investors of ordinary intelligence to realize JPMorgan had defrauded them."  Lead Plaintiff also highlights that this Court previously stated that the question whether the plaintiff was aware of sufficient facts to place him on inquiry notice is often inappropriate for resolution on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[5]

---

[5]    *See also Tello*, 2005 WL 1279130 at *7 ("The determination of *when* inquiry notice occurred and *how much* investigation is reasonable for filing suit are necessarily fact-specific to each case.  Accordingly, we have recognized that 'questions of notice and due diligence are particularly suited for a jury's consideration.'"); *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp.2d 804, 846 (S.D. Tex. 2004)("Because deciding when a plaintiff on inquiry notice requires the development of fact, and even then courts may weigh facts differently, the determination is 'often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6)'")(quoting *Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 367 (7th Cir. 1997)).

J.P.Morgan Chase counters that not only is inquiry notice properly resolved on a motion to dismiss where the facts underlying a plaintiff's claim were indisputably known to the public more than a year before the claim was filed, but the "overwhelming balance of case law" supports doing so. *Rahr v. Grant Thorton*, 142 F. Supp. 2d 793, 796 (N.D. Tex. 2000).

This Court observes that JPMorgan Chase has not shown that the facts underlying the claim against it were "indisputably known to the public more than a year before" Plaintiff's Consolidate Complaint was deemed filed.

Calling "specious" Plaintiff's argument that there was only notice of insurance fraud, not securities fraud, JPMorgan Chase replies that the December 22, 2001 publication alleged that "the fact that the Mahonia prepay transactions were a fraud devised by JPMorgan Chase Bank by which loans to Enron were in the 'guise' of forward supply contracts" and that these "accusations triggered the statute of limitations over one year before the Amended Complaint was deemed filed." It is the existence of facts, not the existence of a legal theory such as § 10(b) securities fraud, that triggers the limitations period. The alleged facts are that JPMorgan participated in fraud by providing loans to Enron in the "guise" of forward supply contracts. JPMorgan claims that "virtually all the allegations regarding Mahonia prepay transactions that support Plaintiffs' claim for securities fraud [in the Consolidated Complaint, filed on April 8, 2002,] are taken from the *JPMorgan Chase Bank* Action counterclaim and news articles from December 2001," some even copied verbatim from the counterclaim. The insurers in that action also charged that the prepay transactions were not fulfilled as supply contracts, but were used to secure loans to Enron, at minimum raising the possibility of fraud in connection with Enron's financial disclosures. *See* James Norman, *Latest Enron Battle Pits Big Banks Versus Insurers*, Platt's Oilgram News, at 1-2, Jan. 3, 2002 ("[T]he surety companies say they were lied to by Enron and Chase, claiming the would-be commodity deals were really a sham to obscure $2-bil of unsecured loans. . . . If the insurer counterclaims prove valid, they raise a host of other questions about Enron's already-tarnished accounting methods, and the reporting and compliance activities of one of the country's most prestigious banks."). Ex. 4 to Appendix (#2096). While Lead Plaintiff has argued that JPMorgan Chase "minimized" the effect of the allegations by disclaiming their truth, JPMorgan Chase cites authority that "an act of concealment should not relieve the Plaintiff of his duty to exercise reasonable diligence to discover fraud"[6] and that "a plaintiff's duty

---

[6] *Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1980).

to inquire is not dissipated merely because of a defendant's later refusal to acknowledge or own up to the alleged fraud."[7]

In a surreply Lead Plaintiff responds that its Amended Consolidated Complaint includes distinguishing allegations about the Mahonia prepays, e.g., the idea for them originated with JPMorgan in order to falsify Enron's reported financial results, that JPMorgan secretly controlled the Mahonia SPE in violation of Generally Accepted Accounting Principles, and that they closed transactions at critical periods to meet financial targets; they also described the bank's conduct in participating in the fraudulent scheme in ways not related to the Mahonia transactions. Moreover its allegation that the prepays might "raise a host of other questions about Enron's already tarnished accounting methods" is limited to a single publication prior to January 14, 2002. The test for inquiry notice is whether a reasonable investor of ordinary intelligence exercising reasonable diligence should have discovered sufficient facts to support filing a securities fraud claim.  Lead Plaintiff maintains that the journalist for the Platt's Oilgram News is an expert, not an ordinary reasonable person.  Moreover his article identifies no facts nor expresses any opinion as to whether the bank acted to deceive plaintiff investors, rather than its insurers, to falsify Enron's financial disclosures or even acted with scienter.  Instead it opines that Enron's accounting for the prepays might have been misleading, not that JP Morgan created and structured Mahonia prepays to comply with GAAP for the purpose of falsifying financial disclosures to deceive investors.

