```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION


In Re Enron Corporation       §
Securities, Derivative &      §        MDL-1446
"ERISA" Litigation            §
_____§
                              §
MARK NEWBY, ET AL.,           §
                              §
          Plaintiffs          §
                              §
VS.                           §    CIVIL ACTION NO. H-01-3624
                              §         CONSOLIDATED CASES
ENRON CORPORATION, ET AL.,    §
                              §
          Defendants          §
```

**OPINION AND ORDER**

Pending before the Court in the above referenced cause is Plaintiffs' motion for reconsideration (instrument #2067), under Federal Rule of Civil Procedure 59, of a portion of the Court's order of April 1, 2004, specifically the dismissal of certain claims in the First Amended Consolidated Complaint against Defendant Canadian Imperial Bank of Commerce only. Order *re* CIBC Defendants' Motions to Dismiss, #2048.[1]

In that order of partial dismissal, the Court dismissed claims under § 11 and § 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77o, and under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), with respect only to the May 1999 Enron Note Offering, against both parent Canadian Imperial Bank of Commerce ("the parent company" or "CIBC") and

---

[1] Plaintiffs do not ask the Court to reconsider its dismissal of CIBC World Markets.

against its subsidiary, CIBC World Markets ("the subsidiary"), on the grounds that these claims were time-barred by the three-year period of repose applicable to such claims.[2]

In their request for reconsideration,[3] Plaintiffs maintain that in the First Consolidated Complaint (#441), filed on April 8, 2002, they asserted claims under § 10(b) and § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and claims under § 11 and § 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77o,[4] against the parent company (in ¶¶ 151, 992-997, and in ¶¶ 1005-1016, respectively), and repeated them in the First Amended Consolidated Complaint (¶¶ 151, 992-997,

---

[2] For equitable reasons explained in #2036 at 66-74, the Court construed Lead Plaintiff's January 14, 2003 letter as a motion for leave to amend its complaint to name as new defendants the subsidiaries of various Bank Defendants and therefore held that the First Amended Consolidated Complaint, though entered on May 14, 2003, was deemed filed timely on January 14, 2003 for purposes of the one-year statute of limitations.
   In contrast to the statute of limitations, the three-year period of repose for § 10(b) and § 11 claims, adopted from § 13 of the 1933 Act, 15 U.S.C. § 77m, is an absolute cut-off, not subject to equitable tolling or equitable estoppel. *Id.; Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991)(holding that section 10(b) claims must be commenced "within one year after the discovery of the facts constituting the violation and within three years after such violation.").

[3] CIBC points out that the same issues raised by Plaintiffs' motion for reconsideration are raised in similar motions filed by Bank of America Corporation (#2086) and by Lehman Brothers (#2079). The Court has previously ruled on the former motion and the latter motion was terminated after Lehman Brothers settled with Plaintiff, but the Court has reviewed the briefing relating to both motions for purposes of Plaintiffs' instant motion for reconsideration.

[4] As this Court has noted in other orders, because "section 20(a) [of the Exchange Act of 1934] is an analogue of section 15" of the Securities Act of 1933, the term "controlling person" is given the same interpretation under both statutes. *Pharo v. Smith*, 621 F.2d 656, 672-73, *aff'd in part and remanded in part on other grounds*, 625 F.2d 1226 (5th Cir. 1980).

1005-1016), filed on May 14, 2003 (#1338). Thus, Plaintiffs argue, under Federal Rule of Civil Procedure 15(c), the claims in the First Amended Consolidated Complaint against the parent "relate back" to those timely asserted in the original Consolidated Complaint. Moreover, before the Amended Consolidated Complaint was filed, in its order of December 20, 2002 (#1194) the Court denied CIBC's motion to dismiss the primary and derivative claims against the parent company in the First Consolidated Complaint. Therefore, Plaintiffs urge, the claims against the parent company in the First Amended Consolidated Complaint should not be deemed time-barred.

Furthermore, while Plaintiffs do not seek reconsideration of the dismissal of the time-barred claims against the subsidiary in the First Amended Consolidated Complaint, they do insist that the dismissal of the subsidiary as the primary violator (as underwriter of the Note offering) should not affect the control-person claims against the parent company because a plaintiff can sue a control person even where he does not proceed against the primary violator. *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1170 n.47 (D.C. Cir. 1987). CIBC has argued that the First Consolidated Complaint was ambiguous about whether the § 15 control-person claim was asserted against the parent company; Plaintiffs respond that because the § 11 claim was clearly, although erroneously, pled against the parent (¶ 1006 0f #441), that allegation is sufficient for the § 15 claim, which arises from the same transaction and occurrence, to "relate back." "The fact that an amendment changes the legal theory on which the

action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading." 6A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1497, at 94-95 (1990). *See also Federal Dep. Ins. Corp. v. Bennett*, 898 F.2d 477, 480 (5th Cir. 1990).

In opposition, CIBC responds that the first complaint charged CIBC with acting as underwriter in the 1999 Note offering; it did not allege that CIBC controlled the entity that was actually the underwriter. Moreover, CIBC points out that the underwriters for the May 1999 Note offering were expressly identified on the prospectus for that offering and thus Lead Plaintiff knew or should have known at the time it filed the First Consolidated Complaint to name the subsidiary, not the parent, as the defendant for the § 11 claim relating to that offering. Instead, Lead Plaintiff filed its First Consolidated Complaint suing CIBC as a primary violator of § 11 and § 10(b), despite the fact that the three-year period of repose would shortly expire for asserting claims against additional parties arising from the 1999 Note Offering.[5] Furthermore the First Amended Complaint did not indicate that CIBC was being sued as a control person for any

---

[5] CIBC's motion to dismiss was filed eleven days before the statute of repose expired and argued *inter alia* that Plaintiffs had sued the wrong entity as underwriter, with a copy of the 1999 prospectus identifying the subsidiary as the underwriter. Ex. B to #615. Despite this notice, Plaintiffs did not move for leave to amend to add the subsidiary even though CIBC was not an underwriter of the offering. The inexcusably late addition of that claim against the subsidiary in the Amended Consolidated Complaint was the basis for the Court's determination that it was barred by the statute of repose.

primary violations of § 11 or § 10(b) by the subsidiary. Only in the Amended Consolidated Complaint, filed over a year after expiration of the period of repose, did Lead Plaintiff finally assert that the subsidiary, as the underwriter of the 1999 Note Offering, was primarily liable under § 11, a claim subsequently dismissed as repose-barred by the Court, and that CIBC was liable as a control person of that subsidiary for the 1999 Note Offering, under § 15 of the 1933 Act and § 20(a) of the 1934 Act. #1338, ¶¶ 995.1, 1006, 1013. CIBC maintains that Plaintiffs' "relation back" argument fails regarding what CIBC maintains are factually new primary and control-person claims: (1) a primary violation by the subsidiary as underwriter of the 1999 Note Offering and (2) a control person claim against CIBC regarding the subsidiary's underwriting of that offering.[6] *In re Commonwealth Oil/Texoro Petroleum Corp. Sec. Litig.*, 467 F. Supp. 227, 260 (W.D. Tex. 1979)(concluding § 11 claim did not "relate back" to filing of § 10(b) claim because, *inter alia*, "the difference in the legal base of the claims [was] marked" and defendants "had no notice of the shift in the burden of proof and the elimination of the scienter requirement which section 11 entails.").

---

[6] CIBC argues that not only was there no indication in the First Consolidated Complaint that CIBC was being sued as a control person, but also that such a theory would have been internally inconsistent because CIBC could not function as both underwriter and control person of the underwriter. CIBC also emphasizes that Plaintiffs' response to CIBC's motion to dismiss did not state that they had intended to plead a control person claim against CIBC, but contended that Plaintiffs could show sufficient involvement by CIBC to sue the parent as a primary violator. CIBC argues that its motion to dismiss should have alerted Plaintiffs to cure any ambiguity in the First Consolidated Complaint.

In addition, CIBC insists that Plaintiffs should not be permitted to pursue a derivative control-person claim against the parent when their claims against the controlled subsidiary as the primary violator are barred by the statute of repose as a matter of law. *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 383 (5th Cir. 2004)(It is well settled that control person liability "is secondary only and cannot exist in the absence of a primary violation.").

In reply, Plaintiffs argue that the First Consolidated Complaint did assert control person claims against the parent. It points out that in the Court's May 22, 2003 order denying CIBC's motion for summary judgment on the grounds it was not a proper party (#1932), the Court noted,

> The consolidated complaint defined both Defendants [Bank of America and CIBC] as encompassing the relevant subsidiaries that they now claim are the real parties in interest and thus the proper defendants (Bank of America Securities LLC; and CIBC Capital Corporation, CIBC Oppenheimer Corporation, and CIBC World Markets Corporation). Those theories are applicable to the federal statutes regulating the sale and purchase of securities, require fact-intensive inquiries generally inappropriate for summary judgment, and do not require piercing the corporate veil: control person liability under § 15 of the 1933 Act and § 20(a) of the 1934 Act; enterprise liability; and common-law agency principles.  Lead Plaintiff also underlines a number of admissions by these Defendants and presents some evidence, both of which raise issues of fact about the control exerted by the parent company over the subsidiaries.

#1392 at 2.  The First Consolidated Complaint included these allegations:  paragraph 103 states, "Defendant Canadian Imperial

Bank of Commerce is a large integrated financial services institution that through its controlled subsidiaries and divisions (such as CIBC Oppenheimer or CIBC World Markets ('collectively 'CIBC'') . . . engaged and participated in the scheme to defraud purchasers of Enron securities . . . ." That complaint sued the Bank Defendants for primary liability under § 10(b) and § 11 and for control person liability under § 20(a) and § 15. ¶¶ 151,992-997, 1005-1016.

Furthermore, insists the parent company, the First Amended Consolidated Complaint continues to assert § 10(b) claims against the parent company. Thus primary liability claims under that statute are not time-barred and should be reinstated. Since it is well established that the primary violator need not be made a party to a suit in order to sue the control person under §§ 15 and/or 20(a), Lead Plaintiff's claim against the parent company should also be reinstated.

The Court has reviewed the relevant pleadings and orders in the record.

Because the 1999 prospectus identified the subsidiary as an underwriter of the 1999 Note Offering and did not list the parent as one, Lead Plaintiff knew or should have known when it filed the First Consolidated Complaint to name the subsidiary as the underwriter and primary violator under both § 10(b) and § 11 for that underwriting conduct; instead the First Consolidated Complaint expressly identified the parent as underwriter. Thus the Court reaffirms that the addition of that § 11 claim against the subsidiary in the amended complaint was barred by the statute

of repose.  Lead Plaintiff has not requested reconsideration of this determination.  Furthermore, by expressly identifying the subsidiary as the underwriter of the 1999 Note offering and allegedly the primary violator of § 11, the Court finds that the amended pleading implicitly nullifies any portion of the § 10(b) claim against the parent based on that same conduct as underwriter in the First Consolidated Complaint and that it therefore should not be reinstated.  Nevertheless Lead Plaintiff clearly continues to assert § 10(b) primary violator claims against CIBC, which always included conduct more extensive than its role as an underwriter of the 1999 Note Offering and which reached a variety of activities in the alleged fraudulent Ponzi scheme.  Those non-underwriter claims under § 10(b) against CIBC should be reinstated.

The controlling person liability claims against CIBC under § 15 should also be reinstated.  There are two issues relating the the controlling person claim here:  (1) whether the control person claim against CIBC in the First Amended Consolidated Complaint "relates back" factually to claims in the First Consolidated Complaint because it arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; and (2) whether the control person claim is barred by the statute of repose because the primary violation claim against the subsidiary from which it is derived is so barred.

Under the relevant portion of Federal Rule of Civil Procedure 15(c)(2),

> An amendment of a pleading relates back to the date of the original pleading when . . .
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . .

"The purpose of the rule is accomplished if the initial complaint gives the defendant fair notice that litigation is arising out of a specific factual situation." *Longbottom v. Swaby*, 397 F.2d 45, 48 (5th Cir. 1968); *Johnson v. Crown Enters.*, 398 F.3d 339, 342 (5th Cir. 2005). In a securities fraud action, courts examine whether the allegations "relate to the same statements and/or documents referenced in the original complaint." *See, e.g., Bond Opportunity Fund II, LLC v. Heffernan*, 340 F. Supp.2d 146, 155 (D.R.I. 2004), *citing In re Xchange Inc. Sec. Litig.*, No. CIV. A. 00-10322-RWZ, 2002 WL 1969661, *4 (D. Mass. Aug. 26, 2002)(new claims in amended complaint do not relate back where they relate to registration statements for IPO or Second Offering not mentioned in the original complaint); *In re National Media Sec. Litig.*, No. Civ. A. 93-2977, 1994 WL 649261, *2 (E.D. Pa. Nov. 18, 1994)(amended complaint relates back where new allegations allege misrepresentations relating to the same product line in the same public statements); *Lind v. Vanguard Offset Printers, Inc.*, 857 F. Supp. 1060, 1068-69 (S.D.N.Y. 1994)(second amended complaint relates back because both original and new allegations all involve misrepresentations regarding a stock purchase agreement); *Wells v. HBO & Co.*, 813 F. Supp. 1561, 1566 (N.D. Ga. 1992); *Fry v. UAL Corp.*, No. 90 C 0999, 1992 WL 177086, *16 (N.D. Ill. July 23,

1993). *See also Alpern v. UtilCorp United, Inc.*, 84 F.3d 1525, 1543-44 (8th Cir. 1996)(after original complaint asserted claims under § 10(b), plaintiff amended to allege § 11 claim based on the same misleading financial statements; court found the § 11 claim related back); *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp.2d 804, 841 (S.D. Tex. 2004).

Here the Court finds that both the First Consolidated Complaint and the First Amended Consolidated Complaint assert claims based on the same alleged misrepresentations and omissions in the same registration statement and prospectus covering the debt offering for the May 19, 1999 7.375% Notes; thus the same factual basis was brought, or attempted to be brought, to the attention of these defendants.

Moreover, the First Consolidated Complaint did define Canadian Imperial Bank of Commerce collectively as composed of CIBC and subsidiary entities CIBC Capital Corporation, CIBC Oppenheimer Corporation, and CIBC World Markets Corporation and did embrace, as both primary violators and as controlling persons, all of them because Lead Plaintiff, without an opportunity for discovery, lacked knowledge of the complex corporate structure and interrelationship of these similarly named entities.[7] It alleged control person liability against CIBC over these subsidiaries and

---

[7] Despite a court order, most of the bank defendants did not file, or delayed beyond limitations period the filing of, motions to dismiss related entities as improperly named parties. CIBC did file a motion for summary judgment, in which it argued that it did not engage in any conduct allegedly violating Section 10(b) and Rule 10b-5 and/or Section 11 and that any wrongdoing by its subsidiaries could not be imputed to CIBC. #1357. The Court denied the motion.

divisions.[8]  The Court has previously indicated in numerous orders that there are no heightened pleading requirements for control person liability claims in the Fifth Circuit and that Rule 8's notice pleading standard is more in tune with the legislative history behind § 15.  Therefore the Court finds that Defendants had fair notice of claims arising out of the May 1999 debt instrument and offering, transaction, and occurrence, and that the control person claim against CIBC, based on its control of the subsidiary underwriter and other related entities, in the later complaint relates back to the previous one.

Second, because the § 11 claims against the primary violator are time-barred by the statute of repose, is the derivative § 15 claim against BAC also barred?

Judicial opinions vary about whether a complaint can go forward on a derivative claim against an entity as a controlling person in the absence of a properly pled claim in the same complaint against the primary violator, i.e., whether joinder of the primary violator is necessary for a controlling person claim, or if a primary violation must actually be pled or is that primary violation just an element of proof for a control person claim, or whether a complaint may allege simultaneously a primary violation.

Some courts have dismissed control person claims in the

---

[8] It is the collective definition that undermines CIBC's argument that it was "internally contradictory" for Plaintiffs to have sued the Canadian Imperial Bank of Commerce as both primary violator and controlling person.  Moreover, as noted by Plaintiffs, a claim for liability under §§ 11 and/or 20(a) does not preclude pursuit of alternative corporate liability under common law principles of agency. *Paul F. Newton & Co. v. Texas Commerce Bank*, 630 F.2d 1111 (5th Cir. 1980).

same pleading where they have dismissed the underlying primary violator claims for inadequate pleading of substantive elements, such as scienter for a § 10(b) claim. *See, e.g., PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 696-97 & n.4 (6th Cir. 2004)(complaint must properly plead a predicate primary violation under § 10(b) and Rule 10b-5 to also assert a § 20(a) claim for control person liability); *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004)(affirming dismissal of § 20(a) claims where the complaint alleges no § 10(b) primary violation properly); *City of Phila. v. Flemming Companies, Inc.*, 264 F.3d 1245, 1249 (10th Cir. 2001)("because we find that Plaintiffs have not sufficiently pled a primary violation of [§ 10(b)], we find that Plaintiffs' claims of controlling person liability necessarily fail as well").

As noted many times by the Court in earlier orders, the pleading requirements for § 11 claims are less stringent than for § 10(b) claims and scienter is not required. Moreover, it appears to this Court that such cases can and should be distinguished from those in which the primary claim is barred because it cannot be asserted against the primary violator for reasons other than inadequate pleading of its elements under relevant pleading standards. There are cases in which the primary violator was absent or unavailable, e.g., because it was in bankruptcy or had been dissolved, and the control person claim has been allowed to go forward. *See, e.g., Kemmerer v. Weaver*, 445 F.2d 76, 78-79 (7th Cir. 1971)(even though case dismissed against controlled entity on procedural grounds for lack of personal jurisdiction because

of failure to obtain process, control person may still be sued and held liable); *Briggs v. Sterner*, 529 F. Supp. 1155, 1170-71 (S.D. Iowa 1981)("The court will not permit officers and directors of a bankrupt corporation whose actions are alleged to have contributed to that condition to avoid the possible imposition of liability . . . by asserting the lack of prior adjudication against the controlled person as a basis for dismissal."; "Under circumstances . . . where the primary offender is insolvent or otherwise unavailable, the courts have proceeded to adjudicate the underlying liability of that offender regardless of its presence as a party defendant."). The primary violation would need to be proven, however, as an element of a controlling person claim, even where the primary violator was not joined in the complaint.

There is a line of authority supporting the proposition that a claim against a control person may be asserted without suing a primary violator. *See, e.g., SEC v. Savoy Industries, Inc.*, 587 F.2d 1149, 1170 n. 47 (D.C. Cir. 1978)("It is established that the plaintiff need not proceed against the principal perpetrator, nor need the principal perpetrator be identified in the complaint."); *In re CitiSource, Inc. Sec. Litig.*, 694 F. Supp. 1069, 1077 (S.D.N.Y. 1988)("[T]he liability of the primary violator is simply an element of proof of a section 20(a) claim, and liability need not be actually visited upon a primary violator before a controlling person may be held liable for the primary violator's wrong."); *McCarthy v. Barnett Bank of Polk County*, 750 F. Supp. 1119, 1126-27 (M.D. Fla. 1990)(plaintiffs need not identify the principle perpetrator of

securities violations who were subject to the named defendants' control); *Briggs v. Sterner*, 529 F. Supp. 1155, 1170-71 (S.D. Iowa 1981)("In keeping with the remedial purpose of the securities laws, . . . the court will not permit officers and directors of a bankrupt corporation whose actions are alleged to have contributed to that condition to avoid the possible imposition of liability . . . by asserting the lack of prior adjudication against the controlled person as a basis for dismissal."); *Elliott Graphics, Inc. v. Stein*, 660 F. Supp. 378, 381 (N.D. Ill. 1987)(plaintiff does not have to sue controlled person); *Keys v. Wolfe*, 540 F. Supp. 1054, 1061-62 (N.D. Tex. 1982)(Plaintiffs need not join primary violator in suit against two alleged control persons)(*citing Paul F. Newton & Co. v. Texas Commerce*, 630 F.2d 1111, 1119-20 (5th Cir. 1980)), *rev'd on other grounds*, 709 F.2d 413 (5th Cir. 1983); *Kemmerer*, 445 F.2d at 78-79 (even though case dismissed against controlled entity because of lack of jurisdiction for failure of process, control person may still be sued and held liable).

In light of the purpose of the securities laws to redress wrongs and provide improved remedies for injuries caused by securities violations, this Court concludes that if a plaintiff asserts a timely controlling-person claim in its first complaint and can ultimately prove the elements, it would make no logical sense to conclude that control person claim was time-barred when asserted again in a later complaint merely because the plaintiff asserted an untimely primary violation claim against a new party in the later complaint. The alleged controlling perpetrator

should not be allowed "off the hook" because Plaintiff failed to allege the underlying primary violation against the right party in a timely fashion.

Accordingly, the Court

ORDERS that Plaintiffs' motion for reconsideration, relating to dismissal of certain claims against the parent regarding the May 1999 Enron Note offering is GRANTED. The § 11 claims against the subsidiary remain barred by the statute of repose, as does any § 10(b) claim against the parent based on underwriting activity now acknowledged to have been done by the subsidiary. Control person claims against the parent under § 15 are reinstated.

**SIGNED** at Houston, Texas, this 21st day of June, 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE