IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Enron Corporation Securities, Derivative & "ERISA Litigation | § § § | MDL-1446 |
| | § | |
| MARK NEWBY, ET AL., | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-01-3624 |
| | § | CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § | |
| | § | |
| Defendants | § | |
| AMERICAN NATIONAL INSURANCE COMPANY; AMERICAN NATIONAL INVESTMENT ACCOUNTS, INC; SM&R INVESTMENTS, INC.; AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY; STANDARD LIFE AND ACCIDENT INSURANCE COMPANY; FARM FAMILY LIFE INSURANCE COMPANY; FARM FAMILY CASUALTY INSURANCE COMPANY; AND NATIONAL WESTERN LIFE INSURANCE COMPANY, | § § § § § § § § § § § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. G-02-0299 |
| | § | |
| J.P. MORGAN CHASE AND COMPANY, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is Defendant J.P. Morgan Chase & Co.'s ("JPMorgan Chase's") motion to dismiss (instrument #1029 in H-01-3624) Plaintiffs' First Amended Complaint (#8 in G-02-

0299) pursuant to Federal Rules of Civil Procedure 9(b)[1] and 12(b)(6).[2]

Plaintiffs assert three causes of action under Texas law: (1) common law fraud; (2) statutory fraud under the Texas Business and Commerce Code § 27.01(a)(1)(2002); and (2) securities fraud under the Texas Securities Act, Texas Revised Civil Statute Annotated Article § 581-33(A)-(C)(2002). The First Amended Complaint alleges that, acting for its own financial gain, JPMorgan Chase participated in a scheme designed to allow Enron to "cook its books" and defraud the investing public, including Plaintiffs. It asserts that a series of JPMorgan Chase's year-end transactions with Enron through Mahonia Ltd. were not oil and gas sales contracts or "trades," but sham loans to Enron from Mahonia/JPMorgan Chase, utilized by Enron to manipulate its

---

[1] Rule 9(b) states, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Although the Fifth Circuit has acknowledged that what constitutes particularity under the Rule differs with the facts of each case and a hard standard has not been articulated, the rule does require the plaintiff to allege with specificity the particulars of time, place, and content of false representations, the identity of the person making the false representation, and what that person gained by making it. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 287-88 (5th Cir. 1992), and *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994); *Benchmark Electronics, Inc. v. J.M. Huber Co.*, 343 F.3d 719, 724, *modified on different grounds*, 355 F.3d 356 (5th Cir. 2003).

[2] In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts all well pleaded factual allegations as true and liberally construes the complaint, with all reasonable inferences drawn in a light most favorable to the plaintiff. *Woodard v. Andrus*, ___ F.3d ___, No. 04-30714, 2005 WL 1785386, *2 (5th Cir. July 28, 2005). Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts that would support his claim. *Id.*

misleading annual financial reports and manage its tax liabilities by transferring losses from one financial period to another, thereby defrauding shareholders and investors in Enron securities who relied upon the false financial reports.[3]   JPMorgan Chase is

---

[3] Paragraphs 24-26 of the First Amended Complaint describe how the scheme originated:

> Typically, the transactions would commence with Defendant Morgan paying Enron between $150 million and $250 million, purported for the future delivery of natural gas or crude oil.  This was structured as a trade, not as loan.
> When Enron "delivered" the oil or gas, usually in regular installments of $10 million to $20 million, it was sold back to Enron through complex derivative transactions.  With each so-called "delivery," the losses began again to appear on Enron's ledger.  These "deliveries," however, would resume the following year, allowing Enron to keep the losses in reserve to offset any profits in future years.  In the years that Enron chose not to hide profits, Enron would just roll the losses over again to the next fiscal year—by going back to Defendant Morgan's entity Mahonia and selling it another natural gas or crude oil contract.
> Beginning in 1998, Enron business with Mahonia increased to include trades as large as $650 million (Summer 2000).  At this point Defendant Morgan knew or should have known from the marked increase in trades that Enron no longer sought the funds solely for tax avoidance, but was actively using the arrangement to meet its financing needs.

In the period from 1998-2000, the "trades" became larger and larger.  JPMorgan and Enron entered into six "forward sale" contracts, pursuant to which Enron was to  sell specified amounts of oil and gas to Mahonia, which paid current cash for future deliveries.  Those cash payments, according to the complaint, were sham, "off-the-books" loans to Enron.  According to the complaint, Enron never intended to deliver the crude oil and gas, as evidenced by the fact that it did not enter into contracts with suppliers to hedge its obligations for such deliveries and Mahonia did not enter

also charged with engaging in a fraudulent course of conduct by
failing to disclose its relationship with Mahonia and
misrepresenting in the contracts between Enron and Mahonia that
JPMorgan Chase was merely an agent for Mahonia.  In actuality, the
complaint at ¶ 26 claims that JPMorgan Chase was "in a position of
control and authority over Mahonia," as evidenced by a security
agreement between Mahonia and Chase Manhattan Bank stating that
JPMorgan had a "lien and security interest in the whole of
[Mahonia's] undertaking and assets, present and future."  Enron's
and JPMorgan Chase's fraudulent conduct purportedly resulted in
the misrepresentation of Enron's financial condition on Enron's
books and in its SEC reports.

---

into any contracts with third parties for delivery of the oil and
gas.
        The complaint also asserts that a company related to
Mahonia, Stoneville Aegean Ltd., which shared the same director,
Ian James, was also used by Enron and JPMorgan Chase to further the
common scheme.  First Amended Complaint at ¶¶ 41-43.  Under the
scheme, JPMorgan Chase would buy the purported future deliveries of
oil and gas from Mahonia and sell them back to Enron, or to
Stoneville Aegean, which would in turn sell them back to Enron.
The complaint identifies senior JPMorgan officials Marc Shapiro and
David Pflug as reviewing and approving trades on August 5, 1999.
        The performance by Enron of these "forward sale
contracts" was secured by surety bonds purchased by Enron and
issued to Mahonia.  When Enron filed for bankruptcy and defaulted,
Mahonia demanded payment under the surety bonds.  The eleven
insurers which had provided the bonds refused to pay.  JPMorgan
Chase then sued them in New York federal court, and the insurers
counterclaimed that Mahonia "was a fabrication meant to disguise
loans in the forms of commodity trades and Mahonia was a 'mechanism
to obtain surety bonds to secure loans to be made to Enron in the
guise' of trades."  First Amended Complaint at ¶ 37; *JPMorgan Chase
Bank on behalf of Mahonia Ltd. and Mahonia Natural Gas Ltd. v.
Liberty Mutual Life Ins. Co.*, No. 01 Civ. 11523 (S.D.N.Y.).

- 4 -

The first amended complaint at ¶ 47 also alleges that JPMorgan Chase through the same period "attempted to create a market for or increase sales of Enron stock." Plaintiffs identify a number of dates from 1999-2001 on which they conclusorily assert that unnamed JPMorgan Chase's "institutional and retail advisors around the country issued positive 'buy' ratings on Enron securities," despite JPMorgan Chase's undisclosed knowledge from asserted participation in and control of the Mahonia sham sales, that Enron was misrepresenting its financial condition in annual reports. First Amended Complaint (#8) at ¶ 47. Plaintiffs do not allege that they purchased securities directly from JPMorgan Chase.

JPMorgan Chase urges the Court to dismiss the action because (1) Plaintiffs fail to satisfy Federal Rule of Civil Procedure 9(b)'s requirement that fraud be pleaded with particularity (time, place, contents of false representations, identity of the JPMorgan Chase employee(s) making misrepresentation and what JPMorgan Chase obtained by it, and facts supporting an inference of scienter) with respect to all three causes of action, each sounding in fraud; (2) the pleading, which fails to allege that JPMorgan Chase is the seller of any Enron security purchased by any Plaintiff, or that it controlled a seller, buyer or issuer of any Enron security purchased by any Plaintiff, is insufficient to state a claim under the Texas Securities Act; (3) Plaintiffs' claims for Texas statutory and common law fraud are insufficiently pled and fail as a matter of

law; and (4) Plaintiffs provide no facts to support their allegations that JPMorgan Chase conspired with Enron or is liable as a control person and/or aider and abettor under Texas law or had any duty to disclose facts about Mahonia Ltd. and/or Enron to Plaintiffs.

In response, Plaintiffs object that (1) JPMorgan Chase applies federal substantive law to their Texas state-law claims; (2) JPMorgan Chase fails to address their statutory fraud claim; and (3) JPMorgan Chase fails to address the only section of the Texas Securities Act under which they assert a claim, i.e., aider and abettor liability under Article 581-33(F)(2). Insisting that JPMorgan Chase is applying the wrong standards to their claims, Plaintiffs maintain that the proof required for their state law causes of action differs from that for federal securities claims; specifically § 27.01 of the Texas Business & Commerce Code does not have a scienter element and the Texas Securities Act has a much lower "state of mind" claim than the scienter requirement under federal securities law.

Federal pleading standards apply to Plaintiffs' state law claims here:

> The manner and details of pleading in the federal courts are governed by the Federal Rules of Civil Procedure regardless of the source of substantive law to be applied in the particular action. . . . [It] no longer can be doubted that the rules regarding the standard of specificity to be applied to federal pleadings, the pleading allowed in federal courts, the form of the pleadings, the special requirements for pleading certain matters, the allocation of the burden of pleading among the parties, and the signing

of pleadings by an attorney of record or an unrepresented party, all are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting.

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Civ. 3d* § 1204 (1990 & Supp. 2005). *See FDIC v. Dawson*, 4 F.3d 1303, 1308 (5th Cir. 1993)("[T]he pleading requirements in federal court are governed by Federal Rule of Civil Procedure 8, rather than by state law."), *cert. denied*, 512 U.S. 1205 (1994); *Vess v. CIBA-GEIGY Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)("It is established law, in this circuit and elsewhere, that Rule 9(b)'s requirement that the *circumstances* of fraud must be stated with particularity requirement applies to state-law causes of action,"); *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985); *Minger v. Green*, 239 F.3d 793 (6th Cir. 2001)(Rule 9(b) applies to pleading state law fraud in federal court); *Robert v. Francis*, 128 F.3d 647, 650-51 (8th Cir. 1997). *See also Stephens v. Halliburton Co.*, No. Civ. A. 3:02-CV-1442-L, 2003 WL 22077752, *7 (N.D. Tex. Sept. 5, 2004)(applying Rule 9(b) to Texas state law claims for common law and statutory fraud). Thus Rule 9(b) does apply and requires heightened pleading for fraud-based claims.[4] The Court

---

[4] In contrast to Fed. R. Civ. P. 9(b), under Tex. R. of Civ. P. 47(a)(a petition must contain "a short statement of the cause of action sufficient to give fair notice of the claim involved"),

a pleading is sufficient if it gives notice of the cause of action and facts being alleged so that the opposing party may adequately prepare his defense. . . *Roark v. Allen*, 633 S.W.2d 804, 809-10 (Tex. 1982). . . . [some citations omitted] The actual cause of action and elements do not have to be specified in the

notes that the First Amended Complaint was filed without leave of Court after this case was removed and transferred to this Court and before any pleadings responsive to the original petition were filed, as is permissible under Fed. R. Civ. P. 15(a).

To state a claim for common law fraud under Texas law a plaintiff must allege that the defendant made (1) a material misrepresentation (2) that was false, (3) which, at the time it was made, the defendant either knew was false or made it recklessly without knowledge of its truth, (4) with the intent that it be relied upon, (5) that the misrepresentation was actually and justifiably relied and acted upon by the plaintiff, and (6) that the plaintiff suffered injury. *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 929-30 (Tex. 1996); *Johnson & Higgins, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998); *Ernst & Young, L.L.P. v. Pacific Mutual Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

---

> pleadings; it is sufficient if a cause of action can be reasonably inferred. *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993). In the absence of filed special exceptions, a petition should be liberally construed in favor of the pleader. Our review of the pleadings indicates a fraud cause of action can reasonably be inferred.

*Gaspard v. Readle*, 36 S.W.3d 229, 234 (Tex. App.--Houston [1st Dist.] 2001). Even if an allegation is a legal conclusion, it is sufficient if the allegations as a whole give fair notice to the opponent of the nature of the claims against him. *Stoner v. Thompson*, 578 S.W.2d 679, 684-85 (Tex. 1979); *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988). As long as the cause of action can be inferred from what is specifically alleged in the petition, even if an element is missing, the pleading is adequate. *Wal-Mart Stores, Inc. v. Itz*, 21 S.W.3d 456, 470-71 (Tex. App.-Austin 2000, pet. denied).

Moreover in Texas a fraud cause of action exists where the false representation was made with the intent of reaching and deceiving a third person and thereby caused that third party injury; privity is not required between the fraudfeasor and the person he is trying to influence to establish a fraud claim. *Pacific Mutual*, 51 S.W.3d at 578-80 ("a defendant who acts with knowledge that a result will follow is considered to intend the result," consistent with the standard of the *Restatement (Second) of Torts* § 531 (1977) that the fraudfeasor intend and have "reason to expect" that the third party will act in reliance on the misrepresentation).[5]

_____

[5] The Texas Supreme Court pointed out that the *Restatement* requires more than probability of reliance:

> The *Restatement*'s comments further illustrate the narrow scope of the reason-to-expect standard and foreclose the potential for "unlimited liability" . . . . Even an obvious risk that a misrepresentation might be repeated to a third party is not enough to satisfy the reason-to-expect standard; rather the alleged fraudfeasor must "have information that would lead a reasonable man to conclude that there is *an especial likelihood* that it will reach those persons *and will influence their conduct*." RESTATEMENT (SECOND) OF TORTS[] § 531 cmt. d (1977). . . . It is not enough that a defendant intends or has reason to expect that its representation will reach and be relied upon by one who receives it. The plaintiff must have incurred pecuniary loss "in the type of transaction in which [the maker of the misrepresentation] intends or has reason to expect [his or her] conduct to be influenced. RESTATEMENT (SECOND) OF TORTS § 531A (1977). Though the transaction sued upon need not be identical to that the defendant contemplates, it must have the same essential character.

The Court agrees with JPMorgan that Plaintiffs have not adequately pleaded with requisite Rule 9(b) factual particularity any misrepresentation by JPMorgan Chase or the circumstances, i.e., time, place, contents of a false representation (no less the identity of the JPMorgan Chase employee(s) making a misrepresentation or that any misrepresentation by Defendant was actually and justifiably relied upon by a plaintiff here), nor specifically what JPMorgan Chase obtained by a misrepresentation, as required to state an actionable fraud cause of action against JPMorgan Chase. The only misrepresentations alleged to have been made by Defendant are the vaguely referenced recommendations by its brokers to investors generally to buy Enron securities on the grounds that the company was strong. Furthermore the purported misrepresentations in financial reports by Enron, which is not a party to this suit, are not pled with particularity either. In addition, although reliance is an essential element of both Texas common law fraud and statutory fraud,[6] Plaintiffs have not provided factual allegations demonstrating that they relied upon Enron's financial reports or on JPMorgan Chase's nonspecific recommendations of Enron securities. To demonstrate reliance, a

---

51 S.W.3d at 580. Generalized industry practice, what is commonly "known" or "expected" in the investment community, is not sufficient to show fraudulent intent; the plaintiff must show that the maker of the misrepresentation "*have information* that would lead a reasonable man to conclude that there is *an especial likelihood* that it will reach those person and will influence their conduct." *Id.* at 581.

[6] *SMB Partners, Ltd. v. Osloub*, 4 S.W.3d 368, 371 (Tex. App.–Houston [1st Dist.] 1999), *citing Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 182 (Tex. 1997).

plaintiff suing for fraud must allege and prove that he knew of and was induced by defendant's representations, although those representations need not be the sole reason he entered into the transaction. *Marburger v. Seminole Pipeline Co.*, 957 S.W.2d 82, 86 n.5 (Tex. App.–Houston [14th Dist.] 1991, no writ).

It appears that thus far Texas has not clearly recognized a cause of action for aiding and abetting common law fraud. *Pacific Mutual Life Ins. Co. v. Ernst & Young, L.L.P.*, 10 S.W.3d 798, 809 n.12 (Tex. App.--Dallas 2000)("For purposes of this opinion, we assume, without deciding, that such a claim [for aiding and abetting] may be asserted in Texas, but our decision should not be construed as a holding that such a claim exists in Texas separate and apart from a conspiracy claim."), *reversed on other grounds*, 51 S.W.3d at 583 n.7 (Tex. 2001)("[W]e do not consider whether Texas law recognizes a cause of action for 'aiding and abetting' fraud separate and apart from conspiracy claim."). Plaintiffs here have not asserted a conspiracy cause of action. Even if an independent cause of action for aiding and abetting common law fraud is cognizable, the alleged underlying fraudulent misrepresentation by Enron is not pled with the requisite factual specificity to impose aiding and abetting liability on JPMorgan Chase.

To state a claim for statutory fraud in a corporate stock transaction under Texas Business and Commerce Code § 27.01 (West 2002), a plaintiff must allege essentially the same elements as those for common law fraud, except that there is no requirement

of knowledge or recklessness to recover actual damages. *Robbins v. Capozzi*, 100 S.W.3d 18, 26 (Tex. App.–Tyler 2002, no pet.); *Glazener v. Jansing*, No. 03-02-00796-CV, 2003 WL 22207226, *4 (Tex. App.–Austin Sept. 25, 2003). In addition to imposing liability on a person making misrepresentations, § 27.01 also contains a provision imposing liability for actual and exemplary damages on a person who knows of another's misrepresentation, fails to disclose the falsity to the defrauded person, and benefits from the misrepresentation. Specifically, § 27.01, addressing fraud involving corporate stock transactions, provides in relevant part,

> (a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a
> (1) false representation of a past or existing material fact, when the false representation is
> (A) made to a person for the purpose of inducing that person to enter into a contract; and
> (B) relied on by that person in entering into that contract . . . .
> (b) A person who makes a false representation . . . commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for actual damages.
> (c) A person who makes a false representation . . . with actual awareness of the falsity thereof commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.
> **(d) A person who (1) has actual awareness of the falsity of a representation . . . made by another person and (2) fails to disclose the falsity of the representation . . . to the person defrauded, and (3) benefits from the false representation or promise commits the fraud described in Subsection (a) of this**

- 12 -

> **section and is liable to the person defrauded**
> **for exemplary damages.  Actual awareness may**
> **be inferred where objective manifestations**
> **indicate that a person acted with actual**
> **awareness**. [emphasis added by the Court]

Plaintiffs also assert as another cause of action against JPMorgan Chase a violation of the Texas Securities Act.[7] A claim for secondary liability for another party's securities violation under the Texas Securities Act § 581-33(F)(2) can be based on either (1) control person liability ("[a] person who directly or indirectly controls a seller, buyer, or issuer of a security," or on (2) aider and abettor liability (permitting suit against one "who directly or indirectly with intent to deceive or defraud or with a reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security"). Plaintiffs do not allege that JPMorgan Chase controlled Enron, which issued securities, nor that JPMorgan Chase sold Enron securities directly to Plaintiffs.  Instead they allege that by use and complete control of special entity Mahonia Ltd., JPMorgan knowingly aided and abetted Enron in falsifying its year-end financial reports by devising and carrying out a series of sham transactions, specifically six "forward sales contracts" from 1998-2001, that appeared to be legitimate oil and gas sales transactions which Enron could book as revenue, but which were actually disguised loans, to hide Enron's actual financial condition.  Moreover JPMorgan Chase, although knowing the

---

[7] *See* Court's earlier Memorandum and Order, #1269 at 40-53, especially 50-53, in *Newby*.

financial reports were misleading, allegedly also aided and abetted Enron by simultaneously recommending to the general public in JPMorgan Chase's brokerage houses throughout the country the purchase of Enron securities.

This Court has previously held that to state a claim for aider and abettor liability under article 581-33(F)(2) a plaintiff must show (1) a primary violation of the securities laws, (2) that the aider and abettor has a general awareness of his role in the violation, (3) that he gave substantial assistance in the violation, and (4) that he intended to deceive the plaintiff or acted with reckless disregard for the truth of the primary violator's misrepresentations. *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 235 F. Supp.2d 549, 568 (S.D. Tex. 2002). Enron has not been named as a Defendant, presumably because it was in bankruptcy when this action was filed.[8] This Court has previously held that under such circumstances a claim against the primary violator need not be alleged in the same action as a claim against the secondary violator, although the primary violation will ultimately need to be proved as part of the aiding and abetting claim at trial. #3626 in *Newby*. The Court finds no reason not to apply the same rationale to § 27.01(d) of the Texas Securities Act.

The Texas Securities Act's "history demonstrates that the Legislature intended the TSA to be interpreted in harmony with

---

[8] Plaintiffs are prosecuting another action against Arthur Andersen LLP for its alleged role in the Enron debacle.

federal securities law, and the TSA itself instructs that '[t]his Act may be construed to effectuate its general purpose to maximize coordination with federal and other states' law and administration." *Sterling Trust Co. v. Adderley*, No. 03-1001, 2005 WL 1413154, *4 (Tex. June 17, 2005), *citing* Tex. Rev. Civ. Stat. Ann. art. 581-10-1A (Vernon Supp. 2004-2005).   The high court observed that at the time the aider provision was added to the Texas Securities Act in 1977, "most federal courts considering the issue held that aider liability could be imposed under the federal securities law only when the aider was generally aware of its role in an improper scheme." *Id.*  The Texas Supreme Court has therefore recently held that to establish aider and abettor liability under the Texas Securities Act, the statute requires that the defendant have a general awareness of the primary violator's improper activity and of its own role in the fraudulent scheme.   Id. at *4.  Morever, noting that the statute established different knowledge requirements for sellers, control persons, and aiders, the Texas Supreme Court pointed out that an aider must be a "person" who provides material aid to the primary violator with "intent to deceive or defraud or with reckless disregard of the truth." *Id.* at *6-7.[9]  In turn, the "reckless disregard for truth or law standard" requires that the aider have "rendered assistance 'in the face of a perceived risk' that its assistance would

---

[9] In contrast, to absolve themselves of liability, sellers must show that they lacked knowledge of the "untruth or omission," while a control person must demonstrate that he did not know "the facts by reason of which liability is alleged to exist."  *Id.* at *6, *citing* art. 581033F(2).

facilitate untruthful or illegal activity by the primary violator." *Id.* at *4-5, *relying on Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535-36 (1999)("recklessness in its subjective form [requires] a 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'"). Such a "subjective scienter standard is more demanding that a "should have known standard." *Id.* at *5. Plaintiffs have pleaded that JPMorgan "knew or should have known" that the forward sale contracts were a mechanism for manipulating Enron's financial reports; they will be held to the higher standard of proof of knowledge.

The Texas Supreme Court has further concluded that the statute "does not require the aider to have had direct dealing with the defrauded party; indeed a person who 'materially aids a seller' may have no contact at all with the investors." *Id.* at *5. The Court finds that Plaintiffs here have adequately stated a claim for aiding and abetting liability under article 581-33(F)(2); they have sufficiently alleged facts supporting the claim that JPMorgan Chase materially and knowingly aided Enron in a fraudulent loan scheme that they knew was improper because the purpose of the scheme was to misrepresent Enron's financial condition on its books and in SEC reports, intended to deceive or defraud Enron securities investors and shareholders, who were thereby injured.

On the other hand, the Court concludes that Plaintiffs have failed to state a claim for Texas common law fraud or

violation of Texas Business & Commerce Code § 27.01. They have failed to identify particular misrepresentations by JPMorgan Chase (and their circumstances) with the specificity required by Rule 9(b), they have not alleged facts demonstrating reliance by plaintiffs on such misrepresentations and, if they assert fraud as a failure to disclose information, they have not pled facts demonstrating that JPMorgan Chase had a duty to disclose information about the fraud to Plaintiffs.

> [F]or there to be actionable nondisclosure fraud, there must be a duty to disclose. There are four situations in which a duty to disclose may arise.   There are four situations in which a duty to disclose may arise:  (1) where there is a special or fiduciary relationship; (2) where one voluntarily discloses partial information, but fails to disclose the whole truth; (3) where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; and (4) where one makes a partial disclosure and conveys a false impression.

*Stephens v. Halliburton*, 2003 WL 22077752, at *10, *citing Lesikar v. Rappeport*, 33 S.W.3d 282, 299 (Tex. App.–Texarkana 2000, pet. denied), *citing Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986).

In sum, the Court finds that Plaintiffs have failed to state a claim for common law fraud and a violation of § 27.02 under Texas law.  Leave to amend is within the sound discretion of the court[10] and should be granted freely under Fed. R. Civ. P. 15(a), unless the Court finds denial appropriate based on a

---

[10] *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994).

plaintiff's undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previously allowed amendments, undue prejudice to the opposing party from allowing amendment, and futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States of America ex rel. Adrian v. Regents of the University of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004).  There is no evidence of these problems here.

Thus the Court

ORDERS that the motion to dismiss is GRANTED as to the claims for common law fraud and violation of Texas Business & Commerce Code, but DENIED as to the aider and abettor claim under the Texas Securities Act.  The Court further

ORDERS that Plaintiffs are granted leave to file an amended pleading, if they choose, within twenty days of entry of this order.

**SIGNED** at Houston, Texas, this 13th day of September, 2005.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE