UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re ENRON CORPORATION SECURITIES LITIGATION | § § § | Civil Action No. H-01-3624 **(Consolidated)** |
| | § | CLASS ACTION |
| This Document Relates To: | § | |
| MARK NEWBY, et al., Individually and On Behalf of All Others Similarly Situated, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| ENRON CORP., et al., | § § | |
| Defendants. | § § § | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., Individually and On Behalf of All Others Similarly Situated, | § § § § | Civil Action No. H-02-3401 CLASS ACTION |
| Plaintiffs, | § § | |
| vs. | § § | |
| KENNETH L. LAY, et al., | § § | |
| Defendants. | § § | |

[Caption continued on next page]

**MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENTS WITH CITIGROUP INC., JPMORGAN CHASE & CO., CANADIAN IMPERIAL BANK OF COMMERCE AND MEMORANDUM IN SUPPORT THEREOF**

| | | |
|---|---|---|
| WASHINGTON STATE INVESTMENT BOARD, et al., On Behalf of Themselves and All Others Similarly Situated,<br><br>              Plaintiffs,<br><br>vs.<br><br>KENNETH L. LAY, et al.,<br><br>              Defendants. | § § § § § § § § § § § § | Civil Action No. H-02-3401 |
| CONSECO ANNUITY ASSURANCE COMPANY, Individually and On Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>vs.<br><br>CITIGROUP, INC., et al.,<br><br>              Defendants. | § § § § § § § § § § § § | Civil Action No. H-03-CV-2240 |

**TABLE OF CONTENTS**

                                                                          **Page**

I.    INTRODUCTION ................................................................................1

II.   FACTUAL BACKGROUND OF THIS LITIGATION .......................................3

III.  THE SETTLEMENTS ..........................................................................4

IV.   ARGUMENT ...................................................................................7

      A.    The Proposed Settlements Are Within an Appropriate Range for
            Preliminary Approval..................................................................7

      B.    Consideration of Final Approval Criteria Supports Preliminary Approval ............8

      C.    The Fifth Circuit's Six-Pronged Test of Fairness ..................................10

            1.    There Is No Fraud or Collusion Behind the Settlements ...........................10

            2.    The Stage of the Proceedings and the Amount of Discovery
                  Completed ..................................................................11

            3.    The Probability of Success on the Merits ....................................11

            4.    The Range of Possible Recovery and the Difficulties in Proving
                  Damages.....................................................................12

                  a.    Risks in Proving Damages ............................................12

                  b.    The Settlement Falls Within the Range of Reasonableness...........13

            5.    The Complexity, Expense and Likely Duration of This Litigation ..........14

            6.    The Opinion of Lead Counsel................................................15

      D.    Certification of the Settlement Class Under Federal Rule of Civil
            Procedure 23 Is Appropriate .......................................................16

            1.    The Class Is Sufficiently Numerous .........................................17

            2.    Common Questions of Law or Fact Exist......................................17

            3.    Named Plaintiffs' Claims Are Typical of Those of the Class .................18

            4.    Named Plaintiffs Are More Than Adequate Class Representatives ..........19

            5.    Rule 23(b)(3)'s Requirements Are Satisfied................................19

                  a.    Common Legal and Factual Questions Predominate....................19

**Page**

    b.  A Class Action Is the Superior Means to Adjudicate Plaintiffs' Claims ........................................................................20

  E.  Submission of the Settlements to the Class Is Appropriate ....................................20

V.  CONCLUSION...............................................................................................................21

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ahearn v. Fibreboard Corp.*,
162 F.R.D. 505 (E.D. Tex. 1995) ....................................................................................16

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ..............................................................................................19, 20

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990) ..........................................................................................15

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979) .........................................................................................15

*Clark v. Lomas & Nettleton Fin. Corp.*,
79 F.R.D. 641 (N.D. Tex. 1978),
*vacated on other grounds* 625 F.2d 49 (5th Cir. 1980) .................................................15

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ..........................................................................7, 8, 9, 11

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .........................................................................................13

*Durrett v. John Deere Co.*,
150 F.R.D. 555 (N.D. Tex. 1993) ..................................................................................18

*Eichenholtz v. Brennan*,
52 F.3d 478 (3d Cir. 1995) .............................................................................................7

*Fickinger v. C.I. Planning Corp.*,
646 F. Supp. 622 (E.D. Pa. 1986) .................................................................................13

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
630 F. Supp. 482 (E.D. Pa. 1985) .................................................................................16

*Fla. Trailer & Equip. Co. v. Deal*,
284 F.2d 567 (5th Cir. 1960) ..........................................................................................8

*Hughes Tool Co. v. TransWorld Airlines, Inc.*,
409 U.S. 363 (1973) .....................................................................................................15

*In re Corrugated Container Antitrust Litig*,
643 F.2d 195 (5th Cir. 1981) ........................................................................................11

**Page**

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992) .......................................................................18, 19

*In re Enron Corp. Sec. Litig.*,
    235 F. Supp. 2d 549 (S.D. Tex. 2002) ..............................................................3, 4

*In re Enron Corp. Sec. Litig.*,
    No. 01-3624, 2004 U.S. Dist. LEXIS 7495
    (S.D. Tex. Apr. 6, 2004) ....................................................................................3

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ..........................................................................7

*Jenkins v. Raymark Indus., Inc.*,
    782 F.2d 468 (5th Cir. 1986) ............................................................................17

*Karasik v. Pac. E. Corp.*,
    180 A. 604 (Del. Ch. 1935) ...............................................................................13

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) .........................................................................14

*Longden v. Sunderman*,
    123 F.R.D. 547 (N.D. Tex. 1988) ......................................................................19

*MCI Communs. Corp. v. Am. Tel. & Tel. Co.*,
    708 F.2d 1081 (7th Cir. 1983) ..........................................................................15

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ...........................................................................7, 9

*Manchaca v. Chater*,
    927 F. Supp. 962 (E.D. Tex. 1996) ...............................................................11, 14

*Maywalt v. Parker & Parsley Petroleum Co.*,
    147 F.R.D. 51 (S.D.N.Y. 1993) .........................................................................17

*McNary v. Am. Sav. & Loan Ass'n*,
    76 F.R.D. 644 (N.D. Tex. 1977) ...................................................................10, 13

*Miller v. Republic Nat'l Life Ins. Co.*,
    559 F.2d 426 (5th Cir. 1977) ..............................................................................8

**Page**

*Newby v. Enron Corp.*,
    394 F.3d 296 (5th Cir. 2004) ...............................................................................8

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972).................................................................................13

*Parker v. Anderson*,
    667 F.2d 1204 (5th Cir. 1982) ........................................................................10, 13

*Pearson v. Ecological Sci. Corp.*,
    522 F.2d 171 (5th Cir. 1975) .................................................................................8

*Petiway v. Am. Cast Iron Pipe Co.*,
    576 F.2d 1157 (5th Cir. 1978) ...............................................................................9

*Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*,
    637 F.2d 1014 (5th Cir. 1981) .............................................................................18

*Piper v. Chris-Craft Indus.*,
    430 U.S. 1 (1977)..................................................................................................15

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
    390 U.S. 414 (1968)..............................................................................................14

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ............................................................................9, 10

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997) ...........................................................................15

*Ruiz v McKaskle*,
    724 F.2d 1149 (5th Cir. 1984) ...............................................................................8

*Salinas v. Roadway Express, Inc.*,
    802 F.2d 787 (5th Cir. 1986) ...............................................................................10

*Shelter Realty Corp. v. Allied Maint. Corp.*,
    75 F.R.D. 34 (S.D.N.Y. 1977) .............................................................................20

*Shipes v. Trinity Indus.*,
    987 F.2d 311 (5th Cir. 1993) ...............................................................................18

Page

*Teichler v. DSC Communs. Corp.*,
    No. CA3-85-2005-T, 1988 U.S. Dist. LEXIS 16448
    (N.D. Tex. Apr. 26, 1988)......................................................................................20

*United States v. Texas Educ. Agency*,
    679 F.2d 1104 (5th Cir. 1982) ..............................................................................9

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .................................................................................9

*West Va. v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970)......................................................................15

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910)...............................................................................................8

*Young v. Katz*,
    447 F.2d 431 (5th Cir. 1971) .................................................................................9

*Zeidman v. J. Ray McDermott Co.*,
    651 F.2d 1030 (5th Cir. 1981) .............................................................................17

*Zerkle v. Cleveland-Cliffs Iron Co.*,
    52 F.R.D. 151 (S.D.N.Y. 1971) ..........................................................................14

*Zupnick v. Thompson Parking Partners*,
    No. 89-Civ. 6607 (JSM), 1990 U.S. Dist. LEXIS 9881
    (S.D.N.Y. Aug. 1, 1990) ......................................................................................18

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77k.................................................................................................................13, 20
    §77l(a)(2) ..............................................................................................................13
    §78j(b)..........................................................................................................4, 6, 13

Federal Rules of Civil Procedure
    Rule 23 .....................................................................................................16, 17, 21
    Rule 23(a)................................................................................................16, 18, 19
    Rule 23(a)(2)........................................................................................................17
    Rule 23(b)............................................................................................................16
    Rule 23(b)(3)..................................................................................................19, 20
    Rule 23(e)...............................................................................................................7

**Page**

## SECONDARY AUTHORITIES

*Manual for Complex Litigation (Third),*
    §30.41...............................................................................................................7

*Manual for Complex Litigation (Fourth),*
    §21.632..............................................................................................................2
    §21.633..............................................................................................................7
    §21.634..............................................................................................................8

I.    **INTRODUCTION**

Lead Plaintiff, The Regents of the University of California (the "Regents"), in the actions

entitled *Newby et al. v. Enron Corp. et al.*, No. H-01-3624 (S.D. Tex.); *The Regents of the University*

*of California, et al. v. Kenneth L. Lay, et al.*, No. H-01-3624 (S.D. Tex.); and *Washington State*

*Investment Board, et al. v. Kenneth L. Lay, et al.,* No. H-02-3401 (S.D. Tex.), consolidated in *In re*

*Enron Corporation Securities Litigation*, Civil Action No. H-01-3624 (the "Actions"), by its

undersigned counsel, respectfully submits this memorandum in support of its motion for orders (the

"Notice Orders"), consistent with the Stipulations of Settlement dated January 27, 2006, January 27,

2006, and August 2, 2005 (the "Stipulations"). The Notice Orders will grant preliminary approval of

the proposed settlements of the Actions with Citigroup Inc. and its affiliates and subsidiaries ("the

Citigroup Defendants"), JPMorgan Chase & Co. and its affiliates and subsidiaries ("the JPMorgan

Defendants") and Canadian Imperial Bank of Commerce and its affiliates and subsidiaries ("the

CIBC Defendants") on the terms set forth in the Stipulations. In addition the Notice Orders will (i)

certify the Settlement Class; (ii) approve the form and manner of giving the Settlement Class notice

of the settlements; and (iii) set a hearing for final approval of the settlements. The Actions have

been settled for $6.6 billion as follows: $2.0 billion for the Citigroup Defendants, $2.2 billion for the

JPMorgan Defendants, and $2.4 billion for the CIBC Defendants.[1]

After four years of hard-fought litigation, Lead Plaintiff The Regents and the Citigroup

Defendants, the JPMorgan Defendants, and the CIBC Defendants have reached agreements to settle

the litigations on the terms set forth in the Stipulations, filed concurrently herewith. Each of these

settlements is extraordinary. The CIBC settlement alone is the fourth-largest recovery ever in a

---

[1]    Capitalized terms used herein and not otherwise defined in this Memorandum have the same
meaning as set forth in the Stipulations.

securities class action. The JPMorgan and Citigroup settlements are the fifth and sixth largest securities class action recoveries ever. Taken together the three settlements constitute *the* largest securities class action recovery ever. Lead Plaintiff requests the motion be granted because the settlements, individually and collectively, are an outstanding result for the Settlement Class and because public policy favors settlement of class actions such as the one pending against the settling banks. The settlements easily meet the standards for preliminary and final approval and are fair, reasonable and adequate under the governing standards in this Circuit. We request the Court enter the Orders Preliminarily Approving Settlement at or promptly after a hearing at the Court's earliest convenience.[2]

In determining whether preliminary approval is warranted, the Court considers whether the proposed settlements are within the range of what might be found fair, reasonable and adequate, such that notice of the proposed settlements should be given to Settlement Class members and a hearing should be scheduled to consider final settlement approvals. The Court is not required at this point to make a determination whether the settlements should be finally approved.[3] As stated in the *Manual for Complex Litigation (Fourth)* §21.632 at 320-21 (2004):

> First, counsel submit the proposed terms of the settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions or informal presentations by parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined.

The *Manual for Complex Litigation (Fourth)* describes the preliminary approval criteria as follows:

---

[2]    At this hearing, counsel to the Lead Plaintiff will propose specific dates for a schedule of events leading to a final approval hearing.

[3]    Although the instant motion seeks only preliminary approval, the brief discussion below concerning final settlement approval factors demonstrates the settlements are entitled to both.

> The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). . . . The judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id.* at 321. The proposed settlements with the Citigroup Defendants, the JPMorgan Defendants and the CIBC Defendants meet the foregoing criteria for notice and are well within the range of what may be approved as fair, reasonable and adequate. Accordingly, Lead Plaintiff requests the Court enter an order:

   (1)    preliminarily approving the proposed settlements;

   (2)    certifying a class for settlement purposes;

   (3)    approving the form and program of class notice described in the Stipulations; and

   (4)    scheduling a hearing before the Court to determine whether the proposed settlements should be finally approved.

## II.    FACTUAL BACKGROUND OF THIS LITIGATION

The Court previously is fully familiar with Lead Plaintiff's allegations concerning the facts and circumstances surrounding Enron's collapse. *See, e.g., In re Enron Corp. Sec. Litig.*, 235 F. Supp. 2d 549 (S.D. Tex. 2002); *In re Enron Corp. Sec. Litig.*, No. 01-3624, 2004 U.S. Dist. LEXIS 7495 (S.D. Tex. Apr. 6, 2004). Those allegations are not repeated here.

Class actions resulting from the Enron fraud were commenced over four years ago in October 2001 and were consolidated on December 12, 2001. Lead Plaintiff filed its Consolidated Complaint on April 8, 2002. Later in 2002, Lead Plaintiff sought and obtained permission from this Court and Judge Gonzalez to start obtaining documents from the Enron estate. After the Court finished ruling on the first round of motions to dismiss in spring 2003, Lead Plaintiff filed the First Amended Consolidated Complaint and commenced document discovery against those defendants whose motions to dismiss were denied, including the Citigroup Defendants, the JPMorgan Defendants, and

the CIBC Defendants.   The motions to dismiss by the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants were denied in part and granted in part, allowing Lead Plaintiff to proceed with the bulk of its claims against these defendants.  The parties began taking depositions in June 2004, a process that continued through the close of fact discovery on November 30, 2005.  Additionally, the parties vigorously pursued additional discovery, including responses to interrogatories and requests for admission.

These settlements resolve the Actions against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants, but no other defendant.  Lead Plaintiff alleged the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants participated in a scheme to defraud investors.   When the Court denied these defendants' motions to dismiss the class' claims, it held Lead Plaintiff had alleged specific assertions against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants concerning the structuring and funding of illicit transactions that, if true, would constitute primary violations of §10(b) and give rise to a strong inference of scienter. *Enron*, 235 F. Supp. 2d at 701.  The banks, however, have vigorously defended themselves to date and, absent these settlements, the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants would continue to aggressively dispute liability and damages through trial and appeals.

## III.    THE SETTLEMENTS

The settlements provide for the establishment of settlement funds totaling $6.6 billion for the Settlement Class' benefit.  Standing alone, the CIBC Settlement is the fourth-largest securities class action recovery ever, JPMorgan, the fifth-largest, and Citigroup the sixth-largest.  Combined the three settlements constitute the largest recovery ever for defrauded investors in a securities class action.  The settlements are an exceptional result, achieved only after four years of complex and hard-fought litigation.

After the Court upheld certain claims against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants in 2002, the parties negotiated the Deposition Protocol to begin the onslaught of depositions, which commenced in June 2004. Thereafter the parties engaged in extensive discovery, reviewed and analyzed millions of pages of documents, and participated in hundreds of depositions. Lead Counsel deposed key witnesses from the settling banks, including 27 Citigroup, 27 JPMorgan, and 12 CIBC witnesses who had significant involvement in their Enron-related transactions, or approximately 66 individuals and many hundreds of hours of sworn testimony from the settling defendants. Lead Counsel also reviewed voluminous reports and materials issued by, among others, the Special Investigative Committee of Enron's Board, the Permanent Subcommittee on Investigations, and Enron's Court-appointed bankruptcy examiner, along with the documents made available to these persons. Further, Lead Counsel examined and conducted discovery concerning agreements and settlements entered into between the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants and certain regulatory and enforcement bodies. Lead Counsel also consulted with experts to review and advise on Lead Plaintiff's claims against the Citigroup Defendants, the JPMorgan Defendants, the CIBC Defendants, and the other defendants in the consolidated actions, including the damages counsel would seek to prove at trial.

In late 2004 Brad Karp of Paul, Weiss, Rifkind, Wharton & Garrison LLP, representing the Citigroup Defendants, contacted Bill Lerach concerning settlement. Face-to-face meetings attended by Bill Lerach and others from Lerach Coughlin, Chris Patti, University Counsel for The Regents, and The Honorable J. Lawrence Irving (Ret.), consultant for The Regents, and numerous telephone conversations ensued. The discussions and meetings spanned months, and intensified in May 2005. On June 9, 2005 the parties signed a term sheet for a settlement with the Citigroup Defendants for $2

- 5 -

billion. The settlement with the Citigroup Defendants covers the Conseco Action as well as the Actions, and the named plaintiff in the Conseco Action has agreed to the terms of the settlement.

In April 2005, Bruce Angiolillo of Simpson Thacher & Bartlett LLP ("Simpson Thacher"), counsel for the JPMorgan Defendants, contacted Bill Lerach to explore settlement. Counsel spoke again in May and agreed to schedule a meeting to discuss settlement in New York on Friday, June 10. Discussions commenced on that date attended by knowledgeable and experienced client representatives on behalf of The Regents and the JPMorgan Defendants, including its outside litigation counsel, Simpson Thacher. After days of intense negotiations and face-to-face meetings attended by Bill Lerach, The Honorable J. Lawrence Irving (Ret.), Chris Patti and James Holst, General Counsel and Vice President of Legal Affairs for The Regents, and counsel for the JPMorgan Defendants, the parties executed a term sheet to settle the litigation for $2.2 billion.

Initial settlement discussions in Fall 2004 with the CIBC Defendants were not fruitful. After the Citigroup and JPMorgan settlements were announced, counsel for the CIBC Defendants suggested the parties seek the assistance of a mediator to help resolve the case. The parties arranged for a mediation with Professor Eric Green. Mediation sessions began in July 2005. In attendance for plaintiffs were Bill Lerach and others from Lerach Coughlin, Chris Patti, James Holst and The Honorable J. Lawrence Irving (Ret.). Present for the CIBC Defendants were CIBC's General Counsel, its Director of Litigation, its Chief Administrative Officer and three partners from its outside counsel, Mayer Brown Rowe & Maw LLP. Both liability and damages were vigorously disputed. The CIBC Defendants insisted that even if plaintiffs could prove liability, their true exposure on the class' §10(b) claims was far less than that claimed by plaintiffs and the CIBC Defendants argued other actors were more culpable. The parties also debated CIBC's ability to pay. After days of hard-fought negotiations overseen by Professor Green, and after consideration by the

CIBC Defendants' Board, the parties hammered out an agreement in principle to resolve the claims on behalf of the class for $2.4 billion. The parties executed a term sheet on August 2, 2005.

Each bank's settlement amount began earning interest for the benefit of the class on the day the respective bank's term sheet was signed.

## IV.   ARGUMENT

### A.   The Proposed Settlements Are Within an Appropriate Range for Preliminary Approval

Public policy favors pretrial settlement of complex class action lawsuits. *See, e.g., Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995).

Federal Rule of Civil Procedure 23(e) says before a class action may be dismissed or compromised, notice of the proposed dismissal or compromise must be given in the manner directed by the court and judicial approval must be obtained. "Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing *Manual for Complex Litigation (Third), supra* at §30.41. First, counsel submit the proposed settlement terms and the court undertakes a preliminary evaluation of the settlement's fairness, prior to notice. *Id.* This initial assessment can be made on the basis of information already known to the court which, if necessary, may be supplemented by briefs, motions or an informal presentation from the settling parties. *Id.* Second, the court must finally approve the settlement after notice to the class and an opportunity to be heard by class members has been given.

"Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *NASDAQ*, 176 F.R.D. at 102. *See also Manual for Complex Litigation*

*(Fourth), supra* at §21.633. Preliminary approval permits notice of a hearing for final settlement approval to be given to class members (the second step of the approval process).  At the final settlement hearing, class members and the settling parties may be heard with respect to final approval. *Manual for Complex Litigation (Fourth), supra* at §21.634.

The proposed multi-billion dollar settlements now before the Court were achieved only after serious, informed, arm's-length negotiations between highly experienced counsel.  The settlements fall squarely within the range of reasonableness warranting notice apprising class members of the settlements and establishing a hearing for final approval.

### B.    Consideration of Final Approval Criteria Supports Preliminary Approval

The general standard for final approval of a proposed class action settlement, as repeatedly enunciated by the Fifth Circuit, is whether the proposed settlement is "fair, adequate and reasonable" and has been entered into without collusion between the parties. *Newby v. Enron Corp.*, 394 F.3d 296, 302 (5th Cir. 2004); *Cotton*, 559 F.2d at 1330; *see also Ruiz v McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984) *(per curiam)*.  In applying this standard, the Court must determine whether, in light of the claims and defenses asserted by the parties, the proposed compromise represents a "reasonable evaluation of the risks of litigation." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

It is well settled compromises of disputed claims are favored by the courts. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  The Fifth Circuit has consistently held, as a result of their highly-favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (quoting *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir. 1975)).

Class action and shareholder litigation settlements are "particularly favored" and are not to be lightly rejected. *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331. Concerning class actions, the Fifth Circuit holds, "there is an overriding public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331; *accord Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Thus, in determining whether to approve the settlement, the trial judge is not required to decide the merits of the action or substitute a different view of the merits for that of the parties or counsel. *Maher*, 714 F.2d at 455.

In weighing the benefits obtained by settlement against benefits dependent on the likelihood of recovery on the merits, courts are not expected to balance the scales perfectly. The "trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Cotton*, 559 F.2d at 1330 (citations omitted). The very object of a compromise "is to avoid the determination of sharply contested and dubious issues." *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971) (citations omitted).

Where, as here, experienced counsel have negotiated the settlement at arm's length, a strong initial presumption is created that the compromise is fair and reasonable. *United States v. Texas Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982). The Fifth Circuit recognizes courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Thus, if experienced counsel determine a settlement is in the class' best interests, "the attorney's views must be accorded great weight." *Petiway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

When examined under the applicable criteria, the settlements with the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants are an outstanding result for the class.

- 9 -

**C.      The Fifth Circuit's Six-Pronged Test of Fairness**

Once satisfied counsel adequately represented the class and has bargained for the proposed

settlement in good faith, the "only question" for the Court "is whether the settlement, taken as a

whole, is so unfair on its face as to preclude judicial approval." *McNary v. Am. Sav. & Loan Ass'n*,

76 F.R.D. 644, 649 (N.D. Tex. 1977) (citations omitted).  The Fifth Circuit has established a six-

pronged test to be applied to proposed settlements:

1.      The existence of fraud or collusion behind the settlement;

2.      The stage of the proceedings and the amount of discovery completed;

3.      The probability of plaintiffs' success on the merits;

4.      The range of possible recovery;

5.      The complexity, expense and likely duration of the litigation; and

6.      The opinions of class counsel, class representatives and absent class members.

*Reed*, 703 F.2d at 172; *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Salinas v.*

*Roadway Express, Inc.*, 802 F.2d 787, 789 (5th Cir. 1986).  These settlements easily pass muster

when examined in light of the Fifth Circuit's six criteria.

**1.      There Is No Fraud or Collusion Behind the Settlements**

There is no collusion in the settlements of these Actions.  The settlements were reached only

after extensive and hard-fought negotiations.  The Citigroup and JPMorgan settlements were each

negotiated at arm's length by experienced counsel and party representatives who collectively have

many decades of experience in litigating large, complex securities class actions.   The CIBC

settlement was overseen by Professor Green, a renowned mediator.  Chris Patti and Judge Irving for

The Regents and CIBC's Chief Administrative Officer participated in negotiations and mediation

sessions.  Lead Counsel has many years of experience in litigating securities class actions and has

negotiated myriad class settlements which have been approved by courts throughout the country.

- 10 -

The Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants were each represented by firms with well-deserved reputations for the tenacious defense of class actions and other complex civil matters.  Accordingly, the settlements were each negotiated at arms length by people who are knowledgeable about the strengths and weaknesses of the claims made and the potential defenses to them.  There can be no question the class was fairly and adequately represented in the course of these proceedings.

### 2. The Stage of the Proceedings and the Amount of Discovery Completed

Lead Counsel has reached a stage of knowledge where an intelligent evaluation of the role of the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants in these cases and the propriety of the settlements could be made.  Lead Counsel conducted extensive fact discovery in 2004 and 2005 concerning the settling banks and other defendants, deposed key witnesses, and obtained many hundreds of hours of sworn, videotaped testimony from Citigroup, JPMorgan and CIBC.  Lead Counsel reviewed and analyzed voluminous documents concerning Enron's collapse and the settling defendants' involvement in Enron-related transactions, interviewed scores of witnesses, reviewed numerous reports, and to this day continues to conduct a thorough investigation of the salient facts regarding the Actions.  The parties reached agreements to settle with a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).  No more is required.  And while discovery in these actions has been extensive, a great amount of formal discovery is not a "necessary ticket to the bargaining table." *In re Corrugated Container Antitrust Litig*, 643 F.2d 195, 211 (5th Cir. 1981) (citing *Cotton*, 559 F.2d at 1332).

### 3. The Probability of Success on the Merits

The Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants would contend, among other things, they did not participate in any scheme to defraud, they were misled by

others regarding Enron's financial condition, they conducted a reasonable investigation in connection with the offerings in which they participated and they believed the registration statements for those offerings were accurate. Further, the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants would assert reliance on experts, such as Arthur Andersen, regarding Enron's financial statements. The Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants also would assert that plaintiffs' losses were caused by factors other than their participation in the alleged scheme. And the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants would rely on other numerous defenses they claim are meritorious. Thus, while Lead Plaintiff believes its causes of action against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants are strong, Lead Plaintiff recognizes they are well-represented and the possibility exists that any of the settling entities may convince a jury of its view.

### 4.    The Range of Possible Recovery and the Difficulties in Proving Damages

#### a.    Risks in Proving Damages

The Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants asserted loss causation defenses on the amount of damages, and each would vigorously contest loss causation at trial. The Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants would assert, and rely on experts to help prove, the rise and fall in price of the securities was attributable to something other than conduct for which the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants were responsible.

Lead Plaintiff recognizes that, had this case proceeded to trial, there are risks in proving damages against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants. Therefore, Lead Counsel believes the settlements represent an exceptional result for the class.

### b. The Settlement Falls Within the Range of Reasonableness

Courts agree determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986).

> In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974); *Parker*, 667 F.2d at 1210 n.6; *McNary*, 76 F.R.D. at 650. Similarly, the court held in *Karasik v. Pac. E. Corp.*, 180 A. 604, 609 (Del. Ch. 1935):

> [T]he amount claimed is one hundred million dollars and the amount received in settlement is a minimum of three hundred and eighty-five thousand dollars. Now that is a wide disparity. But it is one thing to assert a claim and another thing to prove the claim to judgment. Furthermore, it is one thing to obtain a judgment, and quite another thing to collect it. Figures, however imposing, should not compel practical considerations to yield place to visions.

At trial the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants would vigorously contest their respective §10(b), §11 and §12(a)(2) liability, and attempt to prove their true exposure was considerably less than the amount of damage suffered by purchasers of Enron securities and, importantly, that other actors are more responsible for investors' losses. In addition, Lead Counsel has taken into consideration the dismissal of the claims asserted in the *WSIB* action, filed on September 9, 2002. Lead Plaintiff firmly believes the $6.6 billion settlement amount is an outstanding recovery for the class. Given the issues with respect to liability and damages, the settlement amount is exceptional.

- 13 -

####      5.      The Complexity, Expense and Likely Duration of This Litigation

Another reason for counsel to recommend, and the courts to approve, a settlement is the complexity, duration and risks of further litigation. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (court must consider "the complexity, expense, and likely duration of such litigation"); *Manchaca*, 927 F. Supp. at 966.[4] Here, several factors are present which make it more likely that, absent settlement, these cases would require additional large expenditures and years of litigation as against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants and there would be a significant risk the class would obtain results far less beneficial than the ones provided by the settlements.

Each of these defendants is represented by counsel who are extremely capable in the defense of complex securities class actions such as these Actions. Since the inception of the litigation, each has denied liability and asserted facially reasonable explanations in response to plaintiffs' allegations.

Trial of these Actions against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants would unquestionably take many months and involve the introduction of hundreds of exhibits dealing with dry financial and accounting matters, vigorously contested motions and the expenditure of millions of dollars in additional out-of-pocket expenses.

Trial would necessarily involve complex issues resulting in conflicting expert testimony, the outcome of which is by no means certain. Thus, if there were further litigation, with respect to any of these defendants, and trial, there is a risk plaintiffs might fail to convince the trier of fact of the

---

[4]      In evaluating proposed settlements of securities class actions, courts have frequently recognized such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) (citing *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)). Accordingly, security class action compromises are particularly appropriate.

merits of the Actions and the Citigroup Defendants, the JPMorgan Defendants, and/or the CIBC Defendants could obtain judgment in their favor.

Any future trial judgment would still be subject to the continuing risks and vicissitudes of litigation, through possible, and likely, appeals. Experience shows even very large judgments, recovered after lengthy litigation and trial, can be completely lost on appeal.[5]

Thus, counsel believe if these Actions were tried through to conclusion rather than settled, there would be a real risk of not obtaining a larger recovery against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants, particularly since any securities case such as this, "by its very nature, is a complex animal." *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).

### 6. The Opinion of Lead Counsel

Lead Counsel, after separate, substantial arm's-length negotiations with senior defense counsel, has concluded that each of the settlements is fair, reasonable and adequate. Here, Lead

---

[5]      As the court noted in *West Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970):

> It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced. Merely by way of example, two instances in this Court may be cited where offers of settlement were rejected by some plaintiffs and were disapproved by this Court. The trial in each case then resulted unfavorably for plaintiffs; in one case they recovered nothing and in the other they recovered less than the amount which had been offered in settlement.

*See, e.g., MCI Communs. Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Hughes Tool Co. v. TransWorld Airlines, Inc.*, 409 U.S. 363 (1973) (reversing treble damage judgment for over $145,000,000 – an action begun in 1961); *Piper v. Chris-Craft Indus.*, 430 U.S. 1 (1977) (reversing Second Circuit's award of damages under Williams Act in amount of $25,793,365 – after eight years of litigation); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (reversing jury verdict on appeal); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict).

Counsel has acquired a thorough understanding of the Actions and submits the settlements are appropriate and should be approved. The view of plaintiffs' counsel, while not conclusive, is "entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ahearn v. Fibreboard Corp.*, 162 F.R.D. 505, 528 (E.D. Tex. 1995).

For the foregoing reasons, the settlements deserve the Court's preliminary, and ultimately final approval.

### D.    Certification of the Settlement Class Under Federal Rule of Civil Procedure 23 Is Appropriate

To proceed with the settlement approval process, it is necessary for the Court to certify a class in the Actions for purposes of the settlements. Federal Rule of Civil Procedure 23 provides an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and, in addition, the action qualifies under one of the subdivisions of Rule 23(b). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) provides, in relevant part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:
>
> (1)    the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A)    inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
>
> (B)    adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

- 16 -

(2)     the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3)     the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As set forth below, Rule 23's requirements are easily met and certification of a class is appropriate. The Court has found these requirements were met in connection with the settlement class for the Andersen Worldwide settlement, *In re Enron Corp. Sec. and ERISA Litig.*, MDL No. 1446, Order Preliminarily Approving Settlement (S.D. Tex. July 24, 2003) (Docket No. 137), the Bank of America settlement, *In re Enron Corp. Sec. Litig.*, No. H-01-3624, Order Preliminarily Approving Settlement (S.D. Tex. Feb. 4, 2005) (Docket No. 3065), and the Lehman settlement, *In re Enron Corp. Sec. Litig.*, No. H-01-3624, Order Preliminarily Approving Settlement (S.D. Tex. Feb. 4, 2005) (Docket No. 3066).

### 1.     The Class Is Sufficiently Numerous

To meet the numerosity requirement, the class representatives need only show it is difficult or inconvenient to join all the members of the class. *See Zeidman v. J. Ray McDermott Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 55 (S.D.N.Y. 1993). During the class period, millions of shares of Enron securities were outstanding and traded. In connection with the notice to the class regarding the Andersen Worldwide settlement, the claims administrator mailed notices to over one million class members. The threshold for a presumption of impracticality of joinder is easily exceeded.

### 2.     Common Questions of Law or Fact Exist

To maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Generally, courts have liberally construed the commonality prerequisite, holding the "[t]hreshold of 'commonality' is not high." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d

468, 472 (5th Cir. 1986). "The commonality requirement is satisfied even where there is not a complete identity of facts, so long as the party opposing the class has engaged in some 'course of conduct' that affects the proposed class and gives rise to causes of action requiring similar elements." *Zupnick v. Thompson Parking Partners*, No. 89-Civ. 6607 (JSM), 1990 U.S. Dist. LEXIS 9881, at *9 (S.D.N.Y. Aug. 1, 1990) (citations omitted).

These Actions present numerous common questions of both law and fact, including, *inter alia*:

    (i)    Whether the Citigroup Defendants', the JP Morgan Defendants', or the CIBC Defendants' actions as alleged violated the federal securities laws;

    (ii)    Whether the registration statements filed in connection with the sale of certain Enron notes during the class period misrepresented material facts about the operations, financial condition and earnings of Enron; and

    (iii)    To what extent the members of the class have sustained damages and the proper measure of damages.

### 3. Named Plaintiffs' Claims Are Typical of Those of the Class

The typicality requirement is satisfied where, as here, "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Typicality does not require the named representatives' and the class members' interests be identical. *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981).

The named plaintiffs' claims, which arise from the same course of conduct and are predicated on the same legal theories as the claims of all other class members they represent, easily satisfy Rule 23(a)'s typicality requirement. *See Durrett v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D. Tex. 1993); *see also Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993) (test for typicality, like commonality, is not demanding).

### 4.   Named Plaintiffs Are More Than Adequate Class Representatives

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). The factors relevant to an adequacy determination are: (1) the absence of potential conflict between the named plaintiff and the class members; and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation. *Drexel*, 960 F.2d at 291; *Longden v. Sunderman*, 123 F.R.D. 547, 557 (N.D. Tex. 1988).

Here, there are no conflicts between the named plaintiffs and absent class members. Lead Plaintiff has demonstrated its adequacy through its vigorous prosecution of this massive case to date and through retaining experienced counsel to litigate the case. Lead Counsel is one of the preeminent class action firms in the country, having served as plaintiffs' counsel in this and numerous other securities actions. Lead Counsel has a proven track record in the prosecution of class actions; the firm has successfully litigated and tried major class action cases.

### 5.   Rule 23(b)(3)'s Requirements Are Satisfied

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem*, 521 U.S. at 591-94. This litigation meets Rule 23(b)(3)'s requirements.

#### a.   Common Legal and Factual Questions Predominate

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. The Citigroup Defendants', the JPMorgan Defendants', and the CIBC Defendants' alleged liability arises from Lead Plaintiff's claim that they participated in a scheme to defraud investors in Enron securities and their participation in several security offerings via registration statements and offering memoranda alleged

- 19 -

to contain false and misleading statements and omissions of material facts about Enron's business operations and financial condition. This is the central issue in these cases and it predominates over any individual issue that theoretically may exist.[6]

**b.    A Class Action Is the Superior Means to Adjudicate Plaintiffs' Claims**

The second prong of Rule 23(b)(3) is essentially satisfied by the settlement itself. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620. Thus, any manageability problems that may have existed here are eliminated by the settlements.

**E.    Submission of the Settlements to the Class Is Appropriate**

Pursuant to the Stipulations, Lead Plaintiff and the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants recommend to the Court a notice program and form of notice substantially in the form of the respective Exhibits to the Stipulations. The Stipulations provide that a copy of the Notice of Pendency and Proposed Partial Settlements of Class Action (the "Notice"), will be mailed to each class member who can be identified with reasonable effort and each nominee who were securities holders of record for class members who purchased the relevant securities during the class period. The proposed settlements also provide Summary Notice is to be published twice in the national edition of *Investors Business Daily* and *The Houston Chronicle* shortly after mailing the Notice. The Notice details the settlements' terms, the rights of class members to share in

---

[6]    It is well established differences between individual class members as to reliance or damages do not preclude certification of a class. *See, e.g., Teichler v. DSC Communs. Corp.*, No. CA3-85-2005-T, 1988 U.S. Dist. LEXIS 16448, at *2 (N.D. Tex. Apr. 26, 1988). Moreover, reliance is not an element of a §11 claim. Proof of the amount of damages can be established on a class-wide basis by using a generalized formula. *Shelter Realty Corp. v. Allied Maint. Corp.*, 75 F.R.D. 34, 38 (S.D.N.Y. 1977).

the recovery, or request exclusion. The Notice and the Summary Notice also provide the date, time, and place of the fairness hearing and the right of class members to be heard at the hearing. Finally, they provide the name, address and phone number of Lead Counsel's representative for inquiries. The form and manner of the Notice and Summary Notice proposed here fulfill all of the requirements of Federal Rule of Civil Procedure 23 and due process.

## V.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests the Court grant the motion for preliminary approval of the proposed settlements with the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants.

DATED: January 27, 2006                    Respectfully Submitted,

                                          LERACH COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                          WILLIAM S. LERACH
                                          DARREN J. ROBBINS
                                          HELEN J. HODGES
                                          BYRON S. GEORGIOU
                                          JAMES I. JACONETTE
                                          MICHELLE M. CICCARELLI
                                          JAMES R. HAIL
                                          ANNE L. BOX
                                          JOHN A. LOWTHER
                                          ALEXANDRA S. BERNAY
                                          MATTHEW P. SIBEN
                                          ROBERT R. HENSSLER, JR.


                                              /s/ Roger B. Greenberg *Signed by permission
                                          HELEN J. HODGES

                                          655 West Broadway, Suite 1900
                                          San Diego, CA 92101
                                          Telephone: 619/231-1058

- 21 -

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
REGINA M. AMES
KATHERINE C. SPLAN
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Telephone: 310/859-3100
310/278-2148 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
G. PAUL HOWES
JERRILYN HARDAWAY
Texas Bar No. 00788770
Federal I.D. No. 30964
1111 Bagby, Suite 4850
Houston, TX  77002
Telephone: 713/571-0911

**Lead Counsel for Plaintiffs**

SCHWARTZ, JUNELL, GREENBERG
  & OATHOUT, LLP
ROGER B. GREENBERG
State Bar No. 08390000
Federal I.D. No. 3932


       /s/ Roger B. Greenberg
       ROGER B. GREENBERG

Two Houston Center
909 Fannin, Suite 2700
Houston, TX  77010
Telephone:  713/752-0017

HOEFFNER & BILEK, LLP
THOMAS E. BILEK
Federal Bar No. 9338
State Bar No. 02313525
1000 Louisiana Street, Suite 1302
Houston, TX  77002
Telephone:  713/227-7720

**Attorneys in Charge**

BERGER & MONTAGUE, P.C.
SHERRIE R. SAVETT
1622 Locust Street
Philadelphia, PA  19103
Telephone:  215/875-3000

**Attorneys for Staro Asset Management**

WOLF POPPER LLP
ROBERT C. FINKEL
845 Third Avenue
New York, NY  10022
Telephone:  212/759-4600

**Attorneys for Nathaniel Pulsifer**

SCOTT + SCOTT, LLC
DAVID R. SCOTT
NEIL ROTHSTEIN
108 Norwich Avenue
Colchester, CT  06415
Telephone:  860/537-3818

**Attorneys for the Archdiocese of Milwaukee
Supporting Fund, Inc.**

CUNEO GILBERT & LaDUCA, L.L.P.
JONATHAN W. CUNEO
MICHAEL G. LENETT
507 C Street, N.E.
Washington, DC  20002
Telephone:  202/789-3960
202/789-1813 (fax)

**Washington Counsel**

S:\Settlement\Enron.Set\Collective\collective prelim approv.doc

- 23 -

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENTS WITH CITIGROUP INC., JPMORGAN CHASE & CO., CANADIAN IMPERIAL BANK OF COMMERCE AND MEMORANDUM IN SUPPORT THEREOF** has been served by sending a copy via electronic mail to serve@ESL3624.com on January 27, 2006.
30

I further certify that a copy of the foregoing document has been served via overnight mail on the following parties, who do not accept service by electronic mail on January 27, 2006.
30

Carolyn S. Schwartz
United States Trustee, Region 2
33 Whitehall Street, 21st Floor
New York, NY 10004

Tom P. Allen
McDaniel & Allen
1001 McKinney St., 21st Fl
Houston, TX 77002

I also certify that a copy of the above-mentioned document has been served via UPS OVERNIGHT SERVICE on the parties listed on the attached "Additional Service List" on this 27th day of January, 2006.
30th

*Deborah S. Granger*
_____
DEBORAH S. GRANGER

## ADDITIONAL SERVICE LIST

| | |
|---|---|
| Stuart Yoes<br>THE YOES LAW FIRM, LLP<br>3535 Calder Avenue, Suite 235<br>Beaumont, TX  77726-7584<br>409/833-2352<br>409/828-5577 (fax)<br><br>Attorney for RINIS | Frank H. Tomlinson<br>PRITCHARD, McCALL; & JONES, LLC<br>505 N. 20th Street, Suite 800<br>Birmingham, AL  35203<br>205/328-9190<br>205/458-0035 (fax)<br><br>Attorney for RINIS |
| Edward W. Cochran<br>2872 Broxton Road<br>Shaker Heights, OH  44120<br>216/751-5546<br>216/751-6630 (fax)<br><br>Attorney for RINIS | N. Albert Bacharach Jr.<br>115 N.E. Sixth Avenue<br>Gainesville, FL  32601-6592<br>352/378-9859<br>352/338-1858 (fax)<br><br>Attorney for RINIS |
| Paul S. Rothstein<br>626 N.E. First Street<br>Gainesville, FL  32601<br>352/376-7650<br>352/374-7133 (fax)<br><br>Attorney for RINIS | Maureen McGuirl<br>FENSTERSTOCK & PARTNERS LLP<br>30 Wall Street, 9th Floor<br>New York, NY  10005<br>212/785-4100<br>212/785-4040 (fax)<br><br>Attorneys for James H. Allen, Jr., Burton W. Carlson, Jr., Michael T. DeFreece, Marcia A. DeFreece, Andrew E. Krinock, Phyllis A. Krinock, Partcom Limited Partnership, Reed Partners, L.P., formerly known as Reed Family Ltd. Partnership, F. Walker Tucei, June P. Tucei, Romand H. Uhing, Alvera A. Uhing and Viets Family Associates, LLP |
| Lawrence W. Schonbrun<br>LAW OFFICES OF LAWRENCE W. SCHONBRUN<br>86 Eucalyptus Road<br>Berkeley, CA  94705<br>510/547-8070<br><br>Attorney for Brian Dabrowski | Richard C. Bauerle<br>13254 Vandalia, #80<br>Fountain Hills, AZ  85268 |
| Arnold Gregg<br>4445 Forest Glen Road<br>Anaheim Hills, CA  92807 | Steven F. Helfand<br>HELFAND LAW OFFICES<br>601 Montgomery Street, Suite 325<br>San Francisco, CA  94111<br>415/397-0007<br>415/397-0009 (fax)<br><br>Attorney for John W. Davis |