UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re ENRON CORPORATION SECURITIES LITIGATION | § § § | MDL 1446 |
| | § | |
| This Document Relates To: | § § | Civil Action No. H-01-3624 |
| | § | **(Consolidated)** |
| MARK NEWBY, et al., Individually and On Behalf of All Others Similarly Situated, | § § | |
| | § | CLASS ACTION |
| Plaintiffs, | § § | |
| vs. | § § | |
| ENRON CORP., et al., | § § | |
| Defendants. | § § | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| KENNETH L. LAY, et al., | § § | |
| Defendants. | § § § | |

[Caption continued on following page.]

**MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS WITH
CITIGROUP INC., JPMORGAN CHASE & CO., AND CANADIAN IMPERIAL BANK
OF COMMERCE AND FOR PARTIAL REIMBURSEMENT OF LEAD PLAINTIFF'S
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF**

WASHINGTON STATE INVESTMENT
BOARD, et al., Individually and On Behalf of All
Others Similarly Situated,

                 Plaintiffs,

     vs.

KENNETH L. LAY, et al.,

                 Defendants.

§   Civil Action No. H-02-3401
§
§
§
§
§
§
§
§
§
§

CONSECO ANNUITY ASSURANCE
COMPANY, Individually and On Behalf of All
Others Similarly Situated,

                 Plaintiffs,

     vs.

CITIGROUP, INC., et al.,

                 Defendants.

§   Civil Action No. H-03-2240
§
§
§
§
§
§
§
§
§
§

# TABLE OF CONTENTS

**Page**

I.    MOTION AND INTRODUCTION.................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND OF THIS LITIGATION
      AND THESE SETTLEMENTS .................................................................................2

III.  THE SETTLEMENTS.................................................................................................4

IV.   ARGUMENT .............................................................................................................7

      A.    The Settlements Should Be Finally Approved.................................................7

      B.    The Fifth Circuit's Six-Pronged Test of Fairness ..........................................9

            1.    There Is No Fraud or Collusion Behind the Settlements .............................9

            2.    The Stage of the Proceedings and the Amount of Discovery
                  Completed ...........................................................................................10

            3.    The Probability of Success on the Merits ................................................11

            4.    The Range of Possible Recovery and the Difficulties in Proving
                  Damages...............................................................................................11

                  a.    Risks in Proving Damages..........................................................11

                  b.    The Settlements Fall Within the Range of Reasonableness..........12

            5.    The Complexity, Expense and Likely Duration of This Litigation ..........13

            6.    The Opinion of Lead Counsel, Lead Plaintiff and Absent Class
                  Members ..............................................................................................15

V.    THE EXPENSES FOR WHICH LEAD PLAINTIFF SEEKS
      REIMBURSEMENT WERE REASONABLY INCURRED AND SHOULD BE
      REIMBURSED..........................................................................................................17

VI.   CONCLUSION..........................................................................................................19

# TABLE OF AUTHORITIES

**Page**

*Ahearn v. Fibreboard Corp.,*
    162 F.R.D. 505 (E.D. Tex. 1995)................................................................................15

*Ayers v. Thompson,*
    358 F.3d 356 (5th Cir. 2004) .......................................................................................7

*Backman v. Polaroid Corp.,*
    910 F.2d 10 (1st Cir. 1990)........................................................................................14

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
    603 F.2d 263 (2d Cir. 1979).......................................................................................14

*Camp v. Progressive Corp.,*
    No. 01-2680, 2004 U.S. Dist. LEXIS 19172 (E.D. La. Sept. 23, 2004)..........................8

*Clark v. Lomas & Nettleton Fin. Corp.,*
    79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds,*
    625 F.2d 49 (5th Cir. 1980) .......................................................................................15

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ............................................................................7, 8, 11

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)..................................................................................12, 16

*Fickinger v. C.I. Planning Corp.,*
    646 F. Supp. 622 (E.D. Pa. 1986) ..............................................................................12

*Fisher Bros. v. Cambridge-Lee Indus., Inc.,*
    630 F. Supp. 482 (E.D. Pa. 1985) ..............................................................................15

*Fla. Trailer & Equip. Co. v. Deal,*
    284 F.2d 567 (5th Cir. 1960) .......................................................................................7

*Hughes Tool Co. v. Trans World Airlines, Inc.,*
    409 U.S. 363 (1973).....................................................................................................14

*Ibarra v. Tex. Employment Comm'n,*
    823 F.2d 873 (5th Cir. 1987) .......................................................................................7

*In re Corrugated Container Antitrust Litig,*
    643 F.2d 195 (5th Cir. 1981) .....................................................................................11

**Page**

*In re Enron Corp. Secs., Derivative & ERISA Litig.,*
    235 F. Supp. 2d 549 (S.D. Tex. 2002) .............................................................2, 4

*In re Enron Corp. Secs., Derivative & ERISA Litig.,*
    No. H-01-3624, 2004 U.S. Dist. LEXIS 7495 (S.D. Tex. Apr. 6, 2004) ...........................2

*Karasik v. Pac. E. Corp.,*
    180 A. 604 (Del. Ch. 1935) ..............................................................................12

*Lewis v. Newman,*
    59 F.R.D. 525 (S.D.N.Y. 1973) ........................................................................13

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.,*
    708 F.2d 1081 (7th Cir. 1983) ..........................................................................14

*Maher v. Zapata Corp.,*
    714 F.2d 436 (5th Cir. 1983) .....................................................................7, 8, 16

*Manchaca v. Chater,*
    927 F. Supp. 962 (E.D.  Tex. 1996) .............................................................10, 13

*McNary v. Am. Sav. & Loan Ass'n,*
    76 F.R.D. 644 (N.D. Tex. 1977) ...................................................................9, 12

*Miller v. Republic Nat'l Life Ins. Co.,*
    559 F.2d 426 (5th Cir. 1977) ..............................................................................7

*Newby v. Enron Corp.,*
    394 F.3d 296 (5th Cir. 2004) ..............................................................................7

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972).............................................................................12

*Parker v. Anderson,*
    667 F.2d 1204 (5th Cir. 1982) .....................................................................9, 12

*Pearson v. Ecological Sci. Corp.,*
    522 F.2d 171 (5th Cir. 1975) ..............................................................................7

*Pettway v. Am. Cast Iron Pipe Co.,*
    576 F.2d 1157 (5th Cir. 1978) ...........................................................................9

*Piper v. Chris-Craft Indus.,*
    430 U.S. 1 (1977)...........................................................................................14

**Page**

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson,*
    390 U.S. 414 (1968)..................................................................................................13

*Purdie v. Ace Cash Express, Inc.,*
    No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547
    (N.D. Tex. Dec. 11, 2003) .....................................................................................8

*Reed v. Gen. Motors Corp.,*
    703 F.2d 170 (5th Cir. 1983) ..............................................................................8, 9

*Robbins v. Koger Props.,*
    116 F.3d 1441 (11th Cir. 1997) ...........................................................................14

*Ruiz v McKaskle,*
    724 F.2d 1149 (5th Cir. 1984) ..............................................................................7

*Salinas v. Roadway Express, Inc.,*
    802 F.2d 787 (5th Cir. 1986) ...............................................................................9

*United States v. Tex. Educ. Agency,*
    679 F.2d 1104 (5th Cir. 1982) ..............................................................................8

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ...............................................................................8

*West Va. v. Chas. Pfizer & Co.,*
    314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd,*
    440 F.2d 1079 (2d Cir. 1971)..............................................................................14

*Williams v. First Nat'l Bank,*
    216 U.S. 582 (1910)..............................................................................................7

*Young v. Katz,*
    447 F.2d 431 (5th Cir. 1971) ...............................................................................8

*Zerkle v. Cleveland-Cliffs Iron Co.,*
    52 F.R.D. 151 (S.D.N.Y. 1971) ..........................................................................13

Page

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §77k....................................................................................................13
  §77l(a)(2) ...........................................................................................13
  §78j(b)..........................................................................................4, 6, 13
  §78u-4(a)(4) .......................................................................................17

## I.    MOTION AND INTRODUCTION

Lead Plaintiff, The Regents of the University of California ("The Regents"), in the actions entitled *Newby, et al. v. Enron Corp., et al.*, No. H-01-3624 (S.D. Tex.); *The Regents of the University of California, et al. v. Kenneth L. Lay, et al.*, No. H-01-3624 (S.D. Tex.); and *Washington State Investment Board, et al. v. Kenneth L. Lay, et al.,* No. H-02-3401 (S.D. Tex.) ("*WSIB*"), consolidated in *In re Enron Corporation Securities Litigation*, Civil Action No. H-01-3624 (the "Actions"), by its undersigned counsel, respectfully moves for and submits this memorandum in support of its motion for entry of judgments ("Judgments"),[1] consistent with the Stipulations of Settlement dated as of January 27, 2006, January 27, 2006, and August 2, 2005 (the "Stipulations") (Docket Nos. 4438, 4439, 4436) and in support of Lead Plaintiff's request for partial reimbursement of its expenses incurred in prosecuting these Actions on behalf of the class. The Judgments will grant final approval of the proposed settlements of the Actions with Citigroup Inc. and its affiliates and subsidiaries (the "Citigroup Defendants"), JPMorgan Chase & Co. and its affiliates and subsidiaries (the "JPMorgan Defendants") and Canadian Imperial Bank of Commerce and its affiliates and subsidiaries (the "CIBC Defendants") on the terms set forth in the Stipulations. The Actions have been settled with respect to these defendants for a total of $6.6 billion as follows: $2.0

---

[1]    Forms of the Judgments, which have been modified (only as to ¶8 of each Judgment) from versions submitted to the Court as attachments to the Stipulations based on discussions between the settling defendants and certain of the Non-Settling Defendants (which modifications are acceptable to The Regents) are submitted herewith. Also submitted herewith are amendments to each Stipulation (only as to ¶7.5 of each Stipulation) again based on discussions between the Settling Defendants and certain of the Non-Settling Defendants (which modifications are also acceptable to The Regents).

- 1 -

billion for the Citigroup Defendants, $2.2 billion for the JPMorgan Defendants, and $2.4 billion for the CIBC Defendants.[2]

After more than four years of hard-fought litigation, Lead Plaintiff and the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants have reached agreements to settle the Actions on the terms set forth in the Stipulations (Docket Nos. 4438, 4439, 4436). Each of these settlements is extraordinary. The CIBC settlement alone is the fourth-largest recovery ever in a securities class action. The JPMorgan and Citigroup settlements are the fifth and sixth largest securities class action recoveries ever. Taken together these three partial settlements constitute *the* largest securities class action recovery ever. Lead Plaintiff requests the motion be granted because the settlements, individually and collectively, are an outstanding result for the Settlement Class and because public policy favors settlement of class actions such as the ones pending against the settling banks. The settlements easily meet the standards for final approval and are fair, reasonable and adequate under the governing standards in this Circuit. We request the Court finally approve these settlements and enter the Judgments submitted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND OF THIS LITIGATION AND THESE SETTLEMENTS

The Court is fully familiar with Lead Plaintiff's allegations concerning the facts and circumstances surrounding Enron's collapse. *See, e.g., In re Enron Corp. Secs., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549 (S.D. Tex. 2002); *In re Enron Corp. Secs., Derivative & ERISA Litig.*, No. H-01-3624, 2004 U.S. Dist. LEXIS 7495 (S.D. Tex. Apr. 6, 2004). Those allegations are not repeated here.

---

[2]      Capitalized terms used herein and not otherwise defined in this Memorandum have the same meaning as set forth in the Stipulations.

Class actions resulting from the Enron fraud were commenced over four and a half years ago in October 2001 and were consolidated on December 12, 2001 (Docket No. 17). Lead Plaintiff filed its Consolidated Complaint for Violations of the Securities Laws on April 8, 2002 (Docket No. 441). Later in 2002, Lead Plaintiff sought and obtained permission from this Court and Judge Gonzalez to start obtaining documents from the Enron estate. After the Court finished ruling on the first round of motions to dismiss in Spring 2003, Lead Plaintiff filed the First Amended Complaint (Docket No. 1309) and commenced document discovery against those defendants whose motions to dismiss were denied. The motions to dismiss by the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants were denied in part and granted in part (Docket No. 1194), allowing Lead Plaintiff to proceed with the bulk of its claims against these defendants.

After the Court upheld claims against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants in 2002, the parties negotiated the Deposition Protocol to begin the onslaught of depositions, which commenced in June 2004. Thereafter the parties engaged in extensive discovery, reviewed and analyzed millions of pages of documents, and participated in hundreds of depositions. Lead Counsel deposed key witnesses from the settling banks, including 27 Citigroup, 27 JPMorgan, and 12 CIBC witnesses who had significant involvement in their Enron-related transactions, or approximately 66 individuals and many hundreds of hours of sworn testimony from the settling defendants. In addition Lead Counsel vigorously pursued responses to interrogatories and requests for admission. Lead Counsel also reviewed voluminous reports and materials issued by, among others, the Special Investigative Committee of Enron's Board, the Permanent Subcommittee on Investigations, and Enron's Court-appointed bankruptcy examiner, along with the documents made available to these persons. Further, Lead Counsel examined and conducted discovery concerning agreements and settlements entered into between the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants and certain regulatory and

enforcement bodies. Lead Counsel also consulted with experts as well as the Lead Plaintiff's consulting team to review and advise on Lead Plaintiff's claims against the Citigroup Defendants, the JPMorgan Defendants, the CIBC Defendants, and the other defendants in the consolidated actions, including the damages counsel would seek to prove at trial.

These settlements resolve the Actions against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants, but no other defendant. Lead Plaintiff alleged the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants participated in a scheme to defraud investors. When the Court denied these defendants' motions to dismiss the class's claims (Docket No. 1194), it held Lead Plaintiff had provided specific allegations against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants concerning the structuring and funding of illicit transactions that, if true, would constitute primary violations of §10(b) and give rise to a strong inference of scienter. *Enron*, 235 F. Supp. 2d at 701. The banks, however, have vigorously defended themselves to date and, absent these settlements, the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants would continue to aggressively dispute liability and damages through trial and appeals.

## III.   THE SETTLEMENTS

The settlements provide for the establishment of settlement funds totaling $6.6 billion for the Settlement Class's benefit. As noted above, standing alone, the CIBC settlement is the fourth-largest securities class action recovery ever, JPMorgan, the fifth-largest, and Citigroup the sixth-largest. Combined, the three settlements constitute the largest recovery ever in a securities class action. The settlements are an exceptional result, achieved only after years of complex and hard-fought litigation.

In late 2004 Brad S. Karp of Paul, Weiss, Rifkind, Wharton & Garrison LLP, representing the Citigroup Defendants, contacted Bill Lerach concerning settlement. Face-to-face meetings

attended by Bill Lerach and others from Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin"), Chris Patti, University Counsel for The Regents, and The Honorable J. Lawrence Irving (Ret.), consultant for The Regents, and numerous telephone conversations ensued. The discussions and meetings spanned months, and intensified in May 2005.  On June 9, 2005 the parties signed a term sheet for a settlement with the Citigroup Defendants for $2 billion.  The settlement with the Citigroup Defendants also covers the *Conseco* Action, and the named plaintiff in the *Conseco* Action has agreed to and supports the terms of the settlement.  *See* paragraph 7 to the Declaration of Helen J. Hodges in Support of Final Approval of Proposed Settlements with Citigroup Inc., JPMorgan Chase & Co., and Canadian Imperial Bank of Commerce ("Hodges Decl."), submitted herewith.

In April 2005, Bruce D. Angiolillo of Simpson Thacher & Bartlett LLP ("Simpson Thacher"), counsel for the JPMorgan Defendants, contacted Bill Lerach to explore settlement. Counsel spoke again in May 2005 and agreed to schedule a meeting to discuss settlement in New York on June 10, 2005.  Discussions commenced on that date attended by knowledgeable and experienced client representatives on behalf of The Regents and the JPMorgan Defendants, including its outside litigation counsel, Simpson Thacher.  After days of intense negotiations and face-to-face meetings attended by Bill Lerach, The Honorable J. Lawrence Irving (Ret.), Chris Patti and James Holst, General Counsel and Vice President of Legal Affairs for The Regents, and JPMorgan's General Counsel, as well as Bruce D. Angiolillo and others from Simpson Thacher, the parties executed a term sheet to settle the litigation for $2.2 billion.  *See* Hodges Decl., ¶8.

Initial settlement discussions in Fall 2004 with the CIBC Defendants were not fruitful.  After the Citigroup and JPMorgan settlements were announced, counsel for the CIBC Defendants suggested the parties seek the assistance of a mediator to help resolve the case.  The parties arranged for a mediation with Professor Eric Green.  Mediation sessions began in July 2005.  In attendance for

Lead Plaintiff were Bill Lerach and others from Lerach Coughlin, Chris Patti, James Holst and The Honorable J. Lawrence Irving (Ret.). Present for the CIBC Defendants were CIBC's General Counsel, its Director of Litigation, its Chief Administrative Officer and three partners from its outside counsel, Mayer, Brown, Rowe & Maw LLP. Both liability and damages were vigorously disputed. The CIBC Defendants insisted that even if plaintiffs could prove liability, their true exposure on the class's §10(b) claims was far less than that claimed by plaintiffs. The CIBC Defendants also argued that other actors were more culpable. The parties also debated CIBC's ability to pay. After days of hard-fought negotiations overseen by Professor Green, and after consideration by CIBC's Board, the parties hammered out an agreement-in-principle to resolve the claims on behalf of the class for $2.4 billion. The parties executed a term sheet on August 2, 2005. *See* Hodges Decl., ¶9.

Each bank's settlement amount began earning interest for the benefit of the class on the day the respective bank's term sheet was signed. As a result, in the aggregate, the settlement amounts increase by approximately $550,000 per day. In addition, like earlier settlements entered into in these Actions, the Citigroup and JPMorgan Stipulations (Docket Nos. 4438, 4439) provide for the establishment of litigation expense fund set-asides – $30 million in the case of each settlement – to be used, on application to and approval by the Court, for reimbursement of litigation expenses incurred by plaintiffs' counsel. Finally, the Citigroup and JPMorgan Stipulations (Docket Nos. 4438, 4439) both provide for the payment of an additional $10 million each – over and above the settlement amount – for the payment of notice and other administrative expenses and, in the case of

the Citigroup settlement, the attorneys' fees and expenses of plaintiffs' counsel in the *Conseco*

Action. *See* Hodges Decl. ¶10.[3]

## IV.    ARGUMENT

### A.    The Settlements Should Be Finally Approved

The general standard for final approval of a proposed class action settlement, as repeatedly

enunciated by the Fifth Circuit, is whether the proposed settlement is "fair, adequate and reasonable"

and has been entered into without collusion between the parties. *Newby v. Enron Corp.*, 394 F.3d

296, 302 (5th Cir. 2004); *Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004); *Cotton v. Hinton*,

559 F.2d 1326, 1330 (5th Cir. 1977); *see also Ruiz v McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984)

(*per curiam*); *Ibarra v. Tex. Employment Comm'n*, 823 F.2d 873, 878 (5th Cir. 1987); *Maher v.

Zapata Corp.*, 714 F.2d 436, 454 (5th Cir. 1983).   In applying this standard, the court must

determine whether, in light of the claims and defenses asserted by the parties, the proposed

compromise represents a "reasonable evaluation of the risks of litigation." *Fla. Trailer & Equip. Co.

v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

It is well settled that compromises of disputed claims are favored by the courts. *Williams v.

First Nat'l Bank*, 216 U.S. 582, 595 (1910).   The Fifth Circuit has consistently held, as a result of

their highly-favored status, settlements "'will be upheld whenever possible because they are a means

of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life Ins. Co.*, 559

F.2d 426, 428 (5th Cir. 1977) (quoting *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir.

1975)).   Settlements are compromises, "'a yielding of the highest hopes in exchange for certainty

---

[3]      All three Stipulations also provide for a rebate, or "claw-back," of a portion of the settlement
funds depending on the volume of certain opt-outs, or, in the case of plaintiffs that have already
brought separate actions, a "claw-in" providing for additional settlement payments if those plaintiffs
elect to participate in the settlements.   We are working diligently with the Settling Defendants to
determine the exact amount of the claw-back and claw-in, if any, for each settlement.

and resolution.'" *Camp v. Progressive Corp.*, No. 01-2680, 2004 U.S. Dist. LEXIS 19172, at *18 (E.D. La. Sept. 23, 2004) (citation omitted).

Class action and shareholder litigation settlements are "particularly favored" and are not to be lightly rejected. *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331. Concerning class actions, the Fifth Circuit holds, "there is an overriding public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331; *Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D. Tex. Dec. 11, 2003); *accord Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Thus, in determining whether to approve the settlement, the trial judge is not required to decide the merits of the action or substitute a different view of the merits for that of the parties or counsel. *Maher*, 714 F.2d at 455.

In weighing the benefits obtained by settlement against benefits dependent on the likelihood of recovery on the merits, courts are not expected to balance the scales perfectly. The "trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Cotton*, 559 F.2d at 1330 (citations omitted). The very object of a compromise ""is to avoid the determination of sharply contested and dubious issues."" *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971) (citations omitted).

Where, as here, experienced counsel have negotiated the settlement at arm's length, a strong initial presumption is created that the compromise is fair and reasonable. *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982). The Fifth Circuit recognizes courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Thus, if

experienced counsel determine a settlement is in the class's best interests, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

When examined under the applicable criteria, the settlements with the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants are outstanding results for the class.

**B.     The Fifth Circuit's Six-Pronged Test of Fairness**

Once satisfied counsel adequately represented the class and has bargained for the proposed settlement in good faith, the ""only question"" for the Court ""is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval."" *McNary v. Am. Sav. & Loan Ass'n*, 76 F.R.D. 644, 649 (N.D. Tex. 1977) (citations omitted). The Fifth Circuit has established a six-pronged test to be applied to proposed settlements:

1.     the existence of fraud or collusion behind the settlement;

2.     the stage of the proceedings and the amount of discovery completed;

3.     the probability of plaintiffs' success on the merits;

4.     the range of possible recovery;

5.     the complexity, expense and likely duration of the litigation; and

6.     the opinions of class counsel, class representatives and absent class members.

*Reed*, 703 F.2d at 172; *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 789 (5th Cir. 1986). These settlements easily pass muster when examined in light of the Fifth Circuit's six criteria.

**1.     There Is No Fraud or Collusion Behind the Settlements**

There is no collusion in the settlements of the Actions. The settlements were reached only after extensive discovery and extensive and hard-fought negotiations. The Citigroup and JPMorgan settlements were each negotiated at arm's length by experienced counsel with the active involvement and oversight of party representatives who collectively have many decades of experience in litigating

- 9 -

and resolving large, complex securities class actions.  The CIBC settlement was overseen by Professor Green, a renowned mediator.  James Holst, Chris Patti and Judge Irving for The Regents and CIBC's Chief Administrative Officer actively participated in negotiations and mediation sessions.  Lead Counsel has many years of experience in litigating securities class actions and has negotiated myriad class settlements which have been approved by courts throughout the country. The Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants were each represented by firms with well-deserved reputations for the tenacious defense of class actions and other complex civil matters.  Accordingly, the settlements were each negotiated at arm's length by counsel and client representatives who are knowledgeable about the strengths and weaknesses of the claims made and the potential defenses to them.  There can be no question the Settlement Class was fairly and adequately represented in the course of these proceedings.

### 2.    The Stage of the Proceedings and the Amount of Discovery Completed

Lead Counsel and Lead Plaintiff had reached a stage of knowledge where an intelligent evaluation of the role of the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants in these cases and the propriety of the settlements could be made.  As noted above, Lead Counsel conducted massive fact discovery in 2004 and 2005 concerning the settling banks and other defendants, deposed key witnesses, and obtained many hundreds of hours of sworn, videotaped testimony from representatives of or relating to Citigroup, JPMorgan and CIBC.  Lead Counsel reviewed and analyzed voluminous documents concerning Enron's collapse and the settling defendants' involvement in Enron-related transactions, interviewed scores of witnesses, reviewed numerous reports, and to this day continue to conduct a thorough investigation of the salient facts regarding the Actions.  Experts on numerous subjects have been designated and their reports prepared and exchanged.  The parties reached agreements to settle with a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D.

- 10 -

Tex. 1996). No more is required. And while discovery in the Actions has been extensive, a great amount of formal discovery is not a "necessary ticket to the bargaining table." *In re Corrugated Container Antitrust Litig*, 643 F.2d 195, 211 (5th Cir. 1981) (citing *Cotton*, 559 F.2d at 1332).

### 3.      The Probability of Success on the Merits

The Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants have vigorously contended, among other things, they did not participate in any scheme to defraud, they were misled by others regarding Enron's financial condition, they conducted a reasonable investigation in connection with the securities offerings in which they participated, and they believed the registration statements for those offerings were accurate. Further, the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants would assert reliance on experts, such as Arthur Andersen, regarding Enron's financial statements and the propriety of transactions Lead Plaintiff contends were fraudulent and part of the alleged scheme. The Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants also would assert that class members' losses were caused by factors other than the settling defendants' participation in the alleged scheme. And the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants would rely on numerous other defenses they claim are meritorious. Thus, while Lead Plaintiff believes its claims against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants are strong, Lead Plaintiff recognizes they are well-represented and the possibility exists that any of the settling entities may convince a jury of its view.

### 4.      The Range of Possible Recovery and the Difficulties in Proving Damages

#### a.      Risks in Proving Damages

The Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants have asserted loss causation defenses on the amount of damages incurred, and each would vigorously contest loss causation at trial. The Citigroup Defendants, the JPMorgan Defendants, and the CIBC

- 11 -

Defendants would assert, and rely on experts to help prove, the rise and fall in the price of the Enron Securities was attributable to something other than conduct for which the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants were responsible.

Lead Plaintiff recognizes that, had this case proceeded to trial, there are risks in proving damages against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants. Therefore, Lead Plaintiff and its counsel believe the settlements represent an exceptional result for the class.

**b.      The Settlements Fall Within the Range of Reasonableness**

Courts agree determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986).

> In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974); *Parker*, 667 F.2d at 1210 n.6; *McNary*, 76 F.R.D. at 650. Similarly, the court held in *Karasik v. Pac. E. Corp.*, 180 A. 604, 609 (Del. Ch. 1935):

> [T]he amount claimed is one hundred million dollars and the amount received in settlement is a minimum of three hundred and eighty-five thousand dollars. Now that is a wide disparity. But it is one thing to assert a claim and another thing to prove the claim to judgment. Furthermore, it is one thing to obtain a judgment, and quite another thing to collect it. Figures, however imposing, should not compel practical considerations to yield place to visions.

Notwithstanding the fact that, under the authority cited above, the Court could approve settlements with these defendants for smaller amounts, here the amounts recovered represent a not insubstantial portion of Lead Plaintiff's view of the aggregate provable damages against all defendants. And, as

noted above, these partial settlements taken together represent the largest recovery ever in a securities class action. At trial the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants would vigorously contest their respective §§10(b), 11 and 12(a)(2) liability, and attempt to prove their true exposure was considerably less than the amount of damage suffered by purchasers of Enron Securities and, importantly, that other actors were more responsible for investors' losses. In addition, Lead Counsel has taken into consideration the dismissal of the claims asserted in the *WSIB* action. Lead Plaintiff firmly believes the $6.6 billion settlement amount is an outstanding recovery for the class. Given the hotly-contested issues with respect to liability and damages, the settlement amount is exceptional.

### 5. The Complexity, Expense and Likely Duration of This Litigation

Another reason for counsel to recommend, and the court to approve, a settlement is the complexity, duration and risks of further litigation. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (court must consider "the complexity, expense, and likely duration of such litigation"); *Manchaca*, 927 F. Supp. at 966.[4] Here, several factors are present which make it more likely that, absent settlement, the Actions would require additional large expenditures and years of litigation as against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants and there would be a significant risk the class would obtain results far less beneficial than the ones provided by the settlements:

- Each of these defendants is represented by counsel who are extremely capable in the defense of complex securities class actions such as the Actions. Since the inception

---

[4] In evaluating proposed settlements of securities class actions, courts have frequently recognized such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) (citing *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)). Accordingly, security class action compromises are particularly appropriate.

of the litigation, each has denied liability and asserted facially reasonable explanations in response to plaintiffs' allegations.

- Trial of the Actions against the Citigroup Defendants, the JPMorgan Defendants, and the CIBC Defendants would unquestionably take many months and involve the introduction of hundreds of exhibits dealing with dry financial and accounting matters, vigorously contested motions and the expenditure of millions of dollars in additional out-of-pocket expenses.

- Trial would necessarily involve complex issues resulting in conflicting expert testimony, the outcome of which is by no means certain. Thus, if there were further litigation, with respect to any of these defendants, and trial, there is a risk plaintiffs might fail to convince the trier of fact of the merits of the Actions and the Citigroup Defendants, the JPMorgan Defendants, and/or the CIBC Defendants could obtain judgment in their favor.

- Any future trial judgment would still be subject to the continuing risks and vicissitudes of litigation, through possible, and likely, appeals. Experience shows even very large judgments, recovered after lengthy litigation and trial, can be completely lost on appeal.[5]

Thus, counsel believe if the Actions were tried through to conclusion rather than settled,

there would be a real risk of not obtaining a larger recovery against the Citigroup Defendants, the

JPMorgan Defendants, and the CIBC Defendants, particularly since any securities case such as this,

---

[5]    As the court noted in *West Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971):

> It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced. Merely by way of example, two instances in this Court may be cited where offers of settlement were rejected by some plaintiffs and were disapproved by this Court. The trial in each case then resulted unfavorably for plaintiffs; in one case they recovered nothing and in the other they recovered less than the amount which had been offered in settlement.

*Id.* at 743-44. *See, e.g., MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973) (reversing treble damage judgment for over $145,000,000 – an action begun in 1961); *Piper v. Chris-Craft Indus.*, 430 U.S. 1 (1977) (reversing Second Circuit's award of damages under Williams Act in amount of $25,793,365 – after eight years of litigation); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (reversing jury verdict on appeal); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict).

"by its very nature, is a complex animal." *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).

### 6.    The Opinion of Lead Counsel, Lead Plaintiff and Absent Class Members

Lead Counsel, after substantial arm's-length negotiations with senior defense counsel, has concluded that each of the settlements is fair, reasonable and adequate. *See* Hodges Decl., ¶¶2, 7-9. Here, Lead Counsel has acquired a thorough understanding of the Actions and submits the settlements are appropriate and should be approved. The view of plaintiffs' counsel, while not conclusive, is "entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ahearn v. Fibreboard Corp.*, 162 F.R.D. 505, 528 (E.D. Tex. 1995). Moreover, the Lead Plaintiff is involved in all aspects of the litigation and it was consulted extensively concerning issues surrounding the settlements and the substantial risks, expense and uncertainties in taking this case to trial. The Lead Plaintiff appointed by the Court is a very sophisticated investor, a multi-billion dollar fund with a significant financial stake in the Actions. Through University Counsel, The Regents participated directly in the negotiations and/or made themselves available to review, discuss and reject/approve settlement offers communicated by Lead Counsel. The Lead Plaintiff approves the settlements and agrees that they are in the best interest of the class. *See* paragraph 2 to the Declaration of Christopher M. Patti of the University of California Regents in Support of Lead Plaintiff's Motion for Final Approval of Settlements and Partial Reimbursement of Expenses ("Patti Decl."), submitted herewith.

Finally, the reaction from members of the Settlement Class is significant. The Court approved "Notice of Pendency and Partial Settlements of Class Action" (the "Notice") has been sent to some 1,600,000 potential Settlement Class Members and posted on the Notice Administrator's website, and a summary notice published twice in both the *Houston Chronicle* and *Investor's Business Daily. See generally* Declaration of Christl Hansman Re A) Mailing of the Notice of

- 15 -

Pendency and Partial Settlements of Class Action and B) Publication of the Summary Notice ("Hansman Decl."), submitted herewith. The time for objections expired on April 21, 2006. *No one* has objected to the substance of the settlements. Such overwhelming support by the Settlement Class argues strongly in favor of the settlements. *Maher*, 714 F.2d at 456 n.35; *Grinnell Corp.*, 495 F.2d at 463.

One individual, John W. Davis, has objected to the form of the Notice (Docket No. 4618). This is a repeat of a portion of the objection made by Mr. Davis (Docket No. 3221) to the form of the notices disseminated in connection with earlier settlements with Lehman Brothers and Bank of America.[6] Both of these earlier settlements have been approved in the face of this objection (Docket Nos. 4048, 4049). In essence, Mr. Davis complains that the Notice does not set forth the amount of attorneys' fees and expenses being sought on an aggregate and per share basis and claims that this violates the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). But he concedes that, with respect to the only fees and expenses sought at this time – the application by plaintiffs' counsel in the *Conseco* Action – this information *is* set forth in the Notice. Objection at p.3 n.2 (Docket No. 4618).

As with earlier settlements, no fees or expenses are being sought by Lead Counsel at this time and the Notice is clear on this point. *See* Hansman Decl., Ex. A at p.16. Just as in prior settlements, no fees will be applied for without further notice to the Settlement Class and an opportunity to be heard. Nothing more in terms of disclosure is required.[7] Moreover, the objector's

---

[6]    *See* Objection to Partial Settlements of Class Action ("Objection") (Docket No. 4618) at p.3 n.1.

[7]    Moreover, to the extent a Settlement Class Member desired to know the outside *parameters* of a *future* fee application by Lead Counsel, one need only look to the Declaration of Christopher M. Patti in Support of Lead Plaintiff's Amended Motion for Class Certification (Docket 4551) at paragraph 8 which discusses the fee agreement negotiated with Lead Counsel by The Regents.

assertion that the amount of any fee ultimately awarded is somehow linked to the fairness of the settlements[8] is just wrong. There is no such linkage. Each Stipulation of Settlement (Docket Nos. 4436, 4438, 4439) (at paragraph 6.3 of each) provides:

> The procedure for, and the allowance or disallowance by the Court of, any Fee and Expense Application are not part of the Settlement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement.

## V.   THE EXPENSES FOR WHICH LEAD PLAINTIFF SEEKS REIMBURSEMENT WERE REASONABLY INCURRED AND SHOULD BE REIMBURSED

Under the PSLRA, the Court may award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). As discussed in detail in the Declaration of Christopher M. Patti in Support of Lead Plaintiff's Amended Motion for Class Certification (Docket No. 4551) and in the Patti Declaration, The Regents are extraordinarily committed to fulfilling their role as Lead Plaintiff as invisioned by the PSLRA. At least two attorneys from the Office of General Counsel of The Regents of the University of California have significant involvement in The Regent's oversight, supervision and management of the Enron litigation, including the review of pleadings, legal and strategic input, attendance at Court and participation in settlement negotiations. The Regents are also assisted in their independent oversight role by The Honorable J. Lawrence Irving, a retired Federal District Court Judge who has been retained by The Regents as an independent consultant.[9] In addition, The Regents has retained a team of additional consultants to

---

[8]   "The failure to provide pertinent information concerning Lead Plaintiff's anticipated fee request ignores the critical linkage between a Class member's decision to participate in a settlement and the amount of the requested attorneys' fee award." Objection at p.13 (Docket No. 4618).

[9]   Effective May 1, 2006, Judge Irving joined Lerach Coughlin as Special Counsel. He will continue to provide valuable assistance in the prosecution of the Enron litigation as well as assistance and advice to the firm's many institutional clients.

help it monitor and oversee the prosecution of the Actions. These include attorneys with expertise in securities law issues (Robert Fairbank), and bankruptcy (Kenneth N. Klee) as well as damages, allocation and investment banking issues (Rock Hankin).[10] To preserve the appearance and fact of the independence of this consulting team, The Regents has paid for services of these consultants out of its own funds. The total expenditure to date for these consultants and experts exceeds $4,396,058.50. At this time, The Regents seeks reimbursement of $4,000,000 of this amount.[11] There is no question but that this consulting team and The Regents' commitment to its oversight role have added significant value to the prosecution of the litigation and the settlements achieved to date. Moreover, no Settlement Class Member has objected to the requested reimbursement. The time, effort and expense The Regents committed is encouraged by Congress in enacting the PSLRA and was of great help in bringing about this extraordinary benefit to the class. The amount requested is reasonable and should be approved by the Court.

---

[10]     This same team of consultants was retained by The Regents in its Lead Plaintiff oversight role in *In re Dynegy, Inc. Sec. Litig.*, pending in this District where Judge Lake approved a $468 million settlement and reimbursed The Regents in full for the expense of these consultants. *See* Patti Decl., ¶12. This team (with the exception of Mr. Klee, whose bankruptcy expertise was not required) was also retained to advise The Regents in its AOL/Time Warner and WorldCom private securities cases. *Id.*

[11]     The requested reimbursement amounts to about 6/100 of 1% of the aggregate amount of these three settlements.

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests the Court grant the motion for

final approval of the proposed settlements with the Citigroup Defendants, the JPMorgan Defendants,

and the CIBC Defendants and The Regents' motion for reimbursement of expenses.

DATED:  May 15, 2006                              Respectfully submitted,

                                                 LERACH COUGHLIN STOIA GELLER
                                                   RUDMAN & ROBBINS LLP
                                                 WILLIAM S. LERACH
                                                 KEITH F. PARK
                                                 DARREN J. ROBBINS
                                                 HELEN J. HODGES
                                                 BYRON S. GEORGIOU
                                                 JAMES I. JACONETTE
                                                 MICHELLE M. CICCARELLI
                                                 JAMES R. HAIL
                                                 ANNE L. BOX
                                                 JOHN A. LOWTHER
                                                 ALEXANDRA S. BERNAY
                                                 MATTHEW P. SIBEN
                                                 ROBERT R. HENSSLER, JR.


                                                      /s/Helen J. Hodges
                                                 HELEN J. HODGES

                                                 655 West Broadway, Suite 1900
                                                 San Diego, CA  92101
                                                 Telephone:  619/231-1058

                                                 LERACH COUGHLIN STOIA GELLER
                                                   RUDMAN & ROBBINS LLP
                                                 PATRICK J. COUGHLIN
                                                 100 Pine Street, Suite 2600
                                                 San Francisco, CA  94111
                                                 Telephone:  415/288-4545
                                                 415/288-4534 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
REGINA M. AMES
KATHERINE C. SPLAN
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Telephone:  310/859-3100
310/278-2148 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
G. PAUL HOWES
JERRILYN HARDAWAY
Texas Bar No. 00788770
Federal I.D. No. 30964
1111 Bagby, Suite 4850
Houston, TX  77002
Telephone:  713/571-0911

**Lead Counsel for Plaintiffs**

SCHWARTZ, JUNELL, GREENBERG
  & OATHOUT, LLP
ROGER B. GREENBERG
State Bar No. 08390000
Federal I.D. No. 3932


_____/s/Roger B. Greenberg_____
          ROGER B. GREENBERG

Two Houston Center
909 Fannin, Suite 2700
Houston, TX  77010
Telephone:  713/752-0017

HOEFFNER & BILEK, LLP
THOMAS E. BILEK
Federal Bar No. 9338
State Bar No. 02313525
1000 Louisiana Street, Suite 1302
Houston, TX  77002
Telephone:  713/227-7720

**Attorneys in Charge**

BERGER & MONTAGUE, P.C.
SHERRIE R. SAVETT
1622 Locust Street
Philadelphia, PA 19103
Telephone: 215/875-3000

**Attorneys for Staro Asset Management**

WOLF POPPER LLP
ROBERT C. FINKEL
845 Third Avenue
New York, NY 10022
Telephone: 212/759-4600

**Attorneys for Nathaniel Pulsifer**

SCOTT + SCOTT, LLC
DAVID R. SCOTT
108 Norwich Avenue
Colchester, CT 06415
Telephone: 860/537-3818

**Attorneys for the Archdiocese of Milwaukee
Supporting Fund, Inc.**

CUNEO GILBERT & LaDUCA, L.L.P.
JONATHAN W. CUNEO
MICHAEL G. LENETTI
507 C Street, N.E.
Washington, DC 20002
Telephone: 202/789-3960
202/789-1813 (fax)

**Washington Counsel**

S:\Settlement\Enron.Set\BRF FINAL APPROVAL 00030331.doc

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS WITH CITIGROUP INC., JPMORGAN CHASE & CO., AND CANADIAN IMPERIAL BANK OF COMMERCE AND FOR PARTIAL REIMBURSEMENT OF LEAD PLAINTIFF'S EXPENSES AND MEMORANDUM IN SUPPORT THEREOF has been served by sending a copy via electronic mail to serve@ESL3624.com on May 15, 2006.

I further certify that a copy of the foregoing document has been served via overnight mail on the following parties, who do not accept service by electronic mail on May 15, 2006.

Carolyn S. Schwartz
United States Trustee, Region 2
33 Whitehall Street, 21st Floor
New York, NY 10004

Tom P. Allen
McDaniel & Allen
1001 McKinney St., 21st Fl
Houston, TX 77002

I also certify that a copy of the above-mentioned document has been served via UNITED STATES MAIL (unless otherwise noted) on the parties listed on the attached "Additional Service List" on this 15th day of May, 2006.

*Deborah S. Granger*

_____
DEBORAH S. GRANGER

A copy of the foregoing document has also been served via UNITED STATES MAIL on the following parties:

## ADDITIONAL SERVICE LIST

| | |
|---|---|
| Stuart Yoes<br>THE YOES LAW FIRM, LLP<br>3535 Calder Avenue, Suite 235<br>Beaumont, TX 77726-7584<br>409/833-2352<br>409/828-5577 (fax)<br><br>Attorney for Objectors RINIS | Frank H. Tomlinson<br>PRITCHARD, McCALL; & JONES, LLC<br>505 N. 20th Street, Suite 800<br>Birmingham, AL 35203<br>205/328-9190<br>205/458-0035 (fax)<br><br>Attorney for Objectors RINIS |
| Edward W. Cochran<br>20030 Marchmont Rd.<br>Shaker Heights, OH 44122<br>216/751-5546<br>216/751-6630 (fax)<br><br>Attorney for Objectors RINIS | N. Albert Bacharach Jr.<br>115 N.E. Sixth Avenue<br>Gainesville, FL 32601-6592<br>352/378-9859<br>352/338-1858 (fax)<br><br>Attorney for Objectors RINIS |
| Paul S. Rothstein<br>626 N.E. First Street<br>Gainesville, FL 32601<br>352/376-7650<br>352/374-7133 (fax)<br><br>Attorney for Objectors RINIS | Maureen McGuirl<br>FENSTERSTOCK & PARTNERS LLP<br>30 Wall Street, 9th Floor<br>New York, NY 10005<br>212/785-4100<br>212/785-4040 (fax)<br><br>Attorneys for Objectors James H. Allen, Jr., Burton W. Carlson, Jr., Michael T. DeFreece, Marcia A. DeFreece, Andrew E. Krinock, Phyllis A. Krinock, Partcom Limited Partnership, Reed Partners, L.P., formerly known as Reed Family Ltd. Partnership, F. Walker Tucei, June P. Tucei, Romand H. Uhing, Alvera A. Uhing and Viets Family Associates, LLP |
| Lawrence W. Schonbrun<br>LAW OFFICES OF LAWRENCE W. SCHONBRUN<br>86 Eucalyptus Road<br>Berkeley, CA 94705<br>510/547-8070<br><br>Attorney for Objector Brian Dabrowski | Richard C. Bauerle<br>13254 Vandalia, #80<br>Fountain Hills, AZ 85268<br><br>Objector |
| Arnold Gregg<br>4445 Forest Glen Road<br>Anaheim Hills, CA 92807<br><br>Objector<br><br>S:\Settlement\Enron.Set\ObjectorSERVICElist.doc | ** Steven F. Helfand<br>HELFAND LAW OFFICES<br>601 Montgomery Street, Suite 325<br>San Francisco, CA 94111<br>415/397-0007<br>415/397-0009 (fax)<br><br>Attorney for Objector John W. Davis<br><br>** Denotes service via UPS |