IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Enron Corporation Securities, Derivative & "ERISA" Litigation | § § § | MDL-1446 |
| | § | |
| MARK NEWBY, ET AL., | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-01-3624 |
| | § | CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § | |
| | § | |
| Defendants | § | |
| ROBERT A. BELFER, et al., | § | |
| | § | |
| Third-Party Plaintiffs, | § | |
| VS. | § | |
| | § | |
| ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES, LTD., ENERGY INSURANCE MUTUAL, LTD., | § § § | |
| | § | |
| Third-Party Defendants, | § | |
| | § | |
| AND | § | |
| | § | |
| FEDERAL INSURANCE COMPANY, et al., | § § | |
| | § | |
| Third-Party Defendants. | § | |
| FEDERAL INSURANCE COMPANY, et al., | § § | |
| | § | |
| Third-Party Counterclaim Plaintiffs, | § § | |
| | § | |
| VS. | § | |
| | § | |
| ROBERT A. BELFER, et al., | § | |
| | § | |
| Third-Party Counterclaim Defendants. | § § | |

**OPINION AND ORDER OF INTERLOCUTORY SUMMARY JUDGMENT**

Pending before the Court in the above referenced cause are the following motions:  (1) Excess Insurers' motion for summary judgment granting relief sought in First Amended Third-Party Counterclaim for Interpleader[1] (#3119); (2) the Former Outside Directors' motion for summary judgment regarding interpleaded policy proceeds (#3121), joined by Ken Harrison (#3131); (3) the Former Outside Directors' motion for summary judgment against the Answering Interpleader Defendants[2] (#3523);

---

[1]  The First Amended Third-Party Counterclaim for Interpleader is included in #2488 at 22-76.  The Third-party Counterclaimant Excess Insurers are Associated Gas & Electric Services Ltd. ("AEGIS"), Energy Insurance Mutual Limited ("EIM"), Federal Insurance Company, Greenwich Insurance Company, Certain Underwriters at Lloyd's, London subscribing to insurance certificate No. 901/LK9802531, St. Paul Mercury Insurance Company, Royal Indemnity Co., successor in interest to Royal Insurance Company of America, ACE Bermuda Insurance Ltd., and Kemper Indemnity Insurance Company.
     As the relief sought, the Excess Insurers request summary judgment in their favor on the counterclaim for interpleader and final judgment in their favor enjoining all suits and claims against them relating to the D&O policies, in accordance with the form judgment filed on January 12, 2005 as Exhibit C (Interpleader Judgment)(#2949-3 at 1-8) to Exhibit B (Insurance Agreement)(#2949-2 at 16-36) to the Stipulation of Settlement (#2949).

[2]  The Answering Defendants are Jeffrey Ader, Daniel Allegretti, James Bouillon, Dan Boyle, Paul Choi, Lawrence Clayton, Douglas Clifford, Mary Ellen Coombe, Steve Daniels, Joseph Deffner, David Delainey, Richard G. DiMichele, James Fallon, Dana Gibbs, John Gillis, Daniel Haas, Claibourne L. Harris, David Hultsman, Wincenty Kaminski, Lawrence Lawyer, David Lund, Lori Maddox, Kristin Mordaunt, Julia Heintz Murray, James Noles, Alfred Pennisi, Susan Ralph, Michael Ranz, Rex Rogers, Molly Sample, Hunter Shively, Stuart Staley, and Terry Ward.  The Outside Directors have included the pleadings of those who attempted to assert a claim for coverage in their Answers as exhibits to #3523.  The Court granted the Former Outside Directors' motion for default judgment against all the nonanswering Interpleader Defendants (#3718).  By stipulation, the Court has also dismissed answering Defendants Dan Boyle and James Noles from the interpleader action.  Boyle: #3676,

and (4) Defendant Daniel Allegretti's[3] *pro se* motion for coverage
(and allocation of "a fair and equitable share of the subject
insurance proceeds to his defense") (#3388).

### Procedural Background

In October 2004 the Excess Insurers received several
settlement demands, the first two of which alone, if paid, would
exhaust the remaining $200 million of proceeds of Enron's primary
and ten excess directors and officers ("D&O") policies[4] for

---

3662; Noles: #4493, 4504. Thus the only pleadings of the
interpleader Defendants still pending in connection with final
approval of the settlement at issue are John Davis' objections
(#3221) and Brian Dabrowski's Objections (#3288), which will be
addressed at the final settlement hearing.

[3] Allegretti, Enron's former Director of Regulatory and
Government Affairs from October 14, 1996 until December 5, 2001, is
a Defendant in *Town of New Hartford, et al. v. Lay, et al.*, H-04-
2963.

[4] The primary policy is Policy No. D0079A1A98 § IV(Q)(3)
issued by Associated Electric & Gas Insurance Services. The ten
excess policies are (1) Policy No. 900630-00D0 issued by Energy
Insurance Mutual ("EIM Policy"), providing a $65 million limit
excess of the underlying primary coverage of $35 million; (2)
Policy No. 8142-05-47C issued by Federal Insurance Company,
providing a $25 million limit excess of the $100 million in
underlying coverage; (3) Policy No. NDA 0131301-98H issued by Twin
City Fire Insurance Company ("Twin City Policy"), providing a $25
million limit excess of the $125 million in underlying coverage;
(4) Policy No. ELU 82248-01 issued by Greenwich Insurance Company
("Greenwich Policy"), providing coverage from $150 million to $175
million; (5) Policy No. 901/LK9802531 issued by certain
Underwriters at Lloyd's of London, providing coverage from $175
million to $200 million; (6) Policy No. 568CM0934 issued by St.
Paul Mercury Insurance Company ("St. Paul Policy"), providing
coverage from $200 million to $225 million; (7) Policy No. 8181-43-
14 issued by Federal Insurance Company, providing coverage from
$225 million to $250 million; (8) Policy No. PSF000633 issued by
Royal Insurance Company of America, providing coverage from $250
million to $275 million; (9) Policy No. ENE-9459D issued by ACE
Bermuda Insurance Ltd.("ACE Policy"), providing coverage from $275
million to $300 million; and (10) Policy No. 8179-41-03 SWH issued

defense costs in Enron-related civil and criminal suits, and was sued by others.[5]   Enron's Former Outside Directors notified the Excess Insurers on October 12, 2004 that they and Lead Plaintiff had settled the claims against them in *Newby, et al. v. Enron Corp., et al.*, H-01-3624.   A letter dated October 14, 2004 notified the Excess Insurers that claims had been settled in the derivative class action, *Pirelli Armstrong Tire Corp. Medical Benefits Trust v. Lay, et al.*, H-01-3645, and in *Official Committee of Unsecured Creditors v. Fastow, et al.*, H-04-0091, against the Former Outside Directors, James Derrick, and Rick Buy, in exchange for payment of 17.2% of remaining proceeds, which would reduce the amount paid to the *Newby* Plaintiffs under the first settlement.[6]   Then in a letter dated October 20, 2004, Kenneth Lay demanded that Greenwich pay $10.25 million to settle claims against him in *The Retirement Systems of Alabama, et al. v. Merrill Lynch & Co.*, No. CV-03-F-69-N (M.D. Ala.) and in *City*

---

by Federal Insurance Company in a Quota Share Policy with five participating insurers (Federal Insurance Company (50%), Kemper Insurance Indemnity Co. (20%), EIM (15%), Greenwich (5%), and AEGIS (10%)), providing coverage from $300 million to $350 million. Before the circumstances giving rise to the interpleader action occurred, the Excess Insurers had paid out the proceeds of the first four layers of D&O coverage, totaling $150 million, for defense costs claimed by insureds following Enron's collapse and the subsequent filing of approximately 260 civil lawsuits, government investigations and administrative proceedings as well as criminal proceedings.

[5] For a detailed discussion, see the Court's August 1, 2005 Opinion and Order Denying Motions to Compel Arbitration (#3737).

[6] Thus the demands made by the October 12 and 14, 2004 letters, if satisfied, would exhaust the remaining proceeds under the policies.

*of Montgomery, et al. v. Lay, et al.*, No. CV-03-F-1152-N (M.D. Ala.). Facing competing and mutually exclusive demands as well as objections from a number of insureds, including nonsettling insureds and others not parties to these lawsuits,[7] the Excess Insurers filed a compulsory Third-Party Counterclaim for Interpleader on October 21, 2004 in *Newby* (Original, #2483; amended, #2488 at 22-76), and, pursuant to a Court order of December 22, 2004, deposited the $200 million remaining from Enron's $350 million D&O policies in the Court Registry pursuant to 28 U.S.C. § 1336. In addition, on October 20, 2004, Ken Harrison sued the Excess Insurers in New York, *Harrison v. AEGIS, et al.*, No. 04-CV-8319 (S.D.N.Y.), to compel binding arbitration on issues relating to distribution of the $200 million of proceeds and to force the Excess Insurers to withdraw the interpleader action in *Newby*. Finally, on October 22, 2004, Michael Krautz, Scott Yeager, and Kevin Howard (the Enron Broadband Services, or "EBS," Defendants) also sued the Excess Insurers in New York, seeking to compel them to arbitration and to withdraw the interpleader. *Krautz, et al. v. Greenwich Ins. Co., et al.*, No. 04 CV 8389 (S.D.N.Y.). By the end of 2004, this Court concluded that it had federal subject matter jurisdiction under 28 U.S.C.

---

[7] The interpleader statute, 28 U.S.C. § 1335, provides the court with jurisdiction over potential as well as actual claims. *Minnesota Mutual Life Ins. v. Ensley*, 174 F.3d 977 (9th Cir. 1999), *citing Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1308 (8th Cir. 1977).

§ 1335[8] over the interpleader action and entered a preliminary injunction enjoining payments under the policies and barring other litigation against the Excess Insurers under 28 U.S.C. § 1335(a). *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. MDL 1446, Civ. A. H-01-3624, 2004 WL 2889891 (S.D. Tex. Dec. 9, 1004). *See also* #3737 at 30-31.[9]

On January 12, 2005 *Newby* Lead Plaintiff moved for preliminary approval of Partial Settlement with the Former Outside Directors (Robert Belfer, Norman Blake, Ronnie Chan, John Duncan, Paulo Ferraz Pereira, Joe Foy, Wendy Gramm, Robert Jaedicke, Charles LeMaistre, Rebecca Mark-Jusbasche, John Mendelsohn, Jerome Meyer, Frank Savage, John Urquhart, John Wakeham, Charles Walker, Bruce Willison, and Herbert Winokur) and with Ken Harrison (instrument #2950).  On January 24, 2005 and February 3, 2005 Defendants Fastow and Hannon filed objections to the proposed

---

[8] Section 1335(a) provides in relevant part,

> The district courts shall have original jurisdiction of any civil action of interpleader . . . filed by any . . . corporation . . . having . . . issued a . . . policy of insurance . . . of value or amount of $500 or more . . . if
> (1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property . . . and if (2) the plaintiff has deposited such money or property . . . into the registry of the  court . . . .

[9] This Court previously concluded that the instant action did not satisfy the requirements for interpleader under Fed. R. of Civ. P. 22 because there was only minimum diversity of citizenship.

settlement (#2989, 3004, and 3046) on the grounds that the insurance policies required arbitration, as they had argued in previously filed motions to compel arbitration and to stay interpleader.  A hearing on the motion for preliminary approval of the settlement was held on February 4, 2005 and the motion was granted (#3067).  In accordance with the schedule established during that hearing, Fastow and Hannon filed motions for summary judgment in the Interpleader Action on February 14, 2005 (#3114 and 3118) and opposition (#3226, 3227, 3234) to the Former Outside Directors and Excess Insurers' motions for summary judgment on March 14, 2005.  On August 1, 2005 this Court denied Hannon's and Fastow's motions to compel arbitration (#3737), and they appealed the denial to the Fifth Circuit Court of Appeals (#3845 and 3855).  All proceedings involving final approval of the settlement were stayed by this Court pending resolution of the appeal.

Defendants Hannon and Fastow have recently reached an agreement to settle their dispute with the Former Outside Directors, Excess Insurers, and Lead Plaintiff, have successfully requested that the Fifth Circuit stay the appeal of the denial of motions to compel arbitration, and have conditionally[10] withdrawn

---

[10] The withdrawal of the pleadings is conditioned upon the Court's approval of the proposed settlement and entry of a final judgment in the interpleader action, the approval order and final judgment's becoming final and non-appealable, the funding of an escrow in accordance with the executed Term Sheet that embodies the parties' agreement, the filing of Rule 41(a) notices of dismissal by Enron, the Official Committee of the Unsecured Creditors of Enron, and the Trustee of the LJM2 Creditors Liquidation in cases identified in the Term Sheet, and other conditions subsequent to settlement.

their opposition to the settlement and their motions for summary judgment (#4533) to permit the Court to resolve the Former Outside Directors' and Excess Insurers' motions for summary judgment based on the interpleader.

Moreover, because the only objections to the Excess Insurers' motion for summary judgment granting relief sought in First Amended Third-Party Counterclaim for Interpleader and the Former Outside Directors' motions for summary judgment regarding interpleaded policy proceeds were filed by Defendants Hannon and Fastow, who have now withdrawn them (#4533), these motions for summary judgment are unopposed.  There are claims in some answers filed by Defendants to the interpleader counterclaim (see exhibits to #3523) and Defendant Allegretti's motion for coverage (#3388) that need to be addressed before the motions for summary judgement on the interpleader can be granted as a matter of law, as well as before final approval of the partial settlement at hand can be considered.

**Pending Motions**

The Excess Insurers now seek summary judgment based on the First Amended Third-Party Counterclaim for Interpleader as properly and justifiably brought in response to conflicting demands by insureds for the policy proceeds, as well as on the claims against them asserted in the Former Outside Directors' First Amended Third-Party Complaint for Contract Enforcement and Injunctive Relief Regarding D&O Policy Proceeds against the Excess Insurers and all counterclaims against the Excess Insurers by any

Third-Party Counterclaim Defendants, including that by James Bouillion.  The Former Outside Directors and Harrison seek summary judgment on their claims for coverage and an order directing that the interpleaded funds to be used to fund their settlements. Furthermore Lead Plaintiff seeks final approval of their settlement with the Former Outside Directors and Harrison.

## Applicable Law

### Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact; the movant may, but is not required to, negate elements of the nonmovant's case to prevail on summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case

on which the nonmovant bears the burden of proof a trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id., quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th

Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.[11]   The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

It is well established in the Fifth Circuit that "[a] federal court may not grant a 'default' summary judgment where no response has been filed." *Bradley v. Chevron U.S.A., Inc.*, No. Civ. A. 204CV092J, 2004 WL 2847463, *1 (N.D. Tex. Dec. 10, 2004), *citing Eversley v. MBank of Dallas*, 843 F.2dd 172, 174 (5th Cir. 1988).   Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment.   *Id.* at *1 and n. 2*, citing id.; see also Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003)(where no opposition is filed, the nonmovant's unsworn pleadings are not competent summary judgment evidence and movant's evidence may be accepted as undisputed). *See also Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996)("A summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not

---

[11] The court has no obligation to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).  Rather the nonmovant must identify evidence in the record and demonstrate how it supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

constitute summary judgment evidence."), *citing Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991).

## Procedure for Interpleader Actions

It is well established that under the federal interpleader statute, where two or more adverse claimants of diverse citizenship claim to be entitled to insurance proceeds valued at $500 or more, an insurer may opt to file an interpleader or an action for declaratory relief to protect its own interests. *See State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 534 (1967)("[W]here a stakeholder, faced with rival claims to the [single] fund . . . acknowledges--or denies--his liability to one or the other of the claimants[,] . . . the fund itself is the target of the claimants[,] . . . [i]t marks the outer limits of the controversy[, and] . . . [i]t is, therefore, reasonable and sensible that interpleader, in the discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation.")[12](*citing* 28 U.S.C. § 1335(a),

---

[12] "The legislative purpose of an interpleader action is to remedy the problems posed by multiple claimants to a single fund, and to protect a stakeholder from the possibility of multiple claims on a single fund." *Rhoades v. Casey*, 196 F.3d 592, 600 n.8 (5th Cir. 1999)(*citing Wausau Ins. Cos. v. Gifford*, 954 F.2d 1098, 1100 (5th Cir. 1992)), *cert. denied*, 531 U.S. 924 (2000). *See also Indianapolis Colts v. Mayor and City Council of Baltimore*, 733 F.2d 484, 486(7th Cir. 1984)("The historical and still the primary purpose of interpleader is to enable a neutral stakeholder, usually an insurance company or a bank, to shield itself from liability for paying over the stake to the wrong party. This is done by forcing all claimants to litigate their claims in a single action brought by the stakeholder."); *Metropolitan Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 748 (S.D. Tex. 2001)("An interpleader suit serves to shield an uninterested stakeholder from the costs of unnecessary, multiple litigation."). Thus the disinterested

authorizing district court to hear actions with two or more claimants of diverse citizenship who "are claiming or may claim to be entitled" to money or property valued at $500 or more; 28 U.S.C. § 2361, authorizing district court to "hear and determine the case," determine the rights of competing claimants, "discharge plaintiff from further liability," and enjoin all parties from instituting proceedings in any court regarding the property at issue).[13]

Furthermore, three Circuit Courts of Appeals, including the Second and the Fifth, have held that the district court normally determines the rights of the parties and the priority of claims in an interpleader action as they existed at the time the

_____

interpleader/stakeholder should be dismissed from the suit and shielded from counterclaims based on the same interpleaded funds. *Barretto*, 178 F. Supp. 2d at 748.

[13] Section 2361 provides,

In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court.   Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.

Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

interpleader action was commenced. *Avant Petroleum, Inc. v. Banque Paribas,* 853 F.2d 140, 143-44 (2d Cir. 1988)(holding "that where an interpleader action is brought to have the court determine which of two parties has priority with respect to the interpleader fund, the court should normally determine priority as of the time the fund was created"); *White v. FDIC*, 19 F.3d 249, 252 (5th Cir. 1994)(holding that "activity subsequent to the initiation of an interpleader action is normally immaterial in determining which claimant has a superior right to the interpleader fund"); *Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1369-70, 1371 (9th Cir. 1997)("The priority of claims to the res in an interpleader action must normally be determined at the time the action is initiated, and cannot be altered by the events after the interpleader fund becomes viable."). As stated by the Ninth Circuit, "As the entire point of an interpleader action is to resolve then competing rights and claims, it makes perfect sense that the action itself cannot be used as a vehicle for further jockeying for claim position." *Ponsoldt*, 118 F.3d at 1370.

The date a statutory interpleader is "commenced," however, is the date when the interpleader fund is deposited with the Court. *Avant Petroleum*, 853 F.2d at 143, 144; *Ponsoldt*, 118 F.3d at 1369; *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976)("[T]he deposit requirement is a jurisdictional prerequisite to a suit under the interpleader statute. 28 U.S.C. § 1335."). The language of § 1335(a)(2) reflects this point: "The district court shall have original jurisdiction of any civil

- 14 -

action of interpleader or in the nature of interpleader . . . if

. . . the  plaintiff has deposited such money or property . . .

into the registry of the  court . . . ."  This Court has

previously determined that the deposits of cash in the Court

Registry were made by the Excess Insurers between January 4-11,

2005.  #3737 at 37-38.

In *Rhoades v. Casey*, 196 F.3d 592, 600-01 (5th Cir.

1999), *cert. denied*, 531 U.S. 924 (2000), the Fifth Circuit

indicated the procedure for the court to address an interpleader

suit:

> A district court has broad powers in an
> interpleader action.  An interpleader action
> typically involves two stages.  In the first
> stage the district court decides whether the
> requirements for rule or statutory
> interpleader action have been met by
> determining if there is a single fund at
> issue and whether there are adverse claimants
> to that fund.  Wright, Miller & Kane,
> [F]ederal Practice & Procedure:  Civil 2d §
> 1714 (1986).  If the district court finds
> that the interpleader action has been
> properly brought the district court will then
> make a determination of the respective rights
> of the claimants.  *Id*.  When there is no
> genuine issue of material fact the second
> stage may be adjudicated at summary judgment,
> and if there is a trial each claimant must
> prove their right to the fund by a
> preponderance of the evidence.  *Id*.  After
> entering a judgment in the interpleader
> action the district court also has the power
> to make all appropriate orders to enforce its
> judgment.  28 U.S.C. § 2361.

*See also General Electric Capital Assurance v. Van Norman*, 209 F.

Supp. 2d 668,670 (S.D. Tex. 2002); 7 Charles Alan Wright, et al.,

*Federal Practice & Procedure Civ. 3d* § 1714 ("Interpleader is a

remedy involving two steps. . . . During the first the court determines the right of the party invoking the remedy to compel the claimants to litigate their claims to the stake in one proceeding.  It is at this point that the court determines whether the prerequisites to rule or statutory interpleader have been met by examining such things as the citizenship of the litigants, the merits of the asserted threat of multiple vexation, and, if interpleader is sought under the statute, the sufficiency of the stakeholder's deposit or bond. . . . The **second** stage of interpleader involves the determination of the respective rights of the claimants to the stake. **At this juncture, each claimant occupies an adversary position to the others** and must proceed accordingly. [emphasis added by the Court]").  This stage is "ultimately resolved by the entry of a judgment in favor of the claimant who is lawfully entitled to the stake."  *NYLife Distributors, Inc.*, 72 F.3d 371, 375 (3d Cir. 1995)(*citing Diamond Shamrock Oil & Gas Corp. v. Commissioner of Revenues*, 422 F.2d 532, 534 (8th Cir. 1970)), *cert. denied sub nom Gerasolo v. Adherence Group, Inc.*, 517 U.S. 1209 (1996).  If there is no genuine issue of material fact, this stage may be resolved by summary judgment; if the material facts are disputed, each claimant must prove its right to the fund by a preponderance of the evidence.  *Van Norman*, 209 F. Supp. 2d at 670.

This Court has previously determined that for purposes of the statutory interpleader compulsory counterclaim,[14] there exists the requisite minimum diversity of citizenship, sufficient to qualify the action as a statutory interpleader.

The interpleader has the burden of demonstrating that the interpleader is proper, and the Excess Insurers have satisfied that burden here.  *Fresh America Corp. v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 411, 414 (N.D. Tex. 2005).  There is a single fund because the policies are layered, each triggered when the one below is exhausted.  There are a number of adverse parties attempting to claim a portion of the proceeds, which are insufficient to satisfy all.  There is no evidence of laches:  the

---

[14] The Excess Insurers filed their interpleader action under the statute and under Federal Rule of Civil Procedure 22.  The statute confers subject matter jurisdiction on the federal courts unlike the Rule, which is purely procedural and which therefore requires complete diversity of citizenship.  Complete diversity does not exist here according to the interpleaders' pleadings, so the Court has determined that interpleader action here is statutory.  #3737 at 30-31; *see Aetna Casualty and Surety Co. v. Ahrens*, 414 F. Supp. 1235, 1253 (S.D. Tex. 1975, supplemented 1976)(Bue, J.)(Rule 22 interpleader actions require complete diversity between the stakeholder and the claimants; statutory interpleader under 28 U.S.C. §1335 requires only minimum diversity of citizenship between two [or more] adverse claimants), *citing State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1976)(§ 1335 "has been uniformly construed to require only 'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens."); *NYLife Distributors, Inc.*, 72 F.3d 371, 373 n.1 (3d Cir. 1995), *cert. denied sub nom Gerasolo v. Adherence Group, Inc.*, 517 U.S. 1209 (1996); *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 584 (D.C. Cir. 1993).  Thus "the citizenship of the stakeholder is irrelevant for jurisdictional purposes[;] the statute calls for diversity of citizenship between two or more of the adverse claimants . . . ." *NYLife*, 72 F.3d at 374.

Excess Insurers filed the interpleader swiftly after adverse demands were made for the remaining policy proceeds. Here with respect to the settlements of *Newby* Lead Plaintiff and the Official Creditors Committee with the Outside Directors and Harrison, the demands of Outside Directors and Harrison will exhaust the total remaining proceeds, to the detriment of later demands by Lay and the EBS Defendants. *Cf. Wausau Ins. Companies v. Gifford*, 954 F.2d 1098 (5th Cir. 1992)(in a suit by homeowners against their developer, the court found it had no statutory interpleader jurisdiction where there was no single fund, but instead was faced with claims against six separate insurance companies with separate policies covering different periods during a four-year span with different claimants which the insurers failed to have consolidated). This Court finds that the Excess Insurers have demonstrated the existence of multiple exclusive and conflicting demands by adverse claimants on those remaining policy proceeds that now comprise the fund, and the deposit of the proceeds is well above the statutory $500 minimum. Thus because the interpleader was properly and justifiably filed, the Court proceeds to address the motion for summary judgment as it relates to the rights of the claimants to the fund.

As Movants for summary judgment, the Former Outside Directors bear the burden of "informing the district court of the basis for [their motion] and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavit, if any,' which [they]

believe[] demonstrates the absence of a genuine issue of material fact." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996), *quoting Celotex*, 477 U.S. at 1986 (*quoting* Fed. R. Civ. P. 56(c)).

The Former Outside Directors and Harrison move for a summary judgment that they are entitled to a court order directing that the interpleaded funds be used to fund their settlements with *Newby* Plaintiffs and the Official Creditors Committee.

### Court's Ruling

One condition necessary to trigger coverage under the policies has been met. Enron is bankrupt and cannot reimburse the Former Outside Directors and Harrison for the sums they are legally obligated to pay.

As for consent to the settlement, although Former Outside Directors argue that the Excess Insurers have consented to the settlement by filing the interpleader action, the Court disagrees. By filing this interpleader action and depositing all the remaining policy proceeds in the Court registry, the Excess Insurers in essence have removed themselves from the fray and transferred the question of consent to this Court. By a letter from their counsel, they have indicated that they take no position with respect to the conflicting demands and that they "remain neutral with respect to issues in dispute among the insureds, including the reasonableness of the proposed settlements." Letter from Bailey Cavalieri LLC on Behalf of the Excess Insurers, Ex. A .13 to #3138. The law clearly protects their right to do so.

It is undisputed that the settlements are covered by the policies. *See* the insuring clause, AEGIS Policy Endorsement No. 22; Endorsement No. 1D(3):

> The INSURER shall pay on behalf of the DIRECTORS and OFFICERS any and all sums which they shall become obligated to pay as ULTIMATE NET LOSS for which the COMPANY has not provided reimbursement, by reason of any WRONGFUL ACT which takes place during the COVERAGE PERIOD and is actually or allegedly caused, committed or attempted by the DIRECTORS or OFFICERS while acting in their respective capacities as DIRECTORS or OFFICERS, provided such ULTIMATE NET LOSS arises from a CLAIM first made against the DIRECTORS or OFFICERS during the POLICY YEAR or during the DISCOVERY PERIOD, if purchased.

Under the Stipulation of Settlement (#2949), Former Outside Directors and Harrison are obligated to pay to the *Newby* Plaintiffs and the Official Creditors Committee an "ULTIMATE NET LOSS," i.e., the settlement amount. "ULTIMATE NET LOSS" covers settlement payments because it includes "Indemnity." *Id.* at § II.()). "Indemnity" is defined as including sums that the Director "shall be legally obligated to pay as damages, either by adjudication or compromise with the consent of the Insurer." *Id.* at § II.(G). Specifically, under the Stipulation of Settlement (#2949), resolving Settling Defendants' alleged violations of Sections 11 and 15 of the Securities Act of 1933 and the Texas Securities Act,[15] the Outside Directors and Harrison are to pay

---

[15] Claims against the Outside Directors under Section 10 and 20A of the Securities Exchange Act of 1934 and against Harrison under Section 10 of the 1934 Act have been dismissed previously. The settlement, if approved by the Court, will finalize and make nonappealable these dismissals.

*Newby* Plaintiffs and the Official Creditors Committee an amount that includes the $200 million of remaining insurance proceeds at issue.  They maintain that the settlements are reasonable in light of the billions of dollar of excess, uninsured exposure, the number of settling parties here, and the settling amounts.[16]

The policies expressly state that coverage terminates when the proceeds of the policies are exhausted.  AEGIS Policy § 1(B)(providing, "The Insurer shall only be liable for the amount of Ultimate Net Loss . . . up to the Limit of Liability. . . . ").  Only defense costs that have been "incurred" are covered; future defense costs are not.  AEGIS Policy § II(D).  Thus claims by other insureds made after these settlement demands, if the Court grants the summary judgments, are not covered by the policies.

Not only does the language of the policies permit the settling parties here to exhaust the remaining  policy proceeds, but the law in Texas also allows policy proceeds to be exhausted by reasonable partial settlements.  This Court has previously held that Texas law applies to the insurance contracts.  #3937 at 74-85 & n.46.  It has also determined that under Texas law, an insurer may enter into a reasonable partial settlement that exhausts policy limits and thus leaves other insureds exposed.  *Tittle*, H-01-3913, #944 at 18-22; *Newby*, H-01-3624, #3937.  An insurer's

---

[16] In addition to the $200 million deposited in the registry, the Stipulation of Settlement additionally provides for (1) ten percent of each of the Outside Director's and Harrison's net gains on sales of Enron stock (§§ 1.42, 1.47 (Exh. A.1)) and (2) a payment of $100,000 by Harrison to the Creditors Committee (*id.* at §§ 1.21, 1.42).

*Stowers* duty to settle a claim against its insured is triggered by a settlement demand if the claim against the insured is within the policy's scope of coverage, if the demand is within the limits of the policy, and if the terms of the demand are such that an ordinarily prudent insurer would accept it considering the likelihood and extent of the insured's potential exposure to an excess judgment. *State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.w.2d 38, 41 (Tex. 1998). Moreover, an insurer does not have to provide funds for all its insureds before exhausting policy limits. *See, e.g., Travelers Indemnity Co. v. Citgo Petroleum Corp.*, 166 F.3d 761 (5th Cir. 1999)(allowing a reasonable settlement that exhausts the policy and leaves a co-insured without coverage); *American States Ins. Co. of Tex. v. Arnold*, 930 S.W.2d 196 (Tex. App. 1996)(insurer is allowed to settle for policy limits on behalf of a named insured even where that settlement leaves an additional insured without coverage); *Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 315 (Tex. 1994)("[W]hen faced with a settlement demand arising out of multiple claims and inadequate proceeds an insurer may enter into a reasonable settlement with one of the several claimants even though such settlement exhausts or diminishes the proceeds available to satisfy other claims."); *Vitek, Inc. v. Floyd*, 51 F.2d 530 (5th Cir. 1995)(under Texas law)(rejecting the contention that an insurer cannot favor one insured over another by making a settlement for one that exhausts the policy limits). The rationale for such a rule is that it promotes the settlement of

lawsuits and encourages early assertion of claims. *Soriano*, 881 S.W.2d at 315. *See also Mid-Century Ins. Co. of Texas v. Childs*, 15 S.W.3d 187 (Tex. App.–Texarkana 2000)(insurer's duty to defend ends when the policy limits have been paid by the insurer). Moreover and significantly, the Fifth Circuit has recognized, "While several out-of-state courts have found that there is a general duty not to favor one insured over another, the weight of contemporary authority is in line with" the holding in *American States Insurance of Texas v. Arnold*, 930 S.W.2d at 202-02, that the insurer "breached no duty in obtaining the settlement [up to the policy limits for one insured without considering the other possible claims against co-insureds affecting the same policy limits and subsequently refusing to defend these other insureds], and its duties to the additional insured terminated when the settlement exhausted the policy limits." *Travelers Indemnity Co. v. Citgo Petroleum Corp.*, 166 F.3d at 766 (and cases cited therein) and 765.

There is a division among courts as to whether an insurer can abandon its obligation to a nonsettling insured to defend and/or indemnify that insured against potential liability by tendering its policy limits into the court in an interpleader action. *See, e.g.*, T. Scott Belden, Annotation, *Liability Insurer's Duty to Defend Action Against Insured After Insurer's Full Performance of its Payment Obligations Under Policy Expressly Providing that Duty to Defend Ends on Payment of Policy Limits* §§ 4-6, 2000 WL 1879819, 2000 A.L.R.5th 15 (2000). Nevertheless,

Texas law clearly permits the insurer to pursue prudent settlements on behalf of and favoring some insureds that may exhaust the policy limits, without regard to the rights of non-settling insureds and ends its obligations to other insureds upon exhaustion of those limits. *See, e.g., Carter v. State Farm Mutual Auto Ins. Co.*, 33 S.W.3d 369, 373 (Tex. App.--Fort Worth 2002)("It is clear that when an insurer can demonstrate that its settlement in one of several competing claims was reasonable, there is no violation even if the settlement exhausts the policy proceeds for other insureds.), *citing Soriano*, 881 S.W.2d at 315, and *Lane v. State Farm Mutual Auto Ins. Co.*, 992 S.W.2d 545, 552 (Tex. App.--Texarkana 1999)("*Soriano* held that insurers will not be liable in bad faith claims for settling reasonable claims with one of several claimants under a liability policy, thereby reducing or exhausting proceeds available to the remaining claimants.").[17]   An interpleader under such circumstances is redundant protection for the insurer.

The Outside Directors maintain that a determination of reasonableness is not necessary here for summary judgment. The Court disagrees because the reasonableness of the settlement is a necessary determination under Texas law, as discussed.

---

[17] For a general summary and analysis of Texas law on the question *see Travelers Indemnity Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 764-68 (5th Cir. 1999)(concluding, "[W]e follow *Arnold* and hold that under Texas law an insurer is not subject to liability for proceeding, on behalf of a sued insured, with a reasonable settlement, as defined in *Soriano* . . ., once a settlement demand is made, even if the settlement eliminates (or reduces to a level insufficient for further settlement) coverage for a co-insured as to whom no *Stowers* demand has been made.").

Moreover, at the final approval hearing of the class and derivative settlements the Court must also find the settlement is fair, reasonable and adequate, although the focus is much broader than that with respect to the interpleader proceeds and addresses all members of the *Newby* class.   Fed. R. Civ. P. 23(e)(1)(C). Nevertheless there is some overlap.

Although the Former Outside Directors have argued that the Criminal Defendants are not entitled to coverage under the policy, but that if the Court disagrees, they further contend that the adjudication is "final" within the meaning of the policies for those who have pleaded guilty to acts of active and deliberate dishonesty, expressly excluded under the policies.   This Court has ruled otherwise.   #3937 at 45-66.   The two criminal Defendants who challenged the interpleader on these grounds, Fastow and Hannon, as indicated, have now reached an agreement with the Outside Directors, Excess Insurers, and Lead Plaintiff and have withdrawn their objections and obtained a stay of their appeal to the Fifth Circuit of this Court's August 1, 2005  denial of motions to compel arbitration (#3737) so that this Court can proceed with adjudication of the interpleader.

The Answering Defendants bear the burden to demonstrate their entitlement to coverage and to raise a genuine issue of material fact that they made a covered demand for payment under the policies *before* the Former Outside Directors gave notice to the Excess Insurers on October 12 and 14, 2004 of their opportunity to settle.   Currently there is no opposition on file

- 25 -

to the motions for summary judgment on the interpleader.[18]  No one has come forth with competent summary judgment evidence showing that he or she filed a demand before the settling parties.  No one has filed a response with competent summary judgment evidence raising a genuine issue of fact as to whether the settlement is not reasonable.  The Court finds the settlement, in light of the enormous potential liability, eminently reasonable on its face.

Those Defendants who filed an answer cannot rely merely on pleadings.  Pleadings are not summary judgment evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996)(*en banc*); *In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005).  Thus Interpleader Defendants have not met their burden of proof and the Former Outside Directors, Harrison, and the Excess Insurers are entitled to summary judgment on the interpleader proceeds, which can be used to fund the settlement.[19]

Defendant Daniel Allegretti's *pro se* motion for coverage (and allocation of "a fair an equitable share of the subject insurance proceeds to his defense") explains that he is a

---

[18] The Court does not, however, wholly accept the statement of facts in the motions as undisputed.  It has pointed out its disagreement with the Former Outside Directors' statement that the Excess Insurers consented to the settlement by filing the interpleader.

[19] Former Outside Directors point out that the answers of some Interpleader Defendants did not assert that they were entitled to coverage or to any part of the policy proceeds; others stated they had no such claims or had not made demands on any of the insurers under any of the policies; others cannot show that they made a demand for payment before the Outside Directors.  The Court notes that regardless of their positions, none of these individuals has filed a response with competent summary judgment evidence to raise a genuine issue of fact for trial.

- 26 -

defendant in *Town of New Hartford, et al. v. Lay, et al.*, H-04-2963.  He states that he gave notice and submitted a claim for coverage to five of the insurers under their D&O Policies and that they are underwriting his defense in the civil action, but that if they stop paying those costs, "the potential cost of defense could be ruinous to him."  He argues,

> This court is required to determine an equitable distribution of the policy proceeds among all insureds, including Daniel Allegretti.  *See Marine Indem. Ins. Co. v. Lockwood Warehouse & Storage*, 115 F.3d 282, 287 (5th Cir. 1997)(recognizing the distribution of interpled funds to be an equitable decision)[*cert. denied*, 522 U.S. 967 (1997)].  Failure to allocate an equitable and proportionate share of the subject proceeds to Daniel Allegretti's defense will cause him great personal hardship.

He requests the Court to "issue an order granting him coverage and allocating a fair and equitable share of the subject insurance proceeds. . . ."

Mr. Allegretti misconstrues the meaning of *Marine Indemnity*, in which the Fifth Circuit stated, "The district court's finding concerning the priority of claims (to the extent that the priority of claims was **not controlled by policy language or controlling law**) is neither a conclusion of law nor a factual finding, but it is, instead, and equitable decision," reviewed under an abuse-of-discretion standard.  *Id.*, 115 F.3d at 287 (emphasis added by this Court).  As this Court has indicated, both the language of the policies and Texas law are contrary to Mr.

Allegretti's argument for an equitable share of the proceeds. Accordingly, the Court

ORDERS that Mr. Allegretti's *pro se* motion for coverage (#3388) is DENIED.

In addition the Court

ORDERS that the Former Outside Directors' and Excess Insurers' motions for summary judgment (#3119, 3121, 3523) are GRANTED on an interlocutory basis. The Excess Insurers have requested the Court to enter summary judgment on the form order provided as Exhibit C to Exhibit B to the Stipulation of Settlement (#2949). The Court has indicated that the interpleader does not meet requirements under Fed. R. Civ. P. 22, so it concludes that the reference to the Rule should be stricken from the proposed Final Judgment. It does not consider such a modification significant, but should the Excess Insurers object, they shall file an appropriate motion and brief. Moreover, this summary judgment, which involves a determination of reasonableness, is thus intertwined with the requirements for final approval of the settlement. Accordingly, the Court

ORDERS that the parties shall appear for a hearing for final approval of the settlement on July 13, 2006 at 10:00 a.m., at which time they may present an appropriate proposed Final Judgment.

**SIGNED** at Houston, Texas, this 12th day of June, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE