```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                     HOUSTON DIVISION

In Re Enron Corporation      §
Securities, Derivative &     §           MDL-1446
"ERISA" Litigation           §
                             §
_____§
                             §
MARK NEWBY, ET AL.,          §
                             §
          Plaintiffs         §
                             §
VS.                          §   CIVIL ACTION NO. H-01-3624
                             §       CONSOLIDATED CASES
ENRON CORPORATION, ET AL.,   §
                             §
          Defendants         §
```

**OPINION AND ORDER**

Pending before the Court in the above referenced cause are *inter alia* Lead Counsel Coughlin Stoia Rudman & Robbins LLP's motion for an award of attorney's fees (instrument #5815) and Chitwood Harley Harnes LLP and Cunningham Darlow LLP's separate motion for attorneys' fees and reimbursement of expenses (#5858). It is upon the latter motion the Court focuses in this order.

Chitwood Harley Harnes LLP, counsel for the Teachers Retirement System for Georgia and the Employees' Retirement System for Georgia (collectively, "the Retirement Systems of Georgia") on behalf of the Office of the Attorney General for the State of Georgia Thurbert Baker, and of Cunningham Darlow LLP, Chitwood Harley's local Houston counsel, object to Lead Counsel's fee request only to the extent that their own time and expenses were not included in Lead Counsel's January 4, 2008 Motion for Award of Attorneys' Fees "on behalf of *all* plaintiffs' counsel." #5795.

With a supporting Declarations from Martin D. Chitwood (Ex. A to #5858) and the Attorney General of the State of Georgia, Thurbert E. Baker (Ex. B), Chitwood Harley represents that it was asked by Lead Counsel to be active and to assist in this litigation, that after the appointment of Lead Plaintiff it conferred a substantial benefit on the Class, and that conversations with Lead Counsel before it filed its request for fees indicated that Chitwood Harley would be compensated for its time and expenses. Chitwood Harley asserts that it contributed significantly to research, drafting, review and approval of the *Amicus Curiae* Memorandum of State Attorneys General filed in connection with Defendants' Motions to Dismiss and performed substantive, time-intensive tasks: (1) initial investigation and research of claims; (2) moving with other pension funds[1] for appointment as lead plaintiff, which involved multiple rounds of brief writing, voluminous research and analysis, participation in status conferences and hearings; (3) after the appointment of lead plaintiff, at lead counsel's request, joining an advisory committee at Lead Counsel's request, participating regularly in scheduled committee conference calls that assisted Lead Counsel in efficient and successful prosecution of this action, and regularly consulting

---

[1] Specifically, the public pension funds for the states of Ohio, Washington, and Alabama, the four collectively referred to as the "State Retirement Systems Group" with combined losses of approximately $320.7 million.

with Chitwood Harley about the work with the committee.  Chitwood Harley also monitored the litigation and provided its client with periodic updates, including quarterly reports for active quarters, about the status of the litigation and generated summary charts outlining the various settlements, hearings, orders, and other significant events.  See Declaration of Martin D. Chitwood (partner at Chitwood Harley), Ex. A, and Declaration of Attorney General for the State of Georgia Thurbert E. Baker, Ex. B to #5858.  After the motion for fee award was filed, Chitwood Harley attempted to reach an agreement with Lead Counsel for reimbursement, but was unable to do so before the February 1, 2008 deadline for objecting to the Plan of Allocation or to attorneys' fees.  Chitwood Harley thus now files its partial objection and moves for fees and reimbursement of expenses for its work both before and after selection of Lead Plaintiff.  Martin Chitwood attaches to his Declaration as Ex. 1 a summary of the lodestar amounts for the partners, attorneys, and professional staff of his firm that worked on the litigation, based on their current billing rates; he states that his firm expended 3,338.25 hours, for a total lodestar of $1,475,208.75, consisting of $1,311,320.00 for attorneys' time and $163,888.75 for professional support staff time.  Ex. A at ¶¶ 8-12.  Exhibit 2 details the firm's unreimbursed expenses, totaling $47,142.15.  Exhibit 3 is a biography of the firm and its attorneys. Chitwood Hartley argues that non-class counsel should be compensated where

they confer a substantial benefit to the class.  *See, e.g., Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994).

Tom Alan Cunningham of Cunningham Darlow submits a Declaration, Ex. C to #5858, setting out that firm's total lodestar, $296,791.25, and total expenses, $18,064.46.  He states that his firm, with the firm of Shapiro, Haber & Urmy, LLP of Boston, filed the original complaint in this case.  He describes his firm's role as "the principal liaison" for the Retirement Systems of Georgia and the State Retirement Systems Group," filing claims for relief after the failure of Enron.  Ex. C at 2. Specifically Cunningham

> monitored all filings and other cases having a bearing on this one, kept track of press reports, developed information regarding Enron and the facts leading to the present lawsuit, coordinated communications among counsel, interacted with counsel for other plaintiffs, worked to develop cooperative relationships and agreements among counsel regarding pursuit of the case, and participated in various hearings on requests for emergency and interim relief.  We also participated substantially in the preparation and filing of the applications regarding the appointment of the lead plaintiff and the legal memoranda submitted in connection with those applications.  In addition, after the appointment of the lead plaintiff, our firm was asked to monitor the progress of the case and to advise the Chitwood Harley firm and our clients as requested.

*Id.* at 2-3.  He submits a summary (Ex. A), drawn from contemporaneous daily time records prepared and maintained by the firm, indicating lodestar amounts for each of the firm's attorneys and support staff at current billing rates.  He claims his firm

spent 804.25 hours, for a total lodestar of $296,791.25, consisting of $268,306.25 for attorneys' time and $28,485.00 for professional support staff time.  He also requests reimbursement of $18,064.46 in expenses.

Lead Counsel refers to this objection in its reply, #5906 at 67-68, but does not provide any substantive response.  At the hearing, it simply thanked the firms for their services.

The case cited by Chitwood Harley, *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994), is a pre-PSLRA case that understandably does not take into account the effect of that statute on the attorney fee compensation.  After researching the issue of compensation for non-lead counsel in PSLRA cases, the Court finds very perceptive and persuasive the analysis in *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3d Cir. 2005), and requests both sides to comply with its approach regarding the issue of fees for Chitwood Harley and Cunningham Darlow LLP so this Court can make a determination about their fee and expense requests.

*In Cendant*, the Third Circuit has directly addressed the issues of (1) whether the Court in its discretion may award fees from the common fund to non-class counsel who provided legal services to the class action, and (2) as the only appellate court to do so, whether or to what extent the common fund doctrine survives the enactment of the PSLRA.

The equitable and flexible common fund doctrine "'provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation including attorney's fees.'" 404 F.3d at 187, *citing In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995), and *Boeing*, 444 U.S. at 478-79.  The panel commented,

> The cases are unanimous that simply *doing* work on behalf of the class does not create a right to compensation; the focus is on whether the work provided a benefit to the class. . . . No-lead counsel will have to demonstrate that their work conferred a benefit on the class *beyond* that conferred by lead counsel.  Work that is duplicative of the efforts of lead counsel--e.g., where non-lead counsel is merely monitoring appointed lead counsel's representation of the class, or where multiple firms, in their efforts to become lead counsel, filed complaints and otherwise prosecuted the early stages of the litigation--will not normally be compensated.

*Id.* at 191.[2]

---

[2] The Third Circuit opined,

> If a hundred lawyers each perform admirable but identical work on behalf of a class before the appointment of the lead plaintiff, the court should not award fees to each of the lawyers, as this would overincentivize duplicative work.  Instead, while all of lead counsel's work will likely be compensable, . . . other attorneys who merely duplicated that work--however noble their intentions, however diligent their efforts, and however outstanding their product--will not be entitled to compensation.  Only those who confer an independent benefit upon the class will merit compensation.

404 F.3d at 197.

Emphasizing the effect of the PSLRA, the Third Circuit panel noted that the statute "creates an exclusive mechanism for appointing and compensating class counsel in securities class actions." *Id.* at 189. "[S]hift[ing] the balance of power away from plaintiffs' attorneys, who traditionally controlled the common fund cases, to the institutional plaintiffs who now supervise securities class actions," the PSLRA authorizes the lead plaintiff, selected by the court under criteria set forth in 15 U.S.C. § 78u-4(a)(3)(B)(I) and (B)(iii)(I), to choose and retain lead counsel, also subject to court approval under 15 U.S.C. § 78u-4(a)(3)(B)(v). *Id.* at 193, 192.

Observing "significant tension" between the common fund doctrine and the PSLRA, the appellate court pointed out that it had previously held that "the PSLRA vests authority over counsel selection and compensation in the lead plaintiff--not in the court, and certainly not in entrepreneurial counsel who attempt to appoint themselves as representatives of the class." *Id.* at 193. The appellate court opined that the common fund doctrine remains intact during the period prior to appointment of lead plaintiff, i.e., "from the accrual of the cause of action to the appointment of lead plaintiff" (which might include legal services involving "discover[ing] possible fraud at the issuer, investigat[ing] that possible fraud, determin[ing] whether it warrants filing of a complaint, mak[ing] strategic decisions about the form and content

of the complaint, draft[ing] the complaint, fil[ing] it, issu[ing] notice to class members, and navigat[ing] the PSLRA's lead-plaintiff procedures"). *Id.* at 193-93, 194. "If an attorney creates a substantial benefit for the class in this period--by, for example, discovering wrongdoing through his or her own investigation, or by developing legal theories that are ultimately used by lead counsel in prosecuting the class action--then he or she will be entitled to compensation whether or not chosen as lead counsel," and "[t]he **court**, not the lead plaintiff, must decide for itself what firms deserve compensation for work done on behalf of the class prior to the appointment of the lead plaintiff." *Id.* at 195 [emphasis added by the Court]. During the preappointment period, the court may substantially defer to lead plaintiff's determination of what work created the benefits to the class, but it may also consider any objections of counsel who have not been included. *Id., citing Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780, 790 & n.13 (N.D. Ill. 2000). The Third Circuit concluded that the filing of a complaint by attorneys not subsequently appointed lead counsel should best be viewed as "entrpreneurial efforts" and should not be compensable because

> each firms's complaint is the price of admission to a lottery that might result in it being named lead counsel. If the firm wins the lottery, it stands to make significant fees at multiples of its lodestar. Compensating a firm for filing a complaint and not being named lead counsel would offer free tickets to the lead-

> counsel lottery, and would thus create incentives for redundant filings.

*Id.* at 196. Nor was the appellate court convinced "that the mere filing of complaints in securities class action ordinarily confers much benefit on the class. Such complaints are as often spurred by news reports or press releases disclosing wrongdoing--or by reports that other firms have filed complaints--as by independent investigation." *Id.* Indeed the PSLRA was enacted in "reaction against a race-to-the-courthouse model of securities litigation in which attorneys appointed themselves class representatives and chose their own figurehead plaintiffs who had no power to select or oversee 'their' lawyers." *Id.* On the other hand, if non-class counsel do their own investigations and discover distinct grounds or new theories for a suit that are later used and not from public reports, they should usually be compensated out of the class's recovery. *Id.* at 196-97. In the unlikely case that the lead counsel do not request fees for these attorneys' work on which lead counsel relied, "we expect that the court will nonetheless reward earlier attorney's work on behalf of the class." *Id.* at 197.

Once a lead plaintiff is appointed, "the primary responsibility for compensation shifts from the court to that lead plaintiff, subject of course to ultimate court approval. The PSLRA lead plaintiff is the decisionmaker for the class, deciding which

lawyers will represent the class and how they will be paid." 404 F.3d at 197.

The Third Circuit concluded that the court should accord a presumption of reasonableness to any fee petition made under a retainer agreement that was entered into at arm's length between properly selected lead plaintiff and lead counsel. 404 F.3d at 199. That presumption can then be rebutted by a showing that the original agreement has been materially altered by unforeseen developments or by the objectors making a *prima facie* case that such an award is "clearly excessive"[3] and should be reviewed under traditional standards. *Id.* For reasons it will not go into now, this Court doubts that the Fifth Circuit would accord a **presumption** of reasonableness to an arm's length fee agreement, but that it would grant such an agreement considerable weight, given the statutory intent of the PSLRA to have the Lead Plaintiff control and monitor the litigation, among various factors to measure

---

[3] The *Cendant* court listed the *Gunter* factors as guidelines for determination on rebuttal of whether the fee is clearly excessive. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000): (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) awards in similar cases. *See, e.g., Di Giacomo v. Plains All American Pipeline v. Koplovitz*, Nos. Civ. A. H-99-4137 and H-99-4213, 2001 WL 34633373, *9 (S.D. Tex. 2001)(Rosenthal, J.)(applying *Gunter* factors to determine percentage and then the *Johnson* factors as a lodestar cross-check to ensure the percentage fee award is not unreasonably high).

reasonableness, as it would the factors that the Third Circuit has determined may rebut the presumption.

Furthermore, since the goal of the PSLRA is to give the lead plaintiff, and not the court, control over lead counsel, non-lead counsel that seek compensation from the class recovery must submit their request to the lead plaintiff. *Id.* Since the PSLRA "significantly altered the landscape of attorney's fee awards in securities class actions" and because the "lead plaintiff is now the driving force behind the class counsel decisions," the Third Circuit recommended that a presumption of correctness should thereafter be accorded to the lead plaintiff's decision that a non-lead counsel's work, not made pursuant to an agreement between lead counsel and lead plaintiff, is not entitled to fees to be paid out of the common fund. *Id*. at 180, 181, 199.

The Third Circuit opined that the presumption of correctness for the denial of such fees to non-lead counsel by the lead plaintiff, or, in this case, the weight that might be accorded the decision of a properly selected and effective Lead Plaintiff by the Fifth Circuit, not to cover non-counsel's fees, could be countered in two ways if non-lead counsel meets a very high standard to justify why the court's usual deference to lead plaintiff's managerial decisions should not be exercised:  non-lead counsel must show (1) that lead plaintiff has failed in its fiduciary representation of the class (mandated by the PSLRA) because the

decision was motivated by some factor other than the best interests of the class or the lead plaintiff did not carefully consider and reasonably investigate non-lead counsel's request; or, even if lead plaintiff has fulfilled its fiduciary duties of loyalty and care, (2) that the denial of fees was erroneous by clearly demonstrating that (a) non-lead counsel reasonably performed the work on behalf of the class, (b) they did so with some reasonable expectation of compensation out of the class's common-fund recovery, and (c) they can and do specifically identify the benefits they independently provided to the class that would not have been provided by the services of lead counsel.  *Id.* at 199-200.  For 2(a), non-lead counsel must show that (i) they spent hours prosecuting the claim, (ii) lead plaintiff or lead counsel requested the assistance of non-lead counsel, and (iii) non-lead counsel had a reasonable expectation of compensation out of the class's recovery, based on lead counsel's or the court's acquiescence in non-lead counsel's services.  *Id.* at 200 & n.15.  For 2(c), non-lead counsel must provide specific proof as to what their efforts were, how they created the benefit, and why the benefit would not have been created absent its efforts.  *Id.* at 200.  Neither mere monitoring by non-lead counsel of the work of lead counsel nor keeping abreast of the case on behalf of and informing their individual clients are compensable.  *Id.* at 201-02.

Accordingly, the Court

ORDERS Chitwood Harley and Cunningham Darlow to submit within two weeks a revised motion, meeting the specific requirements of *Cendant*. Lead Plaintiff shall file a response within two weeks of that filing. If Cunningham Darlow desires to file a reply, it shall do so within a week of that response.

**SIGNED** at Houston, Texas, this 24th day of June, 2008.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE