IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Enron Corporation Securities, Derivative & "ERISA" Litigation | § § § | MDL-1446 |
| | § | |
| MARK NEWBY, ET AL., | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-01-3624 |
| | § | CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § | |
| | § | |
| Defendants | § | |

**SUPPLEMENTAL OPINION, FINDINGS OF FACT, AND ORDER**

***RE* REIMBURSEMENT OF EXPENSES**

Pending before the Court in the above referenced cause pursuant to 15 U.S.C. § 78u-4(a)(4), is a supplemental brief (#6007) in support of some of the Plaintiffs included in the earlier motion for approval of Lead Plaintiff The Regents of the University of California's and certain other persons' request for reimbursement of expenses (instrument #5795).

The supplemental brief is a response to this Court's Opinion, Conclusions of Law, Findings of Fact, and Order *Re* Reimbursement of Expenses (#5996, entered on July 10, 2008), which the Court incorporates here. That opinion narrowly construed the Private Securities Litigation Reform Act ("PSLRA") as it applies to reimbursement of actual costs and expenses of class representatives and set out the standard that must be met under the statute. In that order the Court granted leave to any class

representative whose request was denied to submit a supplemental request for reimbursement if that representative could provide "meaningful evidence" of "actual losses, whether in the form of diminishment in wages, lost sales commissions, missed business opportunities, use of leave or vacation time or actual expenses incurred" directly relating to the class representative's representation of the class.  # 5996 at 9, 12.

In its supplemental submission, Lead Plaintiff states that the following Plaintiffs whose requests were denied in part or entirely by the Court, have decided **not** to supplement their earlier submissions:  George Maddox, Charles Prestwood, Stephen M. Smith, Staro Asset Management, LLC and its Affiliates, Employer-Teamsters Locals Nos. 175/505 Pension Trust Fund and Employer-Teamsters Local Nos. 175/505 Health and Welfare Fund, Nathaniel Pulsifer as Trustee of the Shooters  Hill Revocable Trust, Michael Bessire, John Cassidy, Michael B. Henning, Richard Kimmerling, George M. Placke, Ben Schuette, Melvin H. Schwartz, Jr., Joseph C. Speck, and John Zegarski.  Thus the Court's order of July 10, 2008 remains in effect as to these applicants.

Those now supplementing their requests in accordance with the Court's instructions in #5996 are (1) Lead Plaintiff The Regents of the University of California; (2) the San Francisco Employees Retirement System ("SFERS"); (3) Amalgamated Bank as Trustee for the Longview Collective Investment Fund, Longview Core Bond Index Fund; and (4) Certain Other Trust Accounts (the

"Fund"), and Conseco Annuity Assurance Company ("CAA").  The Court will address each separately.  The only opposition to these supplemented requests comes from Class Member Brian Dabrowski (#6023), and Plaintiffs have responded to those objections (#6024).  The Court will respond to Mr. Dabrowski's objections as it discusses each applicant.

### The Regents

The Court previously granted The Regents' request for out-of-pocket expenses for travel ($31,402.18) and for fees for consultants Robert Fairbank and Rock Hankin ($916,524.38), but required evidence that The Regents' requested $600,000 for the University's in-house attorneys' time spent on the litigation was a recoverable cost and expense under the PSLRA, i.e., actual losses of other business or earning opportunities or additional actual costs incurred.  See #5996 at 16-20.

The Regents now submits a Supplemental Declaration of Christopher M. Patti[1] in Support of Reimbursement of The Regents' Expenses (#6011), in which Mr. Patti presents what the Court finds is an acceptable basis for reimbursement of the requested $600,000.  Patti is responsible mainly for litigation relating to academic matters of the University and complex litigation on behalf of The Regents.  He declares,

Where significant institutional interests of

---

[1] Mr. Patti is University Counsel in the Office of General Counsel of the University of California.

> The Regents are involved, which is often in such matters, the cases are handled wholly or partially in-house, depending on the availability of in-house resources, including my time.  Where competing commitments prevent me from devoting time to a given matter, The Regents is required either to retain outside counsel that would not have otherwise been retained on that matter, or (where as is often the case) I am acting as co-counsel with retained outside counsel on a matter, to shift more litigation duties to outside co-counsel, thereby increasing The Regents' outside counsel expenditures.

#6011, ¶ 2, at 1.  From personal knowledge he then explains that his work on the Enron litigation has significantly impacted the time he had to address other important litigation on behalf of The Regents, with the result that The Regents' outside litigation costs increased.  He estimates that about 30% of his time has been spent on the Enron litigation over the past six years, and specifically identifies a number of cases in which The Regents had to employ outside co-counsel.  *Id.*, ¶ 3, at 1-2.  Moreover, given the complexity and sophisticated nature of these other cases, Mr. Patti states that The Regents had to retain qualified outside counsel whose rates at times exceeded $600 per hour, for fees amounting during the period of the Enron litigation to approximately $5,529,000, substantially more than the cost of Mr. Patti's own services.  He concedes that not all of these costs would have been eliminated had he been available to devote to other cases the time that he spent on Enron, but the sum would have been "substantially reduced."  Since his office did not keep

an accounting of increased outside counsel costs incurred because of the Enron case, The Regents does not seek reimbursement based on such, but rather, its request is based on the costs of Mr. Patti's time to the Regents, an amount clearly conservative since it would be much less than that of outside counsel. *Id.* at ¶ 4 at 2-3.

Mr. Dabrowski objects that The Regents fails to identify any expense in the categories identified by the Court: diminishment in wages, lost sales commissions, missed business opportunities, use of leave or vacation time, or actual expenses incurred. #6023 at 2. Nor has it identified any specific costs it was required to pay because Mr. Patti was working on the Enron litigation. Without facts or evidence to buttress his objection, Mr. Dabrowski objects that Mr. Patti ignores the fact that other in-house counsel could have performed the services for which Mr. Patti did not have time. He also objects that the vague and general statement that 30% of Mr. Patti's time was devoted to the Enron litigation is not sufficient support for a $600,000 payment from the class's recovery. So is the general statement that The Regents had to rely more on outside counsel that it would have otherwise. He maintains that the estimated cost in fees incurred by The Regents for outside fees for other litigated cases, $5,529,000 is "irrelevant."

The Court disagrees with Mr. Dabrowski and finds that Mr. Patti's declaration, from personal experience and under

penalty of perjury, for expenses that were incurred by The Regents for outside counsel to address work that Mr. Patti and other in-house counsel could not handle is sufficient to satisfy the standard for reimbursement under the statute.   Furthermore the figure of $5,529,000 paid for outside counsel highlights the extraordinarily conservative amount requested by The Regents, $600,000, to reimburse their costs and expenses.   Accordingly the Court overrules Mr. Dabrowski's objections and grants The Regents' request for reimbursement of costs in the amount of $600,000.[2]

### SFERS

In the earlier order the Court found all of SFERS' petitioned costs and expenses[3] met the requirements for reimbursement under the statute, except for the $1,543 for general counsel Dan Maguire's services.   In the original Declaration submitted by Owen J. Clements of the San Francisco City Attorney's Office in support of its request for reimbursement (#5800), Mr. Clements described Mr. Maguire as "the general counsel of SFERS." The Court's order indicated that SFERS must show lost business

---

[2] Mr. Dabrowski also objects, "[F]or reasons previously raised regarding The Regents' hiring of Lead Counsel, without additional information which Objector requested, the Regents should not be awarded any reimbursable expense until it is determined that their retention of Lead Counsel was lawful."   #6023 at 4.   The Court addresses this objection, which it finds meritless, in its opinion on Lead Plaintiff's motion for attorney's fees (#5815), issued contemporaneously with this one.

[3] The Court granted SFERS' request for reimbursement of costs and expenses in the amount of $26,500.

opportunity or additional expenses to recover the $1,543.

SFERS has now submitted a Supplemental Declaration (#6008) from Owen J. Clements in support of its request for reimbursement for Mr. Maguire's time, indicating that Mr. Maguire was an employee of the San Francisco City Attorney's Office, and not of SFERS,[4] for all of the time that he spent on the Enron litigation, including the $1,543 fee referenced in ¶ 8 of Mr. Clements' earlier declaration (#5800).   Therefore this expense should be reimbursed, just as expenses for others attorneys in the City Attorney's Office were allowed.

Mr. Dabrowski has made no objection here.

Now that Mr. Maguire's employment status has been clarified, this Court agrees that SFERS should be reimbursed for the out-of-pocket actual expenses ($1,543) it paid for Mr. Maguire's services.

## Amalgamated Bank on Behalf of The Fund

In the previous order, the Court found that, despite the appointment of Lead Plaintiff and selection of Lead Counsel, the Fund's request for reimbursement for expenses in the amount of $51,963.54 appeared to be for an award of attorneys' fees for the

---

[4] In his first Declaration, Mr. Clements referred to Mr. Maguire simply as "the general counsel of SFERS" without indicting he was an employee of the San Francisco City Attorney's Office and not of SFERS.

whole Enron litigation from 2001,[5] and not for costs and expenses recoverable under § 78u4(a)(4).   #5996 at 24-32, *citing and relying on In re Cendant Corp. Sec. Litig.*, 404 F.3d 174, 197 (3d Cir. 2005).   The Court's opinion instructed that under the PSLRA, non-lead attorneys must present fee requests to Lead Plaintiff, which is empowered to decide which lawyers will represent the class and how they will be paid, subject to Court approval. Furthermore, the Court observed that some of the fees sought by the Fund appeared to duplicate those for the same work requested through Lead Counsel for Schwartz, Junell, Greenberg & Oathout, LLP.

Through the Supplemental Declaration of Scott Zdrazil,[6] the Fund now explains that $41,933.66 of the $51,963.54 it originally sought was for paid out-of-pocket expenses, similar to those of SFERS, i.e., for fees for services of the Fund's **outside** general counsel, Schulte Roth & Zabel LLP ("SRZ").   (Apparently the Fund no longer seeks reimbursement for the remaining $10,029.88.)   The Fund describes the nature of legal services provided to the Fund by SRZ performed during the period now identified as from 2003 (well after the appointment of Lead Plaintiff) up to September 24, 2007.   Specifically Mr. Zdrazil

---

[5] See Scott Zdrazil's original Declaration, #5799, especially ¶¶ 8 and 9, at 3-4.

[6] Vice President-Director of Corporate Governance of Amalgamated Bank.

states,

> SRZ's responsibilities and legal services included interfacing with representatives of the Fund on behalf of Lead Counsel with respect to the following tasks:
>
> (a) Using SRZ's intimate knowledge of the Fund and its operations to review, analyze and correspond with Lead Counsel as to Lead Counsel's various requests;
>
> (b) Review discovery requests to the Fund and coordinate responses with Lead Counsel as to Lead Counsel, including the production of documents;
>
> (c) Organize and review documents to be produced by the Fund;
>
> (d) Interface with Lead Counsel on behalf of the Fund in regards to motions pertinent to the Fund and its operations;
>
> (e) Update the Trust Committee at the Fund on the status of the litigation; and
>
> (f) Interface with Lead Counsel and the Fund about proposed settlements.

#6010, ¶ 5. Furthermore the Fund states that the requested fees and expenses are for services rendered by SRZ to the Fund two years after the Fund filed its complaint and moved for a temporary restraining order, and thus are separate and apart from fees for services performed two years earlier by Schwartz, Junell, Greenberg and Oathout, LLP.   The Fund provides supporting time records and an invoice for $41,933.66 for the firm's fees and expenses incurred from October 2003 and September 24, 2007, which the Fund has paid out-of-pocket to SRZ.   Ex. A to #6010.   Mr. Zdrazil further states under penalty of perjury, "Though the Fund

filed a complaint and sought to freeze insider trading proceeds before the appointment of The Regents . . . as Lead Plaintiff, the Fund has, since moving jointly with The Regents for appointment of Lead Plaintiff, always coordinated with and deferred to The Regents." #6010, ¶ 7. Lead Plaintiff corroborates in its Supplemental Brief, "Because of SRZ's knowledge of the Fund, SRZ worked with the Fund to analyze and respond to requests for information from the Fund, coordinate discovery responses on behalf of the Fund, help review and produce documents requested from the Fund and by Interfacing with Lead Counsel kept the Fund's Trust Committee up on the status of the litigation and various settlement proposals." #6007 at 5, citing Zdrazil's Suppl. Decl. (#6010) at ¶¶ 4-5.

Mr. Dabrowski objects that the work described by Lead Counsel (*id.*) was the responsibility of Lead Counsel. If the Amalgamated Bank decided Lead Counsel was not doing its job adequately and desired "an additional layer of legal representation, those fees should be their personal expenses, or should come out of Lead Counsel's attorneys' fee award." #6023.

Under the PSLRA, deference is due to the Lead Plaintiff's determination of whether a non-lead attorney is or is not representing the class and entitled to fees from the recovery fund. *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 197-99 (3d Cir. 2005). Here Lead Counsel, in its motion for attorney's fees (#5815), acting on behalf of Lead Plaintiff, did not request such

compensation for SZR, but does indicate its support for reimbursement of SZR's fees as necessary and reasonable expenses paid out-of-pocket by class representative Amalgamated Bank for services directly related to its representative role. Moreover, in its response to Mr. Dabrowski's objections, Plaintiffs state,

> Lead Plaintiff The Regents . . . has reviewed the hours incurred by [SRZ].  If the Court denies reimbursement of Amalgamated Bank's expense for fees it paid to [SRZ], The Regents approve of reimbursing Amalgamated Bank for its out-of-pocket expense from the award of attorney fees requested by Lead Counsel.

#6024 at 1 n.1.  While Amalgamated Bank's request for reimbursement of costs and expenses may present a tighter question than the others, after careful consideration of both Amalgamated Bank's and Lead Plaintiff's submissions, the Court finds that the listed tasks depended very much on intimate knowledge of the Bank by its own outside counsel and related directly to performing the Bank's role as a Class Representative.  Accordingly, the Court overrules Mr. Dabrowski's objection and grants the Bank's request for reimbursement of expenses in the amount of $41,933.66.

**CAA**

In the earlier order the Court denied CAA's request for reimbursement and again concluded that CAA, like other applicants, must demonstrate that it suffered lost business opportunity or incurred expenses for additional staff to cover the work of those employees who were working on this litigation.  #5996 at 44-47.

It has now submitted an Amended Declaration (#6009) of Gregory J. Seketa, incorporating his earlier Declaration (#5813), in a effort to meet the Court's requirements.

Mr. Seketa, Vice President of 40/86 Advisors, Inc. ("40/86"),[7] and his colleagues oversee distressed securities purchased by its affiliates, including CAA, and actively manage securities trading at distressed levels.  He declares, "Any time spent playing defense [in the Enron litigation] in connection with serving as a class representative in this matter, necessarily detracts from, and constituted a lost business opportunity, with respect to our duty in attempting to generate positive returns from distressed securities purchases."  #6009 at ¶ 9.  He argues, "Therefore, the personal expenses incurred by 40/86 in serving as a class representative in this matter are the equivalent of "time away from work, lost business opportunities, or other missed earning opportunities, as those same personnel could and would have been deployed in income producing activities."  *Id.* at ¶ 10. He requests reimbursement for 700 hours of his employees' time spent on the litigation, for at total of $134,811.

Insisting that a "general theoretical statement is not sufficient evidence to justify an expense reimbursement for their own staff under the PSLRA," Mr. Dabrowski objects, "Without

---

[7] 40/86 is the registered advisor that manages the funds generated by CAA's business operations.  During the relevant period CAA purchased and sold substantial amounts of what in the Enron litigation is called "Foreign Debt Securities."

specifying what business opportunity was lost, CAA claims <u>in theory</u> that their employees 'could and would have been deployed in other income activities.'" #6023 at 1.  This Court agrees.

Mr. Seketa does not show with concrete examples any such missed earning opportunities during the period nor that 40/80's employees are even customarily *constantly* busy making money for clients.  The PSLRA does not sanction reimbursement of 100% of employees' salaries for time spent on the litigation without a showing that use of those employees for the representation of the class actually resulted in a specific lost business opportunity or lost earnings opportunity or additional cost paid out of the Class Representative's pocket.   While Mr. Seketa requests reimbursement for the full 700 hours spent by his employees at their regular hourly rate that he claims his employees spend on the Enron litigation, he fails to show particular examples of missed revenue-producing trades or actual losses to CAA.  Mere attempts to generate positive returns from distressed securities purchases are insufficient to warrant reimbursement; CAA must show actual lost revenue.  CAA has not met its burden.  The Court denies its request for $134,811 for 700 hours of his employees' time.

As Ex. 1 to #6009, Mr. Seketa does attach documentary evidence of out-of-pocket expenses incurred by 40/86, amounting to $5,806.74.  The Court grants his request for reimbursement of these expenses.

Accordingly, for the reasons stated above, the Court

ORDERS that its prior order regarding reimbursement of expenses (#5996, entered on July 10, 2008) is hereby incorporated into this instrument, but the following modifications, based on the supplemental materials presented by some class representatives, are hereby in effect:

(1) Lead Plaintiff The Regents of the University of California's request for reimbursement of $600,000 for in-house attorneys' fees resulting from representation of the class is GRANTED;

(2) the San Francisco Employees Retirement System's ("SFERS'") request for reimbursement of out-of-pocket costs in the amount of $1,543 for services of general counsel Dan Maguire's services is GRANTED;

(3) Amalgamated Bank's request for reimbursement of expenses in the amount of $41,933.66 for fees of outside counsel is GRANTED ; and

(4) CAA's request for reimbursement of costs in the amount of $5,806.74 is GRANTED, but its request for reimbursement of $134,811 for 700 hours of his employees' time is DENIED.

**SIGNED** at Houston, Texas, this 8th day of September, 2008.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE