UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re ENRON CORPORATION SECURITIES LITIGATION | § § § § | Civil Action No. H-01-3624 **(Consolidated)** CLASS ACTION |
| This Document Relates To: | § § | |
| MARK NEWBY, et al., Individually and On Behalf of All Others Similarly Situated, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| ENRON CORP., et al., | § § | |
| Defendants. | § § § | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., Individually and On Behalf of All Others Similarly Situated, | § § § § | Civil Action No. H-04-0088 CLASS ACTION |
| Plaintiffs, | § § | |
| vs. | § § | |
| MILBANK, TWEED, HADLEY & McCLOY LLP, et al., | § § § | |
| Defendants. | § § § | |

**MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH
GOLDMAN, SACHS & CO. AND MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND OF THIS LITIGATION .........................................2

III.  THE SETTLEMENT ..............................................................................................4

IV.   ARGUMENT ..........................................................................................................4

    A.    The Proposed Settlement Is Within an Appropriate Range for Preliminary Approval .........................................................................................................4

    B.    Consideration of Final Approval Criteria Supports Preliminary Approval .............6

    C.    The Fifth Circuit's Six-Pronged Test of Fairness .......................................................7

        1.    There Is No Fraud or Collusion Behind the Settlement................................8

        2.    The Stage of the Proceedings and the Amount of Discovery Completed ....................................................................................................8

        3.    The Probability of Success on the Merits ...................................................9

        4.    The Range of Possible Recovery and the Difficulties in Proving Damages......................................................................................................9

            a.    Risks in Proving Damages ...............................................................9

            b.    The Settlement Falls Within the Range of Reasonableness...........10

        5.    The Complexity, Expense and Likely Duration of This Litigation ...........10

        6.    The Opinion of Representative Plaintiffs' Counsel ...................................12

    D.    Certification of the Settlement Class Under Federal Rule of Civil Procedure 23 Is Appropriate .........................................................................13

        1.    The Class Is Sufficiently Numerous .........................................................14

        2.    Common Questions of Law or Fact Exist...................................................15

        3.    Representative Plaintiffs' Claims Are Typical of Those of the Class............................................................................................................15

        4.    Representative Plaintiffs Are More than Adequate Representatives of the Class...............................................................................................16

        5.    The Requirements of Rule 23(b)(3) Are Also Satisfied ............................17

**Page**

    a.    Common Legal and Factual Questions Predominate in This Action ............................................................................................17

    b.    A Class Action Is the Superior Means to Adjudicate Plaintiffs' Claims .........................................................................17

E.    Submission of the Settlement to the Class Is Appropriate .....................................18

V.    CONCLUSION ...................................................................................................................19

## TABLE OF AUTHORITIES

Page

**CASES**

*Ahearn v. Fibreboard Corp.,*
  162 F.R.D. 505 (E.D. Tex. 1995) ..........................................................................13

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997) .................................................................................16, 17

*Backman v. Polaroid Corp.,*
  910 F.2d 10 (1st Cir. 1990) .................................................................................12

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
  603 F.2d 263 (2d Cir. 1979) .................................................................................12

*Clark v. Lomas & Nettleton Fin. Corp.,*
  79 F.R.D. 641 (N.D. Tex. 1978),
  *vacated on other grounds,*
  625 F.2d 49 (5th Cir. 1980) .................................................................................12

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977) ..........................................................4, 6, 7, 9

*Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) .................................................................................10

*Durrett v. John Deere Co.,*
  150 F.R.D. 555 (N.D. Tex. 1993) .................................................................................16

*Eichenholtz v. Brennan,*
  52 F.3d 478 (3d Cir. 1995) .................................................................................4

*Fickinger v. C.I. Planning Corp.,*
  646 F. Supp. 622 (E.D. Pa. 1986) .................................................................................10

*Fisher Bros. v. Cambridge-Lee Indus., Inc.,*
  630 F. Supp. 482 (E.D. Pa. 1985) .................................................................................13

*Fla. Trailer & Equip. Co. v. Deal,*
  284 F.2d 567 (5th Cir. 1960) .................................................................................6

*Hughes Tool Co. v. Trans World Airlines, Inc.,*
  409 U.S. 363 (1973) .................................................................................12

*In re Corrugated Container Antitrust Litig,*
  643 F.2d 195 (5th Cir. 1981) .................................................................................9

**Page**

*In re Drexel Burnham Lambert Group,*
   960 F.2d 285 (2d Cir. 1992)......................................................................................16

*In re Enron Corp. Sec. (Regents v. Milbank Tweed, et al.),*
   No. 04-0088, 2005 U.S. Dist. LEXIS 39927 (S.D. Tex. Dec. 5, 2005)...............................2

*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
   235 F. Supp. 2d 549 (S.D. Tex. 2002) .............................................................................2

*In re NASDAQ Market-Makers Antitrust Litig.,*
   176 F.R.D. 99 (S.D.N.Y. 1997) .......................................................................................5

*Jenkins v. Raymark Indus.,*
   782 F.2d 468 (5th Cir. 1986) .........................................................................................15

*Karasik v. Pac. E. Corp.,*
   180 A. 604 (Del. Ch. 1935)...........................................................................................10

*Lewis v. Newman,*
   59 F.R.D. 525 (S.D.N.Y. 1973) .....................................................................................11

*Longden v. Sunderman,*
   123 F.R.D. 547 (N.D. Tex. 1988) ..................................................................................16

*Maher v. Zapata Corp.,*
   714 F.2d 436 (5th Cir. 1983) .......................................................................................4, 6

*Manchaca v. Chater,*
   927 F. Supp. 962 (E.D. Tex. 1996) .............................................................................9, 11

*Maywalt v. Parker & Parsley Petroleum Co.,*
   147 F.R.D. 51 (S.D.N.Y. 1993) .....................................................................................15

*MCI Communs. Corp. v. Am. Tel. & Tel. Co.,*
   708 F.2d 1081 (7th Cir. 1983) ......................................................................................12

*McNary v. Am. Sav. & Loan Ass'n,*
   76 F.R.D. 644 (N.D. Tex. 1977) .................................................................................7, 10

*Miller v. Republic Nat'l Life Ins. Co.,*
   559 F.2d 426 (5th Cir. 1977) ..........................................................................................6

*Newby v. Enron Corp.,*
   394 F.3d 296 (5th Cir. 2004) ..........................................................................................6

**Page**

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972) ................................................................................... 10

*Parker v. Anderson,*
667 F.2d 1204 (5th Cir. 1982) ........................................................................... 8, 10

*Pearson v. Ecological Sci. Corp.,*
522 F.2d 171 (5th Cir. 1975) ................................................................................... 6

*Pettway v. Am. Cast Iron Pipe Co.,*
576 F.2d 1157 (5th Cir. 1978) ................................................................................. 7

*Phillips v. Joint Legislative Comm. on Performance & Expenditure Review,*
637 F.2d 1014 (5th Cir. 1981) ............................................................................... 16

*Piper v. Chris-Craft Indus.,*
430 U.S. 1 (1977) .................................................................................................. 12

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson,*
390 U.S. 414 (1968) .............................................................................................. 10

*Reed v. Gen. Motors Corp.,*
703 F.2d 170 (5th Cir. 1983) .............................................................................. 7, 8

*Robbins v. Koger Props.,*
116 F.3d 1441 (11th Cir. 1997) ............................................................................ 12

*Ruiz v McKaskle,*
724 F.2d 1149 (5th Cir. 1984) ................................................................................. 6

*Salinas v. Roadway Express, Inc.,*
802 F.2d 787 (5th Cir. 1986) ................................................................................... 8

*Shelter Realty Corp. v. Allied Maint. Corp.,*
75 F.R.D. 34 (S.D.N.Y. 1977) ............................................................................... 17

*Shipes v. Trinity Indus.,*
987 F.2d 311 (5th Cir. 1993) ................................................................................. 16

*Teichler v. DSC Communs. Corp.,*
No. CA3-85-2005-T, 1988 U.S. Dist. LEXIS 16448
(N.D. Tex. Apr. 26, 1988) ...................................................................................... 17

*United States v. Tex. Educ. Agency,*
679 F.2d 1104 (5th Cir. 1982) ................................................................................. 7

**Page**

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ................................................................6

*West Va. v. Chas. Pfizer & Co.,*
    314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd,*
    440 F.2d 1079 (2d Cir. 1971)................................................................12

*Williams v. First Nat'l Bank,*
    216 U.S. 582 (1910)................................................................................6

*Young v. Katz,*
    447 F.2d 431 (5th Cir. 1971) ................................................................7

*Zeidman v. J. Ray McDermott Co.,*
    651 F.2d 1030 (5th Cir. 1981) ............................................................14

*Zerkle v. Cleveland-Cliffs Iron Co.,*
    52 F.R.D. 151 (S.D.N.Y. 1971) ..........................................................11

*Zupnick v. Thompson Parking Partners,*
    No. 89-Civ. 6607 (JSM), 1990 U.S. Dist. LEXIS 9881
    (S.D.N.Y. Aug. 1, 1990) ......................................................................15

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §77k........................................................................................3, 9, 10, 17

Federal Rules of Civil Procedure
    Rule 23 ..................................................................................13, 14, 18
    Rule 23(a)..............................................................................13, 16, 17
    Rule 23(a)(2).........................................................................................15
    Rule 23(b)...........................................................................................13
    Rule 23(b)(3)........................................................................................17
    Rule 23(e)..........................................................................................2, 5

## SECONDARY AUTHORITIES

*Manual for Complex Litigation (Third)* (1995)
    §23.14.................................................................................................2, 5
    §30.41....................................................................................................5

## I.    INTRODUCTION

The Regents of the University of California and Nathaniel Pulsifer ("Representative Plaintiffs")[1] in *The Regents of the University of California, et al. v. Milbank Tweed, et al.*, No. H-04-0088 (S.D. Tex.) (the "Action"), by their undersigned counsel, respectfully submit this memorandum in support of their motion for an order (the "Order"), in the form attached as Exhibit A to the Stipulation of Settlement dated August 3, 2009 (the "Stipulation"): (i) granting preliminary approval of the proposed settlement of the Action with Goldman, Sachs & Co. ("Goldman Sachs") on the terms set forth in the Stipulation; (ii) certifying a Settlement Class; (iii) approving the form and manner of giving notice to the Settlement Class of the settlement; and (iv) setting a hearing for final approval thereof.  The Action has been settled with respect to Goldman Sachs for $11.5 million.

Representative Plaintiffs request that the motion be granted not only because public policy favors the settlement of complex class actions such as this, but, as demonstrated herein, the settlement has achieved a very good result for the Settlement Class.  It is fair, reasonable and adequate under the governing standards in this Circuit and deserves the approval of this Court.  We request that the Court enter the Order Preliminarily Approving Settlement at or promptly after a hearing on October 29, 2009 at 1:30 p.m.

In determining whether preliminary approval is warranted, the issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, such that notice of the proposed settlement should be given to Settlement Class members, and a hearing scheduled to consider final settlement approval.  The Court is not required at this point

---

[1]    Capitalized terms used herein and not otherwise defined in this Memorandum have the same meaning as set forth in the Stipulation.

to make a determination as to whether the settlement should be finally approved.[2] As stated in the

*Manual for Complex Litigation (Third)* §23.14, at 171 (1995):

> First, the court reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.

The *Manual for Complex Litigation (Third)* describes the preliminary approval criteria as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Id.*, §30.41, at 237. The proposed settlement unquestionably meets the foregoing criteria for notice

and is well within the range of what might be approved as fair, reasonable and adequate.

Representative Plaintiffs, therefore, requests that the Court enter an order:

(1)    preliminarily approving the proposed settlement;

(2)    certifying a class for settlement purposes;

(3)    approving the form and program of class notice described in the Stipulation; and

(4)    scheduling a hearing before the Court to determine whether the proposed settlement

should be finally approved.

## II.    FACTUAL BACKGROUND OF THIS LITIGATION

This Court is completely familiar with plaintiffs' allegations regarding the facts and

circumstances surrounding the collapse of Enron. *See, e.g., In re Enron Corp. Sec., Derivative &

ERISA Litig.*, 235 F. Supp. 2d 549 (S.D. Tex. 2002); *In re Enron Corp. Sec. (Regents v. Milbank*

---

[2]    Notwithstanding the fact that this is only a motion for preliminary approval, the brief discussion below of the factors to be considered in connection with final approval demonstrates that this settlement is entitled to both.

*Tweed, et al.*), No. 04-0088, 2005 U.S. Dist. LEXIS 39927 (S.D. Tex. Dec. 5, 2005). For the sake of brevity, those allegations will not be repeated here.

This case was commenced over five years ago. The Regents executed a tolling agreement with certain Goldman Sachs entities in April 2002. In January 2004, The Regents and Nathaniel Pulsifer filed a complaint alleging claims under §11 of the Securities Act of 1933 against Goldman Sachs. Representative Plaintiffs alleged Goldman Sachs violated §11 in connection with Enron's offering of the 7% Exchangeable Notes in August 1999. Goldman Sachs filed its motion to dismiss in March 2004 and the parties completed briefing on the motion in May 2004. The Court denied Goldman Sachs's motion to dismiss in December 2005. Thereafter, the parties engaged in discovery, including depositions.

Goldman Sachs later moved for judgment on the pleadings on the ground that The Regents did not have standing to pursue the claim. Goldman Sachs filed a second motion for judgment on the pleadings and opposed class certification on the grounds, among others, that the class was not sufficiently numerous and that Representative Plaintiffs failed to prove loss causation. Representative Plaintiffs replied in support of class certification and opposed the motions for judgment on the pleadings. The parties exchanged further replies and sur-replies. Representative Plaintiffs filed a declaration by expert Blaine F. Nye in support of class certification. Goldman Sachs promptly moved to strike the Nye Declaration. The motion for class certification, the cross-motions for judgment on the pleadings and the various related motions were under submission at the time the settlement was agreed to in principle.

As the recitation above demonstrates, Goldman Sachs has vigorously defended itself to date and, absent this settlement, would surely do so through trial. Goldman Sachs asserted that it had no knowledge of the wrongdoing at Enron. It further argued that it conducted sufficient due diligence

regarding the offering of securities for which it was the underwriter and that it relied on Arthur Andersen for the financial statements which appeared in the registration statement at issue.

### III.    THE SETTLEMENT

This settlement for the class resolves the Action with respect to Goldman Sachs and no other defendant. The settlement provides for the establishment of a settlement fund in the amount of $11.5 million for the benefit of the Settlement Class.

Before the Court ruled on Goldman Sachs's motion to dismiss, counsel for the parties agreed it made sense to explore settlement. They agreed that Judge Daniel Weinstein of JAMS should serve as a mediator. At the first mediation session in late 2004, lawyers from Coughlin Stoia, Chris Patti, University Counsel for The Regents, Max Gitter from Cleary Gottlieb and an in-house lawyer from Goldman Sachs met with Judge Weinstein. The first mediation session was not fruitful. After substantial discovery and extensive briefing on the motions for class certification and judgment on the pleadings, the parties were in a better frame of mind to discuss settlement. With that backdrop, Judge Weinstein assisted the parties in bridging the gap in their disparate views of a reasonable settlement amount. Thereafter, the parties hammered out an agreement in principle to resolve the claims on behalf of the class for $11.5 million. The agreement was memorialized in a memorandum of understanding and then the Stipulation of Settlement. The $11.5 million started earning interest (currently in excess of $650,000) for the benefit of the class on January 22, 2007.

### IV.    ARGUMENT

#### A.    The Proposed Settlement Is Within an Appropriate Range for Preliminary Approval

Public policy strongly favors the pretrial settlement of complex class action lawsuits. *See, e.g., Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995).

- 4 -

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice of the proposed dismissal or compromise must be given in the manner directed by the court, and judicial approval must be obtained. "Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing *Manual for Complex Litigation (Third)*, *supra*, §30.41). First, counsel submit the proposed terms of settlement and the court makes a preliminary evaluation of the fairness of the settlement, prior to notice. *Id.* This initial assessment can be made on the basis of information already known to the court which, if necessary, may be supplemented by briefs, motions or an informal presentation from the settling parties. *Id.* Second, the court must finally approve the settlement after notice to the class and an opportunity to be heard has been given.

"Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Id.*; *see also Manual for Complex Litigation (Third)*, *supra*, §30.41. Preliminary approval permits notice to be given to the class members of a hearing for final settlement approval (the second step of the approval process), at which class members and the settling parties may be heard with respect to final approval. *Manual for Complex Litigation (Third)*, *supra*, §23.14.

The proposed settlement now before this Court was achieved only after serious, informed, arm's-length negotiations and falls squarely within the range of reasonableness warranting notice apprising class members of the settlement and establishing a hearing for final approval.

**B.**   **Consideration of Final Approval Criteria Supports Preliminary Approval**

The general standard for final approval of a proposed settlement of a class action, as repeatedly enunciated by the Fifth Circuit, is whether the proposed settlement is "'fair, adequate, and reasonable'" and has been entered into without collusion between the parties. *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (quoting *Cotton*, 559 F.2d at 1330); *see also Ruiz v McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984) (per curiam). In applying this standard, the Court must determine whether, in light of the claims and defenses asserted by the parties, the proposed compromise represents a "reasonable evaluation of the risks of litigation." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

It has long been settled that compromises of disputed claims are favored by the courts. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (quoting *Pearson v. Ecological Sci. orp.*, 522 F.2d 171, 176 (5th Cir. 1975)).

Settlements of class actions and shareholder litigation are "particularly favored" and are not to be lightly rejected. *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331. In the case of class actions, the Fifth Circuit has held that "there is an overriding public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331; *accord Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Thus, in determining whether to approve the settlement, the trial judge is not required to decide the merits of the action or substitute a different view of the merits for that of the parties or counsel. *Maher*, 714 F.2d at 455.

- 6 -

In weighing the benefits obtained by settlement against benefits dependent on the likelihood of recovery on the merits, the courts are not expected to balance the scales perfectly. The "trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Cotton*, 559 F.2d at 1330 (citation omitted). The very object of a compromise ""is to avoid the determination of sharply contested and dubious issues."" *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971) (citations omitted).

Where, as here, experienced counsel have negotiated settlements at arm's length, a strong initial presumption is created that the compromise is fair and reasonable. *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982). The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Thus, if experienced counsel determine that a settlement is in the class's best interests, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

When examined under the applicable criteria, this partial settlement is a very good result for the class.

## C.   The Fifth Circuit's Six-Pronged Test of Fairness

Once satisfied that counsel adequately represented the class and has bargained for the proposed settlement in good faith, the ""only question"" for the Court to determine ""is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval."" *McNary v. Am. Sav. & Loan Ass'n*, 76 F.R.D. 644, 649 (N.D. Tex. 1977) (citations omitted). The Fifth Circuit has established a six-pronged test to be applied to proposed settlements:

1.     The assurance that there is no fraud or collusion behind the settlement;

2.     The stage of the proceedings and the amount of discovery completed;

3.     The probability of plaintiffs' success on the merits;

4.     The range of possible recovery;

5.     The complexity, expense and likely duration of the litigation; and

6.     The opinions of class counsel, class representatives and absent class members. *See Reed*, 703 F.2d at 172; *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 789 (5th Cir. 1986).  This settlement easily passes muster when examined in light of these six criteria.

### 1.     There Is No Fraud or Collusion Behind the Settlement

There is no collusion in the settlement of this Action.  The settlement was reached only after hard-fought negotiations overseen and facilitated by Judge Daniel Weinstein.  Coughlin Stoia has many years of experience in litigating securities class actions and has negotiated numerous other class settlements which have been approved by this Court and by courts throughout the country. Goldman Sachs was represented by Cleary Gottlieb, a firm with a well-deserved reputation for the tenacious defense of class actions and other complex civil matters.  The settlement was negotiated at arm's length by very senior members of these firms who are knowledgeable about the strengths and weaknesses of the claims made and the potential defenses to them.  There can be no question that the class was fairly and adequately represented in the course of these proceedings.

### 2.     The Stage of the Proceedings and the Amount of Discovery Completed

Representative Plaintiffs' Counsel has reached a stage of knowledge where an intelligent evaluation of the role of Goldman Sachs in this case and the propriety of the settlement could be made.  Representative Plaintiffs' Counsel conducted a thorough investigation of the salient facts regarding the Action.  Representative Plaintiffs' Counsel reviewed and analyzed voluminous

- 8 -

documents relating to Enron's collapse.  Counsel also interviewed and deposed a number of witnesses regarding the claims against Goldman Sachs.  Suffice it to say, the parties reached the agreement to settle with a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).  Nothing more is required. In fact, courts have held that a great amount of formal discovery is not a "necessary ticket to the bargaining table." *In re Corrugated Container Antitrust Litig*, 643 F.2d 195, 211 (5th Cir. 1981) (citing *Cotton*, 559 F.2d at 1332).

### 3.   The Probability of Success on the Merits

Goldman Sachs would contend at trial that it conducted a reasonable investigation in connection with the offering in which it participated and that it believed that the registration statement was accurate.  Further, it would assert reliance on experts, such as Arthur Andersen, regarding Enron's financial statements contained in the registration statement.  Goldman Sachs would also assert that the decline in the price of the securities was attributable to something other than the alleged false statements.  Thus, while Representative Plaintiffs believe in their §11 claims against Goldman Sachs (which are strict liability, non-fraud based claims), they recognize that this defendant may very well prevail, either on summary judgment or at trial.

### 4.   The Range of Possible Recovery and the Difficulties in Proving Damages

#### a.   Risks in Proving Damages

As discussed above, even if the jury rejected the due diligence defense, Goldman Sachs still has a loss causation defense on the amount of damages.  It would assert that the drop in price of the securities was attributable to something other than its conduct.

Representative Plaintiffs recognize that, had this case proceeded to trial, there are risks in proving damages against this defendant.  Therefore, Representative Plaintiffs' Counsel believes that the settlement represents a very good result for the class.

### b.   The Settlement Falls Within the Range of Reasonableness

Courts agree that determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986).

> In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974); *Parker*, 667 F.2d at 1210 n.6; *McNary*, 76 F.R.D. at 650. Similarly, as the court stated in *Karasik v. Pac. E. Corp.*, 180 A. 604, 609 (Del. Ch. 1935):

> [T]he amount claimed is one hundred million dollars and the amount received in settlement is a minimum of three hundred and eighty-five thousand dollars. Now that is a wide disparity. But it is one thing to assert a claim and another thing to prove the claim to judgment. Furthermore, it is one thing to obtain a judgment, and quite another thing to collect it. Figures, however imposing, should not compel practical considerations to yield place to visions.

Section 11 limits an underwriter's liability to the amount of securities that it sold. Goldman Sachs sold $127 million of the Enron notes on which plaintiffs brought §11 claims. Goldman Sachs argued forcefully (and not without some merit) that its true exposure for a number of reasons was considerably less than the amount of the notes it sold. Given the issues with respect to liability and damages, the Settlement Amount is quite reasonable.

### 5.   The Complexity, Expense and Likely Duration of This Litigation

Another reason for counsel to recommend, and the courts to approve, a settlement is the complexity, duration and risks of further litigation. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (court must consider, *inter alia*, "the

complexity, expense, and likely duration of such litigation"); *Manchaca*, 927 F. Supp. at 966.[3] Here, several factors are present which make it more likely that, without the settlement, this case would require additional large expenditures and years of litigation as against Goldman Sachs and there would be a significant risk that the class would obtain results far less beneficial than the one provided by the settlement.

(a)    Goldman Sachs is represented by extremely capable counsel who are familiar with the defense of complex securities class actions such as this Action.  Since the inception of the litigation, Goldman Sachs has denied liability and asserted facially reasonable explanations in response to Representative Plaintiffs' allegations.

(b)    Trial of this Action against Goldman Sachs would unquestionably take weeks and involve the introduction of hundreds of exhibits dealing with dry financial and accounting matters, vigorously contested motions and the expenditure of millions of dollars in additional out-of-pocket expenses.

(c)    Trial would necessarily involve complex issues resulting in conflicting expert testimony, the outcome of which is by no means certain.  Thus, if there were further litigation, with respect to Goldman Sachs, and trial, there is a risk that the Representative Plaintiffs might fail to convince the trier of fact of the merits of their case and that Goldman Sachs could obtain judgment in its favor.

---

[3]    Courts have frequently recognized, in evaluating a proposed settlement of a securities class action, that such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) (citing *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)).  Accordingly, compromises of securities class actions are particularly appropriate.

(d)    Any future trial judgment would still be subject to the continuing risks and vicissitudes of litigation, through possible appeals. Experience shows that even very large judgments, recovered after lengthy litigation and trial, can be completely lost on appeal.[4]

Thus, counsel believe that were this Action tried through to conclusion rather than settled, there would be a real risk of not obtaining a larger recovery against Goldman Sachs, or perhaps not obtaining any recovery at all, particularly since any securities case such as this, "by its very nature, is a complex animal." *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).

### 6.    The Opinion of Representative Plaintiffs' Counsel

As noted above, Representative Plaintiffs' Counsel, after substantial arm's-length negotiations with senior defense counsel, has concluded that the settlement is fair, reasonable and adequate. Here, Representative Plaintiffs' Counsel has acquired a thorough understanding of the Action and submits that the settlement is appropriate and should be approved. The view of

---

[4]    As the court noted in *West Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971):

It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced. Merely by way of example, two instances in this Court may be cited where offers of settlement were rejected by some plaintiffs and were disapproved by this Court. The trial in each case then resulted unfavorably for plaintiffs; in one case they recovered nothing and in the other they recovered less than the amount which had been offered in settlement.

*See, e.g., MCI Communs. Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973) (reversing treble damage judgment for over $145,000,000 – an action begun in 1961); *Piper v. Chris-Craft Indus.*, 430 U.S. 1 (1977) (reversing Second Circuit's award of damages under Williams Act in amount of $25,793,365 – after eight years of litigation); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (reversing jury verdict on appeal); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict).

plaintiffs' counsel, while not conclusive, is "entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ahearn v. Fibreboard Corp.*, 162 F.R.D. 505, 528 (E.D. Tex. 1995).

For all of the foregoing reasons, the settlement deserves the Court's preliminary, and ultimately final, approval.

### D.   Certification of the Settlement Class Under Federal Rule of Civil Procedure 23 Is Appropriate

In order to go forward with the settlement approval process, it is necessary that the Court certify a class in the Action for purposes of the settlement.  Federal Rule of Civil Procedure 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and, in addition, the action qualifies under one of the subdivisions of Rule 23(b).  Rule 23(a) provides that:

One or more members of a class may sue or be sued as representative parties on behalf of all only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) provides, in relevant part:

A class action may be maintained if Rule 23(a) is satisfied and if:

(1)   prosecuting separate actions by or against individual class members would create a risk of:

(A)   inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B)   adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not

- 13 -

parties to the individual adjudications or substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

As set forth below, all of the requirements of Rule 23 are easily met and certification of the class is clearly appropriate here. Notably, while this class is smaller and limited to one security,[5] the Court has repeatedly found that all these requirements were met in connection with Enron-related settlements with other defendants. *See* Andersen Worldwide: Order Preliminarily Approving Settlement (July 24, 2003) (Docket No. 1583); Outside Directors: Order Preliminarily Approving Settlement (February 4, 2005) (Docket No. 3067); Lehman: Order Preliminarily Approving Settlement (February 4, 2005) (Docket No. 3066); BofA: Order Preliminarily Approving Settlement (February 4, 2005) (Docket No. 3065); Citigroup: Order Preliminarily Approving Settlement (February 22, 2006) (Docket No. 4509); JPMC: Order Preliminarily Approving Settlement (February 22, 2006) (Docket No. 4531); CIBC: Order Preliminarily Approving Settlement (February 22, 2006) (Docket No. 4532); Andersen: Order Preliminarily Approving Settlement (December 1, 2006) (Docket No. 5246); and K&E: Order Preliminarily Approving Settlement (December 1, 2006) (Docket No. 5247).

## 1.     The Class Is Sufficiently Numerous

To meet the requirement of numerosity, the class representatives need only show that it is difficult or inconvenient to join all the members of the class. *See Zeidman v. J. Ray McDermott Co.,*

---

[5]     The class here consists of only those persons who purchased Enron 7% Exchangeable Notes from their issuance on August 10, 1999 until December 2, 2001.

651 F.2d 1030, 1038 (5th Cir. 1981); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 55 (S.D.N.Y. 1993). During the class period, there were millions of dollars of Enron's 7% Exchangeable Notes outstanding and traded by hundreds, if not thousands, of class members. In the offering, $255 million of the Notes were sold. The threshold for a presumption of impracticality of joinder is thus easily exceeded.

### 2.    Common Questions of Law or Fact Exist

In order to maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Generally, courts have liberally construed the commonality prerequisite, holding that the "threshold of 'commonality' is not high." *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986). "The commonality requirement is satisfied even where there is not a complete identity of facts, so long as the party opposing the class has engaged in some 'course of conduct' that affects the proposed class and gives rise to causes of action requiring similar elements." *Zupnick v. Thompson Parking Partners*, No. 89-Civ. 6607 (JSM), 1990 U.S. Dist. LEXIS 9881, at *9 (S.D.N.Y. Aug. 1, 1990) (citations omitted).

This Action presents numerous common questions of both law *and* fact, including, *inter alia*:

(a)    Whether Goldman Sachs's acts as alleged violated the federal securities laws;

(b)    Whether the registration statements filed in connection with the sale of certain Enron notes during the class period misrepresented material facts about the operations, financial condition and earnings of Enron; and

(c)    To what extent the members of the class have sustained damages and the proper measure of damages.

### 3.    Representative Plaintiffs' Claims Are Typical of Those of the Class

The typicality requirement is satisfied where, as here, "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the

defendant's liability." *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992). Typicality does not require that the interests of the named representatives and the class members be identical. *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981).

The Representative Plaintiffs' claims, which arise from the same course of conduct and are predicated on the same legal theories as the claims of all other members of the class they seek to represent, easily satisfy the typicality requirement of Rule 23(a). *See Durrett v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D. Tex. 1993); *see also Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993) (test for typicality, like commonality, is not demanding).

### 4. Representative Plaintiffs Are More than Adequate Representatives of the Class

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). The factors relevant to a determination of adequacy are: (1) the absence of potential conflict between the named plaintiff and the class members; and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation. *Drexel*, 960 F.2d at 291; *Longden v. Sunderman*, 123 F.R.D. 547, 557 (N.D. Tex. 1988).

Here, there are no conflicts between the Representative Plaintiffs and absent members of the class. The Regents has demonstrated its adequacy through its vigorous prosecution of this case and the massive cases related to it to date and through retaining experienced counsel to litigate the case. Coughlin Stoia and Wolf Popper are two of the preeminent class action firms in the country, having served as plaintiffs' counsel in this and numerous other securities actions. These firms have proven track records in the prosecution of class actions and have successfully litigated and/or tried major class action cases.

- 16 -

### 5.   The Requirements of Rule 23(b)(3) Are Also Satisfied

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem*, 521 U.S. at 620-25. This litigation easily meets Rule 23(b)(3)'s requirements.

#### a.   Common Legal and Factual Questions Predominate in This Action

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. Goldman Sachs's alleged liability arises from its participation in one offering via a registration statement containing false and misleading statements and the omission of material facts regarding Enron's business operations and financial condition. This is the central issue in this case and it predominates over any individual issue that theoretically might exist.[6]

#### b.   A Class Action Is the Superior Means to Adjudicate Plaintiffs' Claims

The second prong of Rule 23(b)(3) is essentially satisfied by the settlement itself. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620. Thus, any manageability problems that may have existed here are eliminated by the settlement.

---

[6]   It is well established that differences between individual class members as to reliance or damages do not preclude certification of a class. *See, e.g., Teichler v. DSC Communs. Corp.*, No. CA3-85-2005-T, 1988 U.S. Dist. LEXIS 16448, at *2 (N.D. Tex. Apr. 26, 1988). Moreover, reliance is not an element of a §11 claim. Proof of the amount of damages can be established on a class-wide basis by using a generalized formula. *Shelter Realty Corp. v. Allied Maint. Corp.*, 75 F.R.D. 34, 38 (S.D.N.Y. 1977).

**E.   Submission of the Settlement to the Class Is Appropriate**

Pursuant to the Stipulation of Settlement, Representative Plaintiffs and Goldman Sachs recommend to the Court a program and form of notice substantially in the form of Exhibit A to the Stipulation of Settlement.  The Stipulation provides that a copy of the Notice of Pendency and Proposed Partial Settlement of Class Action (the "Notice"), will be mailed to each Settlement Class Member who can be identified with reasonable effort,[7] each nominee who is identified as securities holders of record for Settlement Class Members who purchased the 7% Exchangeable Notes during the class period, as well as the three underwriters of the 7% Exchangeable Notes.  The proposed settlement also provides that a summary notice ("Summary Notice") is to be published twice in the national edition of *Investor's Business Daily* and *The Houston Chronicle* shortly after mailing the Notice.  The Notice details the settlement terms, the rights of Settlement Class Members to share in the recovery, or request exclusion.  The Notice and the Summary Notice also provide the date, time, and place of the fairness hearing and the right of Settlement Class Members to be heard at the hearing.  Finally, they provide the name, address and phone number of plaintiffs' counsel's representative for inquiries.  The form and manner of notice proposed here fulfill all of the requirements of Federal Rule of Civil Procedure 23 and due process.

---

[7]     At a minimum, the Notice will be mailed to each person who has submitted a claim to Gilardi & Co., the claims administrator, which is based, in whole or in part, on purchases of the 7% Exchangeable Notes.

## V.   CONCLUSION

For all the foregoing reasons, Representative Plaintiffs respectfully request that the Court

grant the motion for preliminary approval of the proposed partial settlement.

DATED:  October 2, 2009

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN
KEITH F. PARK
HELEN J. HODGES
BYRON S. GEORGIOU
G. PAUL HOWES
SPENCER A. BURKHOLZ
JAMES I. JACONETTE
ANNE L. BOX
ALEXANDRA S. BERNAY
MATTHEW I. ALPERT
JENNIFER L. GMITRO


                              /s/ Roger B. Greenberg *signed by permission
                                   KEITH F. PARK

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058

**Lead Counsel for Plaintiffs**

SCHWARTZ, JUNELL, GREENBERG
   & OATHOUT, LLP
ROGER B. GREENBERG
State Bar No. 08390000
Federal I.D. No. 3932


             /s/ Roger B. Greenberg
             ROGER B. GREENBERG

Two Houston Center
909 Fannin, Suite 2700
Houston, TX  77010
Telephone:  713/752-0017

WOLF POPPER LLP
ROBERT C. FINKEL
845 Third Avenue
New York, NY  10022
Telephone:  212/759-4600

SHAPIRO HABER & URMY LLP
THOMAS G. SHAPIRO
MATTHEW L. TUCCILLO
53 State Street
Boston, MA  02109
Telephone:  617/439-3939

**Attorneys for Nathaniel Pulsifer**

S:\Settlement\Enron.Set\Goldman\V1 Brf re Goldman.doc

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH GOLDMAN, SACHS & CO. AND MEMORANDUM IN SUPPORT THEREOF document has been served by sending a copy via electronic mail to serve@ESL3624.com on October 2, 2009.

I also certify that a copy of the above-mentioned document has been served via U.S. MAIL on the parties listed on the attached "Additional Service List" on this 2nd day of October, 2009.

*Deborah S. Granger*

_____
DEBORAH S. GRANGER

## ADDITIONAL SERVICE LIST

| | |
|---|---|
| Stuart Yoes<br>THE YOES LAW FIRM, LLP<br>3535 Calder Avenue, Suite 235<br>Beaumont, TX  77726-7584<br>409/833-2352<br>409/838-5577 (fax) | Darrell Palmer<br>LAW OFFICES OF DARRELL PALMER<br>603 North Highway 101, Suite A<br>Solana Beach, CA  92075<br>858/792-5600<br>866/583-8115 (fax) |
| Edward W. Cochran<br>20030 Marchmont Rd.<br>Shaker Heights, OH  44122<br>216/751-5546<br>216/751-6630 (fax) | N. Albert Bacharach Jr.<br>115 N.E. Sixth Avenue<br>Gainesville, FL  32601-6592<br>352/378-9859<br>352/338-1858 (fax) |
| Paul S. Rothstein<br>626 N.E. First Street<br>Gainesville, FL  32601<br>352/376-7650<br>352/374-7133 (fax) | J. Scott Kessinger<br>7304 Michigan Ave.<br>St. Louis, MO  63111<br>314/369-5115<br>314/754-8370 (fax) |
| Lawrence W. Schonbrun<br>LAW OFFICES OF LAWRENCE W.<br>SCHONBRUN<br>86 Eucalyptus Road<br>Berkeley, CA  94705<br>510/547-8070 | Edward F. Siegel<br>27600 Chagrin Blvd. #340<br>Cleveland, OH  44122<br>216/831-3424<br>216/831-6584 (fax) |
| John J. Pentz<br>CLASS ACTION FAIRNESS GROUP<br>2 Clock Tower Place, Suite 260G<br>Maynard, MA 01754<br>987/461-1548<br>707/276-2925 (fax) | Jonathan E. Fortman, Esq.<br>Attorney at Law<br>910 S. Florissant Road<br>St. Louis, MO  63135<br>Tel: (314)522-2312<br>Fax: (314)524-1519 |