After reviewing the briefing and the operative complaint, this Court concurs with Lead Plaintiff that JPMorgan Chase's effort in hindsight to establish sufficient facts, which the Court has considered cumulatively, based on a few articles and a case arising out of JPMorgan's dispute with its insurers over risk insurance for a handful of allegedly sham deals devised to obtain and secure secret loans by Mahonia to Enron prior to January 14, 2002, is insufficient to constitute

---

[7] *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 289 F. Supp.2d 416, 425 (S.D.N.Y. 2003), *citing Slavin v. Morgan Stanley & Co., Inc.*, 791 F. Supp. 327, 331 (D. Mass. 1992)("[Defendant's] denial of wrongdoing should not have deterred this plaintiff from pursuing its inquiry into the matter where the plaintiff was on inquiry notice that it had been defrauded.").

inquiry notice.  These facts relating to a tiny portion of the business of an enormous Fortune Five Hundred corporation are not adequate to lead a reasonable investor in Enron securities to begin investigating the possibility that his legal rights had been infringed.  JPMorgan Chase unpersuasively attempts to inflate the scope of its  suit against the insurers to alert a distinctively different alleged group of victims, about a much more comprehensive scheme with a different purpose.  As for the allegations in the JPMorgan Action, which never went to trial but settled, the Seventh Circuit, noting the heightened pleading standards for federal security violations suits and under Rule 9(b), has equitably opined,

> Inquiry notice . . . must not be construed so broadly that the statute of limitations starts running too soon for the victim of the fraud to be able to bring suit within a year.  The facts constituting such notice must be sufficiently probative of fraud--sufficiently advanced beyond the stage of a mere suspicion, sufficiently confirmed or substantiated--not only to incite the victim to investigate but also to enable him to tie up any loose ends and complete the investigation in time to file a timely suit. . . . But the facts that put the victim of the fraud on notice can fall short of actual proof of fraud.  How short may depend on the victim's access to the information that he will need in order to be able to plead a reasonably well substantiated and adequately particularized case of securities fraud, bearing in mind that before he files suit, he will not have the aid of compulsory process.  The better his access, the less time he needs.

*Fujisawa Pharmaceutical Co. v. Kapoor*, 115 F.3d 1332, 11335 (7th Cir. 1997); *Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 368 (7th Cir. 1997), *quoted for that proposition in Tello*, 2005 WL 1279130 at *8; *Ritchey v. Horner*, 244 F.3d 635, 640-41 (8th Cir. 2001); *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp.2d 804 (S.D. Tex. 2004)(quoting *CDW Computer Centers*).  *See also Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1202 (10th Cir. 1998)("While we recognize there is a strong federal interest in requiring plaintiffs to file suit soon after they are put on notice of their claims, the applicable statute of limitations should not precipitate groundless or premature suits by requiring plaintiffs to file suit before they can discover the exercise of reasonable diligence the necessary facts to support  their claims."); *In re Beef Industry Antitrust Litig.*, 600 F.2d, 1148, 1171 (5th Cir. 1979)("The mere filing of a similar lawsuit, without more, does not necessarily give 'good ground' [for others to file suit] because the suit might well be frivolous or baseless.").

The Court finds that Defendant fails to present sufficient facts to place investors on inquiry notice and to trigger the statute of limitations for securities violations by JPMorgan. The Court observes that "fraud" is an expansive term that can be broadly painted to cover a vast array of substantially varied misconduct and therefore can be exploited to blur the distinctions among kinds of wrongdoing.  Here JPMorgan tries to inflate an insurance fraud suit, far afield from securities fraud, to embrace a Ponzi comprehensive scheme by speculative and vague allegations in a few articles.  The nature of the larger scheme was so complex that even the experts took substantially more than a year to understand even parts of it.  To dismiss Lead Plaintiff's § 10(b) claims against JPMorgan, for participating in a massive Ponzi scheme and aiding the manipulation of Enron financial disclosure statements to lure in investors, based on JPMorgan's suit against its insurers for their refusal to honor their surety bonds or on their insurers' counterclaims would be supremely inequitable.

Accordingly, the Court

ORDERS that JPMorgan Chase's motion to reconsider (#2095) is DENIED.

**SIGNED** at Houston, Texas, this 14th day of June, 2005.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